UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MR. JEREMY LEVIN and DR. LUCILLE LEVIN, | |
| | Plaintiffs, |
| -v- | |
| BANK OF NEW YORK, JP MORGAN CHASE, SOCIETE GENERALE and CITIBANK, | |
| | Defendants. |

## 09 CV 5900

Civ. No.

COMPLAINT PURSUANT TO
N.Y. C.P.L.R. § 6201

FILED UNDER SEAL



Plaintiffs/Judgment Creditors, by their attorneys, complaining of the

Defendants/Garnishees, allege for their Complaint as follows:

### NATURE OF PROCEEDING AND RELIEF REQUESTED

1.      Plaintiffs / Judgment Creditors, Dr. Lucille Levin and Mr. Jeremy Levin,

("Plaintiffs") hold an unsatisfied final judgment in the total amount of $28,807,719

against Judgment Debtor Islamic Republic of Iran ("Iran") that was entered by the U. S.

District Court for the District of Columbia on February 6, 2008, and thereafter registered

in this Court pursuant to 28 U.S.C. § 1963 (2009) as Docket Number M18-302. See Ex.

A (Judgment dated February 6, 2008). The judgment arose from the 1984 kidnapping of

Jeremy Levin in Beirut, Lebanon, by Hizbollah terrorists who received training, support,

aid, funding, and direction from the Republic of Iran.

2.     Plaintiffs filed their complaint on December 30, 2005 under 28 U.S.C. §

1605(a)(7)(2007), the Foreign Sovereign Immunities Act ("FSIA"), which was repealed

and replaced by 28 USC § 1605A (2009) in 2008. In 2008, Congress enacted

amendments to the FSIA in §1083 of the National Defense Authorization Act for Fiscal

Year 2008, P.L. 110-181, 122 Stat. 3 (2008), ("NDAA"), to make enforcement of

judgment easier for plaintiffs by "expand[ing] the ability of claimants to seek recourse

against the property of that foreign state, ... by permitting any property in which the

foreign state has a beneficial ownership to be subject to execution of that judgment."

National Defense Authorization Act for Fiscal Year 2008, H.R. Rep. No. 110-477, at

1001 (2008)(Conference Report to Accompany H.R. 1585) .

3.     Defendants/Garnishees Bank of New York, JP Morgan Chase, Societe

Generale, and Citibank ("Defendant Banks") have reported to the Office of Foreign

Assets Control ("OFAC") of the U.S. Treasury Department, pursuant to their obligations

under various Executive Orders issued to carry out economic sanctions against terrorists,

terrorists groups, or state sponsors of terrorism, including Judgment debtor Iran, that they

are in possession of assets blocked by the U.S. government due to the fact that Iran has an

interest in them either directly or indirectly ("Iranian Blocked Assets").  See Ex. B at p. 2

(Letter from Sean Thornton, General Counsel, U.S. Department of Treasury dated

October 6, 2008).

4.     Information regarding Iranian Blocked Assets held by Defendant Banks

and incorporated herein was obtained by Plaintiffs from OFAC and is subject to a

protective order entered on September 30, 2008, by the District Court of the District of

Columbia, in *Levin v. Islamic Republic of Iran*, No. 05-CV-02494 (GK)(D.D.C)(the

"Levin Litigation"). See Ex. C. ("Protective Order"). Under Paragraph 9 of the

Protective Order, all "Confidential Information that is filed with any court, and any

pleadings, motions, exhibits, or other papers filed with the court, referencing or

containing Confidential Information, shall be filed under seal and kept under seal until

further order of the Court." Ex. C ¶ 9. However, the Confidential Information may be

used for the purpose of attempting to collect upon the judgment entered in [*Levin v.*

*Islamic Republic of Iran*, No. 05-CV-02494 (GK)(D.D.C)] (the "Levin Litigation"). Ex.

C ¶ 3. Exempt from the Protective Order are the "courts and their support personnel ...

in any proceedings incident to efforts to collect on the judgment" and "persons and

entities and their counsel served with writs of attachment or other legal process incident

to efforts to collect on the judgment entered in the Levin Litigation or those holding

assets identified in the Confidential Information." See Ex. C ¶¶ 5.b., 5.c. Further,

Defendant Banks are "restricted to using Confidential Information only for purposes

related to the satisfaction of judgment issued in the Levin Litigation and not for any other

litigation or proceeding or for any business, commercial, competitive, personal or other

purpose." Ex. C ¶ 6.

    5.    Pursuant to Fed. R. Civ. P. 69(a), Plaintiffs hereby request that this Court

enforce Plaintiffs' February 6, 2008, judgment against the Judgment debtor Iran by

ordering Defendants/Garnishees Bank of New York, JP Morgan Chase, Societe Generale,

and Citibank to pay to Plaintiffs the monies which have been identified by OFAC as

assets in which the Islamic Republic of Iran has an interest in possession of Defendant

Banks. See Ex. D (Attachment A: Assets blocked by entities in the United States due to a

nexus with a designated entity of Iran (January 1, 2007 through June 30, 2008), on

service copies to defendants, only the information relating to their institutions is

provided).

6.    Section 5225 (b) of New York Civil Practice Law and Rules ("C.P.L.R.")

states:

> Property not in the possession of judgment debtor. Upon a special
> proceeding commenced by the judgment creditor, against a person in
> possession or custody of money or other personal property *in which the
> judgment debtor has an interest*, ... where it is shown that the judgment
> debtor is entitled to the possession of such property or that *the judgment
> creditor's rights to the property are superior to those of the transferee*, the
> court shall require such person to pay the money, or so much of it as is
> sufficient to satisfy the judgment, to the judgment creditor... N.Y. C.P.L.R.
> § 5225(b)(1997)(emphasis added).

7.    Plaintiffs are entitled to the Iranian Blocked Assets held by Defendant

Banks and have superior rights to the Defendant Banks to the assets under § 201 of the

Terrorism Risk Insurance Act of 2002 ("TRIA"), which provides in pertinent part:

> ... in every case in which a person has obtained a judgment against a
> terrorist party on a claim based upon an act of terrorism, ... the blocked
> assets of that terrorist party (including the blocked assets of any agency or
> instrumentality of that terrorist party) shall be subject to execution ... in
> order to satisfy such judgment ....

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat.

2322 (2002).

8.    Further, section 1610 of the Foreign Sovereign Immunities Act ("FSIA"),

28 U.S.C. §1610 (2009) defines the types of property "subject to execution or attachment

in aid of execution..." of judgments by United States citizens who are victims of state

sponsors of terrorism, such as Judgment debtor Iran. Section 1610 provides in pertinent

part:

> (f)(1)(A) Notwithstanding any other provision of law, … *any property with respect to which financial transactions are prohibited or regulated* pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A.
> And,
> (g)(1) … [T]he property of a foreign state against which a judgment is entered under section 1605A [and its predecessor 1605 (a)(7)], and the property of an agency or instrumentality of such a state, *including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity*, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, *regardless of--*
> (A) the level of economic control over the property by the government of the foreign state;
> (B) whether the profits of the property go to that government;
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
> (D) whether that government is the sole beneficiary in interest of the property; or
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.
> (emphasis added) 28 U.S.C. §1610 (2009).

9.    Judgment Debtor Iran has an interest in the Iranian Blocked Assets held by

Defendant Banks, which is subject to execution of judgment by Judgment

Creditor/Plaintiffs pursuant to 28 U.S.C. §1610 (2009). See Exhibit B at p. 2 (Letter from

Sean Thornton, General Counsel, U.S. Department of Treasury dated October 6, 2008.)

10.     C.P.L.R. § 5225(b) "provides for a two-step analysis in *determining whether property belonging* to a judgment debtor—but in the possession of a third party—should be *turned over to a judgment creditor.*" *Velocity Inv., LLC v. Kawski*, 864 N.Y.S.2d 734, 740 (N.Y. City Ct. 2008)( quoting *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2nd Cir. 1991)). "First, it must be shown that the judgment debtor has an interest in the property the creditor seeks to reach." *Id.* (quoting *Beauvais,* 942 F.2d at 840). Second, the trial court must "make one of two findings: it must find either that the judgment debtor is entitled to the possession of such property, or it must find that the judgment creditor's rights to the property are superior to those of the party in whose possession it is." *Id.* (quoting *Beauvais,* 942 F.2d at 840)..

11.     Because (1) Iran has an interest in the Iranian Blocked Assets held by Defendant Banks, and (2)Plaintiffs' interests are superior to the Defendant Banks' interests in the funds, this Court should enter judgment in favor of Plaintiffs and order Defendant Banks to convey, assign, and pay to Plaintiffs in satisfaction of their judgment against Judgment debtor Iran all right, title, interest, and money in the identified assets set forth in Ex. D (Attachment A: Assets blocked by entities in the United States due to a nexus with a designated entity of Iran (January 1, 2007 through June 30, 2008), on service copies to defendants, only the information relating to their institutions is provided). N.Y. C.P.L.R. § 5225; Fed. R. Civ. P. 69(a)(1); Protective Order ¶ 6.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction in this action pursuant to 28 U.S.C. § 1331(2009), and § 201 of the Terrorism Risk Insurance Act ("TRIA"). Also,

Section 1605(a)(7) and its successor 1605A of the FSIA create exclusive federal subject-matter jurisdiction and abrogates the sovereign immunity of designated foreign state sponsors of terrorism (such as Iran) in civil actions for money damages "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources…for such an act…" 28 U.S.C. §§ 1605(a)(7)(2007), 1605A (2009).

This Court also has jurisdiction over this matter pursuant to its inherent ancillary enforcement jurisdiction, since this is an action to enforce a federal judgment registered in this Court pursuant to 28 U.S.C. §§ 1331, 1963 (2009).

13.     This Court has jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k).

14.     The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) and (d)(2009).

## THE PARTIES

15.     Plaintiffs are United States citizens residing in the United States. Plaintiff Jeremy Levin ("Mr. Levin") was a journalist who was kidnapped and held hostage in Lebanon for 343 days. Plaintiff Dr. Lucille Levin ("Dr. Levin"), wife of Mr. Levin, attempted to free Mr. Levin from his captors by raising awareness of the hostage situation and by engaging foreign administrations while undergoing severe emotional trauma and financial stress. *See Levin v. Islamic Republic of Iran,* 529 F. Supp.2d 1 (D.D.C. 2007).

/ / /

16.    Plaintiffs are Judgment Creditors holding an unsatisfied judgment against Iran in the amount of $28,807,719 plus post-judgment interest. *Id.* See Ex. A (Judgment dated February 6, 2008).

17.    Defendant Bank of New York ("BONY") is incorporated under the laws of New York, domiciled and headquartered in New York, with offices at One Wall Street, New York, New York. Defendant BONY has reported to OFAC that it is in possession of Iranian Blocked Assets in which Iran has an interest in the approximate amount set forth on Exhibit D. Defendant BONY is named as a garnishee in this action pursuant to C.P.L.R. § 5225(b), which allows a Judgment Creditor to commence a special proceeding against "a person in possession or custody of money or other personal property *in which the judgment debtor has an interest,* … where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee." N.Y. C.P.L.R. § 5225(b)(1997) (emphasis added).

18.    Defendant JP Morgan Chase is incorporated under the laws of Delaware, domiciled and headquartered in New York, with offices at One Chase Manhattan Plaza, New York, New York.  Defendant JP Morgan Chase has reported to OFAC that it is in possession of Iranian Blocked Assets in which Iran has an interest in the approximate amount set forth in Exhibit D.  Defendant JP Morgan Chase is named as a garnishee in this action pursuant to C.P.L.R. § 5225(b).  N.Y. C.P.L.R. § 5225(b)(1997).

19.    Defendant Citibank is incorporated under the laws of New York, domiciled and headquartered in New York, with offices at 399 Park Avenue, New York, New York.

Defendant Citibank has reported to OFAC that it is in possession of Iranian Blocked

Assets in which Iran has an interest in the approximate amount set forth in Exhibit D.

Defendant Citibank is named as a garnishee in this action pursuant to C.P.L.R. § 5225(b).

N.Y. C.P.L.R. § 5225(b)(1997).

20.     Defendant Societe Generale ("SG") is incorporated under the laws of New

York, domiciled and headquartered in New York, with offices at 1221 Avenue of the

Americas, New York, New York. Defendant SG has reported to OFAC that it is in

possession of Iranian Blocked Assets in which Iran has an interest in the approximate

amount set forth in Exhibit D. Defendant SG is named as a garnishee in this action

pursuant to C.P.L.R. § 5225(b). N.Y. C.P.L.R. § 5225(b)(1997).

21.     Defendant SG has reported to OFAC that it is in possession of Iranian

Blocked Assets in the approximate amount set forth in Exhibit D of Bank Sepah which

was designated for providing support and services to designated Iranian proliferation

firms by the Treasury Department pursuant to Executive Order No. 13,382, 70 Fed. Reg

38,567 (June 28, 2005). See Ex. D, p. 22 (Attachment A: Assets blocked by entities in

the United States due to a nexus with a designated entity of Iran (January 1, 2007 through

June 30, 2008), on service copies to defendants, only the information relating to their

institutions is provided). See also Ex. E (U.S. Dept of the Treasury, *Iran's Bank Sepah*

*Designated by Treasury, Sepah Facilitating Iran's Weapons Program*, Press Release,

January 9, 2007). The Treasury Department has stated publically that "Bank Sepah is the

fifth largest Iranian state-owned bank with more than 290 domestic branches and a

presence in Rome, Paris, Frankfurt, and a wholly-owned subsidiary in London." *Id.*

Bank Sepah is "a banking corporation organized under the laws of Iran" and is "wholly owned and controlled by the present government of Iran." *Raji v. Bank Sepah-Iran*, 131 Misc.2d 158, 159, 495 N.Y.S.2d 576 (N.Y. Sup. Ct. 1988); *see also* Bank Sepah Annual Report 2006-2007, pp 54, 60. Plaintiffs are entitled to any funds held for, paid in by, or in accounts in the name of Bank Sepah.

22.     Under controlling New York law, Plaintiffs are not required to name the individual remitters of each account to this action; rather, it is the duty of the garnishee (i.e. Defendant Banks) to implead potential adverse claimants and/or the duty of an adverse claimant to seek to intervene. *See e.g., Matter of Ruvolo v. Long Island R.R. Co.*, 256 N.Y.S.2d 279, 288-290 (N.Y. Sup. Ct. 1965); *RCA Corp. v. Tucker*, 696 F.Supp. 845, 850-851 (E.D.N.Y. 1988); *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 21 (2d Cir. 1999); *Neshewat v. Salem*, 365 F.Supp.2d 508, 524-525 (S.D.N.Y. 2005).

## STATEMENT OF FACTS

### Plaintiffs' Judgment

23.     Plaintiffs are American citizens whose injuries arose from the kidnapping of Mr. Jeremy Levin carried out by the terrorist group Hizbollah in Beirut, Lebanon, in 1984. Plaintiffs brought suit under the Foreign Sovereign Immunities Act ("FSIA") in the United States District Court for the District of Columbia against Iran and various Iranian government entities for their provision of training and other material support and assistance to the Hizbollah terrorists who carried out the kidnapping. *Levin v. Islamic Republic of Iran*, 529 F.Supp.2d 1 (D.D.C. 2007).

24.     Judgment debtor Iran is a foreign state designated as a state sponsor of terrorism under the Export Administration Act of 1979, and Plaintiff's judgment against Iran was therefore entered against a "terrorist party" as defined in Section 201 (d)(4) of TRIA.

25.     The U.S. District Court for the District of Columbia court found it "well established within the intelligence, academic, and legal communities that Iran, the MOIS, and the IRGC were providing material support and resources to Hizbollah in the early 1980's" and thus that "Iran, the MOIS, and the IRGC, as sponsors of Hizbollah, are responsible for the personal injuries inflicted upon by Hizbollah on hostages and their families, such as Mr. and Dr. Levin." *Levin,* 529 F. Supp. 2d at 15. The Court thus held Iran and the other defendants liable for the torts of false imprisonment, battery, assault, intentional infliction of emotional distress, negligence, and loss of consortium. *Id.* at 17-19.

26.     On February 6, 2008, the trial court entered a judgment in favor of the Plaintiffs against Iran and the other defendants, jointly and severally, in the total amount of $28,807,719 in damages. Iran has refused to honor the judgments. *Id.* at 21.

27.     Plaintiffs' judgments have been registered in this Court pursuant to 28 U.S.C. § 1963 under case number 09-0732 and therefore have "the same effect as a judgment of" this Court "and may be enforced in like manner." 28 U.S.C. § 1963 (2009).

/ / /

/ / /

/ / /

### Plaintiffs' Writ of Execution

28.     On June 19, 2009, pursuant to C.P.L.R. § 5230 (made applicable here by

Fed. R. Civ. P. 69), Plaintiffs served a Writ of Execution issued by this Court on the

United States Marshal for the Southern District of New York.

29.     By serving the Writ of Execution on the U.S. Marshal, Plaintiffs obtained a

priority lien on all personal property in New York County subject to execution and

attachment in satisfaction of their judgment.  *See* David D. Siegel, Practice

Commentaries, C.P.L.R. § 5230:1 ("[W]ith the simple act of delivering an execution to

the sheriff, the creditor secures a lien on the debtor's personal property in the county even

though neither the creditor nor the sheriff know of any.").

## IRAN HAS AN INTEREST IN BLOCKED ASSETS HELD BY DEFENDANT BANKS

30.     Section 201 of TRIA makes blocked assets of a terrorist state available to

satisfy certain judgments:

> Notwithstanding any other provision of law...in every case in which a
> person has obtained a judgment against a terrorist party on a claim based
> upon an act of terrorism, or for which a terrorist party is not immune under
> section 1605(a)(7) of title 28, United States Code, the blocked assets of that
> terrorist party (including the blocked assets of any agency or
> instrumentality of that terrorist party) shall be subject to execution or
> attachment in aid of execution in order to satisfy such judgment to the
> extent of any compensatory damages for which such terrorist party has
> been adjudged liable.

31.     Iran is a foreign state designated as a state sponsor of terrorism under the

Export Administration Act of 1979.

32.    TRIA defines "blocked assets" as

> any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702) ("IEEPA").

> Terrorism Risk Ins. Act of 2002, Pub. L. No. 107-297, §§ 201(a), 201(d)(2)(A),116 Stat. 2322 (2002)..

33.    Invoking the authority granted to the President under IEEPA, the President issued Executive Orders No. 12,947, 60 Fed. Reg. 5,079 (January 23, 1995) (Prohibiting Transactions With Terrorists Who Threaten To Disrupt the Middle East Peace Process), 13,099, 63 Fed. Reg. 45,167 (August 20, 1998)(amending Exec. Order No. 12,947), 13,224, 66 Fed. Reg. 49,079 (September 23, 2001) (Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten To Commit, or Support Terrorism), and 13,268, 67 Fed. Reg. 44,751 (July 2, 2002) (amending Executive Order No. 13,224, 66 Fed. Reg. 49,079 (September 23, 2001)) for the purpose of blocking property and interests in property, and for prohibiting certain types of transactions with identified terrorists, terrorist groups, and state sponsors of terrorism.

34.    In addition, Executive Order No. 13,382, 70 Fed. Reg. 38,567 (June 28, 2005) (Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters) was issued to block the property of specially designated Weapons of Mass Destruction ("WMD") *proliferators and members of their support networks*. Executive Order No. 13,382 provides for blocking of all property and interest in property in the United States of

"(a)(i) the persons listed in the Annex to this order;

(ii) any foreign person *determined by the Secretary of State, ... to have engaged, or attempted to engage,* in activities or *transactions that have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction* or their means of delivery." Exec. Order No. 13,382, 70 Fed. Reg. 38,567 (June 28, 2005).

35.    Properties of entities not designated may also be blocked pursuant to

Executive Order No. 13,382, which further provides for the blocking of all property and

interest in property in the United States of

"(iii) any person determined by the Secretary of the Treasury, ... to have provided, or attempted to provide, financial, material, technological or other support for ... any activity or transaction described in paragraph (a)(ii)..., or any person whose property and interests in property are blocked pursuant to this order; and
(iv) any person determined by the Secretary of the Treasury... to be owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this order." Exec. Order No. 13,382, 70 Fed. Reg. 38,567 (June 28, 2005).

36.    Pursuant to these Executive Orders, OFAC administers various sanctions

against terrorists, terrorist groups, and state sponsors of terrorism as well as proliferators

of WMD and their supporters, by enforcing prohibitions on transactions and trades and/or

blocking property or assets of designated international terrorist organizations, terrorism-

supporting countries, proliferators of WMD and/or their supporters.

37.    Terrorists, terrorist groups, and state sponsors of terrorism are "designated"

by OFAC and placed on OFAC's public list, referred to as "Specially Designated

Nationals" ("SDNs"). SDNs are defined as "Individuals and entities which are owned or

controlled by, or acting for or on behalf of, the governments of target countries or are

associated with international ... terrorism." OFAC Regulations for the Financial

Community, http://www.treas.gov/offices/enforcement/ofac/regulations/index.shtmlU.

09:P2219332.doc                                        14

38.     "[P]ersons designated by the Secretary of State under the Weapons of Mass Destruction Trade Control Regulations [31 C.F.R. 539] are listed in a separate appendix to part 539 and are not listed on OFAC's SDN list... Persons whose property and interests in property are blocked under these Regulations are listed on OFAC's SDN list with the identifier "[NPWMD]"." 31 C.F.R. §544 (2009).

39.     Subsection 201(a) of Weapons of Mass Destruction Proliferators Sanctions Regulations, 31 C.F.R. § 544, blocks properties of (1) entities listed on Annex of Executive Order No. 13,382, (2) entities determined by Treasury to contribute to WMD proliferators, (3) entities determined by Treasury to support entities contributing to WMD proliferators or entities whose property and interests are blocked by this section, and (4) entities determined by Treasury to be owned or controlled, directly or indirectly by persons whose property and interests are blocked by this section. 31 C.F.R. §544.201(a)(2009).

40.     According to OFAC's Terrorist Assets Report 2007 "[t]he blocked asset amounts... represent amounts frozen under U.S. sanctions programs that block all property and interests in property of designated parties" under either the SDN list or WMD list. Office of Foreign Assets Control, U.S. Dep't of the Treasury , Terrorist Assets Rep. (p.2), Calendar Year 2007, Sixteenth Annual Rep. to Cong. on Assets in the U.S. of Terrorist Countries and Int'l Terrorism Program.

41.     Placement on the SDN list or the WMD list alerts U.S. entities, especially the financial institutions such as Defendant Banks, that they are prohibited from dealing with the entities and that they must block all property within their possession or control in

which these entities have an interest, and that the blocking must be reported to OFAC. *Id.*

Therefore, all properties and interests in properties of the entities on the SDN and WMD

lists are blocked within the U.S. jurisdiction. *See* Exec. Order No. 13,382, 70 Fed. Reg.

38,567 (June 28, 2005).

42.     Defendant Banks have reported to OFAC "blocked assets" as defined above

in which the U.S. government has determined Iran has an interest and which are in

Defendants' possession. See Ex. B at p. 2 (Letter from Sean Thornton, General Counsel,

U.S. Department of Treasury dated October 6, 2008.)

43.     In its disclosure to Plaintiffs, OFAC has stated that the blocked assets of the

Defendant Banks set forth in Ex. D attached hereto, specifically are assets in which Iran

has an interest, as that interest is defined by federal law. *Id.* (On service copies to

defendants, only the information relating to their institutions is provided).

44.     "The term 'interest' is broadly defined in OFAC's sanctions regulations in

Chapter V of Title 31 of the Code of Federal Regulations. An interest in property may be

direct or indirect and include property interests short of full ownership." Office of

Foreign Assets Control, U.S. Dep't of the Treasury , Terrorist Assets Rep. (p.2), Calendar

Year 2007, Sixteenth Annual Rep. to Cong. on Assets in the U.S. of Terrorist Countries

and Int'l Terrorism Program.

"Interest" as defined under Title 31 of the Code of Federal Regulations, Chapter

V, is "an interest of any nature whatsoever, direct or indirect." 31 C.F.R. §500.312

(2009).

45.     As provided by 28 U.S.C. §1610 (g) (2009), blocked assets in which Iran

has an interest, whether directly or indirectly, are subject to execution or attachment in

aid of execution of Plaintiff's judgment.

> "the property of a foreign state against which a judgment is entered under
> section 1605A [incorporating and replacing section 1607(a)(7)] and the
> property of an agency or instrumentality of such a state, including property
> that is a separate juridical entity or *is an interest held directly or indirectly*
> *in a separate juridical entity*, is subject to attachment in aid of execution,
> and execution, upon that judgment as provided in this section, *regardless*
> *of--*
>> (A) the level of economic control over the property by the
>> government of the foreign state;
>> (B) whether the profits of the property go to that government;
>> (C) the degree to which officials of that government manage the
>> property or otherwise control its daily affairs;
>> (D) whether that government is the sole beneficiary in interest of the
>> property; or
>> (E) whether establishing the property as a separate entity would
>> entitle the foreign state to benefits in United States courts while
>> avoiding its obligations." (emphasis added) 28 U.S.C. §1610
>> (g)(2009).

46.     Since Defendant Banks are blocking assets that were involved in prohibited

transactions by a "designated entity" or SDN in which OFAC has identified to have

Iranian interest pursuant to Executive Order 13,382 and other economic sanction

programs against Iran, Judgment debtor Iran holds an interest in the funds within

Defendant Banks' possession. *See* N.Y. C.P.L.R. § 5225 (1997); 28 U.S.C.

1610(g)(2009); *Weininger v. Castro*, 462 F.Supp.2d 457, 499 (S.D.N.Y. 2006)(holding

that under C.P.L.R. § 5225, funds in bank accounts of terrorist party's agencies or

instrumentalities, which were subject to TRIA, could be used to satisfy judgments

obtained against terrorist party).

47.   Accordingly, the Defendant Banks are in possession of assets which are subject to execution or attachment in aid of execution of Plaintiffs' judgment. *See* N.Y. C.P.L.R. § 5225 (1997).

## PLAINTIFFS HAVE A SUPERIOR INTEREST IN THE BLOCKED ASSETS
## HELD BY DEFENDANT BANKS

48.   Pursuant to Plaintiffs' subpoena served on OFAC dated September 11, 2008, OFAC has disclosed to Plaintiffs under a Protective Order entered on September 30, 2008, in the District Court of the District of Columbia, that Defendant banks have reported certain assets "blocked due to an apparent nexus with the designated entities of the Islamic Republic of Iran." See Ex B at p. 2 (Letter from Sean Thornton, General Counsel, U.S. Department of Treasury dated October 6, 2008); *see also* Ex. C (Protective Order); *see also* Ex. D (Attachment A: Assets blocked by entities in the United States due to a nexus with a designated entity of Iran (January 1, 2007 through June 30, 2008), on service copies to defendants, only the information relating to their institutions is provided).

49.   Since the assets are blocked "due to an apparent nexus with designated entities of the Islamic Republic of Iran", which OFAC defined such entities as "individuals and entities which are owned or controlled by, or acting for or on behalf of, the Government[] of [Iran] or are associated with international … terrorism", Plaintiffs are entitled to and have a superior interest in these assets compared to Defendant Banks. OFAC Regulations for the Financial Community, http://www.treas.gov/offices/enforcement/ofac/regulations/index.shtmlU.

50.    The Iranian Blocked Assets held by Defendant Banks and set forth in Ex. D attached hereto, as well as any additional assets held by the Defendant Banks which have been blocked pursuant to economic sanction regulations against Iran are subject to attachment, execution, and payment to Plaintiffs pursuant to § 201 of TRIA and 28 U.S.C. §1610 (g)(2009) of FSIA.

51.    Therefore, Plaintiffs' rights to the blocked assets being held by Defendant Banks are superior to those of the possessing party. *See* N.Y. C.P.L.R. § 5225 (1997); *see also United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 988 F. Supp. 367, 374 (S.D.N.Y. 1997)(quoting *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991)).

52.    Plaintiffs' rights are superior to those of both Defendant Banks and the identified remitters of such assets because (1) Defendant Banks are disinterested stakeholders of the funds deposited in their possession, *Morgenthow & Latham v. Bank of N.Y. Co., Inc.*, 836 N.Y.S.2d 579, 580 (N.Y. App. Div. 2007)(citing *Bata Shoe Co. v. Silvestre Segarra e Hijos*, 396 N.Y.S.2d 369 (N.Y. App. Div. 1977)); and (2) the assets blocked under the various economic sanction regulations of the U.S. government outlined above, have been determined by OFAC to be ones in which Iran has an interest. See Ex. B at p. 2 (Letter from Sean Thornton, General Counsel, U.S. Department of Treasury dated October 6, 2008).

/ / /

/ / /

## CLAIM FOR RELIEF AGAINST DEFENDANTS BANK OF NEW YORK, JP MORGAN CHASE, SOCIETE GENERALE, AND CITIBANK PURSUANT TO C.P.L.R. § 5225

53.     Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if they were set forth herein.

54.     Plaintiffs are judgment creditors of Iran.

55.     Plaintiffs are entitled to enforce their judgment against all assets in which Iran has an interest, direct or indirect, within the United States jurisdiction.

56.     The assets held by Defendant Banks and set forth in Ex. D attached hereto are "Iranian Blocked Assets" which have been determined by OFAC to have an apparent connection to Iran and in which Iran has an interest.  See Ex. B at p. 2 (Letter from Sean Thornton, General Counsel, U.S. Department of Treasury dated October 6, 2008).

57.     Plaintiffs are entitled to a judgment pursuant to C.P.L.R. § 5225 ordering Defendant Banks to convey, assign, and pay to Plaintiffs in satisfaction of their judgment against Iran all right, title, interest, and money in the identified bank accounts set forth in Ex. D (Attachment A: Assets blocked by entities in the United States due to a nexus with a designated entity of Iran (January 1, 2007 through June 30, 2008), on service copies to defendants, only the information relating to their institutions is provided).

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand a judgment entered in their favor and against Defendant Banks and an order conveying, assigning and directing the payment to plaintiffs in satisfaction of their judgment all right, title, interest and money in the listed bank accounts in possession of Defendant Banks, including specifically:

An order and judgment conveying, assigning and directing the turnover of money to plaintiffs in satisfaction of their judgment as below:

(a)    To Bank of New York

At least the amount set forth on Exhibit D held in this bank plus any accrued interest from funds blocked and reported to OFAC as set forth in Ex. D, p. 6 (on service copies to defendants, only the information relating to their institutions is provided).

(b)    To JPMorgan Chase

At least the amount set forth on Exhibit D held in this bank plus any accrued interest from funds blocked and reported to OFAC as set forth in Ex. D, pp. 16-17 (on service copies to defendants, only the information relating to their institutions is provided).

(c)    To Societe Generale

At least the amount set forth on Exhibit D held in this bank plus any accrued interest from funds blocked and reported to OFAC as set forth in Ex. D, p. 22 (on service copies to defendants, only the information relating to their institutions is provided).

(d)     To Citibank

At least the amount set forth on Exhibit D held in this bank plus any accrued interest from funds blocked and reported to OFAC as set forth in Ex. D, pp. 8-10 (on service copies to defendants, only the information relating to their institutions is provided).

Dated:      Los Angeles, California
            June 22, 2009

                        HOWARTH & SMITH

            By:     _____
                        Kathryn Lee Crawford
                        523 West Sixth Street, Suite 728
                        Los Angeles, California 90014
                        (213) 955-9400

                        Attorney for Plaintiffs/Judgment Creditors

09:P2219332.doc                          22

**EXHIBIT A**

# UNITED STATES DISTRICT COURT COPY
## FOR THE DISTRICT OF COLUMBIA

$M18-302$

$SDNY \# 09,0732$

JEREMY LEVIN, et al.
     Plaintiff(s)

    v.

Civil Action No. 05-2494 (GK0

ISLAMIC REPUBLIC OF IRAN, et al.
    Defendant(s)

*(Stamp: U.S. DISTRICT COURT FILED APR 20 2009 OAJ S.D. OF N.Y.)*

## CERTIFICATION OF JUDGMENT
## FOR REGISTRATION IN ANOTHER DISTRICT

I, NANCY MAYER-WHITTINGTON, Clerk of this United States District Court certify that the

attached judgment is a true and correct copy of the original judgment entered in this action on

    2/6/2008    , as it appears in the records of this court, and that:

[X] No notice of appeal from this judgment has been filed, and no motion of any kind listed in Rule 4(a) of the Federal Rules of Appellate Procedure has been filed.

[ ] No notice of appeal from this judgment has been filed, and any motions of the kinds listed in Rule 4(a) of the Federal Rules of Appellate Procedure have been disposed of, the latest order disposing of such a motion having been entered on _____ .

[ ] An appeal was taken from this judgment and the judgment was affirmed by mandate of the Court of Appeals issued on _____ .

[ ] An appeal was taken from this judgment and the appeal was dismissed by order entered on _____ .

IN TESTIMONY WHEREOF, I sign my name and affix the seal of this Court on

March 18, 2008.

                    NANCY MAYER-WHITTINGTON, Clerk

          By: _____
                    Deputy Clerk

# UNITED STATES DISTRICT COURT

_____ DISTRICT OF COLUMBIA _____

JEREMY LEVIN, et al

### JUDGMENT IN A CIVIL CASE

v.

ISLAMIC REPUBLIC OF IRAN, et al

Case Number:   05-2494

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☑ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard a decision has been rendered.

IT IS ORDERED AND ADJUDGED

that final judgment is hereby entered on behalf of Plaintiff Jeremy Levin and against Defendants the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security ("MOIS"), and the Iranian Islamic Revolutionary Guard Corp ("IRGC"), jointly and severally, in the amount of $18,506,935; and on behalf of Plaintiff Dr. Lucille Levin and against Defendants Iran, MOIS, and IRGC, jointly and severally, in the amount of $10,300,784.

**ECF DOCUMENT**

I hereby attest and certify that this is a printed copy
of a document which was electronically filed with the
United States District Court for the District of Columbia.
Date Filed: _2-6-08_

NANCY MAYER-WHITTINGTON, CLERK
By: _Michael Dasley 3-17-08_

Dated: _February 6, 2008_

NANCY MAYER-WHITTINGTON, Clerk

By: _Tonya J. Hightower_
Deputy Clerk

**EXHIBIT B**

**U.S. Department of Justice**

Civil Division

*Washington, D.C. 20530*

October 6, 2008

VIA EMAIL AND FEDERAL EXPRESS

Lee Crawford-Boyd, Esq.
Howarth & Smith
523 West Sixth Street
Suite 728
Los Angeles, California 90014

Re: *Levin v. Islamic Republic of Iran*, No. 05-CV-02494-GK (D.D.C.)

Dear Ms. Boyd:

This letter constitutes the final response of the Office of Foreign Assets Control ("OFAC") to the subpoena issued by plaintiffs in the above-referenced action on September 11, 2008. This response incorporates by reference all prior responses and objections to those subpoenas as set forth in Sean Thornton's letter to you dated September 22, 2008.

The subpoena seeks various categories of documents that you claim would assist the plaintiffs in executing a judgment against the Islamic Republic of Iran. Since OFAC is not a party to the above-referenced action, your request and this response are subject to the regulations set forth at 31 C.F.R. §§ 1.8 to 1.12 ("Touhy regulations"). Therefore, in determining whether to authorize disclosure of responsive information, OFAC has considered, among other things, the relevance and materiality of that information to the above-referenced proceedings, the burdensomeness of your request, and the availability of the requested information from other sources. *See* 31 C.F.R. § 1.11(e).

Consistent with Mr. Thornton's letter to you dated September 22, 2008, and your letter in response dated September 23, 2008, OFAC is producing the same information it produced pursuant to subpoenas in *Greenbaum v. Islamic Republic of Iran*, No. 02-2148 (D.D.C.), and *Peterson v. Islamic Republic of Iran*, No. 01-2094 (D.D.C.). OFAC's response to your subpoena is therefore subject to the limitations that governed the *Greenbaum* and *Peterson* production. Those limitations are set forth in Mr. Thornton's letter of September 22, 2008, to which you agreed by letter dated September 23, 2008.

Subject to the limitations set forth in the letter of September 22, the applicable Touhy

regulations, and all previously asserted objections, OFAC responds as follows:

**Requests Related to Iran-U.S. Claims Tribunal**.[1] As explained in the letter of September 22, the requests related to the Iran-U.S. Claims Tribunal are not relevant and material to the above-referenced action. Judge Feess held in *Greenbaum v. Islamic Republic of Iran*, Case No. 08-0740 (C.D. Cal.), that as a matter of law, Iran's judgment creditors are not entitled to an assignment of rights to money allegedly due Iran from the United States pursuant to awards by the Iran-U.S. Claims Tribunal. *See* Orders of July 7, 2008. Judge Feess also rejected plaintiff's request for a turnover of the assets of the former Shah of Iran and his family members. *Id.* To the extent that any of your requests call for identification of assets that are at issue in Tribunal proceedings, OFAC is not responding to those requests.

**Request Nos. and 1 and 2**. In response to Request Nos. 1 and 2, OFAC encloses Attachment A, which contains the following information identifying assets reported to OFAC as blocked due to an apparent nexus with designated entities of the Islamic Republic of Iran:[2] (1) the names of financial institutions in the United States that are holding such blocked funds; (2) the names of the remitters of such funds; and (3) the amounts that were reported to OFAC as blocked during the period January 1, 2007 through June 30, 2008.[3] OFAC has made no determination as to the ownership or other cognizable property interest of Iran in any of the identified assets.[4]

Attachment A is subject to the Protective Order issued by Judge Kessler in this action on September 30, 2008 (hereinafter "Protective Order"). The information in Attachment A is identical to the information that OFAC produced to the *Greenbaum* and *Peterson* plaintiffs.

OFAC has no additional information on the non-blocked funds that are reported in the *Terrorist Assets Report* for 2006. *See Terrorist Assets Report* at 15 (2006). Those data are reported to OFAC in aggregate form, and their disclosure in the non-aggregate would be subject to stringent statutory prohibitions. *See, e.g.*, International Investment and Trade in Services Act of 1976, 22 U.S.C. § 3101 *et seq.*; Bretton Woods Agreements Act, 22 U.S.C. § 286.

---

[1] The requests in this category include Requests Nos. 5(a) – 5(d), 7, 8, and 9(a) – 9(d).

[2] In the forthcoming *Terrorist Assets Report* for 2007, OFAC will report the aggregate amount of assets with an apparent nexus to Iran that were blocked in 2007.

[3] OFAC designated the first of such entities in January 2007.

[4] See, for example, the *Terrorist Assets Report* for 2006, which states that blocked assets "represent amounts frozen under U.S. sanctions programs that block all property in which a designated party has an interest of any nature whatsoever. The term 'interest' ... includes more than an ownership interest. In many cases the interest may be partial, or may fall short of title to the property .... Many of the assets may be owned or subject to claims by third parties." *Terrorist Assets Report* at 1 (2006).

**Request Nos. 1, 4, 5(e), and 6.**[5]  In response to these requests, OFAC encloses Attachment B, which is subject to the Protective Order.  The information in Attachment B is identical to information that was provided to the *Greenbaum* and *Peterson* plaintiffs.[6]

In response to these requests, OFAC also encloses Attachment C, which provides information about a certain account.  That information is subject to the Protective Order and is identical to information that OFAC produced to the *Greenbaum* and *Peterson* plaintiffs.

**Request No. 3.**  As explained in Mr. Thornton's letter of September 22, OFAC does not maintain the Foreign Military Sales Account and accordingly has no information responsive to this request.

---

[5] By letter agreement of September 22, 2008, Requests Nos. 4 and 6 were redefined as follows:

> 4.  All filings, papers, pleadings, and writings, either in part or in whole, which list, identify, catalogue, indicate, or evidence a communication from a third party in which the third party has identified an asset of Iran, such as physical property or a bank account.

> 6.  Any and all lists, narratives, histories, catalogues, inventories of all assets of Iran, along with the name, address and telephone number of the holders thereof. This includes any interest in any business, either in part or in whole.

[6]  Subsequent to OFAC's disclosure to the *Greenbaum* and *Peterson* plaintiffs, the U.S. District Court for the Southern District of New York issued an order on June 27, 2008, vacating that Court's temporary restraint of certain of the assets listed in Attachment B. See Peterson v. Islamic Republic of Iran, No. 18 Misc. 8302 (JGK) (S.D.N.Y. June 27, 2008).  A copy of that order is enclosed (and is not subject to the Protective Order in this action).

Please be advised that OFAC's production of the enclosed information should not be construed as having any bearing whatsoever on the issue of whether plaintiffs have any legal right to attach the disclosed assets as a matter of law in their effort to satisfy the judgment in the above-referenced action.

If you have any questions about the enclosed materials or the contents of this letter, please do not hesitate to contact me at (202) 616-0679.

Sincerely,

Heather Phillips
Trial Attorney
Federal Programs Branch
Civil Division

Enclosures

**EXHIBIT  C**

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEREMY LEVIN and DR. LUCILLE LEVIN,      )
                                            )
        Plaintiffs,                       )
                                         )     Civil Action No. 05-2494 (GK)
        v.                           )
                                       )
THE ISLAMIC REPUBLIC OF IRAN, et al.,      )
                                       )
        Defendants.                 )
                                       )

## ~~[PROPOSED]~~ PROTECTIVE ORDER

Based upon the Court's consideration of this matter, including a Rule 45 Third-Party subpoena issued by plaintiffs in the above-referenced case, and the Department of the Treasury's Office of Foreign Assets Control's ("OFAC") Unopposed Motion concerning that subpoena, it is hereby ordered that:

1.    OFAC is authorized, pursuant to the terms set forth herein, to disclose information responsive to the subpoena issued by plaintiffs in the above-referenced case on September 11, 2008 (the "Subpoena").

2.    All information produced in response to the Subpoena, and any portion thereof, is to be deemed confidential ("Confidential Information"), unless plaintiffs are otherwise advised by OFAC.

3.    Confidential Information may be used only for the purpose of attempting to collect upon the judgment entered in the above-captioned matter ("the Levin Litigation"), pursuant to procedures authorized by law, and for no other purpose.

1

4.      No person shall be permitted to have access to Confidential Information, nor shall any person be informed of the substance of the Confidential Information by any person permitted to have access thereto, except as provided in this Order, as otherwise agreed upon by the parties and OFAC in writing, or by order of the Court.

5.      Confidential Information shall not be disclosed or distributed to any person or entity other than the following:

a.      the attorneys for parties to the <u>Levin</u> Litigation (including their paralegal, clerical, or other assistants) or in any proceedings incident to efforts to collect on the judgment entered therein who have a need therefor in connection with said proceedings;

b.      the courts and their support personnel in the <u>Levin</u> Litigation and in any proceedings incident to efforts to collect on the judgment entered therein;

c.      persons and entities and their counsel served with writs of attachment or other legal process incident to efforts to collect on the judgment entered in the <u>Levin</u> Litigation or those holding assets identified in the Confidential Information;

d.      local or federal law enforcement personnel involved in any legal proceedings incident to efforts to collect on the judgment entered in the <u>Levin</u> Litigation; and

e.      any other person to whom disclosure is required in order to pursue proceedings incident to efforts to collect on the judgment entered in the <u>Levin</u> Litigation, pursuant to procedures authorized by law.

2

6.      To the extent that Confidential Information is disclosed to persons as described in subparagraphs 5(c)-(e), only those portions of the Confidential Information that are necessary for each specific proceeding incident to efforts to collect on the judgment or that relate to specific assets at issue shall be disclosed to such persons. All persons described in subparagraphs 5(a)-(e) above shall be provided with a copy of this Protective Order and restricted to using Confidential Information only for purposes directly related to the satisfaction of judgments issued in the Levin Litigation and not for any other litigation or proceeding or for any business, commercial, competitive, personal or other purpose. Photocopies of documents containing Confidential Information shall be made only to the extent necessary to facilitate the permitted use hereunder.

7.      Confidential Information shall not be disclosed to any person or persons described under subparagraph 5(e) unless and until such person has been shown this Protective Order and has agreed in writing to be bound by its terms, by signing a copy of the attached Acknowledgment form. A copy of each executed Acknowledgment shall be kept by counsel for the party on behalf of which disclosure is made pursuant to subparagraph 5(e).

8.      The termination of the Levin Litigation or any proceeding incident to efforts to collect on the judgment entered in the Levin Litigation shall not relieve any person or party provided Confidential Information of his, her, or its obligations under this Order.

9.      All Confidential Information that is filed with any court, and any pleadings, motions, exhibits, or other papers filed with the court, referencing or

3

containing Confidential Information, shall be filed under seal and kept under seal until further order of the Court.

10.     Within sixty (60) days of the resolution of the last proceeding incident to efforts to collect on the judgment entered in the <u>Levin</u> Litigation by settlement or final judgment, and the termination of any appeals therefrom, all Confidential Information, and copies thereof, shall be promptly destroyed, provided that counsel may retain one complete set of any such materials that were presented in any form to the Court. Any such retained materials shall be placed in an envelope or envelopes marked "Confidential Information Subject to Protective Order," and to which shall be attached a copy of this Order.

11.     The provisions of this Order restricting the use and disclosure of Confidential Information shall not apply to documents or other information which were, are, or become public knowledge not in violation of this Order.

12.     Entry of this Order constitutes only a determination that OFAC is authorized to disclose information as provided herein under the Trade Secrets Act. Entry of this Order does not constitute a determination as to any right, privilege, or immunity OFAC may have with respect to plaintiffs' subpoena, or any objection(s) OFAC may have to plaintiffs' subpoena. OFAC's disclosure of information pursuant to this Order shall not constitute a waiver of any right, privilege, or immunity OFAC may have with respect to such information.

13.     Entry of this Order shall not prohibit the United States or any agency, department, officer, or employee thereof, from using or disclosing Confidential Information for any other purposes authorized by law.

4

IT IS SO ORDERED, this _____ of _____ 2008.

UNITED STATES DISTRICT JUDGE

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEREMY LEVIN and DR. LUCILLE LEVIN, )
                                          )
      Plaintiffs, )
                                          )
          v. )     Civil Action No. 05-2494 (GK)
                                          )
THE ISLAMIC REPUBLIC OF IRAN, et al., )
                                          )
      Defendants. )

## ACKNOWLEDGMENT OF PROTECTIVE ORDER

      The undersigned hereby declares under penalty of perjury that he or she has read the Protective Order entered in the United States District Court for the District of Columbia in the above-captioned action, understands its terms, and agrees to be bound by each of those terms. Specifically, and without limitation, the undersigned agrees not to use or disclose any Confidential Information made available to him or her other than in strict compliance with the Order. The undersigned acknowledges that his or her duties under the Order shall survive termination of this case and are permanently binding and that failure to comply with the terms of the Order may result in the imposition of sanctions by the Court.

                                           _____
                                         [signature]

                                         _____
                                         [print name]

DATED: _____

6

**EXHIBIT  D**

**ATTACHMENT A**
**SUBJECT TO PROTECTIVE ORDER**
**PRIVILEGED AND CONFIDENTIAL**

**Assets blocked by entities in the United States due to a nexus with a designated entity of Iran**
**(January 1, 2007 through June 30, 2008)**

| INSTITUTION NAME | REMITTER | AMOUNT |
|---|---|---|



ATTACHMENT A
SUBJECT TO PROTECTIVE ORDER
PRIVILEGED AND CONFIDENTIAL

**Assets blocked by entities in the United States due to a nexus with a designated entity of Iran
(January 1, 2007 through June 30, 2008)**

| INSTITUTION NAME | REMITTER | AMOUNT |
|---|---|---|



**ATTACHMENT A**
**SUBJECT TO PROTECTIVE ORDER**
**PRIVILEGED AND CONFIDENTIAL**

Assets blocked by entities in the United States due to a nexus with a designated entity of Iran
(January 1, 2007 through June 30, 2008)

| INSTITUTION NAME | REMITTER | AMOUNT |
|---|---|---|



**ATTACHMENT A**
**SUBJECT TO PROTECTIVE ORDER**
**PRIVILEGED AND CONFIDENTIAL**

Assets blocked by entities in the United States due to a nexus with a designated entity of Iran
(January 1, 2007 through June 30, 2008)

| INSTITUTION NAME | REMITTER | AMOUNT |
|---|---|---|



SUBJECT TO PROTECTIVE ORDER
PRIVILEGED AND CONFIDENTIAL

**ATTACHMENT A**
**SUBJECT TO PROTECTIVE ORDER**
**PRIVILEGED AND CONFIDENTIAL**

Assets blocked by entities in the United States due to a nexus with a designated entity of Iran
(January 1, 2007 through June 30, 2008)

| INSTITUTION NAME | REMITTER | AMOUNT |
| --- | --- | --- |

**ATTACHMENT A**
**SUBJECT TO PROTECTIVE ORDER**
**PRIVILEGED AND CONFIDENTIAL**

Assets blocked by entities in the United States due to a nexus with a designated entity of Iran
(January 1, 2007 through June 30, 2008)

| INSTITUTION NAME | REMITTER | AMOUNT |
| --- | --- | --- |
| | | |

SUBJECT TO PROTECTIVE ORDER
PRIVILEGED AND CONFIDENTIAL

ATTACHMENT A
SUBJECT TO PROTECTIVE ORDER
PRIVILEGED AND CONFIDENTIAL

Assets blocked by entities in the United States due to a nexus with a designated entity of Iran
(January 1, 2007 through June 30, 2008)

| INSTITUTION NAME | REMITTER | AMOUNT |
|---|---|---|
| ███████████ | | |
| | ████████████████████████ | |

Exhibit E

January 9, 2007
HP-219

**Iran's Bank Sepah Designated by Treasury**
**Sepah Facilitating Iran's Weapons Program**

The Department of the Treasury today designated Bank Sepah, a state-owned Iranian financial institution for providing support and services to designated Iranian proliferation firms. Bank Sepah International Plc, a wholly-owned subsidiary of Bank Sepah in the United Kingdom, and Ahmad Derakhshandeh, Bank Sepah's Chairman and Director, were also designated today.

"Bank Sepah is the financial linchpin of Iran's missile procurement network and has actively assisted Iran's pursuit of missiles capable of carrying weapons of mass destruction," said Stuart Levey, Treasury's Under Secretary for Terrorism and Financial Intelligence (TFI). "Our action today gives effect to the United Nation's call on all nations to deny financial assistance to Iran's nuclear and missile programs, and we urge other countries likewise to fulfill this serious obligation."

Treasury's Office of Foreign Assets Control (OFAC) took this action pursuant to Executive Order 13382, an authority aimed at freezing the assets of proliferators of weapons of mass destruction (WMD) and their supporters and isolating them financially. Designations under E.O. 13382 prohibit all transactions between the designees and any U.S. person and freeze any assets the designees may have under U.S. jurisdiction.

Additionally, the United Nation Security Council unanimously passed Resolution 1737 on December 23, 2006, requiring governments worldwide to take steps to combat Iran's illicit conduct, including freezing the assets of named entities and individuals associated with Iran's nuclear and missile programs, as well as the assets of entities owned or controlled by them. The resolution also requires states to prevent the provision to Iran of any financial assistance, or the transfer of any financial resources or services, related to the supply, sale, transfer, manufacture, or use of prohibited items associated with Iran's nuclear and missile programs.

Bank Sepah provides financial support and services to Iran's Aerospace Industries Organization (AIO), Shahid Hemmat Industries Group (SHIG), and the Shahid Bakeri Industries Group (SBIG), which were designated by President George W. Bush on June 29, 2005, in the Annex to E.O. 13382.

AIO, a subsidiary of the Iranian Ministry of Defense and Armed Forces Logistics, oversees all of Iran's missile industries and is the overall manager and coordinator of Iran's missile program.

Bank Sepah is AIO's bank of choice, and since at least 2000, Sepah has provided a variety of critical financial services to Iran's missile industry, arranging financing and processing dozens of multi-million dollar transactions for AIO and its subordinates, including SBIG and SHIG.

Through its role as a financial conduit, Bank Sepah has facilitated Iran's international purchases of sensitive material for its missile program. In 2005, Bank Sepah financed a Chinese firm's sale of missile related items to Iran. Also in that year, AIO directed Sepah to transfer well over half of a million dollars to a North Korean firm associated with Komid, a North Korean entity designated for providing Iran with missile technology.

SHIG is responsible for Iran's ballistic missile program, most notably the Shahab series of medium range ballistic missiles based on the North Korean-designed No Dong missile. The Shahab is believed to be capable of carrying unconventional warheads and has a range of at least 1500 kilometers. SHIG has received help from

SBIG, an affiliate of Iran's AIO, is also involved in Iran's missile program. Among the weapons SBIG produces is the Fateh-110 missile, with a range of 200 kilometers, and the Fajr rocket systems, a series of North Korean-designed rockets produced under license by SBIG with ranges of between 40 and 100 kilometers. Both systems are capable of being armed with at least chemical warheads.

Bank Sepah is the fifth largest Iranian state-owned bank with more than 290 domestic branches and a presence in Rome, Paris, Frankfurt, and a wholly-owned subsidiary in London. According to the Banker's Almanac, Bank Sepah's total branch assets were USD 13.9 billion as of early 2005.

### Background on E.O. 13382

Today's action builds on President Bush's issuance of E.O. 13382 on June 29, 2005. Recognizing the need for additional tools to combat the proliferation of WMD, the President signed the E.O. authorizing the imposition of strong financial sanctions against not only WMD proliferators, but also entities and individuals providing support or services to them.

In the Annex to E.O. 13382, the President identified eight entities operating in North Korea, Iran, and Syria for their support of WMD proliferation. E.O. 13382 authorizes the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and other relevant agencies, to designate additional entities and individuals providing support or services to the entities identified in the Annex to the Order.

In addition to the entities identified in the annex of E.O. 13382, the Treasury Department has designated 23 entities and two individuals as proliferators of WMD, specifically:

- Eight North Korean entities on October 21, 2005;
- Two Iranian entities on January 4, 2006;
- One Swiss individual and one Swiss entity tied to North Korean proliferation activity on March 30, 2006; and
- Four Chinese entities and one U.S. entity tied to Iranian proliferation activity on June 8, 2006.
- Two Iranian entities on July 18, 2006;
- Three Syrian entities on January 4, 2007; and
- One Iranian entity, one UK entity, and one individual tied to Iranian proliferation activity on January 9, 2007.