UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

JEREMY LEVIN and DR. LUCILLE LEVIN,    :

                         :

             Plaintiffs,      :     Case No. 09-Civ.-5900 (RPP)

                         :

v.                         :

                         :

BANK OF NEW YORK, et al.,       :

                         :

            Defendants.    :

-------------------------------------------------------X

THE BANK OF NEW YORK MELLON, et   :
al.,

                         :

        Third-Party Plaintiffs,  :

                         :

v.                         :

                         :

STEVEN M. GREENBAUM, et al.,    :

                         :

        Third-Party Defendants.  :

---------------------------------------------------------x

## GREENBAUM AND ACOSTA JUDGMENT CREDITORS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS FOR TURNOVER ORDER PHASE ONE ASSETS AND IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS FOR TURNOVER ORDER PHASE ONE ASSETS

STROOCK & STROOCK & LAVAN LLP

Curtis C. Mechling
James L. Bernard
Jeremy S. Rosof
Benjamin Weathers-Lowin
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400

*Attorneys for Greenbaum and Acosta Judgment Creditors*

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................5

BACKGROUND ...............................................................................................................6

The Levin Plaintiffs .........................................................................................................6

The Greenbaum and Acosta Judgment Creditors ............................................................7

The New York Banks and Other Third-Party Defendants................................................8

ARGUMENT ...................................................................................................................10

POINT I    THE LEVINS ARE NOT ENTITLED TO PARTIAL SUMMARY
           JUDGMENT BECAUSE THE WRITS OF EXECUTION UPON WHICH
           THEY BASE THEIR CLAIMS ARE VOID AS A MATTER OF LAW ..................10

    A.    Sections 1610 and 1611 of the FSIA Provide the Exclusive Bases for
           Executing Against the Property of a Foreign State.........................................10

    B.    Section 1610(c) of the FSIA Mandates That All Attachments and  Executions
           Against Property of a Foreign Sovereign Be Court-Ordered...........................11

    C.    The Levins' Writs Do Not Comply With Section 1610(c) .............................13

POINT II   THE GEENBAUM AND ACOSTA JUDGMENT CREDITORS ARE
           ENTITLED TO PARTIAL SUMMARY JUDGMENT WITH RESPECT TO
           THE TURNOVER OF PHASE ONE ASSETS.........................................................15

    A.    The Greenbaum and Acosta Judgment Creditors' Priority Is Based  on Writs
           Authorized by This Court Pursuant to 28 U.S.C. § 1610(c)...........................15

    B.    No Other Party Holds an Interest in Phase One Assets Superior  to That of the
           Greenbaum and Acosta Judgment Creditors...................................................17

        1.    The Levin Plaintiffs .................................................................17

        2.    Other Third-Party Defendant Judgment Creditors...............................18

        3.    Third-Party Defendant Commercial Entities .......................................20

        4.    The New York Banks.........................................................................20

CONCLUSION..................................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

CASES

*City of New York v. Panzirer,*
  23 A.D.2d 158 (1st Dept. 1965)..................................................................19

*EM Ltd. v. Republic of Argentina,*
  2010 WL 3001777 (2d Cir. Aug. 3, 2010)..................................................10

*Ferrostaal Metals Corp. v. S.S. Lash Pacifico,*
  652 F.Supp. 420 (S.D.N.Y. 1987) ..........................................................11, 13

*First City, Texas-Houston, N.A. v. Rafidain Bank,*
  197 F.R.D. 250 (S.D.N.Y. 2000) .....................................................11, 13, 14

*Gadsby & Hannah v. Socialist Republic of Romania,*
  698 F.Supp. 483 (S.D.N.Y. 1988) ................................................11, 12, 13

*In re Pandeff,*
  201 B.R. 865 (Bankr.S.D.N.Y. 1996).........................................................19

*Industrial Com'r v. Five Corners Tavern, Inc.,*
  47 N.Y.2d 639 (1979) ..................................................................17, 18, 20

*Kennis v. Sherwood,*
  82 A.D.2d 847 (2d Dept. 1981) ...................................................................20

*Kitson & Kitson v. City of Yonkers,*
  10 A.D.3d 21 (2d Dept. 2004) .....................................................................17

*Ned Chartering and Trading, Inc. v. Republic of Pakistan,*
  130 F.Supp.2d 64 (D.D.C. 2001)................................................................13

*New York State Com'r of Taxation and Finance v. Bank of New York,*
  275 A.D.2d 287 (1st Dept. 2000).................................................................20

*Rubin v. The Islamic Republic of Iran,*
  456 F.Supp.2d 228 (D.Mass. 2006) ............................................................14

*Saudi Arabia v. Nelson,*
  507 U.S. 349 (1993)......................................................................................10

*Singleton v. Guangzhou Ocean Shipping Co.,*
  1994 WL 624540 (E.D.La Nov. 8, 1994) ....................................................12

*Smith v. Fed. Reserve Bank of N.Y.,*
  280 F.Supp.2d 314 (S.D.N.Y. 2003)............................................................11

*State Tax Com'r v. Shor,*
    43 N.Y.2d 151 (1977) ...................................................................................13, 16, 17

*U.S. v. Pearson,*
    258 F.Supp. 686 (S.D.N.Y. 1966) ............................................................19

*Weinstein v. Islamic Republic of Iran,*
    609 F.3d 43 (2d Cir. 2010)...................................................................10, 11

**STATUTES**

28 U.S.C. 1605A(g)(1)...........................................................................................18

28 U.S.C. § 1602, *et seq.*.......................................................................................7, 10

28 U.S.C. § 1605(a) ................................................................................................6

28 U.S.C. § 1605(a)(7)............................................................................................5, 7

28 U.S.C. § 1605A ..................................................................................................18

28 U.S.C. § 1605A(g)(1)..........................................................................................18, 19

28 U.S.C. § 1609 .....................................................................................................10

28 U.S.C. § 1610.....................................................................................................5, 11, 14

28 U.S.C. § 1610(c) ............................................................................................... passim

CPLR art. 52 ...........................................................................................................14

CPLR § 5222............................................................................................................13

CPLR § 5225 ........................................................................................................... passim

CPLR § 5227 ........................................................................................................... passim

CPLR § 5230 ............................................................................................................7

CPLR § 5230(b) .......................................................................................................14

CPLR § 5232 ............................................................................................................14, 19

CPLR § 5232(a) .......................................................................................................16, 17, 20

CPLR § 5234(b) .......................................................................................................17

**OTHER AUTHORITIES**

CRS Report RL31258, *Suits Against Terrorist States by Victims of Terrorism,* by
    Jennifer K. Elsea, ...............................................................................................18

Fed R. Civ. P. 69 ................................................................................................14

Fed. R. Civ. P. 69(a)(1) .......................................................................................14

H.R.Rep. No. 1487, 94th Cong., 2d Sess. 30, *reprinted in* 1976 U.S.Code Cong. &
   Admin.News 6604, 6629 ...............................................................................12

Third-party defendants and judgment creditors Steven M. Greenbaum, on behalf of himself individually and as Administrator of the Estate of Judith (Shoshana) Lillian Greenbaum, deceased, Alan D. Hayman, and Shirlee Hayman (the "Greenbaum Judgment Creditors") and Carlos Acosta, Maria Acosta, Irving Franklin, Estate of Irma Franklin, Sonya Kahane, Cipporah Kaplan, Tova Ettinger, Baruch Kahane, Ethel Griffin as Administrator of Binyamin Kahane's Estate, and Rabbi Norman Kahane (the "Acosta Judgment Creditors") (collectively, the "Greenbaum and Acosta Judgment Creditors"), submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Claims for Turnover Order Phase One Assets and in Support of their own Motion for Partial Summary Judgment With Respect to Phase One Assets.

## PRELIMINARY STATEMENT

Plaintiffs Jeremy Levin and Lucille Levin (the "Levins") have moved for partial summary judgment and a turnover order with respect to the Phase One Assets as to garnishees Bank of New York Mellon, N.A. ("BNY"), Societe Generale ("SG"), Citibank, N.A. ("Citibank") and JP Morgan Chase Bank, N.A. ("JPMorgan") (collectively, the "New York Banks" or "Garnishees"); summary judgment as to the interpleader complaint of SG; and partial summary judgment as to third-party defendant Iranian judgment creditors and other third-party defendant banks and/or agencies or instrumentalities of the Islamic Republic of Iran ("Iran").

With one critical and dispositive exception, the Greenbaum and Acosta Judgment Creditors agree with the Levins' general presentation of the applicable law and facts. The Greenbaum and Acosta Judgment Creditors join in the Levins' argument that the Phase One Assets here at issue consist of blocked assets belonging or owing to Iran and which, pursuant to 28 U.S.C. § 1610, which incorporates § 201 of the Terrorist Risk Insurance Act ("TRIA"), are subject to execution in satisfaction of judgments entered against Iran under 28 U.S.C. §§

1605(a)(7) and 1605A.  However, the Greenbaum and Acosta Judgment Creditors take important exception to the Levins' argument as to *priority* of judgment enforcement in this action.

As a matter of law, the Greenbaum and Acosta Judgment Creditors have priority of judgment enforcement over the Levins because, unlike the Levins, the Greenbaum and Acosta Judgment Creditors have *court-ordered* writs of execution issued with proper leave of this Court as required by 28 U.S.C. § 1610(c).  The Levins' writs of execution, which were issued without that required court approval, are *void* and cannot afford any priority over the Greenbaum and Acosta Judgment Creditors, who levied upon writs that were properly court-ordered pursuant to Section 1610(c).  Accordingly, the Levins' motion for partial summary judgment should be denied.

Indeed, none of the other third-party defendant judgment creditors in this action have properly obtained court-ordered writs of execution pursuant to 28 U.S.C. § 1610(c) and/or perfected their levy upon such valid writs prior to the Greenbaum and Acosta Judgment Creditors having done so.  Moreover, none of the other parties to this action possess an interest in the Phase One Assets that is superior to the interests secured by the Greenbaum and Acosta Judgment Creditors' writs.  Accordingly, and based on undisputed facts before the Court, the Greenbaum and Acosta Judgment Creditors' have established their priority to the Phase One Assets and are entitled to partial summary judgment on their claims for turnover of such assets in satisfaction of their judgments pursuant to CPLR §§ 5225 and 5227.

## BACKGROUND

### The Levin Plaintiffs

The Levins are judgment creditors of Iran, who possess an unsatisfied judgment in the amount of $28,807,719 that was issued by the District Court for the District of Columbia pursuant to 28 U.S.C. § 1605(a).  *See* Greenbaum and Acosta Judgment Creditors' Response and

Counterstatement to the Levins' Local 56.1 Statement of Undisputed Facts ("Greenbaum and Acosta S.S."), ¶ 4; Declaration of Suzelle M. Smith, dated July 13, 2010 ("Smith Decl.), ¶ 2. Upon learning of the Phase One Assets, the Levins registered their judgment with the United States District Court for the Southern District of New York and obtained writs of execution from the Clerk of the Court pursuant to CPLR § 5230. *See* Greenbaum and Acosta S.S. at ¶¶ 6, 8; Exs. 15, 17-20 to Smith Decl.  The Levins delivered such writs to the U.S. Marshal for the Southern District of New York on June 19, 2009, for service and levy upon the New York Banks, and thereafter filed the turnover proceeding underlying the instant interpleader action in which they now move for partial summary judgment. *See* Greenbaum and Acosta S.S. at ¶¶ 8, 9; Exs. 17-20, 62 to Smith Decl.  There is no evidence that the Levins obtained a Court Order pursuant to Section 1610(c) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, prior to serving their writs. *See* Greenbaum and Acosta S.S. at ¶ 84.

### The Greenbaum and Acosta Judgment Creditors

Like the Levins, the Greenbaum and Acosta Judgment Creditors possess unsatisfied judgments against Iran, which were issued by the District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1605(a)(7) and 1605A, respectively, in the respective amounts of $19,879,023 and $350,172,000. *See* Greenbaum and Acosta S.S. at ¶¶ 67, 68, 76 and 77; Exs. 3, 4, 11 and 12 to the Declaration of James L. Bernard, dated September 13, 2010 ("Bernard Decl.").  They subsequently registered their judgments with the District Court for the Southern District of New York and, upon learning of the Phase One Assets, began taking enforcement measures. *See* Greenbaum and Acosta S.S. at ¶¶ 70, 79; Exs. 6, 14 to Bernard Decl.

Unlike the Levins, however, the Greenbaum and Acosta Judgment Creditors made applications[1] to this Court pursuant to 28 U.S.C. § 1610(c) for orders authorizing them to execute

---

[1]    The Acosta Judgment Creditors' application was made under seal.

against the property of Iran in this district held by Citibank and JPMorgan.  *See* Greenbaum and Acosta S.S. at ¶¶ 71, 80; Exs. 7, 15 to Bernard Decl.  By Orders dated December 14, 2009, this Court (Jones, J.) found the Greenbaum and Acosta Judgment Creditors had satisfied the requirements of 28 U.S.C. § 1610(c) and authorized them to proceed with their executions.  *Id.*  The Clerk of this Court thereafter issued writs which were delivered to the U.S. Marshal for the Southern District of New York on December 21, 2009, for service on Citibank JPMorgan.  *See* Greenbaum and Acosta S.S. at ¶¶ 72, 81; Exs. 8, 16 and 17 to Bernard Decl.  On April 5, 3010, the Greenbaum and Acosta Judgment Creditors obtained amended writs, which they delivered to the U.S. Marshal on April 6, 2010, for service on Citibank and JPMorgan.  *See* Greenbaum and Acosta S.S. at ¶¶ 73, 82; Exs. 9, 18 and 19 to Bernard Decl.  On April 15, 2010, the U.S. Marshal levied upon both banks, and the Greenbaum and Acosta Judgment Creditors perfected the levies by counterclaiming in this action for the turnover of Phase One Assets pursuant to CPLR §§ 5225 and 5227.  *See* Greenbaum and Acosta S.S. at ¶¶ 73, 74, 82 and 83; Exs. 9, 10, and 18-20 to Bernard Decl.

### **The New York Banks and Other Third-Party Defendants**

The other parties to this action fall into three general categories: (1) the defendant/third-party plaintiff New York Banks; (2) third-party defendant commercial entities that were interpled by reason of their participation in the underlying wire-transfers or connections to the blocked accounts that comprise the Phase One Assets; and (3) additional third-party defendant judgment creditors of Iran.

The New York Banks all maintain they are disinterested stakeholders with respect to the Phase One Assets and, in this capacity, have interpled the aforementioned third-party defendant commercial entities and judgment creditors to litigate their respective claims, if any, to those assets.  *See* Greenbaum and Acosta S.S. at ¶ 92; Exs. 23-28 to Smith Decl.  Commerzbank AG

("Commerzbank") is the only third-party defendant commercial entity to have appeared and made a claim to any of the Phase One Assets.[2] *See* Greenbaum and Acosta S.S. at ¶ 93; Ex. 50 to Smith Decl. That claim was withdrawn, however, and the interpleader complaint dismissed against Commerzbank, by Stipulation and Order of this Court dated July 28, 2010. *See* Greenbaum and Acosta S.S. at ¶ 93; Ex. 24 to Bernard Decl.

Of the eight other judgment creditor groups interpled as third-party defendants, only five of them -- the Brown, Bland, Silvia, Heiser and Rubin judgment creditors -- have asserted any interests in the Phase One Assets.[3] *See* Greenbaum and Acosta S.S. at ¶ 85 ; Exs. 37, 41, 43, 58 and 60 to Smith Decl. However, with the exception of the Rubin judgment creditors, none of the other groups have attached or executed against any of the Phase One Assets. *See* Greenbaum and Acosta S.S. at ¶ 86; Ex. 58 to Smith Decl. Rather, they assert interests deriving from having docketed notices of *lis pendens*, which, as will be demonstrated, do not suffice to establish priority with respect to the Phase One Assets. *See* Greenbaum and Acosta S.S. at ¶ 89; Exs. 37, 43 and 60 to Smith Decl. That leaves the Rubin judgment creditors, who base their claim of priority solely upon having delivered a writ of execution to the U.S. Marshal on October 10, 2008. *See* Ex. 41 to Smith Decl. Like the Levins, however, the Rubin judgment creditors failed to properly obtain an order of this Court pursuant to 28 U.S.C. § 1610(c) authorizing such execution. *See* Greenbaum and Acosta S.S. at ¶ 87; Ex 41 to Smith Decl. Nor did they perfect their purported levy within 90 days in order to prevent it from expiring. *See* Greenbaum and Acosta S.S. at ¶ 88; Ex. 41 to Smith Decl.

---

[2]  All of the other third-party defendant commercial entities either have not appeared, are in default, or have filed an answer contesting jurisdiction and/or have disclaimed any interest in the funds at issue. *See* Greenbaum and Acosta S.S. at ¶ 11, 12; Exs. 47-49 to Smith Decl.

[3]  The Peterson judgment creditors have withdrawn their claims to the Phase One Assets, while the Bonk and Valore judgment creditors have not made any claims and state that they intend to file a motion requesting a dismissal of the interpleader complaint filed against them . *See* Greenbaum and Acosta S.S. at ¶¶ 90, 91; Ex. 42 to Smith Decl.; Exs. 21-25 to Bernard Decl.

Accordingly, neither the Rubin judgment creditors or any of the other parties to this action possess a priority interest in the Phase One Assets, let alone a priority interest senior to that of the Greenbaum and Acosta Judgment Creditors.

## ARGUMENT

## POINT I

### THE LEVINS ARE NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE THE WRITS OF EXECUTION UPON WHICH THEY BASE THEIR CLAIMS ARE VOID AS A MATTER OF LAW

A.    **Sections 1610 and 1611 of the FSIA Provide the Exclusive Bases for Executing Against the Property of a Foreign State**

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, provides the exclusive basis for subject matter jurisdiction over all civil actions against foreign state defendants, and defines the parameters of a foreign state's immunity in courts of the United States. *See, e.g., Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993); *Weinstein v. Islamic Republic of Iran,* 609 F.3d 43, 47 (2d Cir. 2010). In addition to generally according foreign states (and the agencies and instrumentalities of foreign states) jurisdictional immunity from suit in the courts of the United States, the FSIA also provides that the "property in the United States of a foreign state shall be immune from attachment arrest and execution *except as provided in sections 1610 and 1611* of this chapter." *See* 28 U.S.C. § 1609 (emphasis added); *Weinstein,* 609 F.3d at 48 (2d Cir. 2010); *EM Ltd. v. Republic of Argentina*, 2010 WL 3001777 at *3 (2d Cir. Aug. 3, 2010). Any and all attachments or executions against property in the United States that belongs to a foreign state or the agencies and instrumentalities of a foreign state must therefore comply with sections 1610 and 1611 of the FSIA. *Id.* Section 1610, entitled "Exceptions to the Immunity From Attachment or Execution," governs the parties' rights to the property at issue here and is pivotal to this Court's resolution of the instant motion.

B.     **Section 1610(c) of the FSIA Mandates That All Attachments and
       Executions Against Property of a Foreign Sovereign Be *Court-Ordered***

Section 1610(c) of the FSIA provides:

> No attachment or execution referred to in subsections (a) and (b) of
> this section shall be permitted *until the court has ordered such
> attachment and execution* after having determined that a
> reasonable period of time has elapsed following the entry of
> judgment and giving of any notice required under section 1608(e)
> of this chapter.

28 U.S.C. § 1610(c) (emphasis added).  Subsection (a) of 1610 concerns property in the United

States of a foreign state, while subsection (b) concerns property in the United States of an agency

or instrumentality of a foreign state.  Because subsections (a) and (b) together comprise all of the

FSIA's exceptions to immunity from attachment or execution, courts have consistently

interpreted the mandate of section 1610(c) to apply to *any and all* attachments and executions

upon the property of a foreign state and/or the agencies and instrumentalities of a foreign state.[4]

*See First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 256 (S.D.N.Y. 2000) ("no

attachment or execution upon a foreign sovereign or instrumentality shall be permitted until the

court has ordered such attachment and execution...") (internal citations omitted); *Ferrostaal

Metals Corp. v. S.S. Lash Pacifico*, 652 F.Supp. 420, 423 (S.D.N.Y. 1987) (holding that even

where a foreign state has waived its immunity from post-judgment attachment, the FSIA

---

[4]   It is of no consequence that the Levins bring their claims under § 201 of the Terrorist Risk Insurance Act
("TRIA") rather than expressly under the exceptions to immunity enumerated in subsections (a) or (b) of 1610.
TRIA has been codified as a note to section 1610 and is interpreted by the courts as being included with these
subsections. *See, e.g., Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49(2d Cir. 2010) ("Although
...Section 201(a) of the TRIA has been codified as a note to Section 1610 rather than in the sections of the
FSIA more directly addressed to exceptions to jurisdictional immunity, the plain language of the statute cannot
be overcome by its placement in the statutory scheme."). Accordingly, the requisite safeguards of section
1610(c) are consistent with, and just as applicable to, executions under TRIA as they are to executions under
subsections (a) or (b). *See, e.g., First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 256
(S.D.N.Y. 2000) ("*no attachment or execution upon a foreign sovereign or instrumentality* shall be permitted
until the court has ordered such attachment and execution...") (internal citations omitted and emphasis added);
*Smith v. Fed. Reserve Bank of N.Y.*, 280 F.Supp.2d 314, 319 (S.D.N.Y. 2003) (TRIA merely provides that
blocked assets may be subject to execution, it does not provide that judgment creditors are entitled to their
turnover).

"requires that attachment can occur only by court order"); *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F.Supp. 483, 485 (S.D.N.Y. 1988) (same); *Singleton v. Guangzhou Ocean Shipping Co.*, 1994 WL 624540 at *1 (E.D.La Nov. 8, 1994) ("This section provides that no attachment or execution shall be permitted until the Court orders such attachment and execution.... Clearly then, Plaintiff cannot execute its judgment until it moves this Court for an Order authorizing such execution and such an Order issued.").

Section 1610(c)'s requirement that *all* attachments and executions against the property of a foreign state or the agencies and instrumentalities of a foreign state be court-ordered is designed to ensure that foreign states receive heightened protection from unnecessary or improper legal process. As explained by the House Report on the FSIA:

> In some jurisdictions in the United States, attachment and execution to satisfy a judgment may be had simply by applying to a clerk or a local sheriff. *This would not afford sufficient protection to a foreign state. This subsection contemplates that the courts will exercise their discretion in permitting execution. Prior to ordering attachment and execution, the court must determine that a reasonable period of time has elapsed following the entry of judgment,* or in cases of a default judgment, since notice of the judgment was given to the foreign state under section 1608(e). In determining whether the period has been reasonable, the courts should take into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months; representations by the foreign state of steps being taken to satisfy the judgment; or any steps being taken to satisfy the judgment; or evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment.

H.R.Rep. No. 1487, 94th Cong., 2d Sess. 30, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6629 (emphasis added). Courts have thus consistently interpreted section 1610(c) as requiring *all* executions against a foreign sovereign to be court-*ordered* rather than merely court-*issued* by a clerk of the court, and have not hesitated to vacate writs that are found to have been served without first obtaining the requisite 1610(c) court order. *See, e.g., Gadsby & Hannah,*

698 F.Supp. at 485-86 (holding that where no 1610(c) order had been obtained, service of writs of execution and restraining notices on various banks was "in clear contravention of the FSIA," and writs and restraints would be vacated); *Ferrostaal Metals Corp.*, 652 F.Supp. at 423 (holding that the ex parte restraining notices served pursuant to CPLR section 5222 did not comply with section 1610(c) of the FSIA and were thus invalid); *First City, Texas-Houston, N.A.*, 197 F.R.D. at 256 (vacating restraining notice where judgment creditor failed to seek a 1610(c) court order prior to serving the restraint); *Ned Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F.Supp.2d 64, 66 (D.D.C. 2001) (holding that section 1610(c) "clearly contemplates that a judge, and not just a clerk, will issue the writ" and vacating writs issued by court clerk in absence of court order pursuant to section 1610(c)).

C.     **The Levins' Writs Do Not Comply With Section 1610(c)**

In the case at bar, the Levins predicate their motion for partial summary judgment and their entitlement to priority as to the turnover of Phase One Assets on their having purportedly delivered valid writs of execution to the U.S. Marshal's Office for levy upon each of the respective New York Banks prior in time to any other third-party defendant judgment creditor. *See* Memorandum of Law In Support of Plaintiffs' Motion For Partial Summary Judgment On Claims For Turnover Order Phase One Assets ("Levin Memo of Law"), pp. 8, 32-36.  However, regardless of when the Levins may have delivered their writs to the Marshal, their writs were served without ever having properly obtained an order of the Court pursuant to section 1610(c) of the FSIA. *See* Greenbaum and Acosta S.S. at ¶ 84.  Accordingly, the Levins' writs are invalid and cannot entitle them to any priority as to the turnover of Phase One Assets. *See, e.g.,* 28 U.S.C. § 1610(c); *Ferrostaal Metals Corp.*, 652 F.Supp. at 423; *First City, Texas-Houston, N.A.*, 197 F.R.D. at 256; *Gadsby & Hannah*, 698 F.Supp. at 485-86; *State Tax Com'r v. Shor*, 43 N.Y.2d 151, 157 (1977) (holding that delivery of execution to marshal is required before a

-13-

creditor may obtain a priority in personal property, and therefore judgment creditor who failed to deliver execution must be subordinated).

It is of no avail to the Levins that their writs were purportedly obtained in compliance with New York State requirements pursuant to Article 52 of the CPLR. *See* Levin Memo of Law, p. 8 ("[b]y complying with the specific requirements of CPLR § 5232, the Levins have priority on the collection of the [Phase One Assets]"). The Levins' misplaced reliance on the procedural requirements of Article 52 derives from Rule 69 of the Federal Rules of Civil Procedure ("FRCP"), which directs judgment creditors seeking to enforce money judgments to resort to the forum state's procedure concerning writs of execution. FRCP Rule 69(a)(1); *see* Levin Memo of Law at 22.

FRCP Rule 69, however, contains a significant caveat – namely, that "*a federal statute governs to the extent it applies.*" *Id.* (emphasis added). There can be no question that section 1610 of the FSIA is both applicable and at odds with the CPLR requirements in the context of executing against the property of a foreign state. *See First City, Texas-Houston, N.A.*, 197 F.R.D. at 256 ("no attachment or execution upon a foreign sovereign or instrumentality shall be permitted until the court has ordered such attachment and execution...") (internal citations omitted); *cf.* CPLR § 5230(b) (providing that at any time before a judgment is satisfied, an execution may be issued by the clerk of the court or by an attorney as an officer of the court); *see also Rubin v. The Islamic Republic of Iran*, 456 F.Supp.2d 228 (D.Mass. 2006) (holding the FSIA to be "just such a [federal] statute" as referred to in Rule 69, and thus *requiring* a court to undertake an analysis of whether an exception to immunity applies before a judgment creditor may execute under state law procedures). Accordingly, the Levins were required to comply with the requirements of section 1610(c). They failed to do so. The Levins' writs are therefore invalid as a matter of law and their motion for partial summary judgment must be denied.

## POINT II

## THE GEENBAUM AND ACOSTA JUDGMENT CREDITORS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE TURNOVER OF PHASE ONE ASSETS

The Greenbaum and Acosta Judgment Creditors are entitled to summary judgment as to the turnover of Phase One Assets held by Citibank and JPMorgan based on the facts that: (1) the Greenbaum and Acosta Judgment Creditors were the first in time vis-à-vis the Levins and all other third-party defendant judgment creditors to deliver valid, court-ordered writs of execution to the U.S. Marshal for the Southern District of New York, which were then levied upon at Citibank and JPMorgan and perfected by the timely filing of claims for turnover pursuant to CPLR §§ 5225 and 5227; and (2) the interests in Phase One Assets at Citibank and JPMorgan secured by the Greenbaum and Acosta Judgment Creditors' writs gives them priority over all other parties to this action with respect to such interests.[5]

### A.   The Greenbaum and Acosta Judgment Creditors' Priority Is Based on Writs Authorized by This Court Pursuant to 28 U.S.C. § 1610(c)

On December 11, 2009, the Greenbaum and Acosta Judgment Creditors made applications to this Court pursuant to 28 U.S.C. § 1610(c) for orders authorizing them to satisfy their judgments against Iran by executing against the property of Iran in this district being held by Citibank (and, in the case of the Acosta Judgment Creditors, against such property held by JPMorgan). *See* Greenbaum and Acosta S.S. at ¶¶ 71, 80. By Orders dated December 14, 2009, this Court (Jones, J.) found the Greenbaum and Acosta Judgment Creditors had satisfied the requirements of 28 U.S.C. § 1610(c) and authorized them to execute against the property of Iran in this district being held by Citibank and, in the case of the Acosta Judgment Creditors, against

---

[5]   Although the Greenbaum and Acosta Judgment Creditors' instant motion for partial summary judgment concerns their priority interest in the Phase One Assets held at Citibank and JPMorgan, the Greenbaum and Acosta Judgment Creditors do not disclaim or waive any interests they may possess in the remainder of the Phase One Assets held by SG and BNY.

JPMorgan.  *See* Greenbaum and Acosta S.S. at ¶¶ 71, 80; Exs. 7, 15 to Bernard Decl.  The

Orders directed the Clerk of the Court to issue writs of execution consistent with the Court's

Orders.  *Id.*  The Greenbaum and Acosta Judgment Creditors thereafter obtained writs of

execution from the Clerk of this Court, and delivered them to the U.S. Marshal for the Southern

District of New York for service on Citibank and, in the case of the Acosta Judgment Creditors'

writ, on JPMorgan on December 21, 2009.  *See* Greenbaum and Acosta S.S. at ¶¶ 72, 81; Exs. 8,

16 and 17 to Bernard Decl.

On April 5, 3010, the Greenbaum Judgment Creditors obtained an amended writ of

execution from the Clerk of this Court, which they delivered to the U.S. Marshal on April 6,

2010, for service on Citibank.  *See* Greenbaum and Acosta S.S. at ¶ 73; Ex. 9 to Bernard Decl.

The U.S. Marshal for the Southern District of New York levied upon Citibank on April 15, 2010.

*Id.*  On April 5, 2010, the Acosta Judgment Creditors obtained two amended writs of execution

from the Clerk of this Court, which were delivered to the U.S. Marshal on April 6, 2010, for

service on Citibank and JPMorgan.  *See* Greenbaum and Acosta S.S. at ¶ 82; Exs. 18, 19 to

Bernard Decl.  The U.S. Marshal for the Southern District of New York levied upon both

Citibank and JPMorgan on April 15, 2010.  *Id.*

By virtue of their having delivered valid writs of execution to the U.S. Marshal for the

Southern District of New York on December 21, 2009 and April 5, 2010, which were then levied

upon at Citibank and JPMorgan on April 15, 2010, and perfected by the timely filing of claims

for turnover pursuant to CPLR §§ 5225 and 5227, the Greenbaum and Acosta Judgment

Creditors have secured a priority interest as of December 21, 2009 in the Phase One Assets being

held at those two banks.  *See State Tax Com'r v. Shor*, 43 N.Y.2d 151, 157 (1977) (holding that

delivery of execution to marshal is required before a creditor may obtain a priority in personal

property); CPLR § 5232(a) (levy upon interest of judgment debtor in personal property not

-16-

capable of delivery occurs by marshal's service of execution upon garnishee and is perfected by

the filing of claims pursuant to CPLR §§ 5225 or 5227 within 90 days); *Industrial Com'r v. Five*

*Corners Tavern, Inc.*, 47 N.Y.2d 639, 645 (1979) (CPLR § 5232(a) held applicable to intangible

personal property such as bank accounts); *see also* CPLR § 5234(b) (where two or more

executions are issued against the same judgment debtor and delivered to the same enforcement

officer, they shall be satisfied in the order in which they were delivered to such officer); *Kitson*

*& Kitson v. City of Yonkers*, 10 A.D.3d 21, 25-26 (2d Dept. 2004) ("[e]xecutions are delivered to

the sheriff and are given priority in the order in which they are delivered to the enforcement

officer...").

B.     **No Other Party Holds an Interest in Phase One Assets Superior
       to That of the Greenbaum and Acosta Judgment Creditors**

As compared to the Greenbaum and Acosta Judgment Creditors, none of the other parties

to this action possesses a superior interest in any of the Phase One Assets held by Citibank or

JPMorgan.  The potential claims of each of the other parties are addressed in turn below.

*1.     The Levin Plaintiffs*

The Levins' claimed entitlement to turnover of the Phase One Assets rests entirely on the

writs of execution they delivered to the U.S. Marshal's Office on June 19, 2009 for levy upon the

four New York Banks.  *See* Levin Memo of Law at 34.  However, as demonstrated above, the

writs relied upon by the Levins are invalid as a matter of law because they were not court-

ordered as required by 28 U.S.C. § 1610(c).  Accordingly, whatever lien the Levins may have on

the Phase One Assets at Citibank and JPMorgan is junior to that of the Greenbaum and Acosta

Judgment Creditors.  *See, e.g., State Tax Com'r v. Shor*, 43 N.Y.2d at 157 (holding that judgment

creditor's interest in debtor's personal property must be subordinated where creditor failed to

deliver valid execution).  The Greenbaum and Acosta Judgment Creditors have priority with

respect to those assets by virtue of having delivered valid writs of execution to the U.S.

Marshal's Office on December 21, 2009 and April 5, 2010, which were subsequently levied

upon and perfected by the filing of claims for turnover pursuant to CPLR §§ 5225 and 5227.

### 2.    *Other Third-Party Defendant Judgment Creditors*

Of the five other judgment creditor groups asserting interests in the Phase One Assets,

four of them -- the Brown, Bland, Silvia and Heiser judgment creditors -- have neither attached

nor executed against any of the Phase One Assets.[6] *See* Greenbaum and Acosta S.S. at ¶ 89; Exs.

37, 43 and 60 to Smith Decl.  These third-party defendants' claims to priority, to the extent they

have made or will be making such claims, are based entirely on their having recorded docketed

notices of liens of *lis pendens* pursuant to 28 U.S.C. § 1605A(g)(1).  *Id.*  These claims to priority

fail, however, because a section 1605A(g)(1) *lis pendens* cannot afford priority with respect to

the intangible property that comprises the Phase One Assets.

Section 1605A(g)(1) allows plaintiffs with claims under 28 U.S.C. § 1605A to file a

notice of pending action that "shall have the effect of establishing a lien of lis pendens upon any

*real property or tangible personal property*" that meet the requirements that follow in

subsections (A), (B) and (C).  28 U.S.C. 1605A(g)(1) (emphasis added).  However, because none

of the Phase One Assets herein at issue are either real property or tangible personal property, the

docketing of such notices affords these parties no lien on the Phase One Assets, and hence no

priority over the lien established by virtue of the Greenbaum and Acosta Judgment Creditors'

writs.  *See Five Corners Tavern, Inc.*, 47 N.Y.2d at 645 (bank accounts are intangible personal

property); *cf.* CRS Report RL31258, Suits Against Terrorist States by Victims of Terrorism, by

Jennifer K. Elsea, at fn. 188 (noting that "tangible personal property" is not defined within the

---

[6]    It is not altogether clear whether the Brown, Bland or Silvia third-party defendants have made, or will be
making, claims to the Phase One Assets, but – in any event - they have been included in the Greenbaum and
Acosta Judgment Creditors priority analysis, above.  *See* Ex. 43 to Smith Decl.  Additionally worth noting is the
fact that the Brown and Bland third-party defendants do not yet even possess judgments against Iran, as their
actions against Iran are still pending.  *See* Ex. 42 to Smith Decl.

FSIA, but generally understood to mean "all property which is touchable and has real existence (physical)," citing Black's Law Dictionary 809, 1217 (6th ed. 1990)).

Moreover, even were section 1605A(g)(1) *lis pendens* to apply to the Phase One Assets (which the Greenbaum and Acosta Judgment Creditors do not concede), New York law is clear that the order of priority among judgments is to be determined *strictly* in accord with the chronological service of execution levies and/or the filing of orders for turnover or receiverships. *See City of New York v. Panzirer*, 23 A.D.2d 158, 159 (1st Dept. 1965) ("in order for a judgment to attain status in the ranking of priorities there must either be a levy, an order directing delivery of property, or the appointment of a receiver. Any other measures taken by the judgment creditor, no matter how diligent, on an absolute or comparative basis, do not suffice to qualify for priority"); *In re Pandeff*, 201 B.R. 865 (Bankr.S.D.N.Y. 1996) ("[i]n order to create a judgment lien on personalty, the judgment creditor must either 'execute' on the judgment or obtain an enforcement order"); *U.S. v. Pearson*, 258 F.Supp. 686, 691 (S.D.N.Y. 1966) (no lien on personal property in New York is obtained until execution has been delivered to the sheriff).

The only other third-party defendant judgment creditors who claim an interest in the Phase One Assets, the Rubin judgment creditors, base their claim of priority solely upon their having delivered a writ of execution to the U.S. Marshal for the Southern District of New York on October 10, 2008. *See* Ex. 41 to Smith Decl. Like the Levins, however, the Rubin judgment creditors failed to properly obtain an order of this Court pursuant to 28 U.S.C. § 1610(c) authorizing such execution. *See* Greenbaum and Acosta S.S. at ¶ 87. Their writs are thus void, and their claims must fail.

The Rubin judgment creditors' claims to priority fail for a second and independent reason because they also failed to perfect their levy within 90 days, as required by CPLR § 5232, and thus any lien they might have thereby enjoyed was lost. *See* Greenbaum and Acosta S.S. at ¶ 88;

-19-

Ex. 41 to Smith Decl.; CPLR § 5232(a) (levy upon interest of judgment debtor in personal property not capable of delivery "shall be void" after 90 days unless within that period an extension is obtained from the court or claims for turnover made pursuant to CPLR §§ 5225 or 5227); *Five Corners Tavern, Inc.*, 47 N.Y.2d at 645; *New York State Com'r of Taxation and Finance v. Bank of New York*, 275 A.D.2d 287 (1st Dept. 2000) ("[f]ailing adherence to statutory criteria for the timely perfection of its interest in the judgment debtor's account and in the absence of a court order of extension, petitioner's levy expired by operation of law after 90 days."); *Kennis v. Sherwood*, 82 A.D.2d 847, 848 (2d Dept. 1981) (same). Accordingly, the Rubin judgment creditors' writ is ineffective as a matter of law, disentitling them to any priority vis-à-vis the Greenbaum and Acosta Judgment Creditors.

### 3.   *Third-Party Defendant Commercial Entities*

Of the numerous third-party defendant commercial entities that were interpled and believed to potentially possess interests in the Phase One Assets by reason of their participation in the underlying wire-transfers or connections to the blocked accounts, Commerzbank was the only third-party defendant commercial entity to appear and assert a claim to the assets at issue. *See* Greenbaum and Acosta S.S. at ¶ 93; Ex. 50 to Smith Decl. However, Commerzbank's claim, which only concerned one wire transfer at SG, was withdrawn and the interpleader action dismissed against it by Stipulation and Order of this Court, dated July 28, 2010. *See* Greenbaum and Acosta S.S. at ¶ 93; Ex. 24 to Bernard Decl.

### 4.   *The New York Banks*

Neither Citibank nor JPMorgan have made any claims of entitlement to the Phase One Assets in their respective control. *See* Greenbaum and Acosta S.S. at ¶ 92; Ex. 23-28 to Smith Decl. Rather, both banks maintain that they are disinterested stakeholders. *Id.* Nor, for that matter, have SG or BNY claimed any interest in the Phase One Assets held by Citibank and/or

JPMorgan. *Id.* Accordingly, and by virtue of their writs of execution, the Greenbaum and Acosta Judgment Creditors maintain priority as to these Phase One Assets vis-à-vis the four New York Banks.

## CONCLUSION

It is clear that the Levin Plaintiffs were statutorily required to obtain judicial approval before executing against the property of Iran located in this district. Having failed to do so, the writs on which the Levin Plaintiffs rely are invalid, depriving them of any basis for asserting a priority interest in the Phase One Assets herein at issue. In contrast to the Levin Plaintiffs and all other third-party defendant judgment creditors, the Greenbaum and Acosta Judgment Creditors have demonstrated the validity of their writs and the priority thereby accorded them vis-à-vis all potential claimants to the Phase One Assets. For all of these reasons, this Court should: (1) deny the Levin Plaintiffs' motion for partial summary judgment; and (2) grant the Greenbaum and Acosta Judgment Creditors' motion for partial summary judgment with respect to turnover of the Phase One Assets held at Citibank and JPMorgan in an amount sufficient to satisfy their respective judgments.

Dated:  New York, New York
      September 13, 2010

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By: _____/s/_____

      Curtis C. Mechling
      James L. Bernard
      Jeremy S. Rosof
      Benjamin Weathers-Lowin

180 Maiden Lane
New York, New York 10038
(212) 806-5400

*Attorneys for the Greenbaum and
Acosta Third-Party Defendants*

-21-