*REDACTED PURSUANT TO*
*COURT ORDER DATED JANUARY 21, 2010*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

JEREMY LEVIN AND DR. LUCILLE LEVIN,  :

      Plaintiffs,                    :

                                      : Case No. 09-Civ-5900 (RPP)

v.                                    :

BANK OF NEW YORK, *et al.*,        :

      Defendants.                  :

-------------------------------------------------------------x

THE BANK OF NEW YORK MELLON, *et al.*  :

                                     :

      Third-Party Plaintiffs,    :

                                     :

v.                                    :

ESTATE OF MICHAEL HEISER, *et al.*,  :

      Third-Party Defendants.    :

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## THE ESTATE OF MICHAEL HEISER, ET AL.'S,
## (I) OPPOSITION TO THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
## JUDGMENT ON CLAIMS FOR TURNOVER ORDER PHASE ONE ASSETS
## PURSUANT TO FED. R. CIV. P. 13, 56, AND 69, CPLR SECTIONS 5225(b),
## 5232, AND 5234(b), AND ORDERS DATED JANUARY 11 AND JULY 2, 2010
## AND (II) CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

DLA PIPER LLP (US)

Cary B. Samowitz
Barbara L. Seniawski
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: 212-335-4500
Facsimile: 212-884-4501
cary.samowitz@dlapiper.com
barbara.seniawski@dlapiper.com

and

Richard M. Kremen (Md. Fed. Bar No. 00532)
Dale K. Cathell (Md. Fed. Bar No. 26924)
David B. Misler (Md. Fed. Bar No. 28828)
6225 Smith Ave.
Baltimore, MD 21209
Telephone: 410-580-3000
Facsimile: 410-580-3001
richard.kremen@dlapiper.com
dale.cathell@dlapiper.com
david.misler@dlapiper.com
*Attorneys for Third-Party Defendants Estate of
Michael Heiser, et al.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

FACTS ................................................................................................................................. 2

    I.     The June 25, 1996 Khobar Towers' Bombing ....................................................... 2

    II.    The Lawsuit Against Iran ....................................................................................... 3

          A. *Heiser v. Iran* .................................................................................................. 3

          B. *Campbell v. Iran* ............................................................................................ 4

    III.   The Judgment Against Iran .................................................................................... 4

    IV.  The Writ Issued to The Bank of New York Mellon from the U.S. District
          Court for the District of Maryland ........................................................................ 5

ARGUMENT ....................................................................................................................... 6

    I.     THE LEVINS ARE NOT ENTITLED TO JUDGMENT AS A MATTER
          OF LAW ................................................................................................................ 6

          A.    Legal Standard for Motion for Summary Judgment ................................. 6

          B.    The Levins' Failure to Comply with the FSIA Voids Any Asserted
               Lien Interest and Therefore Precludes Judgment as a Matter of
               Law ........................................................................................................... 7

          C.    The Levins Are Not Entitled to Execute Upon Certain Property
               Identified in Their Motion for Summary Judgment ................................... 9

    II.    THE HEISERS ARE ENTITLED TO AN ORDER DECLARING THAT
          THEY HAVE A FIRST PRIORITY LIEN INTEREST IN THE BONY
          BLOCKED WIRE TRANSFERS .......................................................................... 11

          A.    The Parties Agree the Heisers Have Complied with All
               Prerequisites to Execution Under the FSIA ............................................. 11

          B.    The Amendments to the FSIA Authorize the Heisers to Execute
               Upon the BONY Blocked Wire Transfers, Including the Assets of
               ▬▬▬▬▬▬▬▬▬▬ ' ................................................................. 12

CONCLUSION .................................................................................................................... 17

## TABLE OF AUTHORITIES

Page

CASES

*Adickes v. S.H. Kress & Co.*
398 U.S. 144 (1970)................................................................................................6

*AF-Cap, Inc. v. The Republic of Congo*
326 F. Supp. 2d 128 (D.D.C. 2004)........................................................................8

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)................................................................................................6

*Campbell v. Iran* ........................................................................................................2, 4

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)................................................................................................6

*Dole Food Co. v. Patrickson*
538 U.S. 468 (2003)................................................................................9, 10, 11, 13

*First City, Texas-Houston, N.A. v. Rafidain Bank*
197 F.R.D. 250 (S.D.N.Y. 2000) ...........................................................................8

*Gadsby & Hannah v. Socialist Republic of Romania*
698 F. Supp. 483 (S.D.N.Y 1988) .........................................................................8

*Gibbs-Alfano v. Burton*
281 F.3d 12 (2d Cir. 2002)......................................................................................7

*Harbor Bank of Maryland v. Hanlon Park Condominium Assoc. Inc.*
153 Md. Ap. 54, 58 (2003) ...................................................................................15

*Heiser v. Iran* .............................................................................................................2, 4

*In re Smith*
382 B.R. 279 (Bankr. D. Md. 2006) ...............................................................15, 16

*Levin v. Islamic Republic of Iran*
529 F. Supp. 2d 1 (D.D.C. 2007)..........................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986)................................................................................................7

*Ned Charter and Trading, Inc. v. Republic of Pakistan*
130 F. Supp. 2d 64 (D.D.C. 2001)..........................................................................8

*Northwestern Nat'l Ins. Co. v. William G. Wetherall, Inc.*
267 Md. 378 (1972) ..............................................................................................15

## TABLE OF AUTHORITIES

Page

*Ocean Line Holdings, Ltd. v. China Nat'l Chartering Corp.*
578 F. Supp. 2d 621 (S.D.N.Y. 2008)......................................................................................11

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Republic of Romania*
123 F. Supp. 2d 174 (S.D.N.Y. 2000)........................................................................................8

*Trustees of Ironworkers Union No. 16 Pension Plan v. Turner*
2010 WL 917359 (D. Md. Mar. 10, 2010).................................................................................15

*Weininger v. Castro*
462 F. Supp. 2d 457 (S.D.N.Y. 2006)..................................................................................16, 17

*Weinstein v. Islamic Republic of Iran*
624 F. Supp. 2d 272 (E.D.N.Y. 2009) ..................................................................................16, 17

### STATUTES

28 U.S.C. 1610(g) .................................................................................................... passim

28 U.S.C. §§ 1602.......................................................................................................................1

28 U.S.C. § 1603(b) .............................................................................................................9, 10

28 U.S.C. § 1605(a)(7)...................................................................................................... passim

28 U.S.C. § 1605(g)(1) .............................................................................................................14

28 U.S.C. § 1605A...................................................................................................... passim

28 U.S.C. § 1608.......................................................................................................................11

28 U.S.C. § 1608(e) .........................................................................................................4, 7, 11

28 U.S.C. § 1610.........................................................................................................................9

28 U.S.C. § 1610(b)(2).............................................................................................................14

28 U.S.C. § 1610(c) .......................................................................................................... passim

28 U.S.C. § 1610(f)(1)(A).........................................................................................................14

28 U.S.C. § 1610(f)(2)(A).........................................................................................................14

28 U.S.C. § 1610(g)(1)(A)-(E) .................................................................................................13

28 U.S.C. § 1963.......................................................................................................................14

# TABLE OF AUTHORITIES

Page

Act § 1083(c) ........................................................................................................................5

**OTHER AUTHORITIES**

CPLR Section 523(b)..............................................................................................................1

CPLR Section 5225(b)............................................................................................................1

CPLR Section 5232.................................................................................................................1

Fed. R. Civ. P. 13...................................................................................................................1

Fed. R. Civ. P. 56...................................................................................................................1

Fed. R. Civ. P. 56(c)..............................................................................................................6

Fed. R. Civ. P. 56(e)(2)..........................................................................................................6

Fed. R. Civ. P. 69.......................................................................................................1, 14, 15

H.R. 4986, 110th Cong., S54 (Jan. 22, 2008).........................................................................13

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 30.........................................................................8

Md. Code Cts. & Jud. Proc. § 11-403....................................................................................15

Maryland Rule 2-645..............................................................................................................15

Md. Rule 2-645(a)..................................................................................................................15

The Heisers[1] oppose the Levins' Motion for Partial Summary Judgment and cross-move for partial summary judgment that the Heisers hold a first priority lien interest in three blocked wire transfers held at The Bank of New York Mellon, which wire transfers are specifically identified by the Levins in Exhibit 12 to their Motion for Partial Summary Judgment on Claims for Turnover Order Phase One Assets Pursuant to Fed. R. Civ. P. 13, 56, and 69, CPLR Sections 5225(b), 5232 and 523(b), Order, Dated January 11, 2010, and Order, Dated July 2, 2010 (the "Motion").

In support hereof, the Heisers submit this memorandum of law, the accompanying Rule 56.1 Separate Statement of Undisputed Facts ("S.S."), and the Declaration of David B. Misler and exhibits thereto ("Misler Decl."). The Heisers also refer to the Affidavit of Dr. Patrick Clawson (the "Clawson Aff.") and the Declaration of Suzelle M. Smith, including exhibits, (the "Smith Decl.") filed with the Motion.

## INTRODUCTION

Put simply, the Levins are not entitled to summary judgment as a matter of law for two reasons. First, the Levins failed to obtain an order pursuant to 28 U.S.C. § 1610(c) that authorizes them to pursue attachment and execution against the assets of the Islamic Republic of Iran, MOIS, and IRGC, and any agencies or instrumentalities thereof (collectively referred to herein as "Iran"), and, therefore, the writs of execution that the Levins served on, among others, the Banks (defined below), including The Bank of New York Mellon are void; and, second, the Levins cannot seek to execute a judgment under 28 U.S.C. § 1605(a)(7) upon assets of ▬▬ ▬▬▬▬▬▬▬▬▬ which is not "an agency or instrumentality of Iran" subject to

---

[1]     The parties comprising the Heisers are set forth in Ex. 29 & 37 of the Smith Decl.

attachment or execution under the former version of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1602, *et seq*.

The Heisers are the family members and the personal representatives of the estates of seventeen of the nineteen U.S. Air Force officers and airmen killed in the June 25, 1996 terrorist bombing of the Khobar Towers[2] in consolidated cases pending before the U.S. District Court for the District of Columbia captioned *Heiser v. Iran* (Case No. 00-CV-2329 RCL) and *Campbell v. Iran* (Case No. 01-CV-2104 RCL). The Heisers hold an unsatisfied judgment against Iran pursuant to 28 U.S.C. § 1605A, which permits attachment and execution under 28 U.S.C. 1610(g). Unlike the Levins, the Heisers have complied with all applicable provisions of the FSIA governing attachment and execution of the assets of a foreign state, including obtaining an order pursuant to 28 U.S.C. § 1610(c) from the U.S. District Court for the District of Columbia authorizing them to pursue attachment and execution of their judgment. Thus, in contrast, the Heisers are entitled to partial summary judgment that the Heisers hold a first priority lien interest in three blocked wire transfers held at The Bank of New York Mellon, including the intended transfer to ▬▬▬▬▬▬▬▬▬▬ as a matter of law.

## FACTS

### I.    The June 25, 1996 Khobar Towers' Bombing

At approximately 9:50 p.m., Saudi Arabian time, on June 25, 1996, security guards stationed atop of Building 131 of the Khobar Towers complex in Saudi Arabia witnessed a large gasoline tanker truck pull up alongside the perimeter wall of the complex. (S.S. ¶ 1.) The driver of the tanker truck jumped out and ran over to and got into a car that had pulled up near the tanker truck. (S.S. ¶ 1.) The car sped off. (S.S. ¶ 1.) The security guards became gravely

---

[2]     Prior to their murders, the seventeen decedents were engaged in United Nations–sanctioned, peace time operations while stationed in Saudi Arabia.

concerned and immediately began to evacuate the Khobar Towers complex. (S.S. ¶ 1.)  The tanker truck, however, exploded with terrible force within approximately fifteen minutes. (S.S. ¶ 1.)  The force of the explosion equaled that of 20,000 pounds of TNT according to the later investigation. (S.S. ¶ 1.)  The explosion sheared off the face of Building 131 and reduced most of the building to rubble. (S.S. ¶ 1.)  Nineteen U.S. Air Force personnel were killed and hundreds of others were injured in the explosion. (S.S. ¶ 1.)  The U.S. Department of Defense later stated that the explosion was the largest non-nuclear explosion ever as of its date. (S.S. ¶ 1.)

The American citizens who were killed as a result of the June 25, 1996 attack on the Khobar Towers include:  (1) Master Sergeant Michael Heiser; (2) Captain Leland Timothy Haun; (3) Airman First Class Justin R. Wood; (4) Senior Airman Earl F. Cartrette, Jr.; (5) Airman First Class Brian McVeigh; (6) Sergeant Millard D. Campbell; (7) Staff Sergeant Kevin J. Johnson; (8) Airman First Class Joseph E. Rimkus; (9) Airman First Class Brent E. Marthaler; (10) Technical Sergeant Thanh Van Nguyen; (11) Airman First Class Joshua E. Woody; (12) Airman First Class Peter J. Morgera; (13) Master Sergeant Kendall Kitson, Jr.; (14) Captain Christopher Adams; (15) Airman First Class Christopher Lester; (16) Senior Airman Jeremy A. Taylor; and (17) Technical Sergeant Patrick P. Fennig. (S.S. ¶ 2.)

## II.    The Lawsuit Against Iran

### A.    *Heiser v. Iran*

On September 29, 2000, the personal representatives of the Heiser, Haun, Wood, Cartrette, and McVeigh estates filed a complaint for wrongful death and intentional infliction of emotional distress under the Foreign Sovereign Immunity Act on behalf of themselves individually and the estates against the Islamic Republic of Iran, the Iranian Ministry of Information & Security ("MOIS"), and the Iranian Revolutionary Guard Corps ("IRGC"), among

others, in the U.S. District Court for the District of Columbia (the "D.C. District Court") (Case No. 00-CV-2329) ("*Heiser v. Iran*"). (S.S. ¶ 3.)

### B.     *Campbell v. Iran*

On October 9, 2001, the personal representatives of the Campbell, Johnson, Rimkus, Marthaler, Nguyen, Woody, and Morgera estates filed a complaint for wrongful death and intentional infliction of emotional distress under the FSIA on behalf of themselves individually and the estates against Iran, MOIS, and IRGC, among others, in the D.C. District Court (Case No. 01-CV-2104) ("*Campbell v. Iran*").  (S.S. ¶ 4.)

The D.C. District Court consolidated *Heiser v. Iran* and *Campbell v. Iran* on February 1, 2002, upon finding that they involve common questions of law and fact. (S.S. ¶ 5.)

### III.     The Judgment Against Iran

On December 22, 2006, the D.C. District Court entered a Default Judgment against Iran, MOIS, and IRGC, jointly and severally, and in favor of most of the plaintiffs in the consolidated actions, awarding economic and compensatory damages totaling $254,431,903.00 (the "December 2006 Judgment"). (S.S. ¶ 6; Misler Decl., Ex. 1.)  However, the D.C. District Court denied the Heisers' punitive damages claim. *Id.*  On February 7, 2008, D.C. District Court granted in favor of the Heisers an order, pursuant to 28 U.S.C. § 1610(c), (a) declaring that a reasonable period of time had elapsed following the entry of the December 2006 Judgment and the giving of notice thereof under 28 U.S.C. § 1608(e), and (b) ordering that the Heisers may pursue attachment in aid of execution and execution of the December 2006 Judgment. (S.S. ¶ 7; Misler Decl., Ex. 2.)

On January 28, 2008, section 1083 of the National Defense Appropriations Act for Fiscal Year 2008 (the "Act") was enacted.  Section 1083 added a new version of the so-called terrorism

exception, section 1605A. *See* Pub. Law 110-181; Misler Decl. ¶ 4 & Ex. 4. Relying on section 1605A, which states that it should be applied retroactively if certain conditions are satisfied, the Heisers filed a Motion for Supplemental Relief with the D.C. District Court seeking an order authorizing them to proceed under the Act (*i.e.*, the "new law") and sought an award of additional damages. *See* Act § 1083(c); Misler Decl. ¶ 4. On January 13, 2009, the Honorable Judge Lamberth of the D.C. District Court determined that Heisers' action satisfied the conditions for retroactive application of section 1605A and issued an order holding that the Heisers are entitled to proceed before the court under the terms of the Act. (S.S. ¶ 8; Misler Decl., Ex. 3.) As a result, the December 2006 Judgment became a judgment under 28 U.S.C. § 1605A. (S.S. ¶ 8; Misler Decl., Ex. 3.[3]) As of the date of this memorandum, the Judgment remains unsatisfied in the amount of $591,089,966.00, plus post-judgment interest at the legal rate, against judgment debtors the Islamic Republic of Iran, MOIS, and IRGC, and any agencies or instrumentalities thereof (collectively referred to herein as "Iran"). (S.S. ¶ 9.)

**IV.    The Writ Issued to The Bank of New York Mellon from the U.S. District Court for the District of Maryland**

On August 27, 2008, the Heisers registered the Judgment with the U.S. District Court for the District of Maryland, Case No. 08-mc-212 (the "Maryland District Court"). (S.S. ¶ 10; Misler Decl., Ex. 5.) On April 27, 2010, the Heisers filed a Request for Writ to The Bank of New York Mellon ("BONY") in the Maryland District Court. (S.S. ¶ 11; Misler Decl. ¶ 7.) On

---

[3]    By separate order, the D.C. District Court vacated its previous denial of the Heisers' request for additional compensatory damages and punitive damages and entered a second Default Judgment against the Islamic Republic of Iran, MOIS, and IRGC, jointly and severally (the "Supplemental Judgment" together with the December 2006 Judgment, are referred to as the "Judgment"). (*See* Misler Decl., Ex. 4.) The D.C. District Court held that the Heisers satisfy the criteria for supplemental relief under section 1605A and, applying section 1605A retroactively, awarded the Heisers a total of $36,658,063 in additional economic and compensatory damages and $300 million in punitive damages. *See id.*

April 30, 2010, the Maryland District Court issued a Writ of Garnishment to The Bank of New York Mellon (the "Heiser BONY Writ"). (S.S. ¶ 11; Misler Decl., Ex. 6.) The Heiser BONY Writ was served on BONY on May 3, 2010, and an affidavit of service evidencing the same was filed with the Maryland District Court on May 28, 2010. (S.S. ¶ 12; Misler Decl., Ex. 7.) In addition, on May 27, 2010, a copy of the Heiser BONY Writ was mailed to, among others, Iran, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and an affidavit of service evidencing the same was filed with the Maryland District Court on May 28, 2010. (S.S. ¶ 13; Misler Decl., Ex. 8.)

## ARGUMENT

## I. THE LEVINS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A. Legal Standard for Motion for Summary Judgment

Summary judgment may be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden of showing that there are no material facts in dispute (*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)) and discharges this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing a genuine issue for trial" (Fed. R. Civ. P. 56(e)(2)) as to every element "essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at

322. "In determining whether a genuine issue of material fact does exist, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     The Levins' Failure to Comply with the FSIA Voids Any Asserted Lien Interest and Therefore Precludes Judgment as a Matter of Law**

The writs of execution served by the Levins on the Banks[4] are void and must be vacated because the Levins failed to obtain a court order pursuant to 28 U.S.C. § 1610(c) before pursuing attachment and execution of Iranian assets.[5]   Section 1610(c) of the FSIA provides that a judgment creditor of a foreign state may not pursue attachment and execution of a foreign state's property until "the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving any notice required under section 1608(e) of this chapter." 28 U.S.C. § 1610(c). The House Report of the FSIA explains:

> In some jurisdictions in the United States, attachment and execution to satisfy a judgment may be had simply by applying to a clerk or to a local sheriff. This would not afford sufficient protection to a foreign state. This subsection contemplates that the courts will exercise their discretion in permitting execution. *Prior to ordering attachment and execution, the court must determine that a reasonable period of time has elapsed following the entry of judgment, or in cases of a default judgment, since notice of the judgment was given to the foreign state under section 1608(e).* In determining whether the period has been reasonable, the courts should take into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months; representations by the foreign state of steps being taken to satisfy the judgment; or any steps being taken to satisfy the judgment; or evidence that the

---

[4]     The "Banks" refers to (1) The Bank of New York Mellon, (2) JPMorgan Chase Bank, N.A., (3) Citibank, N.A., and (4) Societe Generale.

[5]     The writs of execution delivered by the Levins to the U.S. Marshal on June 19, 2009 for service on the Banks (the "Levin Writs") are attached as Exhibits 17 through 20 to the Smith Decl. (Motion at p. 4.)

foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment.

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 30, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6629 (emphasis added). Here, the Levins have failed to demonstrate (or even allege) that they obtained a court order before executing upon their judgment.

The Levins' failure to obtain an order pursuant to section 1610(c) voids the Levin Writs. *See Ned Charter and Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64 (D.D.C. 2001) (vacating writ of attachment issued by judgment creditor for its failure to obtain an order pursuant to 28 U.S.C. § 1610(c)); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 256 (S.D.N.Y. 2000) (vacating subpoena and restraining notice served by judgment creditor of foreign state because the judgment creditor failed to obtain an order pursuant to 28 U.S.C. § 1610(c)); *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 485-86 (S.D.N.Y 1988) (vacating writ of execution and restraining notices served by judgment creditor of foreign state because judgment creditor failed to obtain an order pursuant to 28 U.S.C. § 1610(c) "in clear contravention of the FSIA."); *see also AF-Cap, Inc. v. The Republic of Congo*, 326 F. Supp. 2d 128, 130 (D.D.C. 2004) ("The FSIA requires that attachment of a foreign state's property be accomplished by a court order."); *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Republic of Romania*, 123 F. Supp. 2d 174, 177-78 (S.D.N.Y. 2000) (discussing the court's entry of an order pursuant to 28 U.S.C. § 1610(c) after a determination that a reasonable period of time had elapsed following entry of judgment and authorizing the plaintiff to enforce its judgment).

The Levin Writs are void and must be vacated because the Levins failed to obtain a court order pursuant to 28 U.S.C. § 1610(c) prior to executing on their judgment. Therefore, the Levins do not hold a lien interest in any assets of Iran held at the Banks (including the Phase One

Assets identified on Ex. 12 to the Smith Decl.) and are not entitled to summary judgment or to a turnover order.

### C.   The Levins Are Not Entitled to Execute Upon Certain Property Identified in Their Motion for Summary Judgment

Even if the Levins obtained an order pursuant to 28 U.S.C. § 1610(c) (which they have not), the Levins are not entitled to execute upon the assets of ▬▬▬▬▬▬▬▬▬▬▬ which is not an agency or instrumentality of Iran under 28 U.S.C. § 1603(b), because they hold a judgment under 28 U.S.C. § 1605(a)(7). The execution of a judgment obtained under Section 1605(a)(7) is limited in scope to the named judgment debtors (*i.e.*, Iran, MOIS, and IRGC) and any agencies or instrumentalities thereof.

The FSIA defines an "agency or instrumentality of a foreign state" as any entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States...nor created under the laws of any third country.

28 U.S.C. 1603(b). The scope of assets subject to execution under section 1605(a)(7) is limited under 28 U.S.C. § 1610 to assets of the foreign state and its agencies or instrumentalities (as defined under section 1603). In interpreting whether an entity is an agency or instrumentality of a foreign state under section 1603(b), the Supreme Court held that there must be a "direct ownership of a majority of shares by the foreign state." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). Where there are tiers of ownership between the foreign state and the subsidiary company, there can be no instrumentality status. *Id.* For example, in *Dole Food*, two judgment debtor Israeli companies claimed that they were an instrumentality of the Government of Israel

and thus immune from attachment and execution.  *Id.* at 473.[6]  The Supreme Court held that the Israeli companies did not qualify as agencies or instrumentalities of Israel because, among other things, Israel did not directly own shares in either company, and there were one or more tiers of corporate entities between the state and the subsidiary companies claiming immunity.  *Id.* at 473-74.  The Supreme Court unequivocally held the instrumentality status requires "*direct* ownership of a majority of shares by the foreign state."  *Id.* at 474 (emphasis added).  Because Iran does not directly own shares of Bank Sepah International, it does not qualify as an "agency or instrumentality" of Iran under 28 U.S.C. § 1603(b).[7]

███████████████ is public limited company organized under the law of the ██████████████and a wholly owned subsidiary of ████████ (Misler Decl. at 11, Ex. 9 (noting that ███████████████ is a wholly owned subsidiary of ████████ ); Misler Decl. at 9, Ex. 10 (same)).  The Levins' own expert, Dr. Clawson also confirms that ████████ ████████ is a wholly owned subsidiary of ████████ (Clawson Aff. ¶ 29.)  There is no dispute between the parties that Iran does not own any *direct* interest in ████████ ████████

Under *Dole Food* and its progeny, ████████████████ is not an agency or instrumentality of Iran under 28 U.S.C. § 1603(b), and therefore is not subject to execution by the Levins, who hold a judgment under 28 U.S.C. § 1605(a)(7).  *See Dole Food Co.*, 538 U.S. at 477 (noting that under the FSIA, "control" may not be substituted for an ownership interest

---

[6]  Traditionally, under the FSIA, agency or instrumentality status is claimed by a judgment debtor corporation in order to obtain immunity from execution.

[7]  As discussed below, the property of ████████████████ can be subject to execution or attachment under the newly-enacted 28 U.S.C. § 1610(g), which expands the scope of assets subject to attachment and execution when a judgment is obtained under 28 U.S.C. § 1605A.  The Levins, however, do not hold a judgment under section 1605A and, therefore, are not entitled to enforce their judgment under section 1610(g).

because "[c]ontrol and ownership…are distinct concepts."); *Ocean Line Holdings, Ltd. v. China Nat'l Chartering Corp.*, 578 F. Supp. 2d 621, 625 (S.D.N.Y. 2008)  (holding that , under the FSIA and *Dole Food*, "the central inquiry to determine instrumentality status is whether the [foreign state] *directly* owns a majority of shares or other ownership interest in the [third party]") (emphasis added).

## II.   THE HEISERS ARE ENTITLED TO AN ORDER DECLARING THAT THEY HAVE A FIRST PRIORITY LIEN INTEREST IN THE BONY BLOCKED WIRE TRANSFERS

### A.   The Parties Agree the Heisers Have Complied with All Prerequisites to Execution Under the FSIA

As described above, in accordance with 28 U.S.C. § 1608(e), Iran, MOIS, and IRGC were properly served with a copy of the Judgment pursuant to 28 U.S.C. § 1608. (S.S. ¶ 14; Misler Decl., Ex. 2 (declaring that a reasonable period of time has elapsed since giving notice of the judgment under section 1608(e)).)  The Heisers also obtained an order pursuant to 28 U.S.C. § 1610(c) from the D.C. District Court (i) declaring that a reasonable period of time has elapsed following the entry of the Judgment and the giving of notice of the Judgment under 28 U.S.C. § 1608(e) and (ii) ordering that the Heisers are authorized to pursue attachment in aid of execution and execution of the judgment. (S.S. ¶ 7; Misler Decl., Ex. 2.)  The Heisers, thus, have met all of the requirements under the FSIA for effectuating service of the Judgment against Iran, MOIS, and IRGC and proceeding with enforcement of the Judgment.  *See* 28 U.S.C. §§ 1608(e), 1610(c).

**B.**     **The Amendments to the FSIA Authorize the Heisers to Execute Upon the BONY Blocked Wire Transfers, Including the Assets of ▬▬▬▬▬▬▬▬**

### 1.     The 2008 Amendments to the FSIA

As stated, in contrast to the Levins, the Heisers hold a judgment pursuant to 28 U.S.C. § 1605A, one of several amendments to the Act.  Section 1610(g) of title 28, was also added to the Act to expand the reach of judgment creditors against foreign assets where the judgment is based on acts of terrorism.  Because the Heisers hold a judgment under 28 U.S.C. § 1605A, they are entitled to relief under 28 U.S.C. § 1610(g). *See* 28 U.S.C. § 1610(g) (providing that section 1610(g) applies in situations in which "a judgment is entered under section 1605A").  Section 1610(g) provides:

(g) Property in certain actions.--

(1) In general.--Subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, *including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution*, upon that judgment as provided in this section, regardless of--

(A) the level of economic control over the property by the government of the foreign state;

(B) whether the profits of the property go to that government;

(C) the degree to which officials of that government manage the property or otherwise control its daily affairs;

(D) whether that government is the sole beneficiary in interest of the property; or

(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g) (emphasis added).[8]  Section 1610(g) provides for expanded enforcement for judgments under section 1605A against not only the property of an agency or instrumentality of such a state, but also property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity. *See* 28 U.S.C. § 1610(g).

Congress's reference in section 1610(g) that it applies to "indirect" ownership interests indicates a clear intent that formal structural ownership rules may be disregarded. *Dole Food*, 538 U.S. at 476. Section 1610(g)(1) does not require that Iran have a direct ownership interest in ▬▬▬▬▬▬▬▬  *See* 28 U.S.C. § 1610(g)(1)(A)-(E). An indirect ownership interest by the terrorist state[9] suffices under section 1610(g). *Id.* Moreover, 1610(g) permits the execution of property of agencies or instrumentalities of Iran, including ▬▬▬▬▬  even property that is held is *a separate juridical entity*. *Id.* Section 1610(g) was enacted to permit victims of terrorism (like the Heisers) who obtain a judgment under section 1605A to execute upon assets of Iran even when Iran (and its agents or instrumentalities) try to protect those assets through tiered ownership. *See* Statement of Senator Frank Lautenberg, *infra*, at n.6.

---

[8]  In amending the FSIA, Congress recognized the hurdles terror victims faced in enforcing judgments against state sponsors of terrorism and sought to relax some of the roadblocks they had encountered. *See* Senate Record on H.R. 4986, 110th Cong., S54 (Jan. 22, 2008) (statement of Senator Frank Lautenberg). In discussing the Act, Senator Lautenberg summarized:

> Another purpose of my provision is to facilitate victims' collection of their damages from state sponsors of terrorism. The misapplication of the "Bancec doctrine," named for the Supreme Court's decision in First National City Bank v. Banco Para El Comercio Exterior de Cuba, has in the past erroneously protected the assets of terrorist states from attachment or collection. For example, in Flatow v. Bank Saderat Iran, the Flatow family attempted to attach an asset owned by Iran through the Bank Saderat Iran.

> Although Iran owned the Bank Saderat Iran, the court, relying on the State Department's application of the Bancec doctrine, held that the Flatows could not attach the asset because they could not show that Iran exercised day-to-day managerial control over Bank Saderat Iran. My provision will remedy this issue by allowing attachment of the assets of a state sponsor of terrorism to be made upon the satisfaction of a "simple ownership" test.

*Id.*

[9]  There is no dispute that Iran is a terrorist state. (*See* Motion at pp. 15-16.)

Because the Levins possess a judgment under section 1605(a)(7)—not section 1605A—they do not qualify for relief under section 1610(g), and, therefore, may not enforce their judgment against ▬▬▬▬▬▬ *See* Smith Decl., Ex. 13, ¶ 1; *Levin v. Islamic Republic of Iran*, 529 F. Supp. 2d 1, 15, 19-20 (D.D.C. 2007); 28 U.S.C. § 1610(b)(2) ("the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a)(2), (3), or (5), 1605(b), or 1605A...."); 28 U.S.C. § 1610(f)(1)(A), (2)(A) (differentiating between judgments entered "under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A"). Section 1610(g) applies only to "certain actions" namely, those in which "a judgment is entered under section 1605A." 28 U.S.C. § 1605(g)(1).

### 2. The Heisers BONY Writ Establishes a First Priority Lien Interest in the BONY Blocked Wire Transfers

For the reasons stated herein, the Heisers hold a first priority lien interest in the three wire transfers blocked by BONY[10] as a result of the Heiser BONY Writ. The ultimate beneficiaries of these wire transfers are ▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬ '). *See* Smith Decl., Ex. 12.

Federal law is clear that a federal judgment properly registered in another federal court "shall have the same effect as a judgment of a district court of the district where registered and may be enforced in a like manner." 28 U.S.C. § 1963. Rule 69 of the Federal Rules of Civil Procedure further provides:

---

[10] The BONY Blocked Wire Transfers are blocked pursuant to regulations implemented by the Office of Foreign Assets Control ("OFAC"). (*See* Motion at p. 26.)

> A money judgment is enforced by writ of execution…. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69. Thus, applying Rule 69, Maryland law governs the procedures for executing upon property of a judgment debtor for actions instituted out of the Maryland District Court. *See, e.g.*, *Trustees of Ironworkers Union No. 16 Pension Plan v. Turner*, 2010 WL 917359, at \*4 (D. Md. Mar. 10, 2010) ("State procedures govern the enforcement of a writ of garnishment of property…. Because no federal statute applies to writs of execution, Md. Rules 2-641-2-649 govern."). In Maryland, to obtain a lien against personal property, the judgment holder must execute. Md. Code Cts. & Jud. Proc. § 11-403. Garnishment is a method by which a judgment holder may execute. *In re Smith*, 382 B.R. 279, 283 (Bankr. D. Md. 2006) (applying Maryland law).

Maryland Rule 2-645 governs the procedures for executing and garnishing upon property of a judgment debtor in the hands of a third person for the purpose of satisfying a judgment. Md. Rule 2-645(a). "An attachment by way of garnishment issued after judgment is a mode of execution and its function is approximately the same as that of a writ...." *Northwestern Nat'l Ins. Co. v. William G. Wetherall, Inc.*, 267 Md. 378, 384 (1972); *see also In re Smith*, 382 B.R. at 284 ("An attachment by way of garnishment is used to create a judgment lien upon the debtor's interest in property held by a third party, including the debtor's interest in a debt owed to the debtor by a third party."); *Harbor Bank of Maryland v. Hanlon Park Condominium Assoc. Inc.*, 153 Md. Ap. 54, 58 (2003).

It is undisputed that the Heisers registered and recorded the Judgment in the Maryland District Court (S.S. ¶ 10; Misler Decl., Ex. 5.), the Heisers requested, and the Maryland District Court issued, the Heiser BONY Writ (S.S. ¶ 11; Misler Decl., Ex. 6), and the Heiser BONY Writ

was served on The Bank of New York Mellon on May 3, 2010. (S.S. ¶ 12; Misler Decl., Ex. 7.)

Under Maryland law, the Heisers' lien interest in the BONY Blocked Wire Transfers was

perfected when the Heiser BONY Writ was served upon BONY. *In re Smith*, 382 B.R. at 284.

Therefore, the Heisers are entitled to a judgment as a matter of law that they have a first priority

lien interest in the BONY Blocked Wire Transfers.

### 3.   The BONY Blocked Wire Transfers Are Subject to Execution Under the FSIA

Pursuant to 28 U.S.C. § 1610(g) and section 201 of the Terrorism Risk Insurance Act

("TRIA") the Heisers are entitled to executed upon the BONY Blocked Wire Transfers.  TRIA

Section 201 provides that:

> [I]n every case in which a person has obtained a judgment against a terrorist party on a claim based on an act of terrorism, or for which a terrorist party is not immune under Section 1605(a)(7) of Title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201.  "TRIA provides that when a victim of terrorism secures a judgment against Iran,

the Blocked Assets of Iran and its agencies and instrumentalities are available to satisfy that

judgment." (Motion at p. 25.)  Thus, under the combination of 28 U.S.C. § 1610(g) and TRIA,

judgment creditors, such as the Heisers are entitled execute upon the Blocked Assets of Iran, its

agencies and instrumentalities, and separate juridical entities. (*See* Motion at p. 12 (citing *Rux v.*

*Bank of Sudan*, Case No.: 08 Civ. 6588 (AKH), Judgment and Order Directing Turnover of

Funds, (S.D.N.Y. 2009); Smith Decl., Ex. 55; *Weinstein v. Islamic Republic of Iran*, 624 F.

Supp. 2d 272 (E.D.N.Y. 2009); *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006)).)

The BONY Blocked Wire Transfers to ▬▬▬▬▬▬▬▬▬▬▬ the intended

ultimate beneficiaries, are subject to execution under TRIA and section 1610(g) because it is

16

undisputed that both ██████████████ are "agencies and instrumentalities of Iran." *See Weininger v. Castro*, 462 F. Supp. 2d at 485-87; Clawson Aff. ¶¶ 21-22. ████████ is an Iranian Bank and its only shareholder is the Government of Iran. *See* Clawson Affidavit ¶ 22; Ex. 10 to Misler Decl. at 4 (Annual Financial Report of ████████). And, ████████ admits that it is an agency or instrumentality of Iran. (*See* Motion at p. 4 (citing *Weinstein v. Islamic Republic of Iran*, 624 F. Supp. 2d at 274 ("██████████concedes that the Property is a 'blocked asset' under TRIA and that ████████ is an 'agency or instrumentality' of Iran…")); Clawson Affidavit ¶ 21.) Furthermore, as already discussed, the BONY Blocked Wire Transfer for which ████████████ is the ultimate beneficiary also is subject to execution by the Heisers (but not the Levins, *see* Part I.C.) pursuant to 28 U.S.C. § 1610(g).

It is undisputed that the Heisers have a judgment against Iran (S.S. ¶ 6), that BONY does not claim any interest in the BONY Blocked Wire Transfers (see Motion at p. 26), and that ████ ████████████████████████████ have been served and given notice of these proceedings and have not asserted an interest in the BONY Blocked Wire Transfers. (Motion at p. 26.) Thus, it is undisputed that the Heisers have a first priority lien interest in the BONY Blocked Wire Transfers.

## CONCLUSION

Based on the foregoing, the Court should: (a) DENY the Motion, (b) GRANT the Heisers' Cross-Motion for Partial Summary Judgment and (c) DECLARE that the Heisers have first priority lien interest in the BONY Blocked Wire Transfers.

Dated: New York, New York
September 13, 2010

/s/ Barbara L. Seniawski
Cary B. Samowitz
Barbara L. Seniawski
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: 212-335-4500
Facsimile: 212-884-4501
cary.samowitz@dlapiper.com
barbara.seniawski@dlapiper.com

and

Richard M. Kremen (Md. Fed. Bar No. 00532)
Dale K. Cathell (Md. Fed. Bar No. 26924)
David B. Misler (Md. Fed. Bar No. 28828)
DLA PIPER LLP (US)
6225 Smith Ave.
Baltimore, MD 21209
Telephone: 410-580-3000
Facsimile: 410-580-3001
richard.kremen@dlapiper.com
dale.cathell@dlapiper.com
david.misler@dlapiper.com

*Attorneys for Third-Party Defendants Estate of Michael Heiser, et al.*