UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY LEVIN and DR. LUCILLE LEVIN,

      Plaintiffs,

    -v-

BANK OF NEW YORK, JP MORGAN
CHASE, SOCIETE GENERALE and
CITIBANK,

      Defendants.
_____

THE BANK OF NEW YORK MELLON,

      Third-Party Plaintiff,

    -v-

███████████████████████

      Third-Party Defendants.

_____

JPMORGAN CHASE BANK, N.A.,

      Third-Party Plaintiff,

    -v-

████████████████████████████

      Third-Party Defendants.

_____

CAPTION CONTINUED ON NEXT PAGE

(FILED PARTIALLY UNDER SEAL DUE
TO CONFIDENTIAL INFORMATION
PER ORDER DATED JANUARY 21,
2010)

Civ. No. 09 CV 5900 (RPP)

**PLAINTIFFS' MEMORANDUM OF
LAW IN REPLY TO HEISER
JUDGMENT CREDITORS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS FOR
TURNOVER ORDER PHASE ONE
ASSETS  AND IN OPPOSITION TO
HEISER CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
CLAIMS FOR TURNOVER ORDER
PHASE ONE ASSETS**

**[Local Rule 56.1 Response and
Counterstatement of Undisputed Facts;
Supplemental Declaration of Suzelle M.
Smith and Exhibits Thereto Filed
Concurrently Herewith]**

DATE:  September 29, 2010
TIME:  9:30 a.m.
PLACE:  Courtroom 24A

10:P2402002.doc

SOCIETE GENERALE,

        Third-Party Plaintiff,

    -v-

███████████████████████

       Third-Party Cross-Claim
       Defendant, and

██████████████

       Third-Party Defendants.

_____

CITIBANK, N.A.,

        Third-Party Plaintiff,

    -v-

██████████████████████

       Third-Party Defendants.

_____

THE BANK OF NEW YORK MELLON,
JPMORGAN CHASE, N.A., SOCIETE
GENERALE and CITIBANK, N.A.,

        Third-Party Plaintiffs,

    -v-

STEVEN M. GREENBAUM, et al.

        Third-Party Defendants.

Civ. No. 09 CV 5900 (RPP)

CAPTION CONTINUED ON NEXT PAGE

10:P2402002.doc

THE BANK OF NEW YORK MELLON,
JPMORGAN CHASE BANK, N.A.,
SOCIETE GENERALE and CITIBANK,
N.A.,

       Third-Party Plaintiffs,

  -v-

THE ESTATE OF JAMES SILVIA AND
LYNNE MICHOL SPENCER, et al.,

       Third-Party Defendants.

Civ. No. 09 CV 5900 (RPP)


**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO HEISER JUDGMENT
CREDITORS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS FOR TURNOVER
PHASE ONE ASSETS  AND IN OPPOSITION TO HEISER CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CLAIMS
<u>FOR TURNOVER ORDER PHASE ONE ASSETS</u>**


HOWARTH & SMITH
Suzelle M. Smith
Don Howarth
523 West Sixth Street, Suite 728
Los Angeles, California  90014
Telephone:  (213) 955-9400
ssmith@howarth-smith.com

*Attorneys for Plaintiffs*

10:P2402002.doc

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ..........................................................................................ii-iv

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF ARGUMENT ............................................................................. 3

III.  TRIA AND CONGRESSIONAL INTENT ........................................................... 5

IV.   IRAN HAS AN INTEREST IN THE █████ BLOCKED ASSETS AND THEREFORE
      THEY ARE AVAILABLE FOR EXECUTION BY THE LEVINS .................................. 8

V.    ████████████ HAS AN INTEREST IN █████ BLOCKED ASSETS AND THERE IS
      NO DISPUTE THAT ██████████ IS AN AGENCY OR INSTRUMENTALITY
      OF IRAN, MEANING THAT THE █████ BLOCKED ASSETS ARE AVAILABLE
      FOR EXECUTION DUE TO ████████████ INTEREST IN THEM ........................... 9

VI.   █████, AS AN ORGAN OF IRAN, IS AN AGENCY OR INSTRUMENTALITY
      OF IRAN.................................................................................................................. 10

VII.  THE HEISERS MAY NOT JOCKEY FOR POSITION IN THIS INTERPLEADER
      ACTION AND HAVE NO STANDING TO RAISE DEFENSES ON BEHALF OF
      █████ ................................................................................................................. 13

VIII. THE HEISERS MARYLAND WRIT CANNOT REACH THE BLOCKED
      ASSETS AT DISPUTE HERE ............................................................................. 16

IX.   CONCLUSION ..................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

## <u>CASES</u>

*Avant Petroleum, Inc. v. Banque Paribas*,
    853 F.2d 140 (2d Cir. 1988)...................................................................................... 15

*Dole Food Co. v. Patrickson*,
    123 S. Ct. 1655 (2003) ........................................................................... 4, 10, 11, 12

*EOTT Energy Operating Ltd. P'ship v. Winterthur Swiss Ins. Co.*,
    257 F.3d 992 (9th Cir. 2001) ............................................................................... 4, 10

*Hausler v. JPMorgan Chase N.A., Citibank, N.A., UBS AG, The Royal Bank of Scotland, N.V.,*
    *and Bank of America, N.A.*,
    No. 09-10289 ("*Hausler* Opinion")(Ex. 1 to Supp. Smith Decl.)
    (S.D.N.Y. Sep. 13, 2010) ................................................................................. passim

*Hill v. Republic of Iraq*,
    No. 99-3346, 2003 WL 21057173 (D.D.C. Mar. 11, 2003) ..................................... 6

*In re Minpeco, USA, Inc.*,
    237 B.R. 12 (Bankr. S.D.N.Y. 1997)....................................................................... 2

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
    213 F.3d 841 (5th Cir. 2000) ............................................................................... 4, 10

*Kitson & Kitson v. City of Yonkers*,
    10 A.D.3d 21 (Sup. Ct. App. Div. 2004) ............................................................... 15

*Kowalski v. Tesmer*,
    125 S. Ct. 564 (2004)......................................................................................... 5, 15

*Levin v. Islamic Republic of Iran*,
    529 F. Supp. 2d 1 (D.D.C. 2007) ............................................................................ 3

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*,
    129 S. Ct. 1732 (2009).............................................................................................. 8

*Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.*,
    578 F. Supp. 2d 621 (S.D.N.Y. 2008)................................................................... 13

*Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*,
    280 F. Supp. 2d 314 (S.D.N.Y. 2003)..................................................................... 6

*Texaco, Inc. v. Ponsoldt*,
    118 F.3d 1367 (9th Cir. 1997) ............................................................... 5, 15

*USX Corp. v. Adriatic Ins. Co.*,
    345 F.3d 190 (3d. Cir. 2003)................................................................ 4, 10, 12

*Warth v. Seldin*,
    95 S. Ct. 2197 (1975).................................................................................. 14

*Weininger v. Castro*,
    462 F. Supp. 2d 457 (S.D.N.Y. 2006)................................................. passim

*Weinstein v. Islamic Republic of Iran*,
    609 F.3d 43 (2d Cir. 2010) ........................................................... 7, 8, 13

*White v. F.D.I.C.*,
    19 F.3d 249 (5th Cir. 1994) ....................................................................... 15

## <u>STATUTES</u>

28 U.S.C. § 1603........................................................................................... 10, 12

28 U.S.C. § 1603(b) ........................................................................................... 10

28 U.S.C. § 1605A............................................................................................ 1, 2

28 U.S.C. § 1605(a)(7)................................................................................ passim

28 U.S.C. § 1610....................................................................................... 1, 3, 5, 8

28 U.S.C. § 1610(c) ..................................................................................... 1, 3, 5

28 U.S.C. § 1963.................................................................................................. 16

31 C.F.R. § 544 ....................................................................................... 4, 7, 9, 13

31 C.F.R. § 544.201(a).......................................................................... 4, 7, 9

31 C.F.R. § 544.411 ......................................................................................... 4, 9

31 C.F.R. § 594 ..................................................................................................... 7

31 C.F.R. § 594 (a)(1).......................................................................................... 7

C.P.L.R. 5230................................................................................................. 1, 16

C.P.L.R. 5401 ................................................................................................................. 16

Fed. R. Civ. P. 69 ....................................................................................................... 1, 16

FSIA § 1603(b) ......................................................................................................... 10, 12

TRIA § 201(a) ......................................................................................................... passim

TRIA § 201(d)(2) ........................................................................................................ 2, 6

## **OTHER**

148 Cong. Rec. S11528 (daily ed. Nov. 19, 2002) ......................................................... 6

H.R. Rep. No. 107-779 (2002) ....................................................................................... 8

## I.     INTRODUCTION

Third Party Defendants Estate of Michael Heiser, et al ("Heisers") state that the Levins are not entitled to summary judgment and turnover as a matter of law, not fact,[1] for two purported reasons.  First, they argue, as do the Greenbaum/Acosta Third Party Defendants[2], that the Levins' 28 U.S.C. § 1605(a)(7)[3] judgment is governed by § 1610(c), which it is not, as a matter of law.  Since § 1610(c) does not apply to the Levins' judgment, although it arguably would apply to the Heisers (who are § 1605A judgment holders), the Levins' court issued writs of executions are not "void" and do satisfy § 1610 and note thereto (TRIA), Fed. R. Civ. P 69 and the C.P.L.R. 5230.  Second, the Heisers argue that ███████████████████ is not an agency or instrumentality of Iran, whose Blocked Assets are subject to execution by the

---

[1] The Heisers do not dispute any of the Levins' material facts as set forth in the Levins' Separate Statement of Facts other than whether ████ and other entities whose accounts are not being moved on in Phase One are agencies or instrumentalities of Iran.  *See* Heiser's Local Rule 56.1 Separate Statement of Disputed Facts in Support of the Estate of Michael Heiser, et al's Opposition to the Motion for Partial Summary Judgment Claims.  The Heisers do not contest that the Levins obtained court issued writs of execution from this Court directed to Societe Generale, Bank of New York Mellon, JPMorgan Chase, N.A., and Citibank, N.A., seeking the Blocked Assets at issue here, which were delivered to the U.S. Marshall on June 19, 2009.  *Id.*  The issue is a question of law only as to the validity of those writs under § 1610, including, note, TRIA § 201(a), Fed. R. Civ. P. 69 and C.P.L.R. 5230.  Also, the Heisers are not claiming the right to the accounts held by Societe Generale, Citibank, N.A., or JP Morgan Chase, N.A. but only the Bank of New York Mellon accounts.  No one has raised any objection specifically to the Levins' claim to the accounts which hold Blocked Assets for Societe Generale listed on Ex. 8 to the Levins' Motion, including Societe Generale, which did not file any opposition to the Levins' Motion.  No other judgment holder claims to have issued any writ to Societe Generale.  *See* Separate Statements of Heiser and Greenbaum/Acosta.  Therefore, there is no claimant with even an asserted priority over the Levins as to the SG Blocked Assets.  As to the Blocked Assets listed on Ex 8, the Court should enter judgment for the Levins and order SG to turn these assets over to the Levins with accumulated interest by wire transfer as per the proposed order filed under seal, concurrently with the Levins' Reply Memoranda.

[2] The Heisers also argue that the Levins' writs are invalid for failing to comply with 28 U.S.C. §1610(c).  This argument is without merit and is addressed by the Levins' Reply and Opposition brief to the Greenbaum/Acosta paper.  By way of reference and incorporation of their Reply and Opposition to Greenbaum/Acosta, the Levins make those same arguments against the Heisers.

[3] All further statutory references will be to 28 U.S.C. unless otherwise indicated.

10:P2402002.doc

Levins, a civilian survivor of torture and Iranian acts of terrorism and his spouse, but that ███ is an agency or instrumentality of Iran subject to execution by them, the heirs and Estates of Michael Heiser, deceased, and other United States soldiers.  Heiser Memo at 1-2.[4]  The Heisers do not cite any case that makes the distinction among victims of terrorism seeking to execute on Blocked Assets which they ask this Court to make.  They are wrong as a matter of law and undisputed fact.  ███ is an agency and instrumentality of Iran for purposes of TRIA, and ███ Blocked Assets are subject to both blocking by OFAC and satisfaction of the Levins' judgment against Iran under TRIA and Executive Orders 13224 and 13382 issued pursuant to International Emergency Economic Powers Act (IEEPA).[5]  *See Hausler v. JPMorgan Chase N.A., Citibank, N.A., UBS AG, The Royal Bank of Scotland, N.V., and Bank of America, N.A.*, No. 09-10289 ("*Hausler* Opinion")(Ex. 1 to Supp. Smith Decl.) at 6, 17 (S.D.N.Y. Sep. 13, 2010). Specifically, TRIA defines blocked asset as "any asset seized or frozen by the United Sates . . . under the IEEPA." TRIA § 201(d)(2).   Furthermore, it is undisputed that Iran has an interest in

---

[4] The difference between §1605A and §1605(a)(7) is discussed in the Levins' Reply brief to the Greenbaum/Acosta motion.  Also, when opposing a motion for summary judgment "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial," and "the Rule obviously contemplates that the opposing party will respond with particularity to each of plaintiff's claimed undisputed facts, demonstrating as to each fact why there is a genuine dispute ... if it wants to controvert the movant's facts" *In re Minpeco, USA, Inc.,* 237 B.R. 12, 15-16 (Bankr. S.D.N.Y. 1997).  Further, the Heisers, along with the Greenbaum and Acosta parties, did not file timely papers.  *See* fn. 6 to the Levin Plaintiffs' Reply and Opposition to the Greenbaum and Acosta Memo, filed concurrently.

[5] ███ is the beneficiary of a wire transfer which was blocked by OFAC.  ███ has not claimed that it is not an agency or instrumentality of Iran or that Iran does not have actual and beneficial ownership of it.  ███ has not objected that it is not controlled by Iran.  ███ has filed no objection to the Levins' Motion.  Iran has not disputed that it has an interest in ███ and the wire transfer that ███ originated.  The Levins have submitted an undisputed declaration by an expert, Dr. Patrick Clawson, that ███ is an agency, and instrumentality, under the control of and owned by Iran, and that it is used to further the terrorist activities of Iran.  *See* Clawson Decl. ¶ 29.  ███ itself is on the Specially Designated Nationals (SDN) list as assisting Iran in its nuclear proliferation.  *See* Ex. 4 to Supplemental Declaration of Suzelle M. Smith ("Supp. Smith Decl."), filed concurrently.

the Blocked Account, which holds the ▮▮▮ wire transfer funds, and therefore, the Blocked

Assets are subject to execution by the Levins. *Id.*

## II.    SUMMARY OF ARGUMENT

The argument of the third parties, the Heisers, proceeds as follows:  The Levin judgment

can be collected only from an agency or instrumentality of Iran.  ▮▮▮ is a subsidiary of an

agency or instrumentality of Iran, and therefore, it is not itself an agency or instrumentality.  But

as to the Heisers, they can collect from ▮▮▮ because their judgment is under an expanded

statute that allows collection from "indirect" interests, which are not agencies or

instrumentalities.  And finally, the Heisers also assert, as do the Acosta/Greenbuam third parties,

that the Levins did not comply with § 1610(c) and, therefore, the Levins' writs are invalid.

The Levins' responses to the Heisers' arguments are in summary as follows:

First, TRIA provides that the blocked assets of terrorist parties shall be subject to

execution or attachment.  TRIA §201(a).  There is no dispute that Iran is a terrorist party for

purposes of TRIA, and that Iran has in fact been sued itself as a terrorist party under §

1605(a)(7).  *See* Clawson Decl ¶ 18.  *See generally Levin v. Islamic Republic of Iran*, 529 F.

Supp. 2d 1 (D.D.C. 2007).  Blocked Assets of Iran itself are thus subject to execution under

TRIA, and Blocked Assets include "both owned property and interests in property."  *See Hausler*

Opinion at 11.  There is also no dispute that Iran has an interest in ▮▮▮  and ▮▮▮ Blocked

Assets are thus Iranian assets pursuant to TRIA and subject to execution by the Levins. See

Clawson Decl ¶¶ 15, 22, 29.

Second, no-one disputes that ▮▮▮▮▮ directly owns ▮▮▮ and that ▮▮▮▮▮ is

itself an agent or instrumentality of Iran.  See Clawson Decl ¶¶ 22, 29.  TRIA provides that

assets of a terrorist party or its agencies or instrumentalities blocked pursuant to the IEEPA are

subject to execution by victims of terrorism.  *See* TRIA § 201(a).  It is undisputed that ███'s assets were frozen pursuant to Executive Order No. 13382 and that Executive Order No. 13382 was issued under the IEEPA.  *See* Ex B. to Decl. of Nevling in Support of JPMorgan Chase Bank, N.A.'s Response. Executive Order No. 13382 is codified under 31 C.F.R. § 544 (2009), which provides that "a person whose property and interest in property are blocked pursuant to § 544.201(a) has an interest in all property and interests in property of an entity which it owns, directly or indirectly, a 50 percent or greater interest.  The property and interests in property of such an entity, therefore, are blocked and such an entity is a person whose property and interests in property are blocked." 31 C.F.R. § 544.411. ███ s interests are thus attributed to ███, and ███████ is an agency or instrumentality whose blocked assets may be executed on by the Levins under TRIA.

Third, ███ is itself an agency or instrumentality under the "organ" test.  The Heisers focus on the "ownership" test as discussed in the *Dole Food Co. v. Patrickson*, 123 S. Ct. 1655 (2003) case for determining whether, for purposes of sovereign immunity, not for collection by victims of terrorism, an entity is an agency or instrumentality.  But they ignore the alternative and equally valid "organ" test, which is influenced by, but not based on, ownership status.  The uncontested evidence is that ███ is an agency or instrumentality of Iran under the "organ" test as laid out in *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190 (3d. Cir. 2003), *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846-47 (5th Cir. 2000), and *EOTT Energy Operating Ltd. P'ship v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 997 (9th Cir. 2001).

Fourth, the undisputed evidence from Professor Clawson's affidavit is that ███ is an agency or instrumentality of Iran.  The Heisers have failed to produce any contrary evidence, so their claim fails for that reason alone.

Fifth, this Court does not have to reach any of the above questions in rejecting the Heisers' claim because ▮▮▮ is in default and has not contested its status.  *See Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006).  The Court should accept the allegations against ▮▮▮ as true.  The Heisers, who are adverse to ▮▮▮, have no standing to raise this or any other defense on behalf of ▮▮▮.  *Kowalski v. Tesmer*, 125 S. Ct. 564, 567 (2004).  And the Heisers may not obtain a benefit against the Levins by being given notice in an interpleader action. *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997).

Sixth, the Levins' writs are valid as the § 1610(c) requirement for a court ordered writ does not apply to § 1605(a)(7) judgments for all the reasons stated in the Levins' Plaintiffs' Reply and Opposition to the Greenbaum/Acosta Memorandum, filed concurrently and incorporated here by reference.

And finally, the Heisers have Maryland writs which cannot be used to execute on assets in the Southern District of New York, and they cannot leapfrog the Levins with such writs.

## III.      TRIA AND CONGRESSIONAL INTENT

There is no dispute that Congress has made it clear that it intends for American victims of terrorism, sponsored by states specifically deemed to be terrorist states, such as Iran, to be able to satisfy their judgments from assets blocked by the United States because of an interest in such assets by Iran, or its agencies and instrumentalities.  TRIA states:

> Notwithstanding any other provision of law . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment.

TRIA § 201(a), codified as note to § 1610.  Just before passage of TRIA,  Senator Harkin stated that even though Congress had passed the Anti-Terrorism and Effective Death Penalty Act in 1996, some officials had ignored "the clear intent of the Congress, and [had opposed] the use …

[of] blocked assets of … the ruling mullahs in Iran, and other state sponsors of terrorism to

compensate American victims of terrorist attacks…. With the passage of this new legislation

[TRIA], the Congress is requiring that this misguided policy be abandoned."

148 Cong. Rec. S11528 (daily ed. Nov. 19, 2002) (statement of Sen. Harkin).

      Courts have interpreted the "notwithstanding language" as TRIA displacing any

provision of law that might limit its application.  *See Weininger*, 462 F. Supp. 2d at 488-89,

quoting *Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*, 280 F. Supp. 2d 314,

319 (S.D.N.Y. 2003) ("[T]o the extent that a foreign country's sovereign immunity potentially

conflicts with Section 201(a), the notwithstanding phrase removes the potential conflict"); *see*

*also id*. at 489, quoting *Hill v. Republic of Iraq*, No. 99-3346, 2003 WL 21057173, at *2 (D.D.C.

Mar. 11, 2003) ("[B]y its plain terms, the TRIA overrides any immunity from execution that

blocked Iraqi property might otherwise enjoy under the Vienna Convention or FSIA.")  .

      Section 201(d)(2) of TRIA defines "blocked asset" as "any asset seized or frozen by the

United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C.App. 5(b)) or

under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. §§

1701-1702) ("IEEPA"),  excluding diplomatic and consular property and property related to

certain transactions licensed by the government."  *Weininger*, 462 F. Supp. 2d at 480; *see also*

*Hausler* Opinion at 6.[6]

      The legislative history of TRIA shows:

> The purpose of title II [TRIA] is to deal comprehensively with the
> problem of enforcement of judgments issued to victims of terrorism in any
> U.S. court by enabling them to satisfy such judgments from the frozen

---

[6] It is uncontested that the Phase One Blocked Assets here were frozen by OFAC pursuant to
powers granted under the IEEPA to the executive and exercised by the executive in Executive
Order Nos 13224 and 13382.  *See* Ex. B to Decl. of Nevling in Support of JPMorgan Chase
Bank, N.A.'s Response.

> assets of terrorist parties. . . . Title II operates to strip a terrorist state of its immunity from execution or attachment in aid of execution by making the blocked assets of that terrorist state, including the blocked assets of any of its agencies or instrumentalities available for attachment and/or execution.

*Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010).

The Phase One Blocked Assets at issue here were frozen under Executive Orders Nos. 13224 and 13382 based on authority granted by the IEEPA.  *See* Ex B. to Decl. of Nevling in Support of JPMorgan Chase Bank, N.A.'s Response.  These orders are referenced in 31 C.F.R. § 544 and 31 C.F.R. § 594 (2008), which provide that all "property and *interests* in property that are in the United States . . . are blocked and may not be transferred, paid, exported or withdrawn or otherwise dealt in." 31 C.F.R. § 544.201 (a) (emphasis added); 31 C.F.R. § 594.  These provisions apply to any person listed in Executive Order Nos. 13224 and 13382 and "any person determined  . . . to be owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this section." 31 C.F.R § 544.201(a)(1) & (4); 31 C.F.R. § 594 (a)(1) & (3).  Here, the blocking scheme which TRIA incorporates expressly, blocks assets of parties, like Iran, which have interests in the property, and also applies where an entity like ███ is owned or controlled by ████████ and/or Iran.  *Id.*

There is no issue of disputed fact here and the Heisers do not claim that the account which has ███ as the beneficiary is not a frozen asset subject to execution and collection by some victims of terrorism.  The Heisers do not offer any evidence or facts to contradict the declaration of Dr. Clawson that ███ is controlled and owned by Iran and is a de facto agency and instrumentality of Iran.

Congress has expressly disapproved any reading of legislation that narrows the rights of victims of state sponsors of terrorism from attaching or executing on terrorist related assets:

"[TRIA] establishes once and for all, that such judgments are to be enforced against any assets available in the U.S., and that the executive branch has no statutory authority to defeat such enforcement under standard judicial processes, except as expressly provided in this act." *Weinstein*, 609 F.3d at 50.

Where any law, including state law is inconsistent with TRIA, TRIA preempts it. *See Weinstein*, 609 F.3d at 54; *Weininger*, 462 F. Supp. 2d at 488-89; *Hausler* Opinion at 11. But further, TRIA preempts any other federal statute including the FSIA or an interpretation of the FSIA, which is inconsistent with TRIA. *See Weinstein* 609 F.3d at 54; *Weininger*, 462 F. Supp. 2d at 488-89; *see also Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 129 S. Ct. 1732, 1744 (2009) (TRIA in part addresses any presidential waivers purporting to bar or restrict enforcements of terrorist judgments, citing H.R. Rep. No. 107-779, at 27 (2002), *reprinted in* 2002 U.S.C.C.A.N. 1430, 1434.).

## IV. IRAN HAS AN INTEREST IN THE ▮▮▮ BLOCKED ASSETS AND THEREFORE THEY ARE AVAILABLE FOR EXECUTION BY THE LEVINS

It is without dispute that Iran has an interest in the property of ▮▮▮ Clawson Decl. ¶ 29 ("It is common knowledge among experts in international banking and commerce and it is my expert opinion that ▮▮▮▮▮▮▮▮▮ is wholly owned by the Islamic Republic of Iran, is a national bank of Iran, is controlled by Iran is an agency and instrumentality of the Republic of Iran, and is a foreign state as defined by FSIA."). If Iran has an interest in a Blocked Asset, whether or not its agent or instrumentality also has an interest, those Blocked Assets shall be available to satisfy the judgment of a victim under § 1605(a)(7). Any blocked assets of Iran itself are subject to execution under TRIA § 201(a), codified as note to § 1610. TRIA Blocked Assets are defined as "both owned property and interests in property." *See Hausler* Opinion at 11.

There is no dispute that Iran has an interest in ████, through its direct ownership of ████'s parent, ████████ Since Iran has an interest in ████, any ████ Blocked Assets are Iranian assets pursuant to TRIA and are subject to execution by the Levins.

**V.    ████████ HAS AN INTEREST IN ████ BLOCKED ASSETS AND THERE IS NO DISPUTE THAT ████████ IS AN AGENCY OR INSTRUMENTALITY OF IRAN, MEANING THAT THE ████ BLOCKED ASSETS ARE AVAILABLE FOR EXECUTION DUE TO ████████ INTEREST IN THEM**

No-one disputes that ████████ directly owns ████ and that ████████ is itself an agent or instrumentality of Iran. *See* Clawson Decl ¶¶ 22, 29. TRIA provides that assets of a terrorist party or its agencies or instrumentalities blocked pursuant to the IEEPA are subject to execution by victims of terrorism. *See* TRIA § 201(a). It is undisputed that ████ assets were frozen pursuant to Executive Order No. 13382 and that Executive Order No. 13382 was issued under the IEEPA. *See* Ex B. to Decl. of Nevling in Support of JPMorgan Chase Bank, N.A.'s Response. Executive Order No. 13382 is codified under 31 C.F.R. § 544, which provides that "a person whose property and interest in property are blocked pursuant to § 544.201(a) has an interest in all property and interests in property of an entity which it owns, directly or indirectly, a 50 percent or greater interest. The property and interests in property of such an entity, therefore, are blocked and such an entity is a person whose property and interests in property are blocked." 31 C.F.R. § 544.411. ████████ interests are imputed to ████, and no-one contests that ████████ is an agency or instrumentality whose blocked assets may be executed on under TRIA.

/ / /

/ / /

## VI.  ███ AS AN ORGAN OF IRAN, IS AN AGENCY OR INSTRUMENTALITY OF IRAN

The Heisers argue that since ███ fails the direct ownership test laid out in *Dole Food Co.*, ███ cannot be an agency or instrumentality of Iran under FSIA § 1603(b).  Direct ownership is only one of two ways to meet the second prong of the § 1603 agency or instrumentality tests; the other test is whether an entity is an organ of the state.  Section 1603(b) defines agencies or instrumentalities as those entities which are "an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603 (2005).  *Dole* deals with the ownership portion of the definition but not with the organ portion, and courts have found that the "organ" test provides an independent basis for determining the status of an entity: "Nevertheless inasmuch as the statute and legislative history are silent as to a definition of the term 'organ,' and that term inherently is vague and does not have a well-established common law meaning, Congress's inclusion of the term within the definition of 'agency or instrumentality' of a foreign state suggests the need for a more flexible approach under the organ prong of section 1603(b)(2) than the Court adopted in *Dole* with respect to the ownership prong of that section."  *USX Corp.*, 345 F.3d 190; *see also Kelly*, 213 F.3d at 846-47; *EOTT Energy Operating Ltd. P'ship*, 257 F.3d at 997.

In determining whether an entity is an organ, courts look to "the circumstances surrounding the entity's creation, the purpose of its activities, its independence from the government[7], the level of government financial support, its employment policies, and its obligation and privileges under state law."  *USX Corp.*, 345 F.3d at 206.

---

[7] The ownership structure of ███ and whether Iran owns the ultimate interest in ███ is relevant to the "organ" test even if ███ fails the *Dole* "tier-structure" test.  *See USX Corp.*, 345 F.3d 190.

 is owned by Iran and is one of Iran's national banks. ███ was formed by ████ and replaced the London Branch of ████ ████ is backed by Iran. ███ does the bidding of Iran, including facilitating Iran's nuclear development ambitions.  As ████ own website says: "███ was incorporated as a company registered in England in 2002 and took over the assets, liabilities and business of the London Branch of ████ Iran.  The branch had been operating in the City of London since 1972 and as well as the branch's business ███ also assumed its highly experienced staff.  The bank is a wholly owned subsidiary of ████ ██████████████████████████ ███ has a large network of branches in Iran as well as offices in Paris, Frankfurt and Rome. ███ not only enjoys the support of its parent but also the support of the Central Bank of Iran." Ex C to Nevling Decl in Support of the Bank of New York Mellon's Response. Levin's Counter S.S., section III, # 1.

Further, and unlike the case in *Dole*, the sovereign's subsidiary which owns ██ ██ ██ Iran, is itself a terrorist party, as it too has been placed on the SDN list.  *See* Ex. 4 to Supp. Smith Decl.; *see also* Clawson Decl ¶¶ 22, 29.  So here, unlike *Dole*, there is one terrorist party owning directly an entity which is under its control.  Thus, ███ is the agency of an Iranian terrorist party.  Therefore, ███ blocked assets are specifically available for execution and attachment under TRIA by 1605(a)(7) judgment holders.

Finally, applying *Dole* to this context would create a gaping loophole for terrorist parties to exploit and would turn TRIA on its head. In *Dole*, plaintiffs were a group of farm workers from Costa Rica, Ecuador, Guatemala and Panama who were allegedly injured by exposure from an agricultural pesticide used by Dole.  Dole interpled Dead Sea Bromine Co., Ltd., and Bromine Compounds, Ltd. (collectively the Dead Sea Companies).  The Dead Sea Companies urged that

they were agencies of Israel and therefore entitled to the same sovereign immunity that Israel enjoyed under the FSIA.  The United States Supreme Court rejected this argument, finding that these commercial entities were separate from the state and "were not instrumentalities of Israel under the FSIA at any time." *Id* at 1660.  Thus, these companies were not immune from suit as Israel would have been.  *Id.*  The Supreme Court also noted that this was not an absolute rule and that, on a case-by-case basis, courts could still pierce the corporate veil and find subsidiary ownership as sufficient under the ownership test to designate an entity as an agency of a sovereign, depending on the particular facts and issue.  *Id* at 1661.  *Dole* clearly has nothing to do with a case where the sovereign is a designated state sponsor of terrorism by the United States government.  Here, unlike Israel in the *Dole* case, Iran has no sovereign immunity.[8]  Neither does ██████ due to its agency relationship with Iran, have immunity.

But this has nothing to do with whether a state sponsor of terrorism can avoid having its assets executed on or attached under TRIA by simply setting up subsidiaries and tiered ownership, and conducting its business through them, rather than directly, as is the case with ██████ This would be turning both FSIA and TRIA upside down.[9]

TRIA, IEEPA and Executive Orders Nos. 13224 and 13382 mandate that Blocked Assets in which Iran has an interest are subject to execution.  *See Hausler* Opinion at 6, 17.  Iran, through an entity it controls and which is part of the government, has an interest in the ██████

_____

[8] ██████ has no sovereign immunity of its own either.  It cannot have immunity when its sovereign, Iran, does not have immunity.  Also, FSIA specifies that entities which are not formed under the laws of the sovereign which has immunity cannot have immunity.  *See* § 1603(b)(3).  Thus, a sovereign cannot set up a state controlled company and have it compete with private companies in the U.S. or elsewhere and claim immunity from suit, which private United States companies cannot claim. *Dole*, at 1661.

[9] Additionally, even where a sovereign with immunity is involved, if an entity is an "organ" of the state, it is an agency and instrumentality whether it is a subsidiary or not.  *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190.  The undisputed evidence is that ██████ is an organ of Iran and on that basis an agency and instrumentality.

12

Blocked Accounts.  FSIA, which limits sovereign immunity, does not state that a true agent in fact is entitled to immunity from suit where the sovereign would not be.  If it did, TRIA would preempt it.  The blocking regulations include ███ as an agency and instrumentality of Iran.  *See* 31 C.F.R. §§ 544, 594.  The Heisers cite no controlling or even rational authority for their position.[10]

## VII.   THE HEISERS MAY NOT JOCKEY FOR POSITION IN THIS INTERPLEADER ACTION AND HAVE NO STANDING TO RAISE DEFENSES ON BEHALF OF ███

This is an interpleader action where the Court has ordered all parties who may or might have a right to any of the Phase One Blocked Assets to come forward and assert such rights.  *See* January 11, 2010 Order.  ███ has asserted no rights to the account with the Blocked Asset to which it is the beneficiary.  ███ has not asserted that it is not an agency of Iran (and in fact its own statements are to the contrary, *see* Ex C to Nevling Decl. in Support of Bank of New York Mellon's Response).  The factual evidence before this Court is uncontroverted that ███ is an agency and instrumentality of Iran and that OFAC Blocked Assets in which it has an interest are available under TRIA for satisfaction of the Levins' judgment.  Levin Counter S.S., section III, ¶ 1, Clawson Declaration ¶ 29 & Ex. C to Nevling Decl in Support of Bank Of New York Mellon's Response; Ex. 4  to Smith Supplemental Declaration.  The Levins have offered undisputed evidence that ███ is an agency of Iran and an Iranian government entity.  *See Id.* Congressional intent is clear that such assets are subject to being blocked for the purpose of satisfying the Levins' judgments.  *See Weinstein*, 609 F.3d 43 at 50; *Weininger*, 462 F. Supp. 2d at 487; *Hausler* Opinion at 20-22; TRIA §201(a).  Neither Bank of New York Mellon nor any

---

[10] Heisers also cites *Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.*, 578 F. Supp. 2d 621 (S.D.N.Y. 2008) – this case again does not deal with TRIA or Blocked Assets and agents of designated state sponsors of terrorism, and is not authority for the Heisers' position.

other commercial party has raised any fact to dispute that ▮▮▮ is an agency, entity or

instrumentality of Iran within the meaning of TRIA.

▮▮▮ has defaulted and is not contesting its status as an agency or instrumentality of Iran.

As the Court in *Weininger*, 462 F.Supp.2d 457, noted in a similar situation:

> 'In assessing whether these entities are agencies or instrumentalities of
> Cuba, the Court is mindful that the instrumentality and its related
> government-not the plaintiff-will frequently possess most of the
> information needed to [make this determination].  These foreign entities
> obviously have little incentive to provide information that will help the
> plaintiff's case, and it may be difficult for the plaintiff to obtain discovery
> from them.' *Alejandre,* 183 F.3d at 1285 n. 19.  The Eleventh Circuit's
> words were addressed to analyzing whether an agency should be
> considered juridically separate from the foreign state, but the same
> reasoning holds true for assessing whether an entity is an agency or
> instrumentality of a foreign state.  Moreover, following a default all
> factual allegations in the complaint other than those related to damages are
> accepted as true.  *See Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir.1993);
> *Alejandre v. Republic of Cuba,* 996 F.Supp. 1239, 1243 (S.D.Fla.1997)
> ("Because Cuba has presented no defense, the Court will accept as true
> Plaintiffs' uncontroverted factual allegations.").  In light of
> EMTELCUBA's having been given notice of this proceeding, the Court
> credits Plaintiffs' evidence and finds that EMTELCUBA is an agency or
> instrumentality of Cuba, and thus that Plaintiffs may execute upon the
> blocked assets of EMTELCUBA.

*Id.* at 496.

Further, Heiser, which is adverse to ▮▮▮ and is seeking its funds, has no standing to

raise these defenses on behalf of ▮▮▮  Parties may not raise claims based on the legal rights of

a third party, here ▮▮▮  As the Supreme Court has noted, one "generally must assert his own

legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties." *Warth v. Seldin,* 95 S. Ct. 2197, 2205 (1975).  There are certain exceptions which do

not apply here, where the Heisers are adverse to Iran and ▮▮▮

> We have not treated this rule as absolute, however, recognizing that there
> may be circumstances where it is necessary to grant a third party standing
> to assert the rights of another. But we have limited this exception by

> requiring that a party seeking third-party standing make two additional
> showings. First, we have asked whether the party asserting the right has a
> "close" relationship with the person who possesses the right.  Second, we
> have considered whether there is a "hindrance" to the possessor's ability to
> protect his own interests.

*Kowalski*, 125 S. Ct. at 567.

There is no close relationship between the Heisers and ███ and ███ received notice of this action and had every ability to come into court and protect its interest.  It chose not to do so. The Heisers, therefore, may not raise defenses on behalf of ███.

Finally, the Levins' writs were delivered to the U.S. Marshal on June 19, 2009 (Levin's Counter S.S., section III, # 3), before the 2010 Heiser writs  (Heiser S.S. ¶¶ 11-12), so as to give the Levins a preference over the Phase One Blocked Assets.  *See* C.P.L.R. 5234; *Kitson & Kitson v. City of Yonkers*, 10 A.D.3d 21, 25-26 (Sup. Ct. App. Div. 2004).  The Heiser Third Party Defendants may not use the Levins' action and the interpleader complaint to try to put themselves in a better position vis-a-vis the Levins.  The Court allowed the Greenbaum, Acosta and Heiser parties to be interplead based on the actions they had allegedly taken before the Levins initiated their action.  Third Party Defendants cannot rely on actions taken after they became interpleader defendants to try to better their position in relation to the Levins.  *See Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 144 (2d Cir. 1988) ("the court should normally determine priority as of the time the [interpleader] fund was created"); *White v. F.D.I.C.*, 19 F.3d 249, 252 (5th Cir. 1994) ("[W]e join our brethren of the Second Circuit to hold that activity subsequent to the initiation of an interpleader action is normally immaterial in determining which claimant has a superior right to the interpleader fund."); *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997) ("As the entire point of an interpleader action is to resolve then competing

rights and claims, it makes perfect sense that the action itself cannot be used as a vehicle for further jockeying for claim position.").

## VIII.   THE HEISERS MARYLAND WRIT CANNOT REACH THE BLOCKED ASSETS AT DISPUTE HERE

The Heisers have only writs issued by a court in Maryland, which cannot reach the Blocked Assets located in the Southern District of New York. *See* Heiser Separate Statement of Undisputed Facts ¶ 11.  Fed. R. Civ. P. 69 requires that New York law be followed for execution proceedings unless federal law trumps.  C.P.L.R. § 5230 provides that "an execution may be issued from the supreme court, county court or a family court, in the county in which the judgment was first docketed."  The C.P.L.R. does not allow the use of non-New York writs. Rather, a party that has a non-New York judgment must register their judgment in New York and then seek a writ from the New York court where the judgment was docketed.  The procedure for registering a judgment obtained from a state court in a New York state court is laid out in Article 54 of the Civil Practice Law and Rules, cited as the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), which sets forth the criteria under which a judgment creditor from another state can convert a judgment into a New York judgment.  *See* C.P.L.R. 5401, et. seq.  For federal judgments, 28 U.S.C. § 1963 applies and provides**:**

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.  The procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments.

28 U.S.C. § 1963.

The Heisers have provided no proof that they have valid New York issued writs.  Under applicable New York and federal law, their Maryland writs do not allow them to execute on property in the Southern District of New York.

## IX.   CONCLUSION

██████ assets have been blocked under the IEEPA and Executive Orders Nos. 13244 and 13382, making them blocked assets under TRIA's definition.  TRIA allows for the attachment and execution to satisfy a § 1605(a)(7) judgment on any blocked Iranian assets and assets in which Iran has an interest, and those of its agents and its instrumentalities, which include the ██████ Blocked Assets here.  Further, ██████ is an organ of Iran and, therefore, its assets may be attached or executed on under TRIA.  Finally, the Heisers have no standing to raise defenses on behalf of ██████ and have no valid New York based writs that may reach these assets.  For all of these reasons, the Court should grant the Levins' turnover motion for all Phase One assets, including the blocked account which holds the funds to which ██████ is the beneficiary, and should deny the Heisers' untimely counter motion.

Dated:  September 24, 2010

HOWARTH & SMITH

By:   _/s/Suzelle M. Smith_____
Suzelle M. Smith
Don Howarth
523 West sixth Street, Suite 728
Los Angeles, California  90014
ssmith@howarth-smith.com
*Attorneys for Plaintiffs*