UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY LEVIN and DR. LUCILLE LEVIN,

       Plaintiffs,

    -v-

BANK OF NEW YORK, JP MORGAN
CHASE, SOCIETE GENERALE and
CITIBANK,

       Defendants.
_____

THE BANK OF NEW YORK MELLON,

      Third-Party Plaintiff,

    -v-

███████████████████████

       Third-Party Defendants.

_____

JPMORGAN CHASE BANK, N.A.,

      Third-Party Plaintiff,

    -v-

████████████████████████████

       Third-Party Defendants.

CAPTION CONTINUED ON NEXT PAGE

(FILED PARTIALLY UNDER SEAL DUE
TO CONFIDENTIAL INFORMATION
PER ORDER DATED JANUARY 21,
2010)


Civ. No. 09 CV 5900 (RPP)


**PLAINTIFFS' MEMORANDUM OF
LAW IN REPLY TO CITIBANK, N.A.
AND JPMORGAN CHASE BANK,
N.A.'S RESPONSE TO PLAINTIFFS
PARTIAL MOTION FOR SUMMARY
JUDGMENT ON CLAIMS FOR
TURNOVER ORDER PHASE ONE
ASSETS**

**[Local Rule 56.1 Response and
Counterstatement of Undisputed Facts;
Supplemental Declaration of Suzelle M.
Smith and Exhibits Thereto Filed
Concurrently Herewith]**


DATE:  September 29, 2010
TIME:  9:30 a.m.
PLACE:  Courtroom 24A

10:P2404002.doc

SOCIETE GENERALE,

      Third-Party Plaintiff,

    -v-

█████████████████████

      Third-Party Cross-Claim
      Defendant, and

██████████████

      Third-Party Defendants.

_____

CITIBANK, N.A.,

      Third-Party Plaintiff,

    -v-

██████████████████████

      Third-Party Defendants.

_____

THE BANK OF NEW YORK MELLON,
JPMORGAN CHASE, N.A., SOCIETE
GENERALE and CITIBANK, N.A.,

      Third-Party Plaintiffs,

    -v-

STEVEN M. GREENBAUM, et al.

      Third-Party Defendants.

Civ. No. 09 CV 5900 (RPP)

CAPTION CONTINUED ON NEXT PAGE

10:P2404002.doc

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, JPMORGAN CHASE BANK, N.A., SOCIETE GENERALE and CITIBANK, N.A., <br><br>    Third-Party Plaintiffs, <br><br>  -v- <br><br> THE ESTATE OF JAMES SILVIA AND LYNNE MICHOL SPENCER, et al., <br><br>    Third-Party Defendants. | Civ. No. 09 CV 5900 (RPP) |

**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO CITIBANK, N.A. AND JPMORGAN CHASE BANK, N.A.'S RESPONSE TO PLAINTIFFS PARTIAL MOTION FOR SUMMARY JUDGMENT ON CLAIMS FOR TURNOVER ORDER PHASE ONE <u>ASSETS</u>**

HOWARTH & SMITH
Suzelle M. Smith
Don Howarth
523 West Sixth Street, Suite 728
Los Angeles, California  90014
Telephone:  (213) 955-9400

*Attorneys for Plaintiffs*

10:P2404002.doc

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

TABLE OF AUTHORITIES .................................................................................. ii-iii

I.    INTERPLEADER DEFENDANTS' RESPONSE IS PROCEDURALLY DEFECTIVE
      TO RAISE A TRIABLE ISSUE TO DEFEAT SUMMARY JUDGMENT AND
      TURNOVER TO THE LEVINS ......................................................................... 1

II.   ALL THE PHASE ONE BLOCKED ASSETS ARE SUBJECT TO EXECUTION
      BY THE LEVINS IN ORDER TO SATISFY THEIR JUDGMENT ................................. 5

      A.    The Court Must and Can Decide the Proper Disposition of the Blocked Assets
            at Issue Here............................................................................................ 5

      B.    The Levins Have Proven Under TRIA That They Are Entitled to the Blocked
            Assets, Including Blocked Wire Transfers at Issue Here ........................................ 7

      C.    TRIA Allows for the Attachment of Assets Blocked under the International
            Emergency Powers Act in which Iran has an Interest ................................. 9

III.  CONCLUSION................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

## <u>CASES</u>

*Hausler v. JPMorgan Chase N.A., Citibank, N.A., UBS AG, The Royal Bank of Scotland, N.V., Bank of America, N.A.*,
    No. 09-10289 (S.D.N.Y. Sep, 13, 2010).......................................................................... passim

*Indianapolis Colts v. Mayor & City Council of Baltimore*,
    733 F.2d 484 (7th Cir. 1984) .................................................................................................. 3

*Rux v. ABN-AMRO Bank*,
    No. 08-6588 (S.D.N.Y. Apr. 14, 2009)............................................................................. 6, 7, 8

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
    585 F.3d 58 (2d Cir. 2009)..................................................................................................... 13

*Weininger v. Castro*,
    462 F. Supp. 2d 457 (S.D.N.Y. 2006) ............................................................................... 3, 6, 7

*Weinstein v. Islamic Republic of Iran*,
    624 F. Supp. 2d 272 (E.D.N.Y. 2009) ............................................................................... 6, 7, 9

## <u>STATUTES AND RULES</u>

28 U.S.C. § 1605(a)(7)....................................................................................................................... 5

28 U.S.C. § 1610(f)(2)(A)................................................................................................................... 4

28 U.S.C. § 1608(e) ........................................................................................................................... 7

28 U.S.C. § 1615(a)(7)....................................................................................................................... 7

31 C.F.R. § 500 ................................................................................................................................ 12

31 C.F.R. § 501 ................................................................................................................................ 12

31 C.F.R. § 535 ........................................................................................................................... 11, 12

31 C.F.R. § 539 ................................................................................................................................ 12

31 C.F.R. § 544 ................................................................................................................................ 12

31 C.F.R. § 544.201 ......................................................................................................................... 12

31 C.F.R. § 544.201(a)..................................................................................................................... 13

31 C.F.R. § 544.301 ................................................................................................ 12

31 C.F.R. § 544.305 ................................................................................................ 12

31 C.F.R. § 544.307 ................................................................................................ 12

31 C.F.R. § 544.308 ................................................................................................ 13

31 C.F.R. § 544.411 ................................................................................................ 13

31 C.F.R. § 594 ...................................................................................................... 12

31 C.F.R. § 595 ...................................................................................................... 12

31 C.F.R. § 597 ...................................................................................................... 12

50 U.S.C. § 1701 ............................................................................................... 7, 11

50 U.S.C. § 1702 ...................................................................................................... 7

66 Fed Reg. 49,079 (September 25, 2001) ............................................................... 8

70 Fed. Reg. 38,567 (July 1, 2005) .......................................................................... 8

C.P.L.R. 5225 ........................................................................................................... 7

Fed. R. Civ. P. 56 ..................................................................................................... 6

Fed. R. Civ. P. 69 ..................................................................................................... 7

Arms Export Control Act, § 40 .............................................................................. 12

Export Administration Act, § 6(j) ........................................................................... 12

Foreign Assistance Act , § 620A ............................................................................ 12

I.    **INTERPLEADER DEFENDANTS' RESPONSE IS PROCEDURALLY DEFECTIVE TO RAISE A TRIABLE ISSUE TO DEFEAT SUMMARY JUDGMENT AND TURNOVER TO THE LEVINS**

As the Court is aware, in this action there are four Defendant garnishee New York Banks, Bank of New York Mellon, N.A. ("BNY or Bank of New York"), Societe Generale ("SG"), Citibank, N.A. ("Citibank"), and JPMorgan Chase Bank, N.A. ("JPMorgan") (collectively "NY Banks"), which have accounts holding assets that have been blocked by Executive Orders and by Office of Foreign Asset Control ("OFAC") regulations.  *See* Ex. 2 to Declaration of Suzelle M. Smith in Support of Plaintiffs' Motion for Partial Summary Judgment, filed July 13, 2010 ("Smith Decl."); *see also* Memorandum of Law of Citibank, N.A. and JPMorgan Chase Bank, N.A. in Response to Plaintiffs' Partial Motion for Summary Judgment on Claims for Turnover Order Phase One Assets, filed on September 15, 2010 ("Citibank-JPMorgan Response"), at 1. None of the garnishee NY Banks has filed an "objection" or "opposition" to the Levins' Motion.[1]

The Levins filed a complaint against the Defendant NY Banks and now seek an order of summary judgment and turnover of the designated Phase One Blocked Assets ("Blocked Assets").  *See* Memorandum of Law in Support of the Levins' Motion for Partial Summary Judgment on Claims for Turnover Order Phase One Assets, filed on July 13, 2010.  ("Levins'

---

[1] Only Citibank and JPMorgan filed a Response to the Levins' Motion for Summary Judgment. Citibank and JPMorgan filed Declarations in support of their Responses.  Citibank, JPMorgan, and BNY filed Responses to the Levins' Rule 56.1 Separate Statement.  Nothing filed by Citibank, JPMorgan or BNY purports to offer an objection or opposition to the Levins' Motion for Summary Judgment and they do not offer any admissible evidence to raise any triable issue of fact.  *See* Fed. R. Civ. P. 56.  Since Citibank and JPMorgan filed a consolidated paper, this reply brief may be 15 pages per the Court's standing order.  *See* 4/1/09 Standing Order ("Individual Practices of Judge Robert P. Patterson, Jr.") at ¶ 2.B.  Plaintiffs' note however that Citibank-JPMorgan attached over 100 pages of improper "exhibits" to their Response, including an entire 27-page "amicus" brief, without leave of Court.  The Levins could not address every citation and argument raised by Citibank-JPMorgan, given the Court's page limitations.  The Levins incorporate by reference the Levins' Oppositions and Replies to the Greenbaum/Acosta and Heiser papers filed on September 24, 2010.

Motion for Summary Judgment"). All of the Defendant NY Banks are interpleader Third Party

Plaintiffs, and they have sued and served all third parties which might have any interest or claim

to the Blocked Assets. *See* Court's Order of January 22, 2010; *see also* Citibank-JPMorgan

Response at 10.

> The purpose of filing and serving this Third-Party Complaint was to make
> sure that all parties to the blocked funds transfers in Phase 1 of this action
> had notice of this proceeding and an opportunity to appear and advise the
> Court of any objection they might have to turnover of the funds… to the
> Plaintiffs or to other judgment creditors of the Islamic Republic of Iran.

Declaration of J. Kelley Nevling, Jr. in Support of the Bank of New York Mellon's Response to

Plaintiffs' Motion for Partial Summary Judgment, filed on September 15, 2010 ("Nevling BNY

Decl.") at 4.

 This Court authorized Defendants to file and serve third party interpleader complaints, "if

and to the extent that Defendants believe any third parties may or do have any right, title, claim,

or interest to or in any of the Phase 1 Accounts [they may file interpleader complaints]…"

Court's Order of January 11, 2010 at ¶ 2. The NY Banks did file interpleader complaints. The

Third Party Defendants include the United States of America and other judgment creditors,

entities involved in the wire transfers and accounts which OFAC ordered placed in blocked

interest bearing accounts. Nevling BNY Decl. at 3-9. Notwithstanding the fact that all

commercial or foreign governmental parties with any interest in or claim to the accounts holding

Blocked Assets have been sued and served herein as Third Party Defendants, none has appeared

and asserted a right or claim to the Blocked Assets[2], and none has filed a response to the Levins'

---

[2] ████████████████████████████████████████████████████████████████ have appeared and stated that they make no
claim to the funds at issue. *See* Exs. D, E, and F to Nevling BNY Decl. ████████████
relinquished all rights in SG blocked accounts and was dismissed. *See* Stipulation and Order of
Dismissal of Interpleader Action and Crossclaim as Against ████████████ with Prejudice,

Motion for Summary Judgment or raised an objection to the Levins' request that they be granted summary judgment and that a turnover order be entered in their favor as to all the Phase One Blocked Assets.  *See* Local Rule 56.1 Separate Statement of Undisputed Facts in Support of Plaintiffs' Motion for Partial Summary Judgment on Claims for Turnover Order Phase One Assets, filed on July 13, 2010 ("Levin S.S.") ¶¶ 10, 12, 17, 34-37; *see also* Response of the Bank of New York Mellon to Plaintiffs' Rule 56.1 Statement filed on September 15, 2010 ("BNY S.S.") ¶¶ 10, 12, and 17; *see also* Response of Defendant JPMorgan Chase Bank, N.A. to Plaintiffs' Rule 56.1 Statement, filed on September 15, 2010 ("JPMorgan S.S.") ¶ 36.  In particular, despite written invitation by this Court, the United States (including OFAC) has declined to appear or make any challenge to the Levins' Complaint and Motion.  *See* Ex. 54 to Smith Decl.  The Defendant NY Banks are all interpleader Third Party Plaintiffs.  They have all taken the position that they claim no rights to the Blocked Assets for themselves.  *See* Citibank-JPMorgan Response at 2-3.

      The historical and still primary purpose of interpleader is to enable a neutral stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over the stake to the wrong party.  *See Indianapolis Colts v. Mayor & City Council of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984).  Of the four interpleader Third Party Plaintiff NY Banks, only Citibank and JPMorgan have filed any Memorandum in Response[3] to the Levins' Motion for Summary

---

July 26, 2010.  All other Third Party Defendants, including the United States and the Islamic Republic of Iran ("Iran"), have either failed to appear and are in default, or have sought dismissal.  *See* Court's Order of April 30, 2010.

[3] Citibank and JPMorgan filed a "response" rather than an "objection."  As the Court stated in *Weininger v. Castro*, where JPMorgan did the same thing, "JPM Chase characterizes its opposition to Plaintiffs' motions as a 'response' rather than an opposition, presumably so as not to jeopardize its status as a neutral stakeholder under the interpleader doctrine."  *Weininger v. Castro*, 462 F. Supp. 2d 457, 462, n. 1 (S.D.N.Y. 2006).  Citibank also improperly attached, in a declaration of counsel, an amicus brief filed by the Clearing House Association, L.L.C. in the

Judgment.  BNY and SG did not join the Citibank-JPMorgan Response.  The Citibank-JPMorgan

Response is not framed as an objection to the Levins' Motion for Summary Judgment, which, in

any event would be improper for an interpleader Plaintiff.[4]

In order for a motion for summary judgment to be defeated, a non-moving party which is

actually opposing such a motion (unlike Citibank and JPMorgan) must come forward with

admissible evidence in contradiction of the asserted facts.  The United States Supreme Court has

---

*Hausler v. JP Morgan Chase, N.A.* case.  *See* Ex. 6 to Declaration of Sharon L. Schneier in
Support of Citibank, N.A.'s Response to Plaintiffs' Partial Motion for Summary Judgment on
Claims for Turnover Order Phase One Assets, filed on September 15, 2010 ("Schneier Citibank
Decl.").  Citibank did not request permission to file a brief in this action under Fed. R. App. P.
29.  It is a misuse of the process and the rules for Citibank to import an amicus brief without
leave of court, and to in effect extend its own page limitations by an additional 27 pages.  The
Court should ignore Citibank's improper amicus brief, which in any event also is wrong on the
law.  Citibank also improperly attaches a letter filed by OFAC on August 22, 2008 in *Rux v.
ABN-AMRO Bank*, No. 08-6588 (S.D.N.Y. Apr. 14, 2009) (Ex. 55 to Smith Decl.) ("*Rux*").  *See*
Ex. 2 to Schneier Citibank Decl.  There is no indication that OFAC, once its legal position was
rejected in *Rux* in addition to other current events, including the election of a new President of
the United States, maintains the position rejected by the *Rux* Court.  OFAC did not appeal the
*Rux* decision.  Further, despite the written and repeated invitation of the Court, OFAC has
refused to take any position in this case.  OFAC well knows how to inform the Court that its *Rux*
position remains its position under the present administration, if indeed that were its position.
Since it has not done so, if the Court can infer anything from its silence, it should be that OFAC
has abandoned its *Rux* position.  It is worth noting that 28 U.S.C. § 1610(f)(2)(A) states: "At the
request of any party in whose favor a judgment has been issued with respect to a claim… under
section 1605(a)(7)… the Secretary of the Treasury and the Secretary of State should make every
effort to fully, promptly, and effectively assist any judgment creditor… in identifying, locating
and executing against the property of that foreign state or any agency or instrumentality of such
state."  In fact, OFAC has assisted the Levins by providing information about Blocked Assets
against which they are able to file a collection action, among other things.  *See* Ex. 2 to Smith
Decl.  The Levins have informed OFAC at every step of their efforts to collect based on the
information provided by OFAC.

[4] The Citibank-JPMorgan Response claims that these two banks have no interest in anything
other than ensuring that "the rights of other judgment holders (and terrorist victims) as well as
absent third-party claimants are respected, and that the Banks are protected from the risk of
multiple and inconsistent liability."  Citibank-JPMorgan Response at 2.  While these may be
among their motivations, "Respondents [Banks] would have this Court leave the [blocked] assets
in private hands and grant them indefinite possession and potential beneficial use of the funds,
for what could be years, decades, or even centuries."  *Hausler v. JP Morgan Chase Bank, N.A.,
Citibank, N.A., UBS AG, The Royal Bank of Scotland, N.V., and Bank of America, N.A.*, No. 19-
10289, at 33-34 (S.D.N.Y. Sep. 13, 2010).

clearly stated, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Nothing in the Citibank-JPMorgan Response or any Separate Statement of Defendant NY Banks offers evidence raising a triable issue of fact which would defeat the Levins' Motion for Summary Judgment.[5]  Since no triable issue of fact is raised, and the Levins have met their burden of showing that they are entitled to enforce their 28 U.S.C. § 1605(a)(7) judgment against the accounts holding Blocked Assets of Iran and/or its agencies and instrumentalities, this Court should grant summary judgment and order turnover of the accounts listed in Exhibit 12 to the Smith Decl. without further delay.

## II.   ALL THE PHASE ONE BLOCKED ASSETS ARE SUBJECT TO EXECUTION BY THE LEVINS IN ORDER TO SATISFY THEIR JUDGMENT

### A.   The Court Must and Can Decide the Proper Disposition of the Blocked Assets at Issue Here

Citibank and JPMorgan filed a Response, which is not an objection, to the Levins' Motion for Summary Judgment, stating that they raise certain "points and authorities for the Court's benefit."  Citibank-JPMorgan Response at 5.  What the Response constitutes, in fact, is a pure advocacy statement espousing the general political interests of major financial institutions, which should be addressed to Congress.  It is fundamentally a request for reconsideration of

---

[5] The only issues that are raised in the Banks' Responses to the Levin S.S. are not material as they would not impact the outcome of the underlying motion.  *See* JP Morgan S.S. ¶¶15, 19, 22, 23, 27, and 53; *see also* BNY S.S. ¶¶14, 19, 22, 23, 27, 29, 47, 49, and 51; *see also* Defendant/Third Party Plaintiff Citibank, N.A.'s Response to Plaintiffs' Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment, filed on September 15, 2010 ("Citibank S.S.") ¶ 16.

motions that Citibank and JPMorgan lost and legal positions that were rejected in two previous

Terrorism Risk Insurance Act ("TRIA") cases: *Rux v. ABN-AMRO Bank*, No. 08-6588 (S.D.N.Y.

Apr. 14, 2009) (attached as Ex. 55 to Smith Decl.) and *Hausler v. JPMorgan Chase N.A.*, No.

09-10289 (S.D.N.Y. Sep, 13, 2010) (attached as Ex. 1 to Supplemental Declaration of Suzelle M.

Smith, filed on September 24, 2010 ("Supp. Smith Decl.")).  The Citibank-JPMorgan

memorandum is not a proper response to a motion for summary judgment.  *See* Fed. R. Civ. P.

56.

There is nothing theoretical about the issue before this Court.  At the request of

Defendants and interpleader Third Party Plaintiffs here, all possible claimants to the Blocked

Assets in Phase One have been sued and served and are under the jurisdiction of this Court, as

are the Blocked Assets themselves.  *See* Citibank-JPMorgan Response at 3.  There is also no

dispute that the Court has jurisdiction to decide this motion.  *See Hausler v. JPMorgan Chase*

*N.A.*, No. 09-10289, at 35-36 ("[B]y operation of [TRIA and] the CACRs, the EFT proceeds are

indisputably in bank accounts located within the Court's territorial reach, and the Court thus has

in rem jurisdiction.... Since Respondents have placed the blocked funds into accounts located in

this District, the Court has jurisdiction over disputes arising out of these funds"); *see also*

*Weininger v. Castro*, 462 F. Supp. 2d 457, 478, n. 16 (S.D.N.Y. 2006) ("[T]his Court has

authority to exercise jurisdiction here under the rules and procedures applicable under New York

law, and those rules allow jurisdiction under quasi in rem principles where the Court has

jurisdiction over garnishees holding property against which execution is allowed in satisfaction

of the judgment.").

The NY Banks' position, rejected by every court that has addressed the question, is that

electronic funds transfers ("EFTs") are not "blocked assets" that may be attached pursuant to

TRIA.  The Banks argue wrongly that TRIA does not define "blocked assets" and, therefore, the Court must look to New York state law, which does not define EFTs as assets.  As the Honorable Victor Marrero (S.D.N.Y.) recently held, TRIA, read in conjunction with the blocking regulations specified in TRIA, clearly define blocked assets as including EFTs, meaning the assets at issue here are attachable pursuant to TRIA.  *See Hausler v. JPMorgan Chase N.A.*, No. 09-10289.

**B.    The Levins Have Proven Under TRIA That They Are Entitled to the Blocked Assets, Including Blocked Wire Transfers at Issue Here**

In their Motion, the Levins set forth the elements they were required to prove in order to satisfy their judgment by executing on the Blocked Assets held in accounts in the Defendant New York Banks.  The Levins provided evidence of each element of proof to support their motion.  *See generally* Levins' Motion for Summary Judgment and Levins S.S.[6]  None of the NY

---

[6] In summary, under the controlling law, as set forth in TRIA, C.P.L.R. 5225, Fed. R. Civ. P. Rule 69, *Weininger v. Castro*, 462 F. Supp. 2d 457, *Weinstein v. Islamic Republic of Iran*, 624 F. Supp. 2d 272 (E.D.N.Y. 2009) and *Rux v. ABN-AMRO Bank, N.V.*, No. 08-6588, there are no issues of disputed facts and the Levins provided evidence that: (1) they have a judgment entered against Iran for $28,807,719 in compensatory damages under 28 U.S.C. §1615(a)(7) (*See* Ex. 13 to Smith Decl.); (2) they served Iran with this judgment under 28 U.S.C. §1608(e) on October 14, 2008 (*See* Ex. 16 to Smith Decl. and Ex. 3 to Smith Supp Decl.); (3) they registered this judgment under 28 U.S.C. §1963 in the Southern District of New York on April 20, 2009 (*See* Ex. 18 to Smith Decl.); (4)  they delivered writs issues by the clerk of the Southern District of New York on June 19, 2009 to the U.S. Marshall (*See* Exs. 17-20 to Smith Decl.); (5) the U.S. Marshall served these writs on the four NY Banks (*See* Exs. 17-20 to Smith Decl.); (6) the Levins initiated this action on June 22, 2009 (*See* Ex. 62 to Smith Decl.); (7) the accounts held by Defendants are available for execution by the Levins, as they are Blocked Accounts under TRIA, Executive Orders Nos. 13224 and 13382, 50 U.S.C. §§ 1701-1702, 31 C.F.R. § 544 (2009) and 31 C.F.R. § 594 (2008); (8) the Levins gave Iran timely and appropriate notice of this proceeding (*See* Exs. 21-22 to Smith Decl.); (9) the NY Banks interplead all possible parties which might claim an interest in the Blocked Accounts and served these parties (*See* Citibank-JPMorgan Response at 3); (10) all commercial entities and governmental entities have either failed to appear, have been dismissed or have filed statements of non interest (*See* Exs. 53-54 to Smith Decl.); and (11) no third party judgment holder obtained a valid writ, delivered any such writ to the U.S. Marshal before the Levins delivered their writs (*See* Exs. 17-20 to Smith Decl.; *see also* Greenbaum and Acosta Judgment Creditor's Response and Counterstatement to the

banks has raised any objection or set forth any evidence of a material disputed issue of fact which would form a basis for this Court to deny the Levins' summary judgment and petition for an order requiring turnover of the Blocked Funds.  *See generally* Citibank S.S., BNY S.S., and JPMorgan S.S.

In their Response, Citibank and JPMorgan suggest that the Blocked Assets now held in blocked interest bearing accounts,[7] which are the product of EFTs, are immune from execution in TRIA cases, even though no entity with any interest in those funds has come forward to raise such an objection here.  Citibank and JPMorgan cite no case authority or statute which deals with TRIA in support of their position, but appeal to cases dealing with completely different statutory schemes.

Citibank and JPMorgan do inform the Court that the only TRIA cases where the issue of whether blocked accounts holding OFAC blocked EFTs has been considered, *Rux v. ABN-AMRO Bank, N.V.*, No. 08-6588, and *Hausler v. JPMorgan Chase N.A*, No. 09-10289, have both rejected the Citibank-JPMorgan position and have held that blocked accounts which hold the proceeds of OFAC frozen EFTs are subject to execution and satisfaction by victims of terrorism. *See* Citibank-JPMorgan Response at 4.

/ / /

/ / /

---

Levins' Local Rule 56.1 Statement of Undisputed Facts, filed September 13, 2010; *see also* Local Rule 56.1 Separate Statement of Disputed Facts in Support of the Estate of Michael Heiser et al's Opposition, filed September 13, 2010).

[7] All Defendants have placed the Phase One Blocked Assets into blocked interest bearing accounts pursuant to 31 C.F.R. § 544.504.  The Phase One Blocked Assets come under Executive Orders and OFAC regulations, including those designating proliferators of weapons of mass destruction and their supporters and specially designated global terrorists. *See*, e.g., 31 C.F.R. § 544; *see also* Executive Order No. 13382, 70 Fed. Reg. 38,567 (July 1, 2005); *see also* Executive Order No. 13224, 66 Fed Reg. 49,079 (September 25, 2001); *see also* 31 C.F.R. §§ 594-595 (2008); *see also* Citibank-JPMorgan Response at 8.

C.      **TRIA Allows For the Attachment of Assets Blocked Under the International Emergency Powers Act in which Iran has an Interest**

In a very lengthy opinion, the Honorable Victor Marrero held fourteen days ago that EFTs frozen pursuant to statutes specified in TRIA are subject to execution.  *See Hausler v. JPMorgan Chase N.A.*, No. 09-10289, at 25.  Judge Marrero has been handling TRIA cases for at least 10 years, has authored numerous opinions on TRIA collection cases, and has never been reversed in a TRIA case by the Second Circuit.  In considering the issue of EFTs and whether they are subject to execution, the court in *Hausler* accepted a lengthy amicus brief from a banking interest.  *See Hausler v. JP Morgan Chase Bank, N.A.*, No-09-10289 at 2.  It is fair to say that the *Hausler* opinion evidences careful thought on the issue, given the federal statutes and Second Circuit law.

In *Hausler*, the court states:

> ...TRIA § 201's legislative history also evinces a broader Congressional purpose to "deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction."  H.R. Conf. Rep. No. 107779 at 27 (emphasis added).  Courts have routinely interpreted such "notwithstanding" provisions to supersede all other laws. See Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 54 (2d Cir. 2010) (finding that TRIA § 201(a)'s Notwithstanding Clause would abrogate conflicting treaty) (citing Cisneros v. Alpine Ridge Group, 508 U. S. 10, 18 (1993), and to indicate preemption, see, e.g., City of N.Y. v. Permanent Mission of India to the United Nations, No. 08-1805-cv, 2010 WL 3221889, at *15 (2d Cir. Aug. 17, 2010). Accordingly, the Court finds that, insofar as Article 4-A conflicts with TRIA, § 201(a)'s opening phrase weighs in favor of preemption.
>
> Even more decisive is the plain language of the CACRs [which are very similar to Iranian Blocking regulations] read in conjunction with TRIA.  The CACRs define both property and interests in property, and TRIA specifically defines blocked assets in reference to the CACRs [and IEEAP] for the purposes of execution under § 201(a).  "Any inquiry into the meaning of a statute generally ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." Weinstein, 609 F.3d at 49 (citing Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002)).  Respondents and the Clearing House argue that TRIA,

like the FDCPA and Rule B, nowhere defines what constitutes a property interest or asset. The Court is not persuaded.

The CACRs [like the Iranian blocking provisions]…  plainly define what constitutes Cuban property or interests in property for the purposes of blocking Cuba's assets as a designated terrorist party. See C.F.R. 31 § 515.311 (defining "property' and "property interest"); id. § 515.312 ("The term 'interest' when used with respect to property shall mean an interest of any nature whatsoever, direct or indirect."); see also Asia Pulp, 609 F. 3d at 120 n.9 ("Regulations that accompany the IEEPA often specifically define the terms 'property' and 'interest' in property ....'); Consarc Corp. v. Iraqi Ministry, 27 F. 3d 695, 701 (D.C. Cir. 1994) ("We think that OFAC may choose and apply its own definition of property interest, subject to deferential judicial review... The OFAC regulations define 'property' and 'property interest' to include 'letters of credit, 'bank accounts and deposits', and any 'present, future or contingent' interests therein." (citing 31 C.F.R. § 575.201)); Bank of N.Y. v. Noriek Nickel, 789 N.Y.S.2d 95, 100 (App. Div. 1st Dep't 2004) (recognizing that OFAC blocking regulations "defined property very broadly to include 'debts, indebtedness [and] obligations'... [and] defined an 'interest' in property equally expansively" (citation omitted)).  The CACR definitions are plainly intended to broadly demarcate the scope of and establish Cuba's interests in specified assets, not to attach consequences to property interests defined elsewhere.  Thus, upon blocking of its assets pursuant to the CACRs, Cuba was determined to have a sufficient property interest in the blocked EFTs at issue here.

Read in conjunction with the CACRs, the plain language of TRIA also supports preemption.  TRIA explicitly indicates that "blocked assets" are to be determined in reference to the CACRs [and Iran Blocking provisions]. As noted above, § 201(d)(2) of TRIA defines "blocked asset" as "any asset seized or frozen by the United States under [§ 5(b)] of the TWEA or under sections 202 and 203 of the IEEPA."  TRIA § 201(d) (2) (emphasis added); see also Smith ex rel. Estate of Smith v. Federal Reserve Bank of New York, 346 F. 3d 264, 271 (2d Cir. 2003) (blocked assets in TRIA to be interpreted by reference to assets blocked under IEEPA). Since the CACRs were enacted under § 5(b) of the TWEA, they are clearly referenced by TRIA.  Accordingly, the Court finds that Congress explicitly directed that TRIA and the CACRs are to be considered in tandem, which establishes a comprehensive statutory scheme that eschews any need for consideration of state definitions of property.

Respondents rely heavily on Asia Pulp to argue that state property law governs the inquiry here, and that TRIA indicates that only assets owned by a terrorist party as defined by state law are subject to execution.  Yet, Asia Pulp itself acknowledges the material difference between the FDCPA and the statutory scheme at issue here.  Finding that "regulations that accompany the IEEPA often specifically define the terms 'property'

and 'interest' in property,' <u>Asia pulp</u>, 609 F.3d at 120 n.9, the Second circuit was careful to indicate that its findings pursuant to <u>Jaldhi</u> regarding attachment against Midstream EFTs under the FDCPA do not necessarily extend to EFTs blocked under OFAC regulations.  <u>See</u> <u>id</u>....

....[H]ere, blocked assets under TRIA are broadly defined as any asset seized or frozen by the United States under the CACRs, and the CACRs block any transactions involving property in which Cuba has <u>any</u> interest of <u>any</u> nature whatsoever, direct or indirect.  <u>See</u> 31 C.F.R. § 515.201.  The Court has finds that TRIA's phrase "blocked assets of that terrorist party" contemplates execution, subject to appropriate turnover proceedings, against all assets blocked pursuant to the CACRs, including those in which Cuba possesses an interest in, rather than actual ownership or title to, a blocked asset.

For decades prior to the passage of TRIA, OFAC regulations have routinely included both property and interests in property among the assets authorized to be blocked. <u>See</u>, <u>e.g.</u>, 31 C.P.R. § 575.20l (Iraq); 31 C.P.R. § 535.201 (Iran); 31 C.F.R. § 537.201 (Burma).  Therefore, when drafting TRIA, Congress was presumably aware of the types of assets blocked under OFAC regulations, and could have easily drawn the distinctions Respondents argue for. As noted above, TRIA § 201(d)(2) defines "blocked assets" to include all assets blocked under the CACRs....

*Hausler v. JP Morgan Chase Bank, N.A.*, No-09-10289 at 14-21 (emphasis in original).

The Iranian Phase One Blocked Assets currently before the Court were blocked under the International Emergency Economic Powers Act ("IEEPA"), which allows the President of the United States and his designees to issue sanctions against, investigate, block, seize, regulate, etc., assets, including property interests of any kind, direct or indirect, of entities, including those of a foreign sovereign and its agencies and instrumentalities, in the interests of the citizens of the United States, even during times of peace.  *See* International Emergency Economic Powers Act of 1977, Pub. L. No. 95-223, 91 Stat. 1625 (codified at 50 U.S.C. § 1701).  IEEPA, exactly like the Trading with the Enemy Act discussed in *Hausler,* permits the President to issue Executive Orders against the Islamic Republic of Iran, and its subdivisions and agencies, such as the

█████████████████████████████████████████████

███████████████████████████████████     *See* Citibank-JPMorgan Response at 7-10.

Executive orders have been issued freezing the Blocked Assets currently at issue before this Court. *Id; see also* Levin S.S. ¶¶ 43, 45, 47, 49, 51, 53, and 55. Under the authority of such Executive Orders, the Secretary of the Treasury has promulgated regulations, which, among other things, require United States financial institutions such as the NY Banks to block and freeze any property interests of Iran, which is a designated state sponsor of terrorism and also as an entity which poses a material risk of the proliferation of weapons of mass destruction. Iran has been designated a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act, section 40 of the Arms Export Control Act, and section 620A of the Foreign Assistance Act. *See* 31 C.F.R. §§ 500, 501, 535, 539, 544, 594, 595, and 597.

Most importantly for the present analysis, the regulations which have blocked the assets currently before the Court have the same definition of interest and property as in the Cuban Asset Control Regulations ("CACRs"), which set out the blocking regulations for Cuba. For instance, 31 C.F.R. § 544.201 states that: "[A]ll property and interests in property that are in the United States… or that are or hereafter come with the possession or control of U.S. persons, including their overseas branches, of… [designated entities including Iran, among others] are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." Further, 31 C.F.R. § 544.301 defines the blocked property to mean "any account or property subject to the prohibitions in § 544.201 held in the name of a person whose property and interests in property are blocked… or in which such person has an interests." Interest in property "means an interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 544.305. Person is defined to include "an individual or entity." 31 C.F.R. § 544.307. The regulations go on to define property and property interest to "include but are not limited to, money, checks, drafts, bullion, bank deposits, savings accounts, debts, indebtedness, obligations, notes, guarantees, debentures… any other

financial instruments, bankers acceptances… pledges,… letters of credit and any documents relating to any rights or obligations thereunder… negotiable instruments, trade acceptances… book accounts, accounts payable… contracts of any nature whatsoever, and any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent. 31 C.F.R. § 544.308. Finally, the Iranian blocking regulations state: "A person whose property and interests in property are blocked pursuant to § 544.201(a) has an interest in all property and interests in property of an entity which it owns, directly or indirectly, a 50 percent or greater interest…." 31 C.F.R. § 544.411.[8] These are the same definitions that the *Hausler* court examined when analyzing the intersection of the CACRs and TRIA.

Therefore, the conclusion reached in *Hausler* – that TRIA, in conjunction with the blocking statutes explicitly mentioned in TRIA, defines property and interests in property to include EFTs – is appropriate here, such that the Phase One Blocked Assets, including the accounts holding the proceeds of EFTs in the financial institutions Defendants own, are available to satisfy the Levins' judgment.

The *Hausler* court also noted that it is significant that no entity with a property right or interest in the EFTs there had come forward to assert any interest, as is the case here. When the court weighed the policy implications inherent in allowing the EFTs to remain in the hands of financial institutions, rather than be used under TRIA to satisfy judgments, the court was

/ / /

---

[8] Citibank and JPMorgan describe wire transfers as a series of "debits" and "credits" of funds which proceed based on "instructions" from banks and their customers who have contractual relationships. *See* Citi-Morgan Response at 12 (quoting *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 60 n.1 (2d Cir. 2009). EFTs are clearly within these Blocking definitions, which is why the NY Banks heed the OFAC regulations and block such transfers putting them into Block Accounts. *See* Citibank-JPMorgan Response at 13-14; *see also* Citibank S.S. ¶ 55; *see also* JPMorgan S.S. ¶ 53; *see also* BNY S.S. ¶ 47, 49 & 51.

compelled to award the blocked funds to the victims, rather than de facto to the interpleader

plaintiffs.

        In blocking the EFTs at issue here, Respondents themselves acknowledged that EFTs constitute prohibited transactions under the CACRs [like the Iranian Blocking Regulations]. Indeed, such a finding is plainly required by the CACRS, notwithstanding the electronic chain of bank debits and credits that Respondents argue renders EFTS a mere series of neutral instructions or Morse code-like transmissions in which no funds or money actually passes from one bank to another. In fact, "transfers of credit through ... any banking institution" are the first type of prohibited transactions listed in CACR § 201. 31 C.F.R. § 515.201.

        Nonetheless, Respondents urge this Court to accept that the EFTs at issue, lawfully blocked by authority of the United States government as property in which Cuba was found to have an interest, should not be considered blocked assets of Cuba because of the peculiar electronic nature of EFTs. Yet, the fallacy inherent in this argumentation is further revealed by considering the practical result of Respondents' position. Respondents urge this Court to accept that EFTs are blockable transactions under the CACRs, yet their blocked proceeds can never be executed against under TRIA because of Article 4-A. Implicit in this argument is that the proceeds of any blocked EFTs are to remain in Respondents' interest-bearing accounts in perpetuity, or until further direction from the federal government.

        In essence, what Respondents argue is that the blocked proceeds are tantamount to unclaimed funds and should be treated in a manner which recalls the <u>cy pres</u> doctrine applicable to the law of trusts. <u>See Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.</u>, 344 U.S. 94, 120 (1952); <u>Van Gemert v. Boeing Co.</u>, 573 F.2d 733, 737 (2d Cir. 1978). But, in their variation of the doctrine, rather than escheating to the state for public disposition, Respondents would have this Court leave the assets in private hands and grant them indefinite possession, and potential beneficial use of the funds, for what could be years, decades, or even centuries. In the meantime, while the blocked funds would lie idle in the banks' vaults. benefitting no one except the financial institutions, claimants holding judgments against designated terrorist states and seeking to redress heinous crimes would remain thwarted in their efforts to obtain due compensation. The evident anomaly, or even inequity, of that circumstance is underscored by situations, such as may prevail in this case, in which, even after the passage of many years and repeated public notice about legal proceedings to execute against the blocked assets, both the originators and the beneficiaries of the EFTs have defaulted, none having stepped forward in court or in proceedings pursuant to the CACRs to oppose the judgment holder's claim or otherwise assert an interest in the frozen funds. In effect,

under Respondents' reckoning of the rules, every time the match
contenders double fault, the banks score a point. The Court is not
persuaded that this self-serving result squares with the plain remedial
purpose of TRIA, by which Congress explicitly promulgated a
comprehensive scheme providing that any assets blocked under the
CACRs or similar OFAC regulations [including those pertaining to Iran]
are to be subject to judgment execution for the benefit of victims of
terrorist states -- most fittingly, as in this case, when the crime victim was
an American citizen.

*Hausler v. JP Morgan Chase Bank, N.A.*, No-09-10289 at 32-35.

## III.    CONCLUSION

All the parties who might have an interest in the Phase One Accounts have been given

notice and an opportunity to present any claims they may have to the Blocked accounts.  No

party has shown a superior interest to the Levins.  *See* Plaintiffs' Memorandum of Law in Reply

to Greenbaum and Acosta Judgment Creditors' Opposition to Plaintiffs' Motion For Partial

Summary Judgment on Claims For Turnover Order Phase One Assets, filed on September 24,

2010.   Further, TRIA, in conjunction with IEEPA regulations which blocked the assets at issue

here, defines property and interests in property to include EFTs, meaning EFTs are attachable.

For these reasons, the Levins' Motion for Summary Judgment should be granted, and the

Defendants ordered to turn over the Phase One Blocked Assets with all due speed.

Dated:  September 27, 2010                    HOWARTH & SMITH


                                        By:       _/s/Suzelle M. Smith_____
                                                  Suzelle M. Smith
                                                  Don Howarth
                                                  523 West sixth Street, Suite 728
                                                  Los Angeles, California  90014
                                                  ssmith@howarth-smith.com

                                                  *Attorneys for Plaintiffs*