**CONFIDENTIAL – FILE UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | | |
|---|---|---|
| JEREMY LEVIN and DR. LUCILLE LEVIN, | : | Case No. 09 Civ. 5900 (RPP) |
| Plaintiffs, | : | **FILE UNDER SEAL** |
| -against- | : | |
| BANK OF NEW YORK, et al., | : | |
| Defendants. | : | |

-----------------------------------------------------------------x

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, | : |
| Third-Party Plaintiff, | : |
| -against- | : |
| ESTATE OF MICHAEL HEISER, et al., | : |
| Third-Party Defendants. | : |

-----------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANT AND THIRD-PARTY PLAINTIFF THE BANK OF NEW YORK MELLON WITH RESPECT TO WHETHER A WRIT OF GARNISHMENT ISSUED IN THE STATE OF MARYLAND REACHES ASSETS LOCATED IN THE STATE OF NEW YORK**

LEVI LUBARSKY & FEIGENBAUM LLP
1185 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel. No. (212) 308-6100
E-mail Address hlevi@llf-law.com

*Attorneys for Defendant and Third-Party Plaintiff The Bank of New York Mellon*

CONFIDENTIAL - FILE UNDER SEAL

# MEMORANDUM OF LAW OF DEFENDANT AND THIRD-PARTY PLAINTIFF THE BANK OF NEW YORK MELLON WITH RESPECT TO WHETHER A WRIT OF GARNISHMENT ISSUED IN THE STATE OF MARYLAND REACHES ASSETS LOCATED IN THE STATE OF NEW YORK

Defendant and Third-Party Plaintiff The Bank of New York Mellon ("BNY Mellon"), by its attorneys, Levi Lubarsky & Feigenbaum LLP, submits this Memorandum of Law, together with the declaration of J. Kelley Nevling, Jr. executed on October 26, 2010 ("Nevling Supp. Dec."), and the declaration of Linda Hall executed on October 25, 2010 ("Hall Dec."), to address the issue discussed in the Supplemental Submission of the Estate of Michael Heiser, et al. Addressing the Maryland Writ of Garnishment Served on the Bank of New York Mellon dated October 6, 2010 (the "Heiser Submission").

The Heiser Submission asserts that under Maryland law, which it views as controlling, a bank account has no situs in a particular state, but only in the United States as a whole, and hence a writ of garnishment issued by a court in Maryland reaches all of the funds held by BNY Mellon anywhere in the United States. In fact, however, the governing law is that of New York, and under New York law the Heiser Parties' Maryland writ is subject to the separate entity rule.

## The Pertinent Facts

Third-Party Defendants Estate of Michael Heiser, et al. (the "Heiser Parties") brought suit against the Islamic Republic of Iran and certain related parties (collectively, "Iran") in the United States District of Court for the District of Columbia (the "DC Court") and obtained a default judgment on December 22, 2006 in the amount of $254,431,903.00 (the "DC Judgment"). *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 356 (D.D.C. 2006). The DC Judgment was registered with the

**CONFIDENTIAL - FILE UNDER SEAL**

United States District Court for the District of Maryland on August 27, 2008 (Nevling Supp. Dec. Exh. 1) and with the United States District Court for the Southern District of New York on September 8, 2008 (Amended Answer ¶ 35, Nevling Supp. Dec. Exh. 2).

The Heiser Parties then obtained a modified judgment on September 30, 2009 that increased their total recovery to $591,089,956.00 (the "Amended DC Judgment") (Nevling Supp. Dec. Exh. 3).[1]  They have evidently not registered the Amended DC Judgment in Maryland or New York, electing instead to enforce their earlier judgment.

On April 30, 2010 the Heiser Parties obtained a writ of garnishment from the Maryland District Court (the "Maryland Writ"), and this writ was served on BNY Mellon in Maryland on May 3, 2010 (Nevling Supp. Dec. Exh. 4).  BNY Mellon then obtained leave of Court to bring the Heiser Parties into this action in the Southern District as third-party defendants.  The Heiser Parties were served with a third-party complaint and filed their amended answer in this case on July 6, 2010 (Nevling Supp. Dec. Exh. 2).

On July 13, 2010, the Plaintiffs, Jeremy and Dr. Lucille Levin (the "Levins"), moved for partial summary judgment to obtain the turnover to them of the so-called Phase 1 Assets held by the defendant banks, including the proceeds of three wire transfers that had been blocked by defendant BNY Mellon and were being held by it in blocked accounts (the "BNYM Phase 1 Assets") as required by regulations issued by the Office of Foreign Assets Control of the United States Department of the Treasury.  On

---

[1] The Amended DC Judgment was based on section 1605A of the Foreign Sovereign Immunities Act of 1976 (the "FSIA"), 28 U.S.C. § 1605A, effective January 28, 2008, which created a federal right of action for damages in favor of victims of terrorist acts (including certain of the Heiser Parties) who did not have a right of action under state law and gave victims of terrorism the right to recover punitive damages. *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20 (D.D.C. 2009).

CONFIDENTIAL - FILE UNDER SEAL

September 13, 2010, the Heiser Parties filed a cross-motion demanding that the Court turn over the BNYM Phase 1 Assets to them rather than the Levins, on the ground that the Maryland Writ gave the Heiser Parties priority over the Levins with respect to these assets. In response to the Heiser Parties' Rule 56.1 Statement, BNY Mellon raised the issue of whether "a writ of garnishment issued by a court in Maryland and served on [BNY Mellon] in Maryland would permit execution on assets held by it in New York. [citations omitted]." (Nevling Supp. Dec. Exh. 5, ¶ 12).

There are nine other groups of judgment creditors or parties seeking judgments against the Islamic Republic of Iran who have also been made third-party defendants in this proceeding. Two such groups, the Acosta Judgment Creditors and the Greenbaum Judgment Creditors, have also cross-moved for summary judgment, but they are seeking the turnover of Phase 1 Assets held by banks other than BNY Mellon.

## Argument

### I

### THE HEISER PARTIES' RIGHTS IN THE BNYM PHASE 1 ASSETS ARE GOVERNED BY NEW YORK LAW

The Heiser Parties contend that because they obtained a writ of garnishment from a federal court in Maryland and served it on BNY Mellon in Maryland, Maryland law governs their right to enforce the DC Judgment against BNY Mellon in this action. In fact, however, their rights to enforce the Maryland Writ with respect to the BNYM Phase 1 Assets are governed by the law of New York.

The Heiser Parties do not dispute that state rather than federal law provides the answer to the question of which group of judgment creditors has priority

3

**CONFIDENTIAL - FILE UNDER SEAL**

with respect to the BNYM Phase I Assets. That issue, being outcome-determinative, is substantive rather than procedural and so is governed by state law.

  A federal court sitting in New York looks to New York's choice of law rules to determine what state's substantive law applies to any particular issue that arises under state law. *See Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 602, 604-07 (2d Cir. 2001) (In dealing with state-law issues, a federal court must apply "the choice of law rules of the forum state," even where federal court jurisdiction is not based on diversity of citizenship, unless a substantial federal policy dictates otherwise).

  The courts of New York generally decide choice-of-law questions relating to rights in personal property by looking to the law of the state that has the greatest interest in applying its law to a particular issue. *Bakalar v. Vavra*, 08-5119-cv, 2010 WL 3435375, at **6-9 (2d Cir. Sep. 2, 2010). That approach has been followed in cases involving the right of a judgment creditor to enforce a judgment entered by a federal court. In *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 84-88 (2d Cir. 2002), the Court employed an interest analysis approach in determining that New York law would govern the right of a judgment creditor to enforce its judgment against a foreign nation and one of its agencies or instrumentalities by executing on funds held by seven New York banks.

  The State of Maryland has no interest whatsoever in having its law apply in this case. The Heiser Parties filed their suit and recovered their judgment in federal court in the District of Columbia, not Maryland. More to the point, none of the Heiser Parties is domiciled in Maryland. In awarding them relief, the DC Court looked to "the law of each plaintiff's domicile at the time of the attack," which required "consideration

of the law of thirteen different states:" Florida, California, Louisiana, New Hampshire, Texas, Ohio, Minnesota, Wisconsin, New York, North Carolina, Indiana, Oklahoma and Kansas. 466 F. Supp. 2d at 266, 271, 304, 319, 327, 332, 337, 341, 343, 345, 349, 352, 354, 355 (emphasis in original). Maryland law was not considered because none of the plaintiffs resided in Maryland. The tortious conduct that gave rise to the Heiser Parties' claims also occurred outside of Maryland, in Saudi Arabia. *Id.* at 251-52. Defendant Iran, needless to say, has no presence in the State of Maryland, and neither do any of its alleged agencies and instrumentalities or any other party that was a party to any of the blocked funds transfers and so might have an interest in the BNYM Phase 1 Assets on that ground.

There is also no basis for asserting that the BNYM Phase 1 Assets are located in Maryland, and no one is asserting such a claim. The Heiser Parties contend instead that the funds in question, being intangible assets, have no location more specific than "a situs located in the United States" (Supp. Mem. p. 2). The New York courts, however, have had no difficulty in determining that funds on deposit with a bank, even if intangible, are located in a specific state such as New York. *See, e.g., Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52-54 (2d Cir. 1965) (Funds were held by Manufacturers Hanover Trust Company in the Southern District and so could not be reached by serving a bank branch in the Eastern District); *Wyatt v. Fulrath*, 16 N.Y.2d 169, 173, 264 N.Y.S.2d 233, 235-36 (1965) (Certain funds were held in accounts in New York, and hence subject to New York law, but others held in accounts outside New York were not); *Feuchtwanger v. Central Hanover Bank & Trust Co.*, 288 N.Y. 342, 345 (1945) ("The interest of Banque Jordaan in [funds held on deposit by a

**CONFIDENTIAL - FILE UNDER SEAL**

bank] was clearly personal property within this state and subject to its dominion"); *National Union*, 269 A.D.2d at 102, 703 N.Y.S.2d at 4 (Determining that bank accounts at issue were located in Florida even though the bank had branches in New York); see also *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guar. Corp.*, 921 F. Supp. 1113, 119 (S.D.N.Y. 1996), quoting from *Severnoe Secs. Corp. v. London & Lancashire Inc.*, 255 N.Y. 120, 123 (1931) (Cardozo, J.) (While "the situs of intangible assets 'is in truth a legal fiction, . . . there are times when justice or convenience requires that a legal situs be ascribed to them'").

Indeed, when the Heiser Parties' counsel was asked by the Court why his clients had served their writ of garnishment in Maryland and not New York, counsel admitted that it was solely because his law firm's [REDACTED] (Nevling Supp. Dec. Exh. 6, pp. 41, 42-43).

The State of New York, by contrast, has an important interest in having its law apply. BNY Mellon is a bank chartered in New York State that has its corporate headquarters and many of its operations here (Nevling Supp. Dec. ¶¶ 8-9). Moreover, the BNYM Phase 1 Assets are being held by BNY Mellon in accounts that have a demonstrable situs in New York, and the BNY Mellon employees who are responsible for administering these accounts are located here (Hall Dec. ¶3 and Exh. A). If BNY Mellon were subject to the laws of any state where any of the numerous judgment creditors of Iran might file its judgment and obtain a writ, then one group of judgment holders could file in Maryland and achieve priority under its law, another could file in

**CONFIDENTIAL - FILE UNDER SEAL**

New York and achieve priority there, a third could achieve priority under Connecticut law, and so forth. This would put BNY Mellon in jeopardy of being subject to inconsistent rulings and multiple liability to competing claimants. The State of New York has a valid interest in ensuring that its financial institutions are not placed in that position. That interest is particularly significant because an important purpose of New York's separate entity doctrine, the substantive rule of law at issue here, is to protect parties such as BNY Mellon in such situations. It should also be noted that some of the Heiser Parties are domiciled in New York State, so even on that score New York has a greater interest than Maryland in the outcome of this case.

The Heiser Parties argue (Heiser Submission p. 6) that that the relevant choice-of-law rule is set forth in Rule 69 of the Federal Rules of Civil Procedure, which states that a party seeking to enforce a judgment in federal court may do so "under the circumstances and in the manner provided by the law of the state in which the district court is held." BNY Mellon disagrees, as indicated above, and contends that the proper choice of law rule is the one followed in the *Karaha Bodas* case. For present purposes, however, it makes no difference. Even if Rule 69 were controlling, it would dictate that this Court must follow "the law of the state is which the . . . court is held," which in this instance is New York State.

The case of *American Fidelity Fire Ins. Co. v. Paste-Ups Unlimited, Inc.*, 368 F. Supp. 219 (S.D.N.Y. 1973), illustrates the point. That case involved the efforts of competing creditors of Deductible Coverage Agency, Inc. to assert rights in a certificate of deposit in the possession of an insurance company ("American") in New York. American brought an interpleader action to determine which of the creditors had priority.

**CONFIDENTIAL - FILE UNDER SEAL**

The *Karaha Bodas* case had not yet been decided, so the Court looked to Rule 69 for guidance and concluded that it should apply the law of New York, the place where the case was being heard. On that basis the Court ruled that two parties who had obtained judgments in New York and caused writs of execution to be served on American in New York in September 1972 and January 1973 had priority over trustees who had obtained a writ of garnishment in Washington State and had it served on American in Washington, even though the Washington State writ had been issued first, in March 1972. The Court explained that under New York law, "rival attaching creditors establish priority in the order in which New York executions . . . are delivered to the New York enforcement officer, i.e., the appropriate Sheriff." *Id*. at 225. The trustee's failure to deliver a writ to a New York sheriff defeated its claim to priority.

       The Heiser Parties' real contention actually seems to be that whenever a judgment creditor goes into any state, obtains a writ of execution or garnishment and serves it in that state, the law of that state governs the judgment creditor's rights, including its priority over other judgment creditors. As noted above, however, such a choice-of-law rule could lead to chaos in a situation like this one. There are perhaps twenty or more federal judgments against Iran based on acts of terrorism, and such a rule would encourage forum shopping, as each group raced to register its judgment and serve a writ in a state where it could claim priority under local law. This would also impose needless burdens on the courts and expose financial institutions and other garnishees to significant risks of inconsistent rulings. But that is not the law.

CONFIDENTIAL - FILE UNDER SEAL

II

## UNDER NEW YORK LAW, THE SEPARATE ENTITY DOCTRINE APPLIES TO EFFORTS TO EXECUTE ON FUNDS ON DEPOSIT WITH NEW YORK BANKS

The courts of New York apply the separate entity doctrine in determining the scope and effect to be given to a writ of attachment or writ of execution served on a bank. In its original form, this doctrine required that each branch of a bank be treated as a separate entity for purposes of attachment or execution, so that a writ served on one branch would reach only funds held at that branch. As banks began to use computers more extensively, the doctrine was modified, and New York law now provides that if certain conditions are met – if the writ "is served on the bank's main office; . . . the accounts in question are maintained . . . within the same jurisdiction; and the bank branches are connected . . . by high-speed computers." – a writ served on a bank's main office in New York State is effective to attach or execute upon any assets held at any of the bank's offices in the state. *Nat'l Union Fire Ins. Co. v. Advanced Emp't Concepts, Inc.*, 269 A.D.2d 101, 102, 703 N.Y.S.2d 3, 4 (1st Dep't 2000).

In the *National Union* case the Court was asked to repudiate the separate entity doctrine altogether, so that a writ served in New York could reach bank assets nationwide, but it "decline[d] to do so." *Id.* at 102, 703 N.Y.S.2d at 4. The Second Circuit has also recently reaffirmed the separate entity doctrine. *Allied Maritime, Inc. v. Descatrade SA*, Docket No. 09-5329-cv, 2010 WL 3447882 (2d Cir. Sep. 3, 2010). That case, like this one, involved the proceeds of a blocked wire transfer in the hands of an intermediary bank, but the Court had no difficulty in concluding that the separate entity doctrine was applicable, and that under that doctrine a "debt owed by a branch [of a

9

bank] finds its situs within the territorial jurisdiction of [that] branch." *Id.* at \*3 (internal quotation marks and citation omitted). The Court also noted that the "'mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York'" subject to a writ served in this state. *Id.* at \*3, quoting from *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3003242 (S.D.N.Y. Sep. 15, 2009).

The separate entity doctrine is not unique to New York, but has also been followed in other states. *See Sara Lee Corp. v. Gregg*, No. 1: 02CV195, 2003 WL 23120116, at \*3 (M.D.N.C. Dec. 18, 2003) (North Carolina law); *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 425 F. Supp. 1088, 10 (N. D. Cal. 1976) (California law); Annot., Attachment and Garnishment of Funds in Branch Bank, 12 A.L.R.3d 1088 (1967). Indeed, the doctrine appears to be part of the law of Maryland. In *Woodlands, Ltd. v. Westwood Ins. Co.*, 965 F. Supp. 13, 15 (D. Md. 1997), the District Court concluded, after reviewing relevant Maryland authorities, that "Maryland treats its bank branches as separate entities and would not find service on a branch bank in Maryland sufficient to attach an account located in Virginia." Under the same rationale, the service of a writ of garnishment on BNY Mellon in Maryland is not sufficient to entitle it to execute on funds held by BNY Mellon outside the state. *See also American Fidelity*, 368 F. Supp. at 225.[2]

---

[2] The Heiser Parties argue that while New York, North Carolina, Maryland and California may adhere to the separate entity doctrine, four other states – Maine, Michigan, Illinois and Pennsylvania – have rejected it. Three of the four cases that they cite, however, are federal district court cases, which are merely trying to predict whether the courts of those states would follow the doctrine. In addition, the Maine case turns on the fact that the brokerage firm in that case brought an interpleader action in Maine, thereby "submitting to jurisdiction" in Maine, and on the Court's finding that the party challenging the validity of the writ in that case did "not have standing to raise the other issues that it presses." *Smith Barney, Inc. v. Ekinci*, 937 F. Supp. 59 (D. Me. 1966), *aff'd*, 116 F.3d 464 (1st Cir. 1997). The Michigan case simply held that a Michigan garnishment would reach funds deposited with a bank in Ohio where (1) the judgment debtor had "offices and operations in Michigan," (2) the bank had "branches throughout Michigan" and (3) the judgment creditor could "draw on its account at any of the branches located in Michigan" – factors that the Court deemed "very significant" and that led it to conclude that "the funds . . . are 'located' wherever they are available for withdrawal." *Acme Contracting Ltd. v. Toltest, Inc.*, No. 07-10950, 2008 WL 4534175 at \*6, \*7 (E.D. Mich. Oct. 3,." 2008). Those factors are not present in this case. The Pennsylvania case did

Maryland law also recognizes that intangible assets must be assigned a situs within one state, and that a judgment creditor cannot execute on a debt merely because the party that owes the debt is present in Maryland. In *Livingston v. Naylor*, 173 Md. App. 488, 920 A.2d 34 (2005), a judgment creditor, Naylor, sought to garnish the wages of plaintiff Livingston, an employee of Marriott International, Inc. who lived in North Carolina but had performed brief temporary assignments for Marriott in Maryland. Marriott had its worldwide headquarters in Maryland, and so was subject to jurisdiction there, but the Court rejected Naylor's argument that "Marriott could . . . be garnished for the wages it owed to Livingston at any location where Marriott regularly does business." *Id.* at 518, 920 A.2d at 52. It framed the issue instead as "whether a state can properly consider wages to constitute a res within the borders of the state, subject to the state's power of garnishment," *id.* at 517-18, 920 A.2d at 52, and then held that other than the state of domicile, "the state in which he . . . [earned the] wages is the [only] state that can garnish Marriott for those wages." *Id.* at 520, 920 A.2d at 53. The case thus rejects the Heiser Parties' theory that intangible assets are subject to garnishment wherever the garnishee can be found. Under its rationale, Maryland courts would undoubtedly conclude that a bank account, which is in the last analysis just a form of indebtedness, likewise has a situs in a particular state and is only subject to execution in that state.

There are good reasons why the courts have continued to adhere to the separate entity doctrine notwithstanding the growing sophistication of banks' computer systems. Every state has its own requirements for attachments, its own procedures for the

---

not consider the separate entity doctrine, since the only objection raised by the bank was that it was not subject to venue in the Eastern District of Pennsylvania under the now-repealed provisions of 12 U.S.C. § 94. *Frankfort Supply Co. v. Matteo*, 305 F. Supp. 794 (E.D. Pa. 1969).

enforcement of out-of-state judgments, its own safeguards for garnishees and others and its own rules for establishing priority among judgment creditors. Thus an attachment might be appropriate under New York law because the requirements of CPLR § 6201 had been met, the assets were subject to attachment under CPLR § 6202 and the procedural requirements of CPLR article 62 were been complied with, but not under the laws of another state – or vice versa. A judgment creditor might have achieved priority under New York law but stand behind other judgment creditors in other states. If judgment creditors could go to any state and reach assets held by a bank anywhere in the United States, banks would be at risk of inconsistent rulings and contradictory duties. The separate entity doctrine eliminates these risks. It also guarantees that one state will not override the policies of another with respect to the enforcement of judgments and the protection of its citizens.

Judgment creditors, moreover, are not prejudiced by the requirements of the separate entity rule. A federal judgment, such as the one in this case, can be registered in any District Court and then enforced in any state. A state court judgment can likewise be registered and enforced in the many states, including New York, that have adopted versions of the Uniform Enforcement of Foreign Judgments Act. See CPLR §§ 5401-08. A judgment creditor can thus enforce its judgment with relative ease in any state where a bank may be holding funds subject to execution.

The Heiser Parties have not taken advantage of these simple procedures. Instead they are trying to place BNY Mellon in exactly the untenable position that the separate entity doctrine is designed to prevent. On the one hand, they have asked this Court to require the turnover of the BNYM Phase 1 Assets to them, on the ground that

the Maryland Writ reaches funds held by BNY Mellon anywhere in the United States. On the other, their Supplemental Submission asserts (p. 7) that the "Maryland action is the only appropriate forum for adjudicating the Maryland Writ," in an effort to preserve their right to seek the same relief in Maryland if they do not prevail here. This case thus provides a perfect illustration of the vital role played by the separate entity doctrine in protecting garnishees such as BNY Mellon from inconsistent adjudications in different courts.

## Conclusion

For all of the reasons set forth above, BNY Mellon respectfully suggests that the separate entity doctrine should be applied in this case in determining the rights of the Heiser Parties under the Maryland Writ.

Dated:  New York, New York
        October 26, 2010

LEVI LUBARSKY & FEIGENBAUM LLP

By: _____
    Howard B. Levi, Esq.
    J. Kelley Nevling, Jr., Esq.
1185 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel. No. (212) 308-6100
E-mail Address: hlevi@llf-law.con

*Attorneys for Defendant and Third-Party Plaintiff The Bank of New York Mellon*