UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY LEVIN and DR. LUCILLE LEVIN,

                    Plaintiffs,

          -v-

BANK OF NEW YORK MELLON, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., SOCIETE GENERALE and CITIBANK, N.A.

                    Defendants.

THE BANK OF NEW YORK MELLON,

                    Third-Party Plaintiff,

          -v-



JPMORGAN CHASE BANK, N.A.,

                    Third-Party Plaintiff,

          -v-



CAPTION CONTINUED ON NEXT PAGE

(FILED PARTIALLY UNDER SEAL DUE TO CONFIDENTIAL INFORMATION PER ORDER DATED JANUARY 21, 2010)

Civ. No. 09 CV 5900 (RPP)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A STAY OF THE COURT'S JANUARY 28, 2011 ORDER PENDING APPEAL**

**[Notice of Motion and Motion For A Stay; [Proposed] Order Filed Concurrently Herewith]**

HEARING DATE: February 22, 2011, (Requested by Letter to the Court, dated February 7, 2011 but Moving Party Is Prepared to Submit on the Briefs without Argument)
TIME:   3:00 PM
PLACE:  Courtroom 24A

SOCIETE GENERALE,

        Third-Party Plaintiff,

Civ. No. 09 CV 5900 (RPP)

    -v-



_____

CITIBANK, N.A.,

        Third-Party Plaintiff,

    -v-



_____

THE BANK OF NEW YORK MELLON,
JPMORGAN CHASE, N.A., SOCIETE
GENERALE and CITIBANK, N.A.,

        Third-Party Plaintiffs,

    -v-

STEVEN M. GREENBAUM, et al.

        Third-Party Defendants.

CAPTION CONTINUED ON NEXT PAGE

THE BANK OF NEW YORK MELLON,
JPMORGAN CHASE BANK, N.A.,
SOCIETE GENERALE and CITIBANK,
N.A.,

        Third-Party Plaintiffs,

    -v-

THE ESTATE OF JAMES SILVIA AND
LYNNE MICHOL SPENCER, et al.,

        Third-Party Defendants.

Civ. No. 09 CV 5900 (RPP)

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A STAY OF THE COURT'S JANUARY 28, 2011 ORDER PENDING APPEAL

HOWARTH & SMTIH
Suzelle M. Smith
Don Howarth
523 West Sixth Street, Suite 728
Los Angeles, California  90014
Telephone:  (213) 955-9400

*Attorneys For Plaintiffs*
*Jeremy Levin and Dr. Lucille Levin*

11:P2430002.doc

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................................ ii-v

I.    INTRODUCTION ................................................................................... 1

ARGUMENT ................................................................................................... 4

II.    The Court Should Grant a Stay Pending Appeal ....................................... 4

      A.    Legal Standard ........................................................................ 4

      B.    Plaintiffs Have a Substantial Possibility of Success on Appeal ......................... 5

      C.    Plaintiffs Will Be Irreparably Harmed in the Absence of a Stay ....................... 9

      D.    The Third Party Defendants Will Not Be Harmed by a Stay ........................... 11

      E.    The Public Interest Favors a Stay ................................................... 11

CONCLUSION ................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

## <u>CASES</u>

*Am. Tobacco Co. v. Patterson*,
  456 U.S. 63 (1982)..........................................................................................7

*Cisneros v. Alpine Ridge Group*,
  508 U.S. 10 (1993) .........................................................................................8

*Coleman v. Paccar, Inc.*,
  424 U.S. 1301 (1976).....................................................................................4

*Connecticut Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)........................................................................................8

*Crowley Caribbean Transport, Inc. v. United States*,
  865 F.2d 1281, 1283 (D.C. Cir. 1989) ..........................................................9

*Dexia Credit Local v. Rogan*,
  No. 02 C 8288, 2008 WL 4855416 (N.D. Ill. Nov. 10, 2008)........................9

*Estate of Landers v. Leavitt*,
  545 F.3d 98 (2d Cir. 2008) ............................................................................9

*Ferrostaal Metals Corp. v. S.S. Lash Pacifico*,
  652 F. supp. 420 (S.D.N.Y. 1987) .................................................................6

*First City, Texas Houston, N.A. v. Rafidain Bank*,
  197 F.R.D. 250 (S.D.N.Y. 2000), *aff'd sub nom. First City,*
  *Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002) ..............6

*Gadsby & Hannah v. Socialist Republic of Romania*,
  698 F. Supp. 483 (S.D.N.Y. 1988) ................................................................6

*Hayes v. City Univ. of New York*,
  503 F. Supp. 946 (S.D.N.Y. 1980) .........................................................5, 6, 9

*Hayes v. Human Res. Admin. of City of New York*,
  648 F.2d 110 (2d Cir. 1981) ..........................................................................5

*Hirschfeld v. Bd. of Elections in City of New York*,
   984 F.2d 35 (2d Cir. 1993) ................................................................ 4

*Illinois National Guard v. Fed. Labor Relations Auth.*,
   854 F.2d 1396 (D.C. Cir. 1988) ......................................................... 9

*In re Feit & Drexler, Inc.*,
   760 F.2d 406 (2d Cir. 1985) ............................................................. 10

*In re Finova Group, Inc.*,
   No. 07-689, 2007 WL 3238764 (D. Del. Oct. 31, 2007) ............................. 11

*In re Fulbright*,
   319 B.R. 650 (Bankr. D. Mont. 2005) ................................................ 7

*Kitson & Kitson v. City of Yonkers*,
   10 A.D.3d 21, 25-26 (N.Y. App. Div. 2004) .................................... 3

*Liberty Mar. Corp. v. United States*,
   928 F.2d 413 (1991) ......................................................................... 9

*Life Ins. Co. of N. Am. v. Camm*,
   No. 402-CV-0106, 2007 WL 2492384 (S.D. Ind. Aug. 29, 2007) ........................ 5, 10

*Mohammed v. Reno*,
   309 F.3d 95 (2d Cir. 2002) ................................................................ 4

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ......................................................................... 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Coric*,
   167 F.R.D. 356 (N.D.N.Y. 1996) ....................................................... 4

*Paul Revere Life Ins. Co. v. Brock*,
   970 F. Supp. 621 (S.D. Ohio 1997) .................................................... 11

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
   109 F.3d 850 (2d Cir. 1997) ............................................................. 12

*Roman v. Mukasey*,
   553 F.3d 184 (2d Cir. 2009) ............................................................. 9

*Russello v. United States*,
    464 U.S. 16 (1983)............................................................................................8

*S.E.C. v. Credit Bancorp, Ltd.*,
    No. 99 Civ. 11395, 2001 WL 180134 (S.D.N.Y. Feb. 21, 2001)....................................6

*Shomberg v. United States*,
    348 U.S. 540 (1955)............................................................................................8

*United States v. Am. Soc'y of Composers, Authors & Publishers* ("*Am. Soc'y*"),
    No. 41 Civ. 1395, 1991 WL 501864 (S.D.N.Y. Oct. 3, 1991) ................................4, 5, 6

*United States v. First Nat'l City Bank*,
    379 U.S. 378 (1965)..........................................................................................10

*United States v. Granderson*,
    511 U.S. 39 (1994)..............................................................................................7

*United States v. Visa U.S.A., Inc.*,
    No. 98 Civ. 7076, 2002 WL 638537 (S.D.N.Y. Feb. 7, 2002)....................................5, 9

*Weininger v. Castro*,
    462 F. Supp. 2d 457 (S.D.N.Y. 2006) ......................................................................11

## STATUTES

28 U.S.C. § 1292(b)..................................................................................................2

28 U.S.C. § 1605A....................................................................................................7

28 U.S.C. § 1605(a)(7) ........................................................................................1, 2, 6, 7

28 U.S.C. § 1610 ................................................................................................1, 2, 6, 8

28 U.S.C. § 1610(a)..............................................................................................2, 6, 8

28 U.S.C. § 1610(b)..............................................................................................6, 8

28 U.S.C. § 1610(c)..............................................................................................6, 7

28 U.S.C. § 1610(f)(1)(a) ......................................................................................2, 6, 8

CPLR § 5225 ..................................................................................................... 3

CPLR § 5227 ..................................................................................................... 3

CPLR § 5230 ..................................................................................................... 1

Fed. R. Civ. P. 69.............................................................................................. 1

## <u>OTHER</u>

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 40, *reprinted in* 1976 U.S. Code Cong. &
   Admin. News 6604, 6629 .............................................................................. 6

Plaintiffs Jeremy and Dr. Lucille Levin ("The Levins" or "Petitioners" or "Plaintiffs" or "28 U.S.C. §1605(a)(7) Judgment Creditors") respectfully submit this memorandum in support of their  motion for a stay pending appeal.

## I.    INTRODUCTION

Plaintiffs respectfully seek a stay of the Court's January 20, 2011 Order entered on January 28, 2011, denying their motion for partial summary judgment[1] and granting the cross motion for summary judgment of Third Party Interpleader Defendants, Greenbaum and Acosta Judgment Creditors, ordering immediate payment of federal government frozen and blocked accounts to Third Party Interpleader Defendants, and discharging Defendants/Garnishees,  JPMorgan Chase Bank, N.A., and Citibank, N.A. ("New York Banks," "Defendants," "Defendant Banks," or "Garnishees"), and any subsequent order or judgment to be entered implementing that order.  The Court's order entered on January 28, 2011, held that Plaintiffs' writs of execution issued by this Court and delivered to the United States Marshall for the Southern District of New York on June 19, 2009, pursuant to New York Civil Practice Law and Rules ("CPLR") § 5230, et seq. (made applicable here by Fed. R. Civ. P. 69), which writs were in conformance with the express current language of 28 U.S.C. § 1610 (Foreign Sovereign Immunities Act or FSIA), including the note thereto (Terrorist Risk Insurance Act or TRIA), for a 28 U.S.C. § 1605(a)(7)

---

[1] Plaintiffs also moved for summary judgment as to the Interpleader Complaint of Societe Generale which was unopposed.  The Court made no comment on this issue.   The order is confined to blocked assets held by JPMorgan and Citibank but Plaintiffs understand that the Court's ruling that as a matter of law that their writs, although the first delivered to the United States Marshall, are invalid, is intended by the Court to terminate their action as to all assets which are covered by their writs.

judgment [2]specifically seeking to levy on  Office of Foreign Asset Control ("OFAC")

blocked  assets set forth in TRIA and/or 28 U.S.C. § 1610(f)(1)(a), were nonetheless

invalid.  The Court further held, as a matter of law, that Third Party Interpleader

Defendants, Greenbaum and Acosta, notwithstanding that the writs they rely on were

delivered to the Marshall on April 15, 2010 [3] later than the Levins and only after they

were sued as Interpleader Defendants, were valid, and ordered certain of the blocked

assets, which were the subject of the Levins' action, to be immediately paid to the

Greenbaum and Acosta Third Party Defendants.  See Court's January 28, 2011 Order.[4]

The Levins filed a motion with this Court on February 1, 2011 asking the Court to certify

its order under 28 U.S.C. § 1292(b) for immediate appeal.  The Levins are preparing a

motion for expedited treatment under Federal Rule of Appellate Procedure 2, which will

---

[2] The Court held as a matter law that 28 U.S.C. § 1610(a), (b) & (c) require the Levins, holders of judgments under 28 U.S.C. § 1605(a)(7), to obtain court ordered writs as opposed to court issued writs even though the current operative  statute does not list such claims, and it does expressly list 28 U.S.C. § 1605A actions.  The Greenbaum and Acosta Third Party Defendants have 28 U.S.C. § 1605A judgments and obtained court ordered writs as a matter of routine (after being interplead into the current action) because 28 U.S.C. §§ 1610 (a) and (c) expressly refer to 28 U.S.C. § 1605A and not to 28 U.S.C. §1605(a)(7) actions.  Current 28 U.S.C. § 1610 as amended after the enactment of 28 U.S.C. § 1605A and repeal of 28 U.S.C. § 1605(a)(7) refers to 28 U.S.C. § 1605(a)(7) in other sections but expressly not in the section requiring court ordered as opposed to court issued writs.

[3] There were some earlier writs obtained by Greenbaum and Acosta in December of 2009, also after the Levins initiated their action and delivered their writs, but these Greenabaum and Acosta writs were not acted on within 90 days as is required by New York law.  The Greenbaum and Acosta Third Party Defendants obtained "amended" writs in April, 2010, which invalidated their earlier writs under New York law.

[4] The Court also used all of the evidence acquired by the efforts of the Levins, including their expert testimony, to support its holding that the blocked assets were available for collection by Judgment Creditors of Iran.  The Greenbaum and Acosta Third Party Defendants supplied no evidence of their own but relied on the Levins entirely.  *See* Court's January 28, 2011 Order.

be filed with the Second Circuit forthwith.  This Court has noted that the Levins are

elderly and Mr. Levin is suffering from leukemia.  *See* Court's January 28, 2011 Order.

Plaintiffs do not seek to reargue the issues decided by the Court, but simply to preserve

their opportunity for a meaningful appeal to the Second Circuit by preventing the blocked

assets in question from being paid out until after the issue of the requirements for valid

writs in terrorist cases involving funds already attached and frozen by OFAC is decided

by the appellate courts.

The matter before the Court is an unusual one and a stay is appropriate and

necessary.  The assets in question are particular ones, frozen by legislation and/or

executive orders, and specifically made available to victims of terrorism like the Levins

to satisfy their judgments against terrorist states.  *See* Court's January 28, 2011 Order.

The New York Banks holding the frozen assets have been in possession of them for

years.  The Greenbaum and Acosta Third Party Defendants did not initiate any action to

execute on the frozen assets located and identified by the Levins until after the Levins

filed their complaint and delivered their writs of execution to the United States Marshall.[5]

*See* Court's January 28, 2011 Order.  The funds in question are held by interpleader

plaintiff financial institutions and their ultimate ownership is in serious doubt.  The status

---

[5] *See Kitson & Kitson v. City of Yonkers*, 10 A.D.3d 21, 25-26 (N.Y. App. Div. 2004)
("Executions are delivered to the Sheriff and are given priority in the order in which they
are delivered to the enforcement officer…. At the expiration of ninety days after a levy is
made by service of the execution…  the levy shall be void except as to property or debts
which have been transferred or paid to the Sheriff or as to which a proceeding under
section 5225 or 5227 has been brought…."); Article 52 of the CPLR.

quo should be maintained while the Levins pursue an expedited appeal to the Second

Circuit.

## ARGUMENT

**II.     The Court Should Grant a Stay Pending Appeal**

    **A.     Legal Standard**

In the Second Circuit,

> four factors are considered before staying the actions of a lower court: (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected.

*Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993), citing

*Coleman v. Paccar, Inc.,* 424 U.S. 1301, 1305 (1976); *United States v. Am. Soc'y of*

*Composers, Authors & Publishers* ("*Am. Soc'y*"), No. 41 Civ. 1395, 1991 WL 501864, at

*1 (S.D.N.Y. Oct. 3, 1991); *see also Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir.

2002).

    Courts have stated that:

> In assessing whether the movant has satisfied [the burden of success on appeal], a district court should turn to external, preferably objective, indicia of the accuracy of its judgment. Prominent among these would be the extent to which the challenged decision is supported by precedent.

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Coric*, 167 F.R.D. 356, 358 (N.D.N.Y.

1996).

/ / /

/ / /

Finally:

> In an interpleader case, the court has the disputed funds already in its possession so that all parties are protected from the risk that another party will dissipate them or put them beyond the reach of the court and other parties. Stays pending appeal therefore do not appear to be unusual in such cases.

*Life Ins. Co. of N. Am. v. Camm*, No. 402-CV-0106, 2007 WL 2492384, at *1 (S.D. Ind. Aug. 29, 2007).

### B.    Plaintiffs Have a Substantial Possibility of Success on Appeal

The first stay factor, the likelihood of success on appeal, supports the issuance of a stay here.  Because stay motions inevitably ask a district court to assess whether the Circuit will uphold the district court's own decision, which the district court presumably believes to be correct, courts have expressly held that the "likelihood of success" factor does *not* require the district court to conclude that it is likely to be reversed. Rather, "the party seeking a stay pending appeal should be required to show only that its arguments raise a substantial possibility, although less than a likelihood, of success."  *Hayes v. City Univ. of New York*, 503 F. Supp. 946, 963 (S.D.N.Y. 1980), *judgment aff'd sub nom. Hayes v. Human Res. Admin. of City of New York*, 648 F.2d 110 (2d Cir. 1981); *see also United States v. Visa U.S.A., Inc.*, No. 98 Civ. 7076, 2002 WL 638537, at *1 (S.D.N.Y. Feb. 7, 2002) (granting stay although "fully confident in its Decision"), *judgment aff'd*, 344 F.3d 229 (2d Cir. 2003); *Am. Soc'y*, 1991 WL 501864, at *1 (granting stay where "the appeal does raise substantial issues," even though the Court "do[es] not view [the movant] as likely to prevail on its appeal").  The analysis of the substantiality of the appeal should focus on "external, preferably objective, indicia," including as relevant

here "the extent to which the challenged decision is supported by precedent" and "the standard of review that will govern the appeal." *Hayes*, 503 F. Supp. at 963; *see also S.E.C. v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395, 2001 WL 180134, at *2 (S.D.N.Y. Feb. 21, 2001) ("The court should look to objective indicia including, most importantly, the precedent upon which it relied."); *Am. Soc'y*, 1991 WL 501864, at *1 n.3 (following the approach set forth in *Hayes*).

The matter before the Court is an unusual one and a stay is appropriate and necessary. The issue decided by this court is one of first impression. There is no reported case which has interpreted the FSIA and TRIA provisions at issue and as currently operative here. The cases and legislative history relied on by the Greenbaum and Acosta Third Party Defendants and cited by the Court in its order without question predate amended FSIA, and therefore are not direct authority supporting the Court's reading.[6] The language of 28 U.S.C. §§ 1610(a), (b) & (c) on its face does not require 28 U.S.C. § 1605(a)(7) judgment holders to obtain a court ordered as opposed to a court

---

[6] See *First City, Texas Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 256 (S.D.N.Y. 2000), *aff'd sub nom. First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. supp. 420, 423 (S.D.N.Y. 1987); *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 485 (S.D.N.Y. 1988); and H.R. Rep. No. 1487, 94th Cong., 2d Sess. 40, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6629. TRIA was enacted in 2002. The Amendments to the FSIA at issue, current 28 U.S.C. § 1610 (a)-(c) and 28 U.S.C. § 1610(f)(1)(a), were enacted in 2008 and 1999 respectively. The H.R. Report language quoted is from 1976. Congress was obviously not addressing OFAC blocked assets under TRIA in this Report. Also, the cases cited predate TRIA and the current FSIA amendments. *See Id*. They also were not dealing with OFAC blocked and previously government attached assets, but solely with procedures involving commercial contracts and assets which were being attached exclusively by the actions of private parties in litigation, not government attached and blocked assets. *See Id*.

issued writ.  The Court has ruled that the omission of 28 U.S.C. § 1605(a)(7) judgment

holders from the current language, while including 28 U.S.C. § 1605A judgment holders,

defies logic, and therefore the Court has decided that it must add  28 U.S.C. § 1605(a)(7)

judgment holders to the language of the current  statute or define 28 U.S.C. § 1605A

judgments to include 28 U.S.C. § 1605(a)(7) judgments for this one section, 28 U.S.C. §

1610(c).  *See* Court's January 28, 2010 Order (recognizing that there are important

differences between a 28 U.S.C. § 1605A and 28 U.S.C. § 1605(a)(7) judgment and that

the statute does in fact distinguish between them in several places).  There is a probability

that the Second Circuit will determine that the Court exceeded its mandate by rewriting

the statute or interpreting it in a manner inconsistent with its own terms, even if the

Court's reading could be viewed as better or more logical:

> If Congress enacted into law something different from what it intended,
> then it should amend the statute to conform it to its intent.  It is beyond our
> province to rescue Congress from its drafting errors, and to provide for
> what we might think…is the  preferred result.

*In re Fulbright*, 319 B.R. 650, 659 (Bankr. D. Mont. 2005) quoting *United States v.*

*Granderson*, 511 U.S. 39, 68 (1994) (Kennedy, J. concurring).

Further, "[i]n all cases involving statutory construction, the starting

 point must be the language employed by Congress and courts may assume that the

legislative purpose is expressed by the ordinary meaning of the words used."  *Am.*

*Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982).  Another principle of statutory

constructions holds that "[c]ourts are to presume that a legislature says in a statute

what it means and means in a statute what it says." *Connecticut Nat'l Bank v.*

*Germain*, 503 U.S. 249, 254 (1992).  And where:

> Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion ... We refrain from concluding here that the differing language in the two subsections has the same meaning in each.

*Russello v. United States*, 464 U.S. 16, 23 (1983).

Also, 28 U.S.C. §§ 1610(a) & (b) clearly define a larger group of assets, all those

within the United States, and 28 U.S.C. § 1610(f)(1)(a) defines a smaller subset of

government blocked assets, which are treated differently because they are pre-attached by

the government under specific terrorist legislation.  *See* Court's January 28, 2011 Order.

"It is a commonplace of statutory construction that the specific governs the general.

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

The Court has ruled that the statute should not be interpreted to treat these assets

differently despite the "notwithstanding" language of 28 U.S.C. § 1610(f)(1)(a) and

TRIA. *See* Court's January 28, 2011 Order. Again, controlling authority dictates

otherwise.  *See Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) ("As we have

noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly

signals the drafter's intention that the provisions of the 'notwithstanding' section override

conflicting provisions of any other section.)  *See Shomberg v. United States,* 348 U.S.

540, 547-548 (1955).  Likewise, the Courts of Appeals generally have "interpreted

similar 'notwithstanding' language ... to supersede all other laws, stating that '[a] clearer

statement is difficult to imagine.'" *Liberty Mar. Corp. v. United States,* 928 F.2d 413,

416 (1991) (quoting *Crowley Caribbean Transport, Inc. v. United States,* 865 F.2d 1281,

1283 (D.C. Cir. 1989) (in turn quoting *Illinois National Guard v. Fed. Labor Relations

Auth.,* 854 F.2d 1396, 1403 (D.C. Cir. 1988)).

The correct interpretation of the FSIA sections involved, without any prior

decisions directly on point, is a legal one, which the Second Circuit will review *de novo*.

"We review questions pertaining to law and the application of law to fact *de novo*." *See,

e.g.*, *Roman v. Mukasey*, 553 F.3d 184, 186 (2d Cir. 2009) (per curiam); *Estate of

Landers v. Leavitt*, 545 F.3d 98, 105 (2d Cir. 2008) (questions of law reviewed *de novo*).

This provides another objective factor supporting a finding of a substantial possibility of

success on appeal. *See, e.g.*, *Visa U.S.A., Inc.*, 2002 WL 638537, at *1 (concluding that

the absence of fact-intensive determinations and the predominance of purely legal

questions favors granting a stay); *see also Hayes*, 503 F. Supp. at 963 (considering

standard of review on appeal).

### C.    Plaintiffs Will Be Irreparably Harmed in the Absence of a Stay

The second stay factor – irreparable harm in the absence of a stay – strongly

favors granting a stay here.  As one district court has recently explained, "[a] significant

risk of transfer beyond the court's jurisdiction of the assets of a judgment debtor that

might be used to satisfy the judgment against him qualifies as irreparable injury." *Dexia

Credit Local v. Rogan*, No. 02 C 8288, 2008 WL 4855416, at *8 (N.D. Ill. Nov. 10,

2008).  Indeed, even *prior* to judgment, where the need for collection is still speculative,

courts have held that the threat of dissipation of assets that could be used to satisfy a

future judgment is an irreparable injury requiring equitable relief.  *See, e.g.*, *United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965) (approving temporary injunction to prevent transfer of assets abroad); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) ("[F]ederal courts have found preliminary injunctions appropriate where it has been shown that the defendant 'intended to frustrate any judgment on the merits' by 'transfer[ring its assets] out of the jurisdiction.'" (internal citation omitted)).  Here, payment of the funds by the New York Banks would most likely have the direct effect of causing these funds to be transmitted out of this jurisdiction and certainly payment will disperse them widely.  If the New York Banks no longer hold the interplead funds, and they are paid to the Greenbaum and Acosta Third Party Defendants, Plaintiffs have no idea where they may then be dispersed.  And apparently, there are many Greenbaum and Acosta judgment holders and the Levins have no idea where these persons are located.[7] In an interpleader action it is not uncommon to issue a stay, pending appellate review of questions of the rightful recipient of the funds.  *See Life Ins. Co. of N. Am. v. Camm*, 2007 WL 2492384.

/ / /

/ / /

---

[7] The Greenbaum Judgment Creditors consist of: Steven M. Greenbaum (sued individually and as administrator of the Estate of Judith Greenbaum), Alan D. Hayman and Shirlee Hayman (collectively, the "Greenbaum Judgment Creditors").  The Acosta Judgment Creditors consist of: Carlos Acosta, Maria Acosta, Tova Ettinger, Irving Franklin (on his own behalf and as Administrator of the Estate of the late Irma Franklin), Baruch Kahane, Libby Kahane (on her own behalf and as Administratrix of the Estate of the late Meir Kahane), Ethel J. Griffin (as Administratix of the Estate of the late Sonia Kahane), and Ciporah Kaplan (collectively, the "Acosta Judgment Creditors")

**D.      The Third Party Defendants Will Not Be Harmed by a Stay**

A stay will cause little or no harm to the Greenbaum and Acosta Third Party

Defendants.  The New York Banks can and should keep these restrained funds in interest-

bearing accounts. Such accounts will protect the Greenbaum and Acosta Third Party

Defendants from a loss resulting from their lack of access to the funds during the appeal

period.  *See, e.g.*, *In re Finova Group, Inc.*, No. 07-689, 2007 WL 3238764, at *1 (D.

Del. Oct. 31, 2007) ("Moreover, as the Bankruptcy Court recognized, the disputed funds

are earning interest, and therefore, the Court concludes that the distributees of the funds

will not suffer substantial harm from an extension of the stay."); *Paul Revere Life Ins.*

*Co. v. Brock*, 970 F. Supp. 621, 628 (S.D. Ohio 1997) (quoting prior order of same Court

holding that "the fund continues to earn interest, and thus, all parties entitled to share in

the interpleaded monies will not be unduly harmed by waiting for distribution until after

the Court of Appeals rules on the appeal").

**E.      The Public Interest Favors a Stay**

Finally, the fourth factor, the public interest, strongly favors a stay pending appeal.

The stay would preserve the availability of assets for collection in the event of a reversal

by the Circuit and, as such, furthers the strong public interest expressed in the FSIA and

TRIA.  The FSIA itself directs the government to assist victims of terrorism in securing

payment of their judgments.   As the Court stated in *Weininger v. Castro*, 462 F. Supp. 2d

457, 483 (S.D.N.Y. 2006):

> TRIA § 201 was passed in order to 'deal comprehensively with the problem
> of enforcement of judgments rendered on behalf of victims of terrorism in
> any court of competent jurisdiction by enabling them to satisfy such

> judgments through the attachment of blocked assets of terrorist parties. It is the intent of the Conferees that Section 201 establish that such judgments are to be enforced.'  H.R. Conf. Rep. 107-779, at 27 (2002), *reprinted in* 2002 U.S.C.C.A.N. 1430, at 1434-35; *see Hill v. Republic of Iraq,* No. 99 Civ. 03346, 2003 WL 21057173, at \*2 (D.D.C. Mar. 11, 2003) (discussing enactment of TRIA)….

Congress intended that frozen assets be available to victims of terrorism and looked to state law to implement execution on those assets in a different way than cases dealing with non blocked assets.  Further, it is in the public interest that frozen and blocked assets be available to the proper payee in accordance with the law.  *See Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 855 (2d Cir. 1997) ("[T]he United States has a strong interest in ensuring the enforceability of valid debts under the principles of contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders [or other citizens].").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Accordingly, for the foregoing reasons Plaintiffs respectfully request that the Court enter the attached proposed order staying enforcement of its January 28, 2011 Order or any other order or judgment implementing that Order until the later of (*i*) the Plaintiffs' deadline to file a timely appeal and (*ii*) assuming a timely appeal is filed, the Second Circuit's resolution of the appeal.

Dated: February 7, 2011     HOWARTH & SMITH

        By:  /s/Suzelle M. Smith
           Suzelle M. Smith
           Don Howarth
           523 West Sixth Street, Suite 728
           Los Angeles, California  90014
           (213) 955-9400
           ssmith@howarth-smith.com

           *Attorney for Plaintiffs*
           *Jeremy Levin and Dr. Lucille Levin*