UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEREMY LEVIN and DR. LUCILLE LEVIN    :
et al
        Plaintiffs,    :

       v.    :

BANK OF NEW YORK, JPMORGAN    :    Case No. 1:09-cv-05900 (RPP)
CHASE, SOCIETE GENERALE and
CITIBANK et al.    :

       Defendants,    :
------------------------------------------------------------X
BANK OF NEW YORK, et al.    :

       Third-Party Plaintiffs,    :

       v.    :

THE ESTATE OF JAMES SILVIA, et al.    :

       Third-Party Defendants.    :
------------------------------------------------------------X

## MEMORANDUM OF LAW OF PUTATIVE INTERVENOR
## JAY GLENN IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

**Preliminary Statement**

    Jay Glenn ("Glenn") submits this memorandum of law in support of his motion for leave to intervene in the above-captioned action, in order to protect his charging lien for attorneys' fees. Glenn is now prosecuting an action in this Court (*Glenn v. Fay, et al.,* 10-cv-8287) for a determination of his respective interest in the attorneys fees generated by prior litigation (*Peterson v. Islamic Republic of Iran, D.D.C,* 1:01-cv-02094), the "Peterson Liability Action") on behalf of United States Marines who were injured in the 1983 terrorist bombing of barracks in Lebanon and the families of Marines who were killed in that attack. He is now moving to intervene in this and related actions in the Southern District of New York, all of which actions

1

were brought to enforce the judgment against Iran in the Peterson Liability Action. Glenn brings this action to ensure that assets sufficient to pay any judgment in *Glenn v. Fay* remain in this jurisdiction while that case is pending.

**Facts**

Glenn was retained by the law firm of Fay & Perles ("F&P") to prove damages on behalf of 63 plaintiffs in the Peterson Liability Action. He subsequently identified an additional 40 plaintiffs and proved damages on their behalf as well. Due in large part to Glenn's legal work, the 103 Peterson Liability Action plaintiffs (the "Peterson Plaintiffs") represented by Glenn were awarded a judgment in the amount of $309,741,881.00 against the Islamic Republic of Iran.

To date, no part of this judgment has been recovered. However, the following actions have been commenced in the Southern District of New York (the "Peterson Collection Actions") to recover assets which Iran apparently either owns or has an interest in.

- Peterson, et al. v. Islamic Republic of Iran, et al.,
  18 MIS 302 (Judge Barbara Jones)(SDNY)

- Peterson v. 650 Fifth Avenue Company et al
  1:10-cv-01627 (RJH)(SDNY)

- Levin et al v. Bank of New York et al,
  1:09-cv-5900 (RPP)

After Glenn proved damages for his 103 Peterson Plaintiffs, F&P Partner Thomas Fortune Fay ("Fay") told Glenn that if the Peterson Plaintiffs recovered their judgment, Glenn would receive substantially than the legal fees promised to him.

On November 3, 2010 Glenn filed an action in this Court against F&P and its two partners, Fay and Steven R. Perles ("Perles") (*Glenn v. Fay et al.*, No. 1:10:10-cv-08287 (WHP) for a determination as to the computation of his legal fees and his charging lien. Glenn is now

moving to intervene in the Peterson Collection Actions, solely to protect his interest in any proceeds recovered in those actions.

**Argument**

1. **The Legal Standard for Intervention of Right**

    Fed. R. Civ. P. Rule 24(a)(2) states:

    On timely motion, the court must permit anyone to intervene who:

    * * *

    (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

    To intervene of right under Fed.R.Civ.P. 24(a)(2) a person must meet each of the four requirements of that rule, i.e., the proposed intervenor

    > "must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

    *Kalinski v. Bacot*, 320 F.3d 291, 300 (2d Cit. 2003). *Accord, Macatra B.V. v. Destiny Navigation*, 2010 U.S. Dist. LEXIS 7771 (S.D.N.Y. January 27, 2010); *In Re Ambac Financial Group, Inc. Derivative Litigation*, 257 F.R.D. 390 (S.D.N.Y. 2009).

2. **Glenn Has An Interest In This Action**

    Glenn proved the damage claims of 103 of the plaintiffs in the Peterson Liability Action. He referred 40 of the plaintiffs in that action to the law firm of F&P. Those plaintiffs all signed agreements with Glenn and with F&P. In return for Glenn's efforts, F&P agreed that Glenn would receive a contingent percentage interest in any recovery on behalf of the plaintiffs in the Peterson Liability Action. This case apparently involves an effort by the plaintiffs in the

Peterson Liability Action – and by F&P through counsel that they have hired -- to collect the judgment rendered in the Peterson Liability Action.

Accordingly, any recovery by the plaintiffs in the Peterson Liability Action in this case will redound to Glenn's benefit.

Glenn's interest is recognized under New York Judiciary Law § 475, which states in pertinent part: "From the commencement of an action, special or other proceeding in any court . . . the attorney who appears for a party has a lien upon his client's cause of action . . . which attaches to a . . . judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come . . . ." By "any court" the statute means exactly that. "There is no requirement under Judiciary Law § 475 that the underlying action which generated the fee must have been commenced in a court of this state in order to be a charging lien." *Orsek v. Shemesh,* 243 A.D.2d 790, 791, 662 N.Y.S.2d 622, 624 (App. Div. 3rd Dept. 1997).

### 3. Glenn's Interest May Be Impaired By the Disposition of This Action

To intervene as a matter of right, a party must be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect [his] interest." However, a party need not show that his interest would be prejudiced by the res judicata effect of the judgment in the principal suit. It is enough that his interest is "practically impaired." *See, e.g., Atlantis Development Corp. v. United States, 379 F.2d 818 (5th Cir. 1967).* Thus, the burden is upon a party opposing intervention to show that the intervener's interest would not even be practically impaired by the judgment in the principal case.

To the extent that the actual recovery of the Peterson Plaintiffs is reduced due to the competing claims of other groups of plaintiffs against a limited asset or due to objections by

those parties holding the assets in question in this case, Glenn will recover a reduced fee. If the efforts of the Peterson Plaintiffs are unsuccessful, Glenn will recover nothing.

The disposition of this action is therefore likely to "practically impair" Glenn's ability to recover in full the fee which he earned. He has a direct interest in the outcome of this action.

4.      **Glenn's Interest Is Not Adequately Protected By Parties to This Action**

"[T]he language of the rule clearly suggests that now [the proposed intervenor] is to be allowed in, if the other conditions of the rule are satisfied, unless the court is persuaded that the representation of him is in fact adequate." 7C Wright, Miller & Kane, Federal Practice and Procedure Civil 2d § 1909, at 314-15. *Accord, Daggett v. Commission on Governmental Ethics and Election Practices,* 172 F.3d 104 (1st Cir. 1999) (concurring opinion). *See, generally, Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538, 92 S.Ct. 630, 636, 30 L.Ed.2d 686, 694 (1972).

Although the burden of proving inadequacy of representation is normally "minimal," that burden is "more rigorous" where –as here -- the interests of the proposed intervenor are aligned with the interests of an existing party. *Butler Fitzgerald & Potter v. Sequa,* 250 F.3d 171, 179 (2d Cir. 2001). Glenn's interests are clearly aligned with the interests of the Peterson Plaintiffs.

However, in this case, two separate Courts independently held that the representation of the Peterson Plaintiffs' interests is inadequate. These holdings demonstrate that the representation of Glenn's interests is also patently inadequate.

The United States District Court for the District of Columbia issued a September 30, 2009 Opinion in which it referred to the Peterson Plaintiffs as "The Do-Nothing Plaintiffs: Those Who Have Invoked Neither Section 1083(c )(2) Not (c )(3) in their Efforts to Retroactively Claim the New Entitlements [to punitive damages] Under Section 1605A."

This judicial condemnation is not aimed at the families of the United States Marines who are still grieving the loss of their loved ones – it is reserved for counsel for those Plaintiffs.

On December 3, 2010, in *Peterson, et al. v. World Bank v. CMA CGM* 1:08-17756 the United States Court of Appeals For the Ninth Circuit states in footnote 2

> Section 1083 of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181 § 1083, 122 Stat. 3, 338-44, repealed the original terrorist act exception, 28 U.S.C. § 1605(a)(7) (2000), and replaced it with a new and nearly identical exception, 28 U.S.C. § 1605A. The Authorization Act also expanded the category of foreign sovereign property that can be attached; judgment creditors can now reach any U.S. property in which Iran has any interest, 28 U.S.C. § 1610(a)(7). Plaintiffs in this case failed to re—file their actions under the new § 1605A terrorism exception and cannot take advantage of new § 1610(g). See In re Islamic Republic of Iran Terrorism Litig., 659 F. Supp. 2d 31, 67 (D.D.C. 2009). The 2008 changes do not impact this case because plaintiffs rely entirely on § 1605(a)(7).

The Ninth Circuit also noted that Counsel for the Peterson Plaintiffs failed to comply with the FSIA Notice Requirements by failing to ask the clerk of the court to mail the papers. Fortunately, the Court overlooked this error because counsel had substantially complied with the statute governing service.

Incredibly, after lobbying for the Lautenberg Amendment -- which would have allowed the Peterson Plaintiffs to assert punitive damage claims against Iran -- F&P failed to assert such punitive damages claims on behalf of those plaintiffs. F&P's time to assert a punitive damages claim on behalf of the Peterson Plaintiffs may now be barred. In point of fact, punitive damages were awarded to virtually all victims of terrorism who asserted claims under the revised statute, and they almost certainly would have been awarded to the Peterson Plaintiffs but for F&P's inadequate representation.

Moreover, although other victims of Iranian state sponsored terrorism can now reach any assets in which Iran has an interest pursuant to 28 U.S.C. § 1605A, the Peterson Plaintiffs can

only reach assets actually owned by Iran, again due to F&P's inadequate representation, in particular its failure to file the claims of those plaintiffs under the revised 28 U.S.C. § 1605A when this statute replaced 28 U.S.C. § 1605(a)(7).

F&P's inadequate representation of the Peterson Plaintiffs puts it in a conflicted position in this action. The Peterson Plaintiffs have smaller damage awards than other similarly situated victims of terrorism. Other F&P clients were awarded punitive damages against Iran and can collect these awards from a larger pool of assets than the Peterson plaintiffs. In the present collection action against limited assets, F&P – through their new collection attorneys Fay Kaplan and David Cook – must argue either (1) that everyone must receive compensatory damages before punitive damages are awarded (in which case the firm's other clients with punitive damage awards are shortchanged); or (2) that punitive damage claims have the same priority as compensatory damage claims – in which case the Peterson Plaintiffs and Glenn will all receive a considerably smaller share of the limited fund as a result of F&P's inadequate representation.

On information and belief, F&P's conflict of interest was not disclosed to the Peterson Plaintiffs and the Peterson Plaintiffs have not waived this conflict. This conflict was certainly never disclosed to Glenn. As set forth in his accompanying affidavit, Glenn regularly receives telephone calls and emails from several of the Peterson Plaintiffs and these plaintiffs were unaware of the conflicts faced by F&P.

5.   **Glenn's Application to Intervene Is Timely**

    A.   **The Legal Standard for Timeliness**

The Courts have held that:

"Timeliness [of an application to intervene] defies precise definition, although it is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any

7

delay; (3) prejudice to the applicant if the motion is dismissed; and (4) any unusual circumstances militating for or against a finding of timeliness."

*United States v. Pitney Bowes,* 25 F.3d 66, 70 (2d Cir. 1994).

Although the Court must consider all of these factors, "The most important criterion in determining timeliness is 'whether the delay in moving for intervention has prejudiced any of the existing parties." Thus, "Absent such prejudice, the motion for intervention will usually be deemed timely." *Miller v. Silbermann,* 832 F.Supp. 663 (S.D.N.Y. 1993). *Accord, S.E.C. v. Credit Bancorp.,* 2000 U.S. Dist. LEXIS 11734 (S.D.N.Y. August 16, 2000).

In the case at bar, each of the four factors in the timeliness determination militates in favor of the Court allowing Glenn's intervention.

B.   **Glenn Acted Promptly**

Glen acted shortly after learning of this action. Although this action was commenced in 2009, it is filed under seal and Glenn had no way to know about this action when it was filed. Indeed, although Glenn has executed multiple protective orders in the Peterson Liability Action, F&P and their collection counsel David Cook have systematically excluded Glenn from all proceedings in this action. Recently Attorney Cook advised Glenn that he had been instructed not to discuss any aspects of the collection actions with Glenn. Glenn does not receive PACER notification on this action. Indeed, to date Glenn has been unable to access most of the papers in this action and has been unable to ascertain the current status of this litigation.

C.   **Intervention Will Not Prejudice the Parties to This Action**

Glenn's proposed intervention will not prejudice the parties to this action because Glenn seeks to intervene solely for purposes of protecting his attorneys' lien and does not anticipate seeking new discovery or asserting direct causes of action against the parties other than as necessary to protect his lien.

Glenn does not intend to contest any turnover proceedings, does not intend to interfere with the orderly disposition of the pending action, and does not intend to delay the ultimate resolution of this action. Glenn is only intervening to protect his charging lien as an attorney for the Peterson Plaintiffs. Documents proving Glenn's charging lien are annexed hereto as Exhibit A.

Glenn's interests are aligned completely with the interests of the Peterson Plaintiffs. He represented 103 of those plaintiffs in their initial action against the Islamic Republic of Iran ("Iran"), and his ability to recover legal fees is completely contingent upon the ability of the Peterson Plaintiffs to collect their judgment against Iran. His intervention will therefore not prejudice the claims of the Peterson Plaintiffs.

Iran is already a judgment debtor in this action, and its only interest is somehow avoiding collection of the judgment against it. This interest cannot be prejudiced. The financial institutions holding funds which are the subject of this turnover proceeding cannot claim prejudice, as their rights are unaffected by Glenn's right to a contingent attorneys' fee award. Presumably those financial institutions will have to turn over any assets belonging to Iran or its political subdivisions, regardless of whether Glenn intervenes in this action.

To the extent that there are other judgment creditors seeking payment from Iran, the priority of the judgment liens of the various judgment creditors should not be affected one way or the other by Glenn's intervention. Glenn only seeks to protect his interest in the proceeds recovered by the Peterson Plaintiffs.

Simply put, there is no prejudice to any of the parties to this action. None of the parties to this action should object to Glenn's intervention.

By contrast, there will be prejudice to Glenn if his motion for leave to intervene is denied. F&P Partner Thomas Fortune Fay has already told Glenn that he will not be paid the full amount owed to him. According to documents (Exhibit A) filed by Attorney Fay in an earlier litigation (Perles v. Kagy, Civil Action No. 01cv105(ESH/AK) in the United States District Court for the District of Columbia, "Mr. Perles has publically boasted that his assets are held in such ways that judgment creditors will not be able to reach them." To paraphrase Mr. Fay's argument against Mr. Perles in that case:

> "Given the present circumstances and the [expected] rapid dissipation . . . of funds on deposit . . . there is a virtual certainty that the litigation will impair the interest entitled to protection. Moreover, a failure by [Plaintiff Glenn] to challenge [Defendants' proposed distribution] of the funds almost certainly would be raised as a waiver of [Mr. Glenn's lien and] right to possession of [his share] of the funds."

### D.   There Are No Unusual Circumstances Militating Against Intervention

Glenn is not aware of any "unusual circumstances" which militate against allowing intervention in this case. Although documents in this action are filed under seal, Glenn has already signed confidentiality orders in connection with related actions in his capacity as an officer of the Court in those actions, and he and his attorneys are willing to sign any such confidentiality orders in this action too.

### 6.   In the Alternative Glenn Should Be Permitted Permissive Intervention

As set forth above, Glenn's claim for attorneys fees is wholly dependent upon a recovery by the Peterson Plaintiffs recovery. He seeks only to track this action in order to protect his lien for attorneys fees.

Under the circumstances, if the Court determines that intervention as of right is not available under Fed. R. Civ. P. Rule 24(a)(2), it should grant permissive intervention under Fed. R. Civ. P. Rule 24(b)(1)(B).

**Conclusion**

For the reasons set forth above, this Court should issue an order granting Jay Glenn leave to intervene in this action, and directing that copies of all pleadings and legal papers served to date in this action be served upon Glenn's attorneys in this action.

Dated:   March 15, 2011

                                                            Daniel Cobrinik (DC 6406)
                                                            276 Fifth Avenue
                                                            Suite 405
                                                            New York, New York 10001
                                                           (212) 725-6888