UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMY LEVIN and DR. LUCILLE LEVIN, et al., | : |
| Plaintiffs, | : Case No. 1:09-cv-05900 (RPP) (MHD) |
| vs. | : |
| BANK OF NEW YORK, JPMORGAN CHASE, SOCIETE GENERALE and CITIBANK, et al., | : |
| Defendants. | : |
| BANK OF NEW YORK, et al., | : |
| Third-Party Plaintiffs, | : |
| vs. | : |
| THE ESTATE OF JAMES SILVIA, et al., | : |
| Third-Party Defendants. | : |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR LEAVE TO INTERVENE BY PROPOSED INTERVENOR JAY GLENN**

**INTRODUCTION**

On or about June 13, 2003, the Law Offices of Fay & Perles retained the services of Jay Glenn (hereinafter "Glenn") as an independent contractor for the purpose of, in pertinent part, preparing all witnesses for hearings, presentation of all evidence to the Court or Special Master and presentation of all records and medical reports to the court. A copy of the agreement is annexed to the Declaration of Jay Glenn dated March 14, 2011, as Exhibit A.

As a result of the agreement between the Law Offices of Fay & Perles and Glenn, Glenn

160654

assets involved in the turnover action. This Court ruled, by Order dated June 3, 2010, that "blocked assets as described in the Complaint and the Third-Party Complaint are the only assets that are the subject of this litigation, and the Third-Party Complaint does not expand the scope of the assets at issue beyond the assets at issue in the underlying action brought by the Levins." The Peterson Plaintiffs in the Peterson NY Enforcement Action, seek recovery of different assets than those involved in the instant case.

The Plaintiffs moved for summary judgment in this case resulting in an Order of this Court dated March 4, 2011, which held that the Greenbaum and Acosta Judgment Creditors, and no other parties, were entitled to turnover of the assets described in the Levin Complaint.

## ARGUMENTS

### THIS COURT SHOULD SUMMARILY DENY INTERVENTION

Fed. R. Civ. P. 24(a)(2) requires that the proposed intervenor "(1) timely file an application, (2) show an interest in an action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *See In Re: Bank Of New York Derivative Litigation (Kalinski v. Bacot)*, 320 F.3d 291, 300 (2d Cir. 2003). All four elements must be met to qualify for intervention as of right. *See Hartford Fire Ins. Co. v. Mitlof,* 193 F.R.D. 154 (S.D.N.Y. 2000). As set forth below, Glenn cannot show an interest in the action, demonstrate that his interest is being impaired, and that whatever interest he has, if any, is not being adequately protected.

A.   *Glenn has no interest in the Levin action. The Levin action is now concluded as to the Peterson Plaintiffs, rendering this motion moot.*

Glenn would have to show a recognizable interest sufficient to satisfy the "case or controversy requirement" under Article III. The interest must be "significantly protectable" and

160654

direct as opposed to "remote or contingent." *See Hartford Fire Ins. Co., supra, at 160.* Specifically, "an interest that is . . . contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Id., quoting Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co., 922 F.2d 92 (2nd Cir. 1990).* Absent an interest in this case, Glenn cannot intervene. *See Hartford Fire Ins. Co., supra.*

Judgment has been entered in this action (*see Levin v. Bank of New York*, 09 CV 05900 [RPP], op. and memo order at No. 342 [S.D.N.Y. filed March 4, 2011]), pursuant to which the Peterson Plaintiffs have no interest. Accordingly, there is no "case or controversy" at issue capable of supporting intervention sought by Glenn under either Fed. R. Civ. P. 24(a) or (b). Glenn only has a distant fee interest conditioned upon recovery of the aforementioned money judgment by the Peterson Plaintiffs. Recovery can only be had through enforcement efforts. The fact that the Levin matter is resolved, thereby rendering this intervention motion moot, is a *per se* bar to intervention based on the lack of a "case or controversy." *Steffel v. v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) ("*[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome*"). Additionally, Glenn's interest, if any, is contingent upon the enforcement of the Peterson Plaintiff's money judgment.

Therefore, Glenn is unable to show an "interest" in this action as required by Fed. R. Civ. P. 24(a)(2) and thus, the motion fails on its face.

B.   *Glenn's interest, if any, is being adequately represented.*

The Second Circuit has held "[w]hile the burden to demonstrate inadequacy of representation is generally speaking "minimal," . . . a more rigorous showing of inadequacy in

160654

cases where the putative intervenor and a named party have the same objective" is required. *Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 180 (2nd Cir. 2001) (*where Second Circuit recognized that evidence of collusion, adversity of interest, nonfeasance, or incompetence **may** suffice to overcome presumption of adequate representation, but in light of the named party's attorneys legal efforts having included an 80-day trial, a subsequent appeal, and further proceedings following the appeal, the record did not support any allegation of inadequacy*).

As aforementioned, the Peterson Plaintiffs' objective is clearly to collect on their money judgment. Glenn, whose fee is contingent upon the Peterson Plaintiffs collection undoubtedly seeks the same objective – collection. Thus, Glenn has the burden to make *a more rigorous showing of inadequacy* to overcome the presumption of adequate representation. Glenn does not and cannot claim that his interests are impaired in this current litigation. The Peterson Plaintiffs have no interest in the assets whose turnover in this action have been ordered in favor of the Greenbaum and Acosta Judgment Creditors. The Peterson Plaintiffs' interest in other assets, which are the subject of the Peterson NY Enforcement Action, is in no way impaired by any representation by counsel in the instant action because those assets are not the subject of this action. Moreover, Glenn's motion does not take issue with the conduct of counsel in the prosecution of the instant proceeding. Contrary to Glenn's assertion, the filings in this case with regard to the Peterson Plaintiffs have not been under seal and any basis for complaint by Glenn would be known to him.

Therefore, Glenn's interest is being adequately represented.

C.    *Glenn's motion to intervene is untimely*.

Glenn's motion should be denied as untimely. "A trial court's broad discretion in

160654

assessing the timeliness of a motion to intervene is not a subject that easily lends itself to a precise definition." *Butler, Fitzgerald & Potter, supra, at 182*. However, some factors in making this determination include: "how long the motion to intervene was delayed, whether the existing parties were prejudiced by that delay, whether the movant will be prejudiced by that delay, whether the movant will be prejudiced if the motion is denied, and unusual circumstances militating either for or against a finding of timeliness." *Id., see Hartford Fire Ins. Co., supra, at 159-60*. Moreover, when the moving party alleges a "threat" to their interest, the most important consideration for a determination on timeliness is when the moving party knew or *should have known* of such "threat." *See Butler, Fitzgerald & Potter, supra*.

Glenn's delay is unreasonable because he knew of his potential interest in the Peterson Plaintiff's money judgment since 2007, and public record of the Third-Party Complaint against the Peterson Plaintiffs in this action has been available since January, 2010.

D. *Competing concerns by the granting of Glenn's motion are contrary to policy interests.*

As recognized by the Second Circuit,

> substantial policy interests are implicated by allowing a discharged attorney to intervene in a former client's action as a matter of right . . . . An attorney's interest is aligned with that of his former client, and presumably the attorney's self-interest would dictate it not deliberately impair the litigant's chance of recovery. Yet, an intervenor-counsel might advance arguments either not raised, or even in conflict with those already made . . . undermining the current . . . strategy . . . . These competing concerns might lead to a litigation impasse or to the subjugation of the client's interests to that of its former counsel.

*Butler, Fitzgerald & Potter, supra, at 178-79*.

The risk of claims that might arise between the parties looms very large, given the nature of compulsory cross-claims, counterclaims, and federal transactional *res judicata* principles. The fact that these claims exist would convert a straightforward turnover proceeding into a chaotic "free for all" between attorneys and clients. This prospect reaches even a greater level of

160654

concern, given the amounts of money involved, the presence of competing creditors, the fact that the object of the enforcement is a foreign state, and that the funds are held by sophisticated financial institutions. The policy interests are even more imperative in a case in which the clients are a large group of individuals who depend on the lawyer to represent their interest, both as an interpersonal matter and as a matter of trust. Glenn's intervention would clearly wreak havoc.

A careful examination of Glenn's memorandum shows that he is adverse not only to both Mr. Fay and Mr. Perles, but to the Peterson Plaintiffs. This is evidenced by the filing of an action in this Court entitled *Glenn v. Fay & Perles*, and copies of the first, second and third proposed amended complaints are attached hereto marked as Exhibits A and B and incorporated by reference.

Although the Peterson Plaintiffs maintain that Glenn is not their attorney as he was an independent contractor to the Law Offices of Fay & Perles, that Glenn did not have a separate and independent retainer or any other form of agreement with the Peterson Plaintiffs, and at all times was acting for and on behalf of the Law Offices of Fay & Perles, who are also responsible for the payment of fees to Glenn from monies collected, if any, Glenn's motion is nonetheless, contrary to policy interests, in violation of his ethical obligations, creates a conflict of interest, and breaches his ongoing fiduciary duty to the Peterson Plaintiffs.

Glenn seeks to intervene as a party in which he would be in direct competition in the management of this case with the Peterson Plaintiffs, who are represented by their own attorney. Glenn as a putative party would perceptively (or actually, given his animosity) be operating at cross purposes. This constitutes a clear conflict of interest to which the Second Circuit referred and moreover, a breach of his fiduciary duty.

> The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity . . . . Among other

160654

> things, the fiduciary relationship requires that the attorney respect his or her client's confidences. It also means that the attorney has a duty of loyalty to his or her client . . . . The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount.

*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal. App. 4th 1 (Cal. App. 1st Dist. 1997).

Moreover, DR 7-101(A)(3), as it pertains to the zealous representation of a client, provides, "[a] lawyer shall not intentionally . . . [p]rejudice or damage the client during the course of the professional relationship . . . ." Given the fact that Glenn was an attorney of record at the time the money judgment was rendered in favor of the Peterson Plaintiffs in 2007, and that Glenn has neither withdrawn nor been discharged as attorney of record, this duty continues. By filing this motion Glenn has undeniably and unnecessarily breached this duty.

The motion to intervene and the accompanying papers degrade Plaintiffs' position, attempt to point out certain alleged procedural infirmities, and directly or indirectly reveal client confidences. Glenn's motion seeks to reveal potentially protected communications, strategic decisions, and other closely held information, all of which undermine the Peterson Plaintiffs' NY Enforcement Action. To the extent that Glenn had a serious interest in insuring Plaintiffs would prevail, rather than fail, he should have filed this motion under seal, which as an experiential matter, would have been granted. The contents are derogatory to the Peterson Plaintiffs case, seek to diminish counsel for Peterson Plaintiffs, render settlement more difficult, and otherwise present to multiple adverse parties a state of putative disarray. The fact that he has filed this motion in public suggests that his motives are to injure the Peterson Plaintiffs, rather than resolve a business dispute. The conduct therefore of Glenn is antithetical and adverse to Peterson Plaintiffs enforcement.

Given the egregious memorandum filed by Glenn, the effect of which would be to

160654

denigrate and destroy the Peterson Plaintiff NY Enforcement Action, the Peterson Plaintiffs are concurrently filing a motion in the United States District Court, District of Columbia, before Judge Lamberth, to disqualify Glenn, for cause, and extricate him from any representation at all. The deleterious conduct is Glenn's criticism of the handling of this matter by trial and enforcement counsel, which criticism he has aired publically, when otherwise his dispute with Fay and Perles could have been aired either in another tribunal, arbitration, or under seal. The effect of such an order from Judge Lamberth would vitiate any interest, including any lien, and ultimately render moot the current intervention motion. The appropriate tribunal, therefore, would be the United States District Court, District of Columbia, in which the Peterson Plaintiffs will move to disqualify Glenn based upon this conflict of interest and nothing less than destructive conduct. Such disqualification is appropriate given the fiduciary duty owed by Glenn.

Accordingly, in the interest of equity, Peterson requests that the motion for intervention be denied, but if the Court finds that Glenn has an interest that creates a right to intervene then consideration of this intervention motion should be stayed, pending the outcome of the ruling by Judge Lamberth, the effect of which would be to curtail any further proceedings by Glenn.

## GLENN HAS NO RIGHT TO PREMISSIVE INTERVENTION

Fed. R. Civ. P. 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim for defense that shares with the main action a question of law or fact." For the reasons aforementioned, Glenn's motion is untimely. Additionally, Glenn has not made any allegation, demonstration, or showing that his claim for attorneys' fees "shares with the main action a common question of law or fact." *See, e.g., Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991). To the contrary, Glenn only alleges that his request for permissive intervention is predicated on a desire to "track this action" to protect his lien

160654

interests. Filings in this action are a public record which Glenn may access without intervention.

Therefore, the portion of Glenn's motion for permissive intervention should be denied.

## THERE IS NO INDEPENDENT BASIS FOR FEDERAL COURT JURISDICTION

Glenn does not have a judgment. In fact, it is unclear exactly who he represents, what is the precise nature of his claim, how much is the claim, and whether he has a claim in this case at all or if he represents anyone. If Glenn individually becomes a party, the ensuing issue is whether he will be litigating his entitlement to this case. Nonetheless, Glenn has yet to articulate an independent basis of federal court jurisdiction to adjudicate that "independent interest." The complaint of putative intervenor fails to reflect an independent jurisdictional basis for purposes of intervention.

This is not the first time that an attorney has sought to intervene in an action in which the battleground was the plenary claim brought by the client. In *Taylor v. Kelsey* the court rejected intervention by two attorneys, given the lack of any independent federal jurisdiction, and moreover rejected ancillary jurisdiction. 666 F.2d 53, 54 (4th Cir. 1981). In *Federal Savings and Loan Ins. Corp. v. Ferrante* the court rejected intervention to resolve a dispute among attorneys likewise on the lack of jurisdiction. 364 F.3d 1037, 1039-40 (9th Cir. 2004). This case is the same. Glenn's dispute is with the Law Offices of Fay & Perles, not with the Peterson Plaintiffs, based upon an independent contractor agreement executed in the District of Columbia and governed by the laws of the District of Columbia. Glenn cannot demonstrate an independent basis of federal jurisdiction.

Any claim asserted by Glenn would necessarily be resolved before Judge Lamberth in the District of Columbia in which Judge Lamberth as the trial judge would be the person who would best be able to resolve, directly or indirectly, this putative fee dispute.

160654

## CONCLUSION

Since the Peterson Plaintiffs have no interest in the assets underlying the Levin Complaint, Glenn similarly has no interest therein. Glenn's interest in other assets sought to be turned over in favor of the Peterson Plaintiffs is adequately protected. The prospect that a current attorney could appear and compete with the very action from which he hopes to obtain his fee, causing conflicts of interest, ethical violations, and breaches of fiduciary duties, in a major and historic enforcement proceeding, is abhorrent. Glenn's statement denigrating Plaintiffs' case only serves as aid and comfort to the adverse parties, while Glenn had multiple other options by which to air his grievances. For the aforementioned reasons the Peterson Plaintiffs respectfully request that Glenn's motion be denied in its entirety.

DATED: March 30, 2011

SALON MARROW DYCKMAN NEWMAN & BROUDY

By: _____
Liviu Vogel (LV-7552)
292 Madison Avenue
New York, NY  10017
Telephone: 212-661-7100
Facsimile:  212-661-3339
*Attorneys for Deborah D. Peterson, et al.*

160654