UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JEREMY LEVIN and DR. LUCILLE LEVIN,          :

               Plaintiffs,          :

          -against-          :

BANK OF NEW YORK, JPMORGAN          :
CHASE, SOCIETE GENERALE and
CITIBANK,          :

             Defendants.          :
-------------------------------------------------------------x

THE BANK OF NEW YORK MELLON, et al.,          :

          Third-Party Plaintiffs,          :

          -against-          :

STEVEN M. GREENBAUM, et al.,          :

         Third-Party Defendants.          :
-------------------------------------------------------------x

THE BANK OF NEW YORK MELLON, et al.,          :

          Third-Party Plaintiffs,          :

          -against-          :

THE ESTATE OF JAMES SYLVIA and          :
LYNNE MICHOL SPENCER, et al.,
                             :

         Third-Party Defendants.
-------------------------------------------------------------x

Case No. 09 Civ. 5900 (RPP)

(FILED PARTIALLY UNDER
SEAL DUE TO CONFIDENTIAL
INFORMATION PER ORDER
DATED JANUARY 21, 2010)

**DECLARATION OF
<u>CURTIS C. MECHLING</u>**

IN SUPPORT OF THE LEVIN
PLAINTIFFS AND THE
GREENBAUM, ACOSTA AND
HEISER JUDGMENT
CREDITORS' JOINT MOTION
FOR PARTIAL SUMMARY
JUDGMENT AND TURNOVER
OF PHASE ONE ASSETS

-----------------------------------------------------------------x

THE BANK OF NEW YORK MELLON, et al.,    :

             Third-Party Plaintiffs,    :

       -against-    :

ESTATE OF MICHAEL HEISER, et al.,    :

             Third-Party Defendants.    :
-----------------------------------------------------------------x

JPMORGAN CHASE BANK, N.A.,    :

             Third-Party Plaintiff,    :

       -against-    :

██████████████████████ et al.,    :

             Third-Party Defendants.    :
-----------------------------------------------------------------x

CITIBANK, N.A.,    :

             Third-Party Plaintiff,    :

       -against-    :

████████████ et al.,    :

             Third-Party Defendants.    :
-----------------------------------------------------------------x

SOCIETE GENERALE,    :

             Third-Party Plaintiff,    :

       -against-    :

██████████████████████    :

             Third-Party Cross-Claim    :
             Defendant, and

██████████ et al.,                                :

        Third-Party Defendants.   :
-----------------------------------------------------------------x

THE BANK OF NEW YORK MELLON,                      :

        Third-Party Plaintiff,             :

     -against-                                  :

██████████ et al.,                                :

        Third-Party Defendants.   :
-----------------------------------------------------------------x

CURTIS C. MECHLING, under penalty of perjury, declares:

1.     I am a member of the law firm of Stroock & Stroock & Lavan LLP, counsel for third-party defendants and judgment creditors Steven M. Greenbaum, on behalf of himself individually and as Administrator of the Estate of Judith (Shoshana) Lillian Greenbaum, deceased, Alan D. Hayman, and Shirlee Hayman (collectively, the "Greenbaum Judgment Creditors") and Carlos Acosta, Maria Acosta, Irving Franklin, Estate of Irma Franklin, Sonya Kahane, Cipporah Kaplan, Tova Ettinger, Baruch Kahane, Ethel Griffin as Administrator of Binyamin Kahane's Estate, and Rabbi Norman Kahane (collectively, the "Acosta Judgment Creditors"), in the above-captioned action. I submit this Declaration in support of a joint motion being made on behalf of the Greenbaum and Acosta Judgment Creditors, plaintiffs Jeremy and Dr. Lucille Levin (together, the "Levins"), and third-party defendants and judgment creditors the Estate of Michael Heiser, *et al.* (the "Heiser Judgment Creditors") (collectively, "Movants") for an Order granting them partial summary judgment and turnover with respect to the Phase One Assets, as that term is hereinafter defined, held by defendants-third-party plaintiffs The Bank of New York Mellon ("BNYM") and Societe Generale ("SoGen"), and lifting the stay previously

-3-

issued in this action to permit the turnover of Phase One Assets held by these and other garnishee banks. The facts stated below are based on my personal knowledge or my review of the prior papers filed and proceedings in this action.

### PRIOR PROCEEDINGS

#### Filing and Service of Complaint and Third-Party Interpleader Complaints

2.     On May 26, 2009, the Levins obtained writs of execution from the Clerk of the District Court for the Southern District of New York and delivered those writs to the United States Marshals Service for the Southern District of New York (the "U.S. Marshal") on June 19, 2009 for service upon the four defendant-third-party plaintiff banks in this action: BNYM, SoGen, Citibank, N.A. ("Citibank") and JPMorgan Chase Bank, N.A. ("JPMorgan") (collectively, the "Garnishee Banks"). (See Plaintiffs' Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated July 13, 2010 and submitted in support of the Levins' motion for partial summary judgment ("Levins' Rule 56.1 Statement") at ¶ 8 (Docket No. 220); Declaration of Suzelle Smith, dated July 13, 2010, submitted in support of the Levins' motion for partial summary judgment ("Smith Decl."), Ex. 62 (Docket No 221)). On June 26, 2009, the Levins then filed their Complaint pursuant to 28 U.S.C. §1610, including §201 of the Terrorism Risk Insurance Act ("TRIA"), codified as a note thereto, seeking the turnover of certain blocked assets of the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security, the Iranian Revolutionary Guard and any agencies and/or instrumentalities of Iran, including any assets in which such entities possessed any interest (the "Blocked Assets"), being held by the Garnishee Banks. (Levins' Rule 56.1 Statement at ¶ 9).

3.     By Order dated January 11, 2010, the Court authorized the Garnishee Banks to serve third-party interpleader complaints with respect to the Blocked Assets. (January 11, 2010 Order (Docket No. 33)). Certain of the Blocked Assets were identified by the Levins

and the Garnishee Banks as being appropriate for turnover proceedings in what has been identified and referred to as Phase One of this litigation (the "Phase One Assets"). (Id.). The Garnishee Banks thereafter filed and served multiple third-party complaints against additional judgment creditors of Iran and other parties believed to have an interest in the Blocked Assets, including, but not limited to, the Phase One Assets, in order to determine whether any of these parties held priority interests in such assets as compared to the Levins. (See Levins' Rule 56.1 Statement at ¶ 19; Smith Decl., Ex. 12).

4.    On December 31, 2009, BNYM filed and duly served a third-party summons and complaint interpleading as third-party defendants



(collectively, the "BNYM Commercial Third-Party Defendants"), among others. (See Levins' Rule 56.1 Statement at ¶ 17; Smith Decl., Ex. 24). It is undisputed that the BNYM Commercial Third-Party Defendants all either failed to file or serve answers to the third-party complaint or appeared and asserted no claims to the Blocked Assets held by BNYM (the "BNYM Blocked Assets").[1] (See Opinion and Order, January 20, 2011 (the "Opinion and Order") at 8 (Docket No. 323)). Movants respectfully submit that the BNYM Commercial Third-Party Defendants became subject to this Court's *in personam* and *in rem* jurisdiction by reason of the BNYM Blocked Assets being located in this Court's jurisdiction.

---

[1]    On December 15, 2010, BNYM additionally filed and duly served a third-party complaint interpleading ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ as a third-party defendant in this action. However, like the other BNYM Commercial Third-Party Defendants, ▮▮▮▮▮▮▮ failed to answer the complaint and is thus in default.

5.     On December 31, 2009, SoGen filed and duly served a third-party

summons complaint interpleading as third-party defendants ███████████████

███████████████████████████████████████

████████████████████████████████████████████

(collectively, the "SoGen Commercial Third-Party Defendants"), among others. (See Levins'

Rule 56.1 Statement at ¶ 18; Smith Decl., Ex. 23). With the exception of ██████████████ it

is undisputed that the SoGen Commercial Third-Party Defendants all either failed to file or serve

answers to the third-party complaint, or appeared and asserted no claims to the Blocked Assets

being held by SoGen (the "SoGen Blocked Assets"). (See Opinion and Order at 8; Smith Decl.,

Ex. 50). █████████████, the only commercial third-party defendant to have made any claims

to any of the Blocked Assets, withdrew its claim and was dismissed from this action by Order of

the Court dated July 26, 2010. (See Greenbaum and Acosta Judgment Creditors'

Counterstatement of Undisputed Facts Pursuant to Local Rule 56.1, dated September 13, 2010

and submitted in opposition to the Levins' motion for partial summary judgment and in support

of the Greenbaum and Acosta Judgment Creditors' cross-motion for partial summary judgment

("Greenbaum/Acosta Rule 56.1 Counterstatement") at ¶ 93 (Docket No. 251); Declaration of

James L. Bernard, dated September 13, 2010 and submitted in opposition to the Levins' motion

for partial summary judgment and in support of the Greenbaum and Acosta Judgment Creditors'

cross-motion for partial summary judgment ("Bernard Decl."), Ex. 26 (Docket No. 250)).

Movants respectfully submit that the SoGen Commercial Third-Party Defendants became subject

to this Court's in personam and in rem jurisdiction by reason of the SoGen Blocked Assets being

located in this Court's jurisdiction.

6.     On December 31, 2009, Citibank filed and duly served a third-party summons and complaint interpleading as third-party defendants ███████████████████

████████████████████████████████████████████

██████████████████████ (collectively, the "Citibank Commercial Third-Party Defendants"), among others. (See Levins' Rule 56.1 Statement at ¶ 17; Smith Decl., Ex. 26). It is undisputed that the Citibank Commercial Third-Party Defendants all failed to file or serve answers to the third-party complaint. (See Opinion and Order at 8). Movants respectfully submit that the Citibank Commercial Third-Party Defendants became subject to this Court's *in personam* and *in rem* jurisdiction by reason of the Blocked Assets held by Citibank (the "Citibank Blocked Assets") being located in this Court's jurisdiction.

7.     On December 31, 2009, JPMorgan filed and duly served a third-party summons and complaint interpleading as third-party defendants ███████████████████

████████████████████████████████ (these three entities collectively, the "JPMorgan Commercial Third-Party Defendants"), among others. (See Levins' Rule 56.1 Statement at ¶ 17; Smith Decl., Ex. 25). It is undisputed that neither Party B nor Party C filed or served answers to the third-party complaint. (See Opinion and Order at 8). It is also undisputed that Party A interposed an answer and appeared in this proceeding "for the limited purpose of stating that it makes no claim to the funds that are the subject of the Turnover Proceeding." Movants respectfully submit that Party A's limited appearance is sufficient to empower this Court to grant the relief requested herein as against Party A. Movants also respectfully submit that the JPMorgan Commercial Third-Party Defendants became subject to this Court's *in personam* and *in rem* jurisdiction by reason of both (1) proper service of process upon Party B and Party C, and Party A's limited appearance and disclaimer of rights, and (2) the

Blocked Assets being held by JPMorgan (the "JPMorgan Blocked Assets") being located in this Court's jurisdiction.

8.    On February 19, 2010, the Garnishee Banks duly served the Greenbaum and Acosta Judgment Creditors with a third-party complaint, dated December 31, 2009, interpleading them as third-party defendants in this action. (See Levins' Rule 56.1 Statement at ¶ 19; Smith Decl., Ex. 29). It is undisputed that the Greenbaum and Acosta Judgment Creditors filed answers to the third-party complaint and counterclaims for turnover of the Blocked Assets on April 15, 2010. (See Greenbaum/Acosta Rule 56.1 Counterstatement at ¶¶ 74, 83; Smith Decl., Exs. 38, 39).

9.    On June 1, 2010, the Garnishee Banks served the Heiser Judgment Creditors with a third-party complaint, dated May 27, 2010, interpleading them as third-party defendants in this action. (Levins' Rule 56.1 Statement at ¶ 19). It is undisputed that the Heiser Judgment Creditors filed an answer to the third-party complaint and counterclaims for turnover of the Blocked Assts on June 15, 2010, and an amended answer and counterclaims on July 6, 2010. (See Levins' Rule 56.1 Statement at ¶ 24; Smith Decl., Ex. 37).

10.    In addition to the Greenbaum and Acosta Judgment Creditors and the Heiser Judgment Creditors, numerous other judgment creditors of Iran and/or persons pursuing legal proceedings against Iran were made third-party defendants to this proceeding and served with additional third-party complaints filed by the Garnishee Banks. (Levins' Rule 56.1 Statement at ¶ 19). Such additional third-party defendants include persons identified in those third-party complaints as the Peterson Judgment Creditors, the Rubin Judgment Creditors, the Valore Plaintiffs, the Bonk Plaintiffs, the Silvia Plaintiffs, the Brown Plaintiffs and the Bland Plaintiffs (collectively, the "Other Third-Party Defendant Litigants"). (See id.; Smith Decl., Exs.

-8-

31-36). It is undisputed that all of the Other Third-Party Defendant Litigants filed answers or amended answers that did not raise – and therefore waived – any defenses of insufficient process, insufficient service of process or lack of personal jurisdiction. (See id.; Smith Decl., Exs. 40-43). Movants respectfully submit that those parties have thus consented to this Court's jurisdiction.

### 2010 Partial Summary Judgment and Turnover Order
### With Respect to the Phase One Assets Held by Citibank and JPMorgan

11.     On July 13, 2010, the Levins filed a motion for partial summary judgment and turnover of all of the Phase One Assets being held by all four of the Garnishee Banks. (Opinion and Order at 8).

12.     On September 13, 2010, the Greenbaum and Acosta Judgment Creditors opposed the Levins' motion for partial summary judgment and turnover of all of the Phase One Assets and cross-moved for partial summary judgment and turnover with respect to the Phase One Assets held by JPMorgan and Citibank. (Id. at 8-9). On September 13, 2010, the Heiser Judgment Creditors also opposed the Levins' motion for partial summary judgment and turnover of all of the Phase One Assets and cross-moved for partial summary judgment and turnover with respect to the Phase One Assets held by BNYM. (Id. at 8).

13.     None of the other third-party defendants in this action -- including the BNYM Commercial Third-Party Defendants, the SoGen Commercial Third-Party Defendants, the Citibank Commercial Third-Party Defendants, JPMorgan Commercial Third-Party Defendants or any of the Other Third-Party Defendant Litigants -- opposed the partial summary judgment motions made by the Levins, the Greenbaum and Acosta Judgment Creditors or the Heiser Judgment Creditors. (See id.). Nor did any other third-party defendants themselves

move with regard to any of the Blocked Assets, including, but not limited to, the Phase One

Assets. (See id.).

               14.      On September 29, 2010, the Court heard oral argument on the respective

motions for partial summary judgment filed by the Levins, Greenbaum and Acosta Judgment

Creditors and the Heiser Judgment Creditors.  (See id. at 9).  On January 20, 2011, the Court

issued the Opinion and Order, denying the Levins and Heiser Judgment Creditors' motions for

partial summary judgment, and granting the Greenbaum and Acosta Judgment Creditors' motion

for partial summary judgment and a turnover order as to the Citibank Phase One Assets and the

JPMorgan Phase One Asset and discharging JPMorgan Chase & Co. and JPMorgan (these two

entities collectively, "JPMorgan") and Citibank from all other claims to those assets that had

been, or may be, asserted by other parties.

               15.      In the Opinion and Order, the Court determined that Iran is a "state

sponsor of terrorism" within the meaning of §§1605(a)(7) and 1605A of the Foreign Sovereign

Immunity Act ("FSIA"), 28 U.S.C. §§1605(a)(7) and 1605A, and a "terrorist party" within the

meaning of §201 of TRIA, codified as a note to 28 U.S.C. §1610.  (See id. at 29).

               16.      The Court also determined in the Opinion and Order that the Citibank

Phase One Assets and the JPMorgan Phase One Asset constitute blocked assets in which Iran or

an agency and/or instrumentality of Iran possess a sufficient interest to subject such assets to

execution pursuant to §1610 of the FSIA and §201 of TRIA, codified as a note thereto.  (Id. at

33-37).

               17.      The Court further found in the Opinion and Order that the Greenbaum and

Acosta Judgment Creditors hold a priority interest in, and are entitled to a turnover order as to,

the Citibank Phase One Assets, which assets consist of ███████████████████

-10-

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ (collectively, the "Citibank Phase One Assets").  (See id. at 38).

18.     The Court also found that the Acosta Judgment Creditors hold a priority interest in, and are entitled to a turnover order as to, the JPMorgan Phase One Asset, which consists of █████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ (the "JPMorgan Phase One Asset").  (See id.).

19.     On March 4, 2011, the Court issued an Opinion and Amended Order identical to the original Opinion and Order, except additionally providing for the entry of a partial final judgment within the meaning of Fed. R. Civ. P. 54(b).  (See Levin v. Bank of New York, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011); (Opinion and Amended Order, March 4, 2011 (the "Opinion and Amended Order") (Docket No. 342)).  The partial final judgment entered by the Court additionally stayed all further proceedings with regard to the Phase One Assets

-11-

pending an appeal by the Levins from said partial final judgment, on the condition that a notice of appeal be filed in a timely fashion (the "Stay").   (See id. at 38-39).

### The Levins' Appeal from the Opinion and Amended Order and Subsequent Settlement Agreement of the Movants

20.     On February 10, 2011, the Levins filed a notice of appeal from the Opinion and Order.  (Notice of Appeal, Docket No. 332).  The Levins thereafter filed their opening brief in support of their appeal on March 30, 2011.  (Plaintiffs-Appellants' Opening Brief, March 30, 2011, 2d Cir. Case No. 11-cv-623, Docket No. 70 (the "Levin Appeal Brief")).

21.     On April 13, 2011, the Court of Appeals for the Second Circuit so-ordered scheduling notifications filed by both the Greenbaum and Acosta Judgment Creditors and the Heiser Judgment Creditors, respectively, which pursuant to the Court of Appeals Local Rule 31.2 set June 1, 2011 as the filing date for their respective briefs in opposition to the Levins' appeal. (So-Ordered Scheduling Notification, April 13, 2011, 2d Cir. Case No. 11-cv-623, Docket No. 103).

22.     Shortly thereafter, the Movants entered into settlement discussions and have since resolved their dispute regarding priority as to the Blocked Assets and reached a settlement providing for the distribution of proceeds therefrom, which is more fully set forth in a confidential settlement agreement signed and entered into by the Movants (the "Settlement Agreement").

23.     If effectuated based on this Court entering an order directing the turnover of all of the Phase One Assets, the Settlement Agreement would moot the Levins' pending appeal and any competing claims by and among the Levins, Greenbaum and Acosta Judgment Creditors and Heiser Judgment Creditors with respect to the Blocked Assets.  Accordingly, the Greenbaum and Acosta Judgment Creditors and Heiser Judgment Creditors, with the Levins'

-12-

consent, sought and obtained from the Court of Appeals a 30-day extension – until July 1, 2011 –
in which to file their respective briefs in opposition to the Levins' appeal. (Motion Order, May
31, 2011, 2d Cir. Case No. 11-cv-623, Docket No. 117). The Movants thus desire to resolve this
matter, as described more fully herein, by July 1, 2011.

### THE REMAINING PHASE ONE ASSETS HELD BY BNYM AND SOGEN

24.     Aside from the JPMorgan Phase One Asset and Citibank Phase One
Assets that were disposed of by the Court's Opinion and Amended Order, there remain
additional Phase One Assets that have not yet been disposed of in this action. These remaining
Phase One Assets consist of: (1)



(the "BNYM Phase One Assets"); and (2)

(the "SoGen Phase One
Assets") (collectively, the "Remaining Phase One Assets"). (See Opinion and Order at 4).

25.     For the reasons stated below, the Movants respectfully submit that they are
entitled to partial summary judgment and a turnover order with respect to all of the Remaining
Phase One Assets.

#### The Remaining Phase One Assets Are Subject to Attachment and Execution
#### Pursuant to 28 U.S.C. §1610 and §201 of TRIA, Codified as a Note Thereto

26.     Section 201 of TRIA, codified as a note to 28 U.S.C. §1610, provides:

> In every case in which a person has obtained a judgment against a
> terrorist party on a claim based upon an act of terrorism, or for
> which a terrorist party is not immune under section 1605(a)(7) [or
> section 1605A] of title 28, United States Code, the blocked assets
> of that terrorist party (including the blocked assets of any agency
> or instrumentality of that terrorist party) shall be subject to
> execution or attachment in aid of execution in order to satisfy such
> judgment to the extent of any compensatory damages for which
> such terrorist party has been adjudged liable.

27.    It is undisputed that the Levins possess a valid judgment entered against Iran pursuant to 28 U.S.C. §1605(a)(7) and registered in the Southern District of New York. (See Opinion and Order at 4). It is also undisputed that the Greenbaum and Acosta Judgment Creditors possess valid judgments entered against Iran pursuant to 28 U.S.C. §§1605(a)(7) and 1605A, respectively, and registered in the Southern District of New York. (See id.; Levins' Rule 56.1 Statement at ¶ 6). It is also undisputed that the Heiser Judgment Creditors possess a valid judgment entered against Iran pursuant to 28 U.S.C. §1605A, which has been registered in the Southern District of New York. (See Heiser Judgment Creditors' Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated September 13, 2010 and submitted in opposition to the Levins' motion for partial summary judgment and in support of the Heiser Judgment Creditors' cross-motion for partial summary judgment ("Heisers' Rule 56.1 Statement") at ¶ 8 (Docket No. 247); Opinion and Order at 7).

28.    Moreover, the Court previously determined in the Opinion and Order that Iran is a "state sponsor of terrorism" within the meaning of §§1605(a)(7) and 1605A of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§1605(a)(7) and 1605A, and a "terrorist party" within the meaning of §201 TRIA, codified as a note to §1610. (See Opinion and Order at 29).

29.    It is undisputed that the Remaining Phase One Assets constitute the proceeds of electronic fund transfers ("EFTs") that have been blocked at the direction of OFAC pursuant to a series of regulations serving to effectuate Executive Order 13382 of June 29, 2005, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters" ("E.O. 13382"). (See Levins' Rule 56.1 Statement at ¶¶ 43, 45, 47, 49, 51; Smith Decl. Exs. 2-4, 23, 24; Opinion and Order at 31).

30.     The Remaining Phase One Assets also belong to, or are owed to, Iran or agencies and/or instrumentalities of Iran. (See Affidavit of Dr. Patrick Clawson, sworn to on February 24, 2010 (the "Clawson Aff."), ¶¶ 21, 22, 24, 29, 34 (Docket No. 223); Levins' Rule 56.1 Statement at ¶¶ 44, 46, 48, 50, 52). The Court has also determined that the Remaining Phase One Assets' nature as EFTs does not otherwise impede their susceptibility to attachment or execution. (See Opinion and Order at 30-33).

31.     With respect to the BNYM Phase One Assets, this Court has already held that ████████ and ████████ are agencies and instrumentalities of Iran whose blocked assets are subject to turnover under §201 of TRIA. (See id. at 35-37 (unredacted version)). In reaching this determination, the Court relied upon the Clawson Affidavit. (Id. at 36-37 (citing the Clawson Aff. at ¶¶ 21, 22, 23, 27)). There is therefore no dispute that the BNYM Phase One Assets ████████████████████████████████████ ████████████████████████ are subject to execution and turnover under §201 of TRIA. (See id.) Nor is there any dispute that the SoGen Phase One Asset ████████████████ ████████████████ is subject to execution and turnover under §201 of TRIA. (See id.)

32.     The only other two accounts comprising the Remaining Phase One Assets are: (1) ████████████████████████████████ and (2) ████████ ████████████████████████. These assets, too, belong or are owed to Iran or an agency and/or instrumentality of Iran. OFAC has determined ████████ to be the Government of Iran, as defined in the Iranian Transactions Regulations, 31 C.F.R. Part §560.304, and both ████ ████ and ████████████████ (which is a wholly-owned subsidiary of ████████) are agencies and instrumentalities of Iran in Dr. Clawson's expert opinion. (See 31 C.F.R. §560.304; Clawson Aff. at ¶¶ 24, 29). Moreover, neither BNYM or SoGen, nor the BNYM

-15-

Commercial Third-Party Defendants or the SoGen Commercial Third-Party Defendants, have submitted any evidence indicating that either ▮▮▮▮▮ or ▮▮▮▮▮▮▮▮▮▮ are not agencies or instrumentalities of Iran.

33.     Accordingly, Movants respectfully submit that the Remaining Phase One Assets are subject to attachment and execution in satisfaction of Movants' judgments against Iran.

### Movants Collectively Hold a Priority Interest in the Remaining Phase One Assets

34.     It is undisputed that, on May 26, 2009, the Levins obtained writs of execution from the Clerk of the District Court for the Southern District of New York  and delivered the writs to the U.S. Marshal on June 19, 2009 for service upon the Garnishee Banks, which levy has since been effected.  (See Levins' Rule 56.1 Statement at ¶ 8; Smith Decl., Exs. 20-23).  It is also undisputed that the Levins then filed their Complaint against the Garnishee Banks, seeking turnover of the Blocked Assets, on June 26, 2009.  (See Levins' Rule 56.1 Statement at ¶ 9).

35.     On February 7, 2008 and May 10, 2010, the Heiser Judgment Creditors obtained Orders from the United States District Court for the District of Columbia authorizing them to execute upon their judgment against Iran.  (See Declaration of David B. Misler, dated June 7, 2011 (the "Misler Decl."), ¶¶ 2-6).  On December 8, 2010, the Heiser Judgment Creditors obtained writs of execution from this Clerk of this Court, which they subsequently delivered to the U.S. Marshal on December 10, 2010 for service upon BNYM, SoGen, Citibank and JPMorgan.  (See id. at ¶¶ 8-9, Ex. 7).  On January 3, 2011, the U.S. Marshal levied the Heiser Judgment Creditors' writs upon BNYM and Citibank.  (See id. at ¶¶ 10, 13, Exs. 8, 11).  On January 4, 2011, the U.S. Marshal levied the Heiser Judgment Creditors' writs upon SoGen.

(See id. at ¶ 11, Ex. 9). And on January 28, 2011, the U.S. Marshal levied the Heiser Judgment Creditors' writs of execution upon JPMorgan. (See id. at ¶ 12, Ex. 10).

      36.    On February 14, 2011, the Heiser Judgment Creditors filed a petition for turnover against BNYM and SoGen in the matter styled Estate of Michael Heiser, et al. v. The Bank of New York Mellon, et al., Case No. 11-cv-0998 (RPP) (MHD) (S.D.N.Y.). (See id. at ¶¶ 8-9, Ex. 7).

      37.    On January 3, 2011, the Acosta Judgment Creditors obtained an Order of this Court (Jones, J.) pursuant to 28 U.S.C. §1610(c), specifically authorizing them to execute upon the Remaining Phase One Assets and directing the Clerk of the Court to issue writs of execution, accordingly. (See Acosta Judgment Creditors' Amended Answer to Third-Party Complaint and Counterclaims ("Acosta Amended Answer and Counterclaims") at ¶ 56 (Docket No. 345)). On January 4, 2011, the Acosta Judgment Creditors then obtained a writ of execution from the Clerk of the Court and delivered the writ that day to the U.S. Marshal for levy upon BNYM and SoGen. Such levy was completed by the U.S. Marshal on January 21, 2011. (See Acosta Amended Answer and Counterclaims at ¶ 57).

      38.    On February 8, 2011, the Greenbaum Judgment Creditors obtained an Order of this Court (Jones, J.) pursuant to 28 U.S.C. §1610(c), specifically authorizing them to execute upon the Remaining Phase One Assets and directing the Clerk of the Court to issue writs of execution, accordingly. (See Greenbaum Judgment Creditors' Amended Answer to Third-Party Complaint and Counterclaims ("Greenbaum Amended Answer and Counterclaims") at ¶ 58 (Docket No. 344)). On February 9, 2011, the Greenbaum Judgment Creditors then obtained a writ of execution from the Clerk of the Court and delivered the writ that day to the U.S. Marshal

for levy upon BNYM and SoGen. Such levy was completed by the U.S. Marshal on February 17, 2011. (See Greenbaum Amended Answer and Counterclaims at ¶ 59).

39.     Pursuant to the Court's March 4, 2011 Order, entered upon agreement and stipulation of the parties, the Greenbaum and Acosta Judgment Creditors filed and duly served amended answers to the third-party complaint and counterclaims for the turnover of the Blocked Assets, which asserted their respective original first counterclaims -- previously asserted only against BNYM, JPMorgan and Citibank -- against SoGen, as well. (See Greenbaum Amended Answer and Counterclaims; Acosta Amended Answer and Counterclaims).

40.     Of the Other Third-Party Defendant Litigants, it is undisputed that only two groups actually possess judgments against Iran and claim to have obtained writs of execution with respect to the Blocked Assets -- the Peterson Judgment Creditors and the Rubin Judgment Creditors. (See Opinion and Order at 8). However, the Peterson Judgment Creditors withdrew their counterclaims and cross-claims with regard to all of the Phase One Assets, and the Rubin Judgment Creditors' writs of execution have been held by this Court to be invalid as a matter of law by virtue of not having been court-ordered as this Court has ruled is required by 28 U.S.C. §1610(c). (Opinion and Order at 7-8, 23; Greenbaum/Acosta Rule 56.1 Counterstatement at ¶¶ 87, 90). Moreover, neither the Peterson Judgment Creditors nor the Rubin Judgment Creditors opposed the Levins' motion for partial summary judgment or the respective cross-motions for partial summary judgment made by the Greenbaum and Acosta Judgment Creditors and the Heiser Judgment Creditors. Accordingly, this Court ruled that neither the Peterson Judgment Creditors nor the Rubin Judgment Creditors possess a priority interest in any of the Blocked Assets, including, but not limited to, the Remaining Phase One Assets, that supersedes Movants' collective interest therein. (See Opinion and Order at 23).

-18-

41.     It is undisputed that none of the remaining Other Third-Party Defendant Litigants – the Valore Plaintiffs, Bonk Plaintiffs, Silvia Plaintiffs, Brown Plaintiffs and Bland Plaintiffs – claim to have obtained or served writs of execution with respect to any of the Blocked Assets, including, but not limited to the Phase One Assets.  Nor do such parties claim to possess valid judgments entered against Iran.  (See Greenbaum/Acosta Rule 56.1 Counterstatement at ¶¶ 85,86, 89, 91; Opinion and Order at 7-8; Smith Decl., Exs. 37, 41, 43, 58, 60).  Accordingly, Movants respectfully submit that – as a matter of law – none of these parties possess a priority interest in any of the Blocked Assets, including, but not limited to, the Remaining Phase One Assets, that supersedes Movants' collective interest.

42.     It is undisputed that no other party to this action properly executed upon the Remaining Phase One Assets prior in time to Movants.  (See Opinion and Order at 8). Movants therefore respectfully submit that they collectively hold a priority interest in such assets and, based on all of the foregoing, are entitled to an award of partial summary on their claims for an order directing the turnover of such assets pursuant to 28 U.S.C. §1610, §201 of TRIA and N.Y. C.P.L.R. §§5225 and 5227.

## RELIEF REQUESTED

43.     Pursuant to the terms of the Settlement Agreement, the Movants are jointly requesting that the Court lift the Stay imposed by the Opinion and Amended Order so as to implement and effectuate the relief sought herein.

### Partial Summary Judgment as to the Remaining Phase One Assets

44.     For all of the foregoing reasons, Movants respectfully request the Court find that: (1) the Remaining Phase One Assets are subject to attachment and execution in satisfaction of Movants' judgments, and (2) Movants possess a priority interest in such assets

entitling them to an award of partial summary judgment and a turnover order with respect to the Remaining Phase One Assets.

        45.    Pursuant to their Settlement Agreement, Movants have jointly agreed to rely upon the Greenbaum and Acosta Judgment Creditors writs of execution and counterclaims, and consent to the Court's finding that the Greenbaum and Acosta Creditors thus hold a priority interest in the Remaining Phase One Assets for purposes of this motion. However, such consent is for purposes of this Motion (and similar consistent subsequent motion or motions involving the Blocked Assets) only; if the Court declines to grant the relief requested herein, the consent granted by the Heiser Judgment Creditors and the Levins as to the Greenbaum and Acosta Judgment Creditors' priority over the Phase One Assets (and any additional assets held by the Garnishee Banks) shall be withdrawn and any claims to priority or other challenges shall not be deemed waived. In the event this Motion is denied, the Levins' appeal will proceed as per the Settlement Agreement entered into by Movants.

### Turnover of the Phase One Assets Held by Citibank and JPMorgan

        46.    As set forth in the Opinion and Amended Order, this Court has already held that the Greenbaum and Acosta Judgment Creditors hold a priority interest in and are entitled to a turnover order with regard to the Citibank Phase One Assets and that the Acosta Judgment Creditors are entitled to a turnover order with respect to the JPMorgan Phase One Asset. (See Opinion and Amended Order, Levin, 2011 WL 812032, at *21).

        47.    Subject to the Court entering a turnover order as to all the Phase One Assets (including the Remaining Phase One Assets), the Movants respectfully request that the Court: (1) order Citibank to turn over the Citibank Phase One Assets, plus accrued interest to date, to the U.S. Marshal, to be paid over by the U.S. Marshal to counsel for the Greenbaum and Acosta Judgment Creditors, within fifteen (15) days thereafter for further distribution pursuant to

the terms of the Settlement Agreement; and (2) order JPMorgan to turn over the JPMorgan Phase One Asset, plus accrued interest to date, to the U.S. Marshal, to be paid over by the U.S. Marshal to counsel for the Acosta Judgment Creditors, within fifteen (15) days thereafter for further distribution pursuant to the terms of the Settlement Agreement.

<u>Turnover of the Remaining Phase One Assets</u>

48.     Based on all of the foregoing, the Court has before it the legal and factual bases necessary to award partial summary judgment to Movants with respect to their claims to the Remaining Phase One Assets pursuant to 28 U.S.C. §1610, §201 of TRIA and N.Y. C.P.L.R. §5225, and to enter a judgment against the Garnishee Banks awarding the turnover of such assets to Movants in satisfaction of their judgments, as more fully described below.

49.     The Movants therefore respectfully request the Court to order BNYM to turn over the BNYM Phase One Assets, plus accrued interest to date, to the U.S. Marshal, to be paid over by the U.S. Marshal to counsel for the Greenbaum and Acosta Judgment Creditors, within fifteen (15) days thereafter for further distribution pursuant to the terms of the Settlement Agreement.

50.     The Movants also respectfully request the Court to order SoGen to turn over the SoGen Phase One Assets, plus accrued interest to date, to the U.S. Marshal, to be paid over by the U.S. Marshal to counsel for the Greenbaum and Acosta Judgment Creditors, within fifteen (15) days thereafter for further distribution pursuant to the terms of the Settlement Agreement.

<b>Discharge and Release of the Garnishee Banks and<br>Preservation of the Garnishee Banks' Right to Apply for Fees and Costs</b>

51.     Upon turnover by Citibank, JPMorgan, BNYM and SoGen to the U.S. Marshal of the Citibank Phase One Assets, the JPMorgan Phase One Asset, the BNYM Phase

One Assets and the SoGen Phase One Assets, the Movants request the Court discharge and release from all liability and obligation of any nature to the Levins, the Heiser Judgment Creditors, the Greenbaum and Acosta Judgment Creditors, the JPMorgan Phase One Third-Party Defendants, the Citibank Phase One Third-Party Defendants, the BNYM Phase One Third-Party Defendants, the SoGen Phase One Third-Party Defendants, the Other Third-Party Defendant Litigants and any other person or entity solely with respect to any claims to the Citibank Phase One Assets, the JPMorgan Phase One Asset, the BNYM Phase One Assets and the SoGen Phase One Assets. (See, e.g., N.Y. C.P.L.R. §1006(f); NY Banking Law §134).

52.     Moreover, by this Motion, without conceding that the Garnishee Banks are entitled to any attorneys' fees or costs, Movants do not seek to preclude Citibank, JPMorgan, BNYM or SoGen, as parties that have brought interpleader actions, from making proper applications for reasonable attorneys' fees and expenses from amounts awarded to any party to this proceeding, whether in Phase One of this proceeding or subsequently. Movants expressly preserve and do not waive any of their rights with respect to any applications for attorneys' fee and expenses filed by the Garnishee Banks, including the right to oppose, in whole or in part, any such applications by Citibank, JPMorgan, BNYM and/or SoGen.

53.     The Movants are submitting herewith, the form of a proposed partial final judgment directing the turnover of funds and discharging the Garnishee Banks from liability (the "Proposed Judgment").

WHEREFORE, the Levins, Greenbaum and Acosta Judgment Creditors and Heiser Judgment Creditors jointly and respectfully request the Court grant their motion for partial summary judgment as to the Remaining Phase One Assets, enter the attached Proposed Judgment that fully disposes of the Phase One Assets and all claims thereto by the parties to this

action, in addition to granting such further relief as the Court deems just and proper.  Movants further jointly and respectfully request the Court retain jurisdiction to enforce the terms of the Settlement Agreement among the Movants as to the distribution of the Blocked Assets and otherwise.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 7, 2011

_____/s/_____

Curtis C. Mechling