# LEVI LUBARSKY & FEIGENBAUM LLP

ATTORNEYS AT LAW
1185 AVENUE OF THE AMERICAS
17TH FLOOR
NEW YORK, NEW YORK 10036

TEL. (212) 308-6100
FAX (212) 308-8830
WWW.LLF-LAW.COM



```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/11
```

September 12, 2011

**VIA FACSIMILE TO (212) 805-7917**

Honorable Robert P. Patterson
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**MEMO ENDORSED**

Re:  Levin v. Bank of New York, 09 Civ. 5900 (RPP) (MHD) (S.D.N.Y.)

Dear Judge Patterson:

    This firm represents defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan") and The Bank of New York Mellon ("BNY Mellon") in the above-referenced proceeding. We are writing to set forth our position on the proposed Phase 2 scheduling order submitted to the Court by Curtis C. Mechling, Esq. of Stroock & Stroock & Lavan LLP on behalf of plaintiffs Jeremy and Lucille Levin and the third-party defendants known as the Greenbaum judgment creditors, the Acosta judgment creditors and the Heiser judgment creditors (collectively, the "Settling Parties").

    On August 8, 2011 we received a proposed scheduling order for Phase 2 of this case from Mr. Mechling. We sent him a counter-proposed order on August 10, and we have been negotiating with counsel for the Settling Parties since then to resolve our differences and arrive at a consent order. We have been largely successful in this effort, but there are two related issues that we have been unable to resolve. These are (1) whether the defendant banks should be allowed to interplead the Islamic Republic of Iran and related entities as third-party defendants, and (2) whether the scheduling order should specify how certain third-party defendants must be served. A third issue, relating to how to coordinate the Levin case with four other proceedings brought by the Heiser judgment creditors to execute on the same blocked assets that are the subject of this proceeding, has also proved difficult, but we believe that we are close to resolving that issue.

    We are enclosing a proposed counter-order regarding the schedule for Phase 2 which reflects our position on the disputed issues, together with a red-lined draft that highlights the differences between the two orders.

Honorable Robert P. Patterson
September 12, 2011
Page 2

We are sending this letter to Your Honor because Mr. Mechling has submitted his proposed order to Your Honor, but we are aware that the Court has, by order dated March 10, 2011, referred this matter to Magistrate Judge Dolinger for certain specified purposes, including scheduling. It was not our intent to disregard Your Honor's order referring such matters to Judge Dolinger, and so we have copied him on this letter.

To put our position in context, it may be helpful to review briefly the history of this proceeding. Phase 1 began on June 26, 2009, when the Levins filed their complaint, and was concluded two years later, on July 11, 2011, with the entry of a corrected partial final judgment that awarded approximately $11 million being held by the four defendant banks to the Settling Parties. The Levins apparently received about $3 million of this amount, and the remaining $8 million went to the twenty-one other families (the Greenbaums, Acostas, Franklins and Kahanes and the families of the seventeen Air Force personnel who constitute the Heiser parties) who are among the Settling Parties, in accordance with the terms of their settlement agreement.

Phase 2 of this case will involve about half as much money, perhaps $5 million to $6 million, but many more blocked assets and accounts. For example, the Settling Parties have designated thirty-five blocked assets held by JPMorgan, totaling between $2.5 and $2.6 million, and nineteen blocked assets held by BNY Mellon, totaling roughly $1.4 million, for inclusion in Phase 2. Many of these accounts involve less than $25,000, some as little as $5,000. Almost all of the Phase 2 assets are the proceeds of blocked wire transfers in which one of the defendant banks was involved as an intermediary bank or beneficiary's bank. When the defendant banks objected to the inclusion of so many small accounts in Phase 2, the Settling Parties offered to bear the responsibility and expense of translating the third-party complaints into the necessary languages and to serve all of the third-party defendants at their expense, and this compromise is reflected in both of the proposed scheduling orders.

1. <u>Interpleading the Islamic Republic of Iran</u>. The Settling Parties are seeking in Phase 2 to seize additional assets in satisfaction of their judgments against the Islamic Republic of Iran, the Iranian Ministry of Information and Security and/or the Iranian Islamic Revolutionary Guard Corp ("Iran"). Their basic contention is that all of the blocked assets designated for inclusion in Phase 2 are the "property of" or "assets of" Iran, within the meaning of section 1610 of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. (the "FSIA") or section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), and so are subject to execution under those statutes. They are relying in part on this Court's ruling in Phase 1 that Iran had a sufficient "interest in property, . . . direct or indirect," in the blocked wire transfer proceeds at issue in this case, to subject these proceeds to execution because one or more parties to the blocked wire transfers was directly or indirectly owned or controlled by Iran. *Levin v. Bank of New York*, No. 09 Civ. 5900 (RPP), 2011 WL 812032, at *17 (S.D.N.Y. Mar. 4, 2011). In effect, therefore, they are attempting to pierce the corporate veil so as to seize assets that are held by entities other than Iran in which Iran nevertheless has an alleged interest, albeit an indirect one.

Honorable Robert P. Patterson
September 12, 2011
Page 3

      In such circumstances there can be no doubt that Iran is a proper interpleader defendant. The whole point of an interpleader proceeding is to permit a stakeholder such as JPMorgan or BNY Mellon to bring all parties with an interest in contested property before the Court in order that the Court may determine whose interest is paramount and discharge the stakeholder from liability to all other potential claimants. See, e.g, *Metropolitan Ins. Co. v. Bradway*, No. 10 Civ. 0254 (JCF), 2011 WL 723579, at *3 (S.D.N.Y. Feb. 24, 2011) (Interpleader is proper where two or more persons "claim or may claim an interest in the property"). The right of a bank to interplead parties with a potential claim to assets that may be subject to execution has been recognized in other cases involving TRIA or the FSIA. *See, e.g., Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 542 (S.D.N.Y. 2010) ("Interpleader litigation routinely protects entities like [respondent banks, who were holding funds being claimed by judgment creditors pursuant to TRIA § 201,]" from the risk of being subjected to multiple or inconsistent claims). In another TRIA case, the Court emphasized that "[a]s a remedial joinder device, interpleader is to be liberally construed." *Weininger v. Castro*, 462 F. Supp. 2d 457, 500 (S.D.N.Y. 2006). If JPMorgan and BNY Mellon wish to interplead Iran, in order to be cautious in protecting themselves, they should be permitted to do so.

      The Settling Parties contend that interpleader of Iran is unnecessary because they have already given Iran notice of these proceedings. Notice that a lawsuit is pending, however, is not the same as making Iran a party to the proceedings. Interpleader has, as noted, been generally recognized as appropriate in cases such as this.

      The Settling Parties also contend that the banks should not be permitted to interplead Iran because it will take time to serve Iran. In a case like this, the procedure for serving a foreign state is that the pleadings, with appropriate translations, must be sent by the Clerk of the Court to the foreign minister of the state by registered or certified mail, and that if no return receipt is received within thirty days, the same documents must be sent by the clerk to the State Department for delivery through diplomatic channels. The foreign state must, by law, be given sixty days to answer. FSIA § 1608(d). This may take a little time, but it will also take time to make service on the more than 100 other third-party defendants who will be involved in Phase 2 of this proceeding, due to the large number of accounts designated for inclusion in Phase 2. In any case, it is not appropriate to deny the defendant banks the right to interplead a party merely because of the legal requirements for serving that party. Phase 2 should move more quickly than Phase 1, even though the number of assets involved is much larger, and we stand ready to cooperate with the Settling Parties to ensure that the case proceeds expeditiously.

      2. <u>Manner of Service</u>. The Settling Parties have agreed to be responsible for serving, at their expense, the numerous third-party defendants who will be involved in Phase 2, and this is acceptable to JPMorgan and BNY Mellon. We are concerned, however, to make sure that service is made in accordance with the requirements of law, because that is essential if our interests are to be protected.

Honorable Robert P. Patterson
September 12, 2011
Page 4

      Paragraph 9 of the enclosed proposed order provides that service must be made, where appropriate, in accordance with section 1608 of the FSIA. Since that is what federal law requires, this should not be controversial, but the Settling Parties have stricken that provision from their proposed order. Section 1608(b) gives parties the flexibility, in cases such as this one, to serve agencies and instrumentalities of a foreign state by alternate methods approved by the Court, and the Court has already entered an order dated January 25, 2010 that takes advantage of this option. Nevertheless, the scheduling order should make it clear that the statutory requirements must be satisfied.

      If the Settling Parties prefer, JPMorgan and BNY Mellon are willing to take responsibility for serving Iran.

      Our proposed order also corrects minor typos in paragraphs 5, 7 and 15 of the Settling Parties' proposed order. These are highlighted in the enclosed redlined version.

      In Mr. Mechling's letter, he requests a conference with the Court at the earliest opportunity to resolve any differences between the parties with respect to the Phase 2 scheduling order. JPMorgan and BNY Mellon join in that request. We also respectfully request that after hearing from the Settling Parties on the disputed issues, the Court enter the enclosed proposed order.

                               Respectfully submitted,

                                 J. Kelley Nevling, Jr.

jkn/tbs
Enclosures

cc:    Hon. Michael H. Dolinger

cc with enclosures sent by e-mail to:

    Curtis C. Mechling, Esq.
    James L. Bernard, Esq.
    Ben Weathers-Lowin, Esq.
    Richard M. Kremen, Esq.
    Dale K. Cathell, Esq.
    David Misler, Esq.
    Barbara L. Seniawski, Esq.

*[Handwritten annotation:] Application Granted. A conference will be held on September 15, 2011 at 9:30 AM. So Ordered. Robert P. Patterson U.S.D.J. 9/13/11*

Honorable Robert P. Patterson
September 12, 2011
Page 5

   Suzelle M. Smith, Esq.
   Don Howarth, Esq.
   Liviu Vogel, Esq.
   Noel J. Nudelman, Esq.
   Sharon L. Schneier, Esq.
   Christopher J. Robinson, Esq.
   Mark Hanchet, Esq.
   Christopher J. Houpt, Esq.
   Bruce Oakley, Esq.
   Annie P. Kaplan, Esq.
   Robert J. Tolchin, Esq.
   Jonathan G. Kortmansky, Esq.
   George Chelos, Esq.
   Kerri M. D'Ambrosio, Esq.
   Daniel Cobrinik, Esq.

Application granted a conference will be held on September 15, 2011 at 9:30 a.m.

So Ordered.

Robert P. Patterson Jr., U.S.D.J.