UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
JEREMY LEVIN and DR. LUCILLE LEVIN,

                    Plaintiffs,                  Case No. 09 Civ. 5900 (RPP)

           -against-

BANK OF NEW YORK, JPMORGAN
CHASE, SOCIÉTÉ GÉNÉRALE and
CITIBANK,

                    Defendants.
-------------------------------------------------------------- x
CITIBANK, N.A.,

                Third-Party Plaintiff,

           -against-

JAMES OWENS, *et al.*,

              Third-Party Defendants.
-------------------------------------------------------------- x

## ACOSTA JUDGMENT CREDITORS' ANSWER TO CITIBANK, N.A.'S THIRD-PARTY COMPLAINT AND COUNTERCLAIMS

Third-Party Defendants Carlos Acosta, Maria Acosta, Tova Ettinger, Irving Franklin (on his own behalf and as Administrator of the Estate of the late Irma Franklin), Baruch Kahane, Libby Kahane, Ethel J. Griffin (as Administratrix of the Estate of the late Binyamin Kahane), Norman Kahane (on his own behalf and as Executor of the Estate of the late Sonia Kahane), and Ciporah Kaplan (collectively, the "Acosta Judgment Creditors"), by their undersigned attorneys, for their answer to Citibank, N.A's ("Citibank") Third-Party Complaint with Respect to Phase Two Assets Against Judgment Holders and Plaintiffs in Other Actions Against Iran (the "Third-Party Complaint"), allege as follows:

## Nature of the Proceedings

1. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Third-Party Complaint, except admit, upon information and belief, that Citibank is holding certain funds in blocked accounts, as required by Executive Orders issued by the President of the United States and blocking regulations issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury ("Blocked Assets"), and that such Blocked Assets in Citibank's possession include both assets held in blocked deposit accounts and the proceeds of blocked wire transfers.

2. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Third-Party Complaint, except admit that the Acosta Judgment Creditors brought a lawsuit and recovered a judgment against the Islamic Republic of Iran ("Iran") based on its participation in and responsibility for acts of terrorism, and have since asserted claims to and rights with respect to certain assets that belong to Iran and/or its agencies and instrumentalities and which may be used to satisfy such judgment, including the Blocked Assets that are the subject of this proceeding.

3. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Third-Party Complaint, except admit that the Acosta Judgment Creditors have served Citibank with various documents, including, but not limited to, a court-ordered writ of execution, in which they have asserted an interest in, claim to and right to certain assets that belong to Iran and/or its agencies and instrumentalities.

## Jurisdiction and Venue

4. Paragraph 4 of the Third-Party Complaint states conclusions of law as to which no response is required. To the extent a response is required, the Acosta Judgment Creditors admit the allegations contained therein.

5. Paragraph 5 of the Third-Party Complaint states conclusions of law as to which no response is required. To the extent a response is required, the Acosta Judgment Creditors admit the allegations contained therein.

### The Third-Party Plaintiffs

6. Admit, upon information and belief, the allegations contained in Paragraph 6 of the Third-Party Complaint.

### The Third-Party Defendants

7. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Third-Party Complaint.

8. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Third-Party Complaint.

9. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Third-Party Complaint.

10. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Third-Party Complaint.

11. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Third-Party Complaint.

12. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Third-Party Complaint.

13. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Third-Party Complaint.

14. Admit the allegations contained in Paragraph 14 of the Third-Party Complaint.

15. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Third-Party Complaint.

16. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Third-Party Complaint.

17. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Third-Party Complaint.

18. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Third-Party Complaint.

19. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Third-Party Complaint.

20. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Third-Party Complaint.

21. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Third-Party Complaint.

The Turnover Proceeding

22. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Third-Party Complaint.

23. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Third-Party Complaint.

24. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Third-Party Complaint.

25. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Third-Party Complaint.

26. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Third-Party Complaint.

### Phase One of the Turnover Proceeding

27. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Third-Party Complaint, except admit that The Bank of New York Mellon, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Citibank and Société Générale (collectively, the "Defendant Banks") served the Acosta Judgment Creditors with a third-party interpleader complaint with regard to the Blocked Assets at issue in Phase One of these proceedings (the "Phase One Third-Party Complaint").

28. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Third-Party Complaint.

29. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Third-Party Complaint, except admit that the Acosta Judgment Creditors filed answers and counterclaims, as well as amended counterclaims, to the Phase One Third-Party Complaint.

30. Admit the allegations contained in Paragraph 30 of the Third-Party Complaint.

### Phase Two of the Turnover Proceeding

31. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Third-Party Complaint, except admit, upon information and belief, that Citibank has disclosed to the Levin plaintiffs and the Greenbaum, Acosta and Heiser Judgment Creditors (collectively, the "Cooperating Judgment Creditors") all Blocked Assets which have been blocked by Citibank from June 30, 2008 to the present, and that the Cooperating Judgment Creditors seek the turnover of certain of those Blocked Assets (the "Citibank Phase Two Assets").

32. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Third-Party Complaint.

33. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Third-Party Complaint.

34. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Third-Party Complaint.

35. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Third-Party Complaint.

36. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Third-Party Complaint.

37. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Third-Party Complaint.

38. Deny the allegations contained in Paragraph 38 of the Third-Party Complaint, and aver that the Acosta Judgment Creditors served a notice of pendency pursuant to FSIA § 1605A(g) upon Citibank on December 11, 2008 and delivered a writ of execution to the United States Marshal for the Southern District of New York for service upon Citibank on December 21, 2009, and similarly delivered an amended writ of execution to the United States Marshal for service upon Citibank on April 6, 2010.

39. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Third-Party Complaint.

40. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Third-Party Complaint.

41. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Third-Party Complaint.

42. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of the Third-Party Complaint.

43. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the Third-Party Complaint.

44. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 of the Third-Party Complaint.

45. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of the Third-Party Complaint.

### For the Claims of Citibank in the Nature of Interpleader

### First Claim for Relief

46. Paragraph 46 of the Third-Party Complaint repeats and realleges each and every allegation set forth in Paragraphs 1 through 45 of the Third-Party Complaint, and hence no response is required.

47. Paragraph 47 of the Third-Party Complaint states conclusions of law as to which no response is required. To the extent a response is required, the Acosta Judgment Creditors aver that the language of CPLR § 5239 speaks for itself.

48. Paragraph 48 of the Third-Party Complaint states conclusions of law as to which no response is required.

### Second Claim for Relief

49. Paragraph 49 of the Third-Party Complaint repeats and realleges each and every allegation set forth in Paragraphs 1 through 45 of the Third-Party Complaint, and hence no response is required.

50. Admit that the Cooperating Judgment Creditors' claims to and rights with respect to the Citibank Phase Two Assets take priority over any claims thereto by any other person who has a judgment against Iran or an action pending against Iran, but deny that any of the other third-party defendants in these proceedings have claims to or rights with respect to the Citibank

Phase Two Assets that take priority over the Cooperating Judgment Creditors' claims thereto or rights therein, or the Acosta Judgment Creditors' claims thereto or rights therein, which are superior to those of all other parties.

51.     Paragraph 51 of the Third-Party Complaint states conclusions of law as to which no response is required.

52.     Paragraph 52 of the Third-Party Complaint states conclusions of law as to which no response is required.

### Third Claim for Relief

53.     Paragraph 53 of the Third-Party Complaint repeats and realleges each and every allegation set forth in Paragraphs 1 through 45 of the Third-Party Complaint, and hence no response is required.

54.     Paragraph 54 of the Third-Party Complaint states conclusions of law as to which no response is required.

### AFFIRMATIVE DEFENSES

55.     The Acosta Judgment Creditors reserve the right to assert any affirmative defenses and counterclaims that may become apparent after additional discovery or otherwise.

### COUNTERCLAIMS

56.     By and for their Counterclaims against Third-Party Plaintiff Citibank in these proceedings, the Acosta Judgment Creditors allege as follows:

### Parties

57.     The Acosta Judgment Creditors are judgment creditors in a case entitled <u>Acosta, et al. v. Islamic Republic of Iran, et al.</u>, Civil Action No. 06-745 (RCL) (D.D.C.).

58.     Upon information and belief, Third-Party Plaintiff and Counterclaim Defendant Citibank is a national banking association organized and existing under the laws of the United

States of America with its main office (as set forth in its Articles of Association) in the County and State of New York.

### Jurisdiction and Venue

59. This Court has subject matter jurisdiction over the claims sets forth herein pursuant to 28 U.S.C. § 1331, because they arise under the laws and treaties of the United States, in particular the Foreign Sovereign Immunities Act of 1976, 28 U.S.C §§ 1601 *et seq.* (the "FSIA"), and the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002) ("TRIA"), and pursuant to 28 U.S.C. § 1367, because the matters at issue in this proceeding are so related to the first of the above-captioned proceedings (the "Turnover Proceeding"), which is within the original jurisdiction of this Court, and to the third-party action arising out of it, that the claims herein form part of the same case or controversy. This Court also has jurisdiction over this matter pursuant to its inherent ancillary enforcement jurisdiction, since this is an action to enforce a federal judgment registered in this Court pursuant to 28 U.S.C. § 1331 and 1963.

60. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because the Counterclaims seek to enforce a judgment that has been registered in this judicial district and the property that is the subject of this proceeding is located in this district. Venue is also proper in this county and judicial district pursuant to CPLR § 5221(a), subd. 4, because the judgment that the Counterclaims seek to enforce has been entered as a judgment with this Court, at a courthouse within this county and judicial district.

### Allegations Common to All Counterclaims

61. The Acosta Judgment Creditors hold a judgment entered pursuant to 28 U.S.C. § 1605A in the amount of $350,172,000.00 (the "Judgment") against judgment debtors Iran and the Islamic Ministry of Information and Security ("MOIS"). The Judgment arises from the

assassination of Rabbi Meier Kahane and the shooting of Irving Franklin and U.S. Postal Police Officer Carlos Acosta on November 5, 1990, in New York. Rabbi Meier Kahane was killed and Irving Franklin and Carlos Acosta were seriously wounded by El Sayyid Nosair. Nosair was and is a member of Al-Gam'aa Islamiyah, a terrorist organization headed by Sheik Omar Ahmad Ali Abdel Rahman and sponsored by Iran and MOIS.

62. The Acosta Judgment Creditors registered the Judgment in the Southern District of New York on December 1, 2008, and a transcript was docketed in the New York County Clerk's Office on December 24, 2008.

63. On December 11, 2009, the Acosta Judgment Creditors obtained an order pursuant to 28 U.S.C. § 1610(c) from Judge Barbara S. Jones of this Court directing the Clerk of Court to issue writs of execution pursuant to 28 U.S.C. § 1610(c) with respect to property of Iran held in this district by Citibank.

64. On December 21, 2009, the Acosta Judgment Creditors obtained a writ of execution from the Clerk and delivered the writ that day to the U.S. Marshal for the Southern District of New York for service on Citibank.

65. On April 5, 2010, the Acosta Judgment Creditors obtained an amended writ of execution from the Clerk of Court. This amended writ of execution was delivered by them to the United States Marshal on April 6, 2010 for service upon Citibank, which service was completed by the U.S. Marshal on April 15, 2010.

66. On April 15, 2010, the Acosta Judgment Creditors filed an answer to the Phase One Third-Party Complaint, in which the Acosta Judgment Creditors counterclaimed for the turnover of Blocked Assets and other property in the possession of the Defendant Banks that belonged to, was owed to, or held for the benefit of Iran and/or any of Iran's agencies or instrumentalities. On March 7, 2011, the Acosta Judgment Creditors filed amended

counterclaims seeking substantially the same relief, including the turnover of Blocked Assets within Citibank's possession (the "Citibank Blocked Assets").

67. By Order Dated January 20, 2011, and later modified on March 4, 2011, the Court granted the Greenbaum Judgment Creditors' and the Acosta Judgment Creditors' joint cross-motion for partial summary judgment and turnover with respect to certain of the Blocked Assets designated for inclusion in Phase One of these proceedings, including the Citibank Blocked Assets that had been designated for inclusion in Phase One (the "Citibank Phase One Assets").

68. By Order and Judgment dated June 21, 2011, the Court granted the joint motion for summary judgment of the Cooperating Judgment Creditors, which Order disposed of the remainder of the Blocked Assets that had been designated for inclusion in Phase One of these proceedings by directing that all such assets be turned over by the Defendant Banks to the Cooperating Judgment Creditors. Accordingly, Citibank turned over the Citibank Phase One Assets to the United States Marshal for delivery to the Cooperating Judgment Creditors in July 2011.

69. On September 16, 2011, the Court entered an Order authorizing the Defendant Banks, including Citibank, to file and serve additional third-party complaints with respect to additional Blocked Assets in their possession, custody or control that had been designated for inclusion in Phase Two of these proceedings. Pursuant to the Court's September 16th Order, Citibank filed and served the Third-Party Complaint.

70. The Third-Party Complaint alleges that Third-Party Plaintiff and Counterclaim Defendant Citibank remains in possession of numerous Blocked Assets, referred to herein as the Citibank Phase Two Assets. Upon information and belief, the Citibank Phase Two Assets belong to, are owed to, or are held for the benefit of Iran and/or certain of Iran's agencies or instrumentalities.

71. By reason of the foregoing and by virtue of having been the first in time to properly obtain a writ of execution and levy it against the Citibank Blocked Assets, and having timely perfected such levy by the filing of counterclaims to the Phase One Third-Party Complaint for the turnover of the Citibank Blocked Assets, the Acosta Judgment Creditors secured a priority interest in such assets, including, but not limited to, the Citibank Phase Two Assets, that supersedes any and all other claims thereto by other parties to these proceedings.

### First Counterclaim

72. The Acosta Judgment Creditors repeat and reallege paragraphs 57 through 71 as if fully set forth herein.

73. The Acosta Judgment Creditors are judgment creditors of Iran and MOIS.

74. Pursuant to 28 U.S.C. § 1610, the Acosta Judgment Creditors are entitled to enforce their judgment against all assets located in the United States in which Iran and MOIS have an interest, whether direct or indirect.

75. Upon information and belief, Counterclaim Defendant Citibank holds such assets, including, but not necessarily limited to, the Citibank Phase Two Assets.

76. The Acosta Judgment Creditors possess a priority interest in and claims and rights to the Citibank Blocked Assets, including, but not limited to, the Citibank Phase Two Assets, that supersedes the claimed interests thereto of all other parties to these proceedings.

77. By reason of the foregoing and pursuant to 28 U.S.C. §§ 1603, 1605A, 1606 and 1610, Fed. R. Civ. P. 69 and N.Y. C.P.L.R. §§ 5225(b) and 5227, the Acosta Judgment Creditors are entitled to a turnover of the Citibank Phase Two Assets and/or any other personal and, if applicable, real property belonging to, owed to, or held for the benefit of Iran and/or MOIS, or in which Iran and/or MOIS possess an interest, whether direct or indirect, with a value of or

otherwise not exceeding, $350,172,000.00, plus post-judgment interest, from Counterclaim Defendant Citibank in satisfaction of their Judgment.

Second Counterclaim

78.  The Acosta Judgment Creditors repeat and reallege paragraphs 57 through 71 as if fully set forth herein.

79.  Section 201 of TRIA provides in relevant part that:

> Notwithstanding any other provision of law ... in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002), § 201(a).

80.  The Acosta Judgment Creditors obtained their Judgment on a claim for which Iran was not immune pursuant to 28 U.S.C. § 1605A, the statutory successor to § 1605(a)(7).

81.  Iran is, and was at the time of the attack that took Rabbi Meier Kahane's life and wounded Messrs. Franklin and Acosta, designated a state sponsor of terrorism, and the Judgment was therefore entered against a "terrorist party" as defined in § 201 of TRIA. Acosta v. Islamic Republic of Iran, 574 F.Supp.2d 15, 25 (citing 31 C.F.R. § 596.201 (2001)). The same is true of MOIS, which is treated as the state of Iran itself rather than its agent. Accordingly, the same determinations apply to the conduct of MOIS. Id.

82.  Pursuant to § 201 of TRIA, the Blocked Assets of Iran, including the Blocked Assets of any agency or instrumentality of Iran, are subject to execution or attachment in aid of execution in order to satisfy the Judgment.

83. Counterclaim Defendant Citibank is in possession of Blocked Assets belonging or owing to or held for the benefit of Iran and/or its agencies and instrumentalities, including, but not limited to, the Citibank Phase Two Assets.

84. The Acosta Judgment Creditors possess a priority interest in and claims and rights to the Citibank Blocked Assets, including, but not limited to, the Citibank Phase Two Assets, that supersedes the claimed interests thereto of all other parties to these proceedings.

85. By reason of the foregoing and pursuant to Fed. R. Civ. P. 69, N.Y.C.P.L.R. §§ 5225 and 5227 and § 201 of TRIA, the Acosta Judgment Creditors are therefore entitled to an order and judgment conveying, assigning and directing the turnover by Counterclaim Defendant Citibank to the Acosta Judgment Creditors of all Blocked Assets in their possession, custody or control that are owed to or held for the benefit of Iran, MOIS and/or any agency or instrumentality of Iran, or in which any such entity possesses an interest, whether direct or indirect, including, but not limited to, the Citibank Phase Two Assets, with a value of or otherwise not exceeding $50,172,000.00, plus post-judgment interest, in satisfaction of their Judgment.

WHEREFORE, the Acosta Judgment Creditors respectfully demand judgment against Counterclaim Defendant Citibank:

(i) on the First Counterclaim, requiring Citibank to turn over the Citibank Phase Two Assets, along with any other property, funds or assets in its possession in which Iran and/or MOIS possess an interest, whether direct or indirect, with a value of, or otherwise not exceeding, $350,172,000.00, plus post-judgment interest, to the Acosta Judgment Creditors in satisfaction of their Judgment;

(ii) on the Second Counterclaim, ordering the conveyance and assignment and directing the turnover to the Acosta Judgment Creditors of all Blocked Assets in Citibank's

possession, custody or control that are owed to or held for the benefit of Iran, MOIS and/or any agency or instrumentality of Iran, or in which any such entity possesses an interest, whether direct or indirect, including, but not limited to, the Citibank Phase Two Assets, with a value of or in an amount otherwise not exceeding $50,172,000.00, plus post-judgment interest, in satisfaction of their Judgment;

        (iii)    awarding the Acosta Judgment Creditors the costs and disbursements of this action; and

        (iv)    awarding such other and further relief as the Court finds just and proper.

Dated: New York, New York  
       October 11, 2011

STROOCK & STROOCK & LAVAN LLP

By:     /s/                          
     Curtis C. Mechling  
     James L. Bernard  
     Benjamin Weathers-Lowin  
     180 Maiden Lane  
     New York, New York 10038  
     (212) 806-5400  
     *Attorneys for the Acosta Judgment Creditors*