UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY LEVIN and DR. LUCILLE LEVIN,

       Plaintiffs,

    -v-

BANK OF NEW YORK, JP MORGAN
CHASE, SOCIETE GENERALE and
CITIBANK,

       Defendants.

_____

THE BANK OF NEW YORK MELLON,

       Third-Party Plaintiff,

    -v-

██████████████████████████████

████████, et al.

       Third-Party Defendant.

**(FILED UNDER SEAL DUE TO
CONFIDENTIAL INFORMATION
PER ORDER DATED JANUARY 21,
2010)**

Civ. No. 09 CV 5900 (RPP) (MHD)

**ANSWER BY PLAINTIFFS AND
CROSSCLAIM DEFENDANTS
JEREMY LEVIN AND DR. LUCILLE
LEVIN TO THIRD-PARTY
RESPONDENT** ██████████
█████████ **CROSSCLAIM**

       Plaintiffs Jeremy Levin and Dr. Lucille Levin (the "Levins") hereby answer to Third-

Party Defendant ██████████████████████████ Crossclaim

Against the Settling Parties (the "Crossclaim").

       1.     Paragraph 1 of the Crossclaim states conclusions of law as to which no response

is required.  To the extent any allegation in this paragraph is not specifically admitted or denied,

it is hereby denied.

/ / /

/ / /

2.      Paragraph 2 of the Crossclaim states conclusions of law as to which no response is required.  To the extent any allegation in this paragraph is not specifically admitted or denied, it is hereby denied.

3.      The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 3 of the Crossclaim and on that basis deny each and every allegation.

4.      The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 4 of the Crossclaim and on that basis deny each and every allegation.

5.      The Levins admit, upon information and belief, the allegations contained in paragraph 5 of the Crossclaim.

6.      The Levins admit that they are citizens and residents of the United States.  To the extent any allegation in paragraph 6 of the Crossclaim is not specifically admitted or denied, it is hereby denied.

7.      The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 7 of the Crossclaim and on that basis deny each and every allegation.

8.      The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 8 of the Crossclaim and on that basis deny each and every allegation.

9.      The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 9 of the Crossclaim and on that basis deny each and every allegation.

10.     The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 10 of the Crossclaim and on that basis deny each and every allegation.

11.     The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 11 of the Crossclaim and on that basis deny each and every allegation.

12.     The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 12 of the Crossclaim and on that basis deny each and every allegation.

13.     The Levins repeat and reallege each and every response contained in paragraphs 1 through 12 as if fully set forth herein.

14.     The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 14 of the Crossclaim and on that basis deny each and every allegation.

15.     The Levins deny knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 15 of the Crossclaim and on that basis deny each and every allegation.

16.     Paragraph 16 of the Crossclaim states conclusions of law as to which no response is required.  To the extent any allegation in this paragraph is not specifically admitted or denied, it is hereby denied.

17.     Paragraph 17 of the Crossclaim states conclusions of law as to which no response is required.  To the extent any allegation in this paragraph is not specifically admitted or denied, it is hereby denied.

18.     The Levins repeat and reallege each and every response contained in paragraphs 1 through 17 as if fully set forth herein.

19.     Paragraph 19 of the Crossclaim states conclusions of law as to which no response is required.  To the extent any allegation in this paragraph is not specifically admitted or denied, it is hereby denied.

20.     Paragraph 20 of the Crossclaim states conclusions of law as to which no response is required.  To the extent any allegation in this paragraph is not specifically admitted or denied, it is hereby denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

(Failure to State a Claim)

21.     For a first separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ▮▮▮▮▮▮ has suffered or will suffer any injury, damage, or loss whatsoever, allege that the Crossclaim fails to state facts sufficient to constitute a claim or cause of action against the Levins.  There is no basis in law or fact for any Crossclaim against the Levins by ▮▮▮▮▮▮, and such Crossclaim is improper.

### Second Affirmative Defense

(Res Judicata and Collateral Estoppel)

22.     For a second separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ▮▮▮▮▮▮ has suffered or will suffer any injury, damage, or loss whatsoever, allege that ▮▮▮▮▮▮ is barred from recovery on its claims by the doctrine of res judicata and/or collateral estoppel.

## Third Affirmative Defense

### (Waiver)

23.     For a third separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that ███████ has waived any and all claims asserted in its Crossclaim.

## Fourth Affirmative Defense

### (Failure to Mitigate)

24.     For a fourth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that ███████ failed to mitigate its damages, if any, and any recovery or other relief is therefore barred or must be reduced accordingly.

## Fifth Affirmative Defense

### (Estoppel)

25.     For a fifth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that, based on ███████ conduct, omissions, and/or representations, ███████ is estopped from recovering upon the claims set forth in the Crossclaim.

## Sixth Affirmative Defense

### (Unclean Hands)

26.     For a sixth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any

injury, damage, or loss whatsoever, allege that, to the extent ███████ seeks equitable

relief, ███████ inequitable conduct constitutes unclean hands and therefore bars the

granting of relief to ███████ herein. ███████, in its dealings with Iran and its

agencies and instrumentalities, have unclean hands.

**Seventh Affirmative Defense**

(Unjust Enrichment)

27.    For a seventh separate and additional defense, the Levins, without admitting any

liability whatsoever, and without admitting that ███████ has suffered or will suffer any

injury, damage, or loss whatsoever, allege that ███████ is barred from recovery on its

claims by the doctrine of unjust enrichment.

**Eight Affirmative Defense**

(Statute of Limitations)

28.    For an eight separate and additional defense, the Levins, without admitting any

liability whatsoever, and without admitting that ███████ has suffered or will suffer any

injury, damage, or loss whatsoever, allege that ███████ claims are barred by all

applicable statutes of limitations.

**Ninth Affirmative Defense**

(Laches)

29.    For a ninth separate and additional defense, the Levins, without admitting any

liability whatsoever, and without admitting that ███████ has suffered or will suffer any

injury, damage, or loss whatsoever, allege that ███████ waited an unreasonable period of

time before asserting its claims, if any, against the Levins and is barred from asserting such

claims under the doctrine of laches.

### Tenth Affirmative Defense

(Lack of Damages)

30.    For a tenth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that ███████ has not suffered and/or will not suffer any damages as a result of any actions taken by the Levins, and ███████ is thus barred from asserting any claim against the Levins.

### Eleventh Affirmative Defense

(Speculative Damages)

31.    For an eleventh separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that ███████ is barred from any recovery against the Levins because the alleged damages are speculative.

### Twelfth Affirmative Defense

(Other Causes)

32.    For a twelfth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that any damages ███████ did suffer were caused by independent, intervening, and/or superseding events beyond the control and unrelated to any conduct of the Levins.

/ / /

/ / /

/ / /

### Thirteenth Affirmative Defense

#### (In Pari Delicto)

33.     For a thirteenth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that ███████ claims are barred in whole or in part as a result of the fault or conduct of ███████.

### Fourteenth Affirmative Defense

#### (Assumption of Risk)

34.     For a fourteenth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that ███████ had full knowledge of all the risks associated with the transactions in question, and nevertheless, voluntarily and with full appreciation of the risks involved and the magnitude of those risks, assumed those risks of damage to itself.

### Fifteenth Affirmative Defense

#### (Offset)

35.     For a fifteenth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that to the extent ███████ has or will receive any monies from any other person or entity relating to the subject matter of this action, any amount found owing to ███████ should be reduced or offset accordingly.

/ / /

/ / /

## Sixteenth Affirmative Defense

36.     For a sixteenth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that no holder of any judgment against Iran or any other entity other than the Levins has a priority or valid claim against the Blocked Assets and/or Restrained Assets and/or Iranian Assets as no such judgment holder, if any, has complied with the requirements of federal and state law, including TRIA, FSIA, or CPLR 5225(b), among others, and any writs of execution, restraining notices, notices of pendency, liens, and/or process or documents that purport to relate to the Blocked Assets and/or Restrained Assets claimed by the Levins are void as a matter of law for failure to comply with the proper statutory requirements.

## Seventeenth Affirmative Defense

37.     For a seventeenth separate and additional defense, the Levins, without admitting any liability whatsoever, and without admitting that ███████ has suffered or will suffer any injury, damage, or loss whatsoever, allege that neither ███████ nor any of the parties related to the Blocked Assets and/or Restrained Assets and/or Iranian Assets have any legal claim of ownership to the assets because the Blocked Assets and/or Restrained Assets and/or Iranian Assets of any agency or instrumentality of Iran, including wire transfer funds or electronic fund transfers are specifically subject to collection of judgment by victims of terrorism notwithstanding any other law to the contrary.  *See*, e.g. TRIA, *Weinstein v. The Islamic Republic of Iran*, 624 F.Supp.2d 272 (2009).

## RESERVATION OF RIGHTS

38.     The Levins reserve their rights to supplement their answer and affirmative defenses with additional information that becomes available or apparent during the course of investigation, preparation, or discovery and to amend its pleadings accordingly.

## COUNTERCLAIM AGAINST ██████████

39.     By and for their Counterclaim against ██████████, the Levins allege as follows:

40.     The Levins repeat and reallege every allegation contained in their June 26, 2009 Complaint filed in this matter as if fully set forth herein.

41.     Based on acts of torture at the hands of the Islamic Republic of Iran and its agencies and instrumentalities ("Iranian Defendants"), the Levins filed suit against the Iranian Defendants under FSIA, including in particular 28 U.S.C. § 1605(a)(7). After a trial in the United States District Court for the District of Columbia, on February 6, 2008, the Levins obtained a compensatory judgment in the amount of $28,807,719 based on findings made by the Honorable Gladys Kessler. The Levins' judgment is entirely compensatory. Pursuant to 28 U.S.C. §1961, the Levins are entitled to post judgment interest at a rate equal to the weekly average I-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment, compounded annually. *See* Order of the Honorable Robert P. Patterson, Jr., Dated August 15, 2011, *Levin* v. *Bank of New York,* No. 09-CV-5900(RPP) (S.D.N.Y. June 30, 2011).

42.     The Levins gave notice of the entry of judgment to Iranian Judgment Debtors through court and diplomatic channels on October 14, 2008, pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(e). *See Levin* v. *Bank of New York,* No. 09-CV-5900, 2011 WL 812032, at 2 (S.D.N.Y. Mar. 4, 2011) ("March 4, 2011 Order").

43.     The Levins obtained information from the Office of Foreign Asset Control ("OFAC") by subpoena that OFAC had blocked assets between January 1, 2007 and June 30, 2008 in accounts held and restrained by SG, Citibank, N.A. ("Citibank"), JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan"), and the Bank of New York Mellon ("Bank of New York," collectively, the "New York Banks") because the Iranian Defendants had an interest in such assets ("Blocked Assets" or "Restrained Assets" or" Iranian Assets").  Parties to this action have identified other Iranian Assets in the jurisdiction of this Court and all of those Iranian Assets are claimed by the Levins and all are available for the collection of their judgment.

44.     After obtaining the information on the Blocked Assets, the Levins followed 28 U.S.C. § 1610(f)(1)(A), TRIA § 201, and New York state law, specifically CPLR §§ 5225(b), 5323, 5230, and 5234(b).  They obtained court-issued writs on May 26, 2009 and delivered them to the U.S. Marshall for service on the New York Banks on June 19, 2009.  On June 26, 2009, they initiated this action in the United States District Court for the Southern District of New York to collect on their judgment under § 1610(f)(1)(A) and TRIA § 201.

45.     The New York Banks filed Interpleader Complaints against the Levins and various other Judgment Creditors of Iran and account holders.  The Greenbaum and Acosta Judgment Creditors, the Peterson Judgment Creditors, and the Heiser Judgment Creditors appeared in these proceedings and filed answers.

46.     On July 13, 2010, the Levins made a Motion for Partial Summary Judgment, seeking turnover of certain assets designated by this Court as Phase One Assets.  The Greenbaum and Acosta Judgment Creditors, and the Heiser Judgment Creditors also made

Motions for Partial Summary Judgment seeking an order compelling the New York Banks to turn over the Phase One Assets.

47.    On January 20, 2011, this Court entered an order, later modified on March 4, 2011 that denied the Levins' Motion for Partial Summary Judgment on the grounds that their writs of execution were invalid.  The Order also denied the Heiser Judgment Creditors Motion for Partial Summary Judgment on the grounds that their writs of execution were invalid.  The Order granted the Greenbaum and Acosta Judgment Creditors Motion for Summary Judgment and ordered the Phase One Assets be turned over to the Greenbaum and Acosta Judgment Creditors.  *See* Order of the Honorable Robert P. Patterson, Jr., Dated March 4, 2011.

48.    The Levins took an immediate appeal from the Summary Judgment Order.  While the appeal was pending, the Levins entered into a Cooperation Agreement Greenbaum and Acosta Judgment Creditors and the Heiser Judgment Creditors, which was approved by this Court.  The Cooperation Agreement governs the distribution of any assets, including the Blocked Assets and/or Restrained Assets and /or Iranian Assets within the jurisdiction of this Court and/or within the control of the New York Banks herein to the extent that they are assets in which Iranian Defendants have any nexus or interest whatsoever and are part of this action, and the distribution of any award made by this Court to any of the parties to the Agreement.

49.    On June 7, 2011, the Levins, the Greenbaum and Acosta Judgment Creditors, and the Heiser Judgment Creditors made a Joint Motion for Partial Summary Judgment seeking the immediate turnover of Phase One Assets.  The Court granted the motion on June 21, 2011, entering a Rule 54(b) Judgment and Order "Granting the Levin Plaintiffs And The Greenbaum, Acosta, and Heiser Judgment Creditors' Joint Motion for Partial Summary Judgment and Turnover of Phase One Assets and Entering Partial Final Judgment Directing Turnover of Funds

and Discharging Garnishee Banks From Liability", which partially satisfied the Levins' judgment in the amount of $3,304,071.55. There remains an uncollected amount of $25,503,647.45, plus interest

50. The Levins obtained court-ordered writs of execution on August 15, 2011. The writs were served on the U.S. Marshal for the Southern District of New York on August 25, 2011 and were served on Citibank, Bank of New York, and JPMorgan on September 2, 2011 and SG on September 8, 2011.

51. The New York Banks are still holding or have control of Blocked Assets and/or Restrained Assets and/or Iranian Assets and interest thereon because some entity that has some nexus with or relationship to Iran was involved in or referred to in documentation relating to the transaction or accounts that have been blocked.

52. The Levins are judgment creditors of Iran.

53. The assets the Levins seek in order to satisfy their 28 U.S.C. § 1605(a)(7) judgment are solely and exclusively assets held for the benefit of Iranian Defendants, which are governed by 28 U.S.C. § 1610(f)(1)(A) and TRIA § 201. The Levins do not seek to levy on any assets that are not Blocked Assets and/or Restrained Assets and/or Iranian Assets.

54. Pursuant to 28 U.S.C. § 1610(f)(1)(A) and TRIA § 201, as well as accepted principles of equity and United States common law, the Levins are entitled to enforce their judgment against all commercial assets located in the United States in which Iran and/or any agency, instrumentality, or alter ego of Iran possesses an interest, whether direct or indirect.

55. The Levins are entitled to a judgment pursuant to C.P.L.R. § 5225 ordering the New York Banks to convey, assign, and pay to the Levins in satisfaction of their judgment against Iran all right, title, interest, and money held in all accounts that have been blocked or

restrained or that they have control over due to their nexus with Iran. The assets held by the New York Banks are and include Iranian Assets, which have been determined by OFAC to have an apparent connection to Iran and in which Iran has an interest.

56. Plaintiffs are entitled to enforce their judgment against all assets in which Iran has an interest, direct or indirect, within the United States jurisdiction.

WHEREFORE, the Levins respectfully demand judgment against Third-Party Defendant ██████████ :

i) dismissing ████████ Crossclaim as to the Levins in its entirety with prejudice;

ii) declaring that the Levins, under TRIA, FSIA, and applicable New York law, have an immediate right to the Blocked Assets and/or Restrained Assets and/or Iranian Assets held by the New York Banks;

iii) requiring the New York Banks to convey, assign, direct, and pay all the Blocked Assets and/or Restrained Assets and/or Iranian Assets, including accrued interest in the accounts, to the Levins;

iv) adjudging and declaring that consistent with the terms of the Cooperation Agreement and only limited thereby, the Levins possess a priority interest in and claims and rights to the Blocked Assets and/or Restrained Assets and/or Iranian Assets that are superior to the claimed interest of all other parties;

v) awarding the Levins costs and attorneys' fees herein incurred; and

vi) granting further and other relief that the Court deems fair and just.

/ / /

/ / /

Dated:  January 9, 2012                    HOWARTH & SMITH

By:

Suzelle M. Smith
Don Howarth
523 West Sixth Street, Suite 728
Los Angeles, California  90014
(213) 955-9400
ssmith@howarth-smith.com

*Attorneys for Plaintiffs and Counterclaim
Defendants
Jeremy Levin and Dr. Lucille Levin*