UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

JEREMY LEVIN and DR. LUCILLE LEVIN, :

Plaintiffs, :

-against- :

BANK OF NEW YORK, et al. :

Defendants. :

---------------------------------------------------------x

THE BANK OF NEW YORK MELLON, et al., :

Third-Party Plaintiffs, :

-against- :

STEVEN M. GREENBAUM, et al., :

Third-Party Defendants. :

---------------------------------------------------------x

(FILED PARTIALLY-UNDER SEAL DUE TO CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER)

Civ. No. 09 CV 5900 (RPP) (MHD)

**CITIBANK N.A.'S RESPONSE TO JUDGMENT CREDITORS' LOCAL RULE 56.1 SEPARATE STATEMENT OF UNDISPUTED FACTS WITH RESPECT TO PHASE TWO ASSETS**

Defendant and Third-Party Plaintiff Citibank N.A. ("Citibank") hereby submits the following Response to Judgment Creditors' Local Rule 56.1 Separate Statement of Undisputed Facts with respect to Phase Two Assets, dated August 29, 2012 (the "Rule 56.1 Statement"). In accordance with the Court's January 21, 2010 and September 4, 2012 Orders, Plaintiffs filed and served Citibank with a redacted Rule 56.1 Statement and Citibank's response herein is accordingly directed only to the Rule 56.1 Statement served on Citibank. To the extent that the Rule 56.1 Statement served on Citibank includes assertions of undisputed material fact with respect to matters beyond Citibank's knowledge, and/or to the extent that such assertions include redacted information, Citibank is unable to, and is not required to, respond to such assertions.

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| 1. On June 26, 2009, the Levins instituted this action by filing a turnover complaint against defendants and third-party plaintiffs The Bank of New York Mellon ("BNYM" or "Bank of New York"), Societe Generale ("SG" or "SoGen"), Citibank, N.A. ("Citibank"), and JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. (together, "JPMorgan") (collectively, the "New York Banks" or "Garnishees"). | Undisputed. | |
| 2. The Garnishees each then held and still continue to hold blocked assets in interest bearing accounts as required by 31 C.F.R. § 595.203. | Undisputed as to Citibank. | |
| 3. This proceeding was then divided by the Court into different phases. | Undisputed. | |
| 4. On June 21, 2011, the Court awarded a turnover of a subset of blocked assets held by the Garnishees (the "Phase One Blocked Assets"), along with accrued interest on such assets, to the Judgment Creditors in conclusion of Phase One of these proceedings. | Undisputed, except that the Court ordered the assets to be turned over to counsel for the Greenbaum and Acosta Judgment Creditors who, following deduction of agreed upon attorneys' fees to the Garnishees, were to distribute the remaining Phase One Assets among the Judgment creditors pursuant to an agreement among them. | *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) ECF Dkt. No. 412 (The Phase One Turnover Order). |
| 5. On June 29, 2011, the Court entered its Order Governing Production of Supplemental Account Information in Connection with Turnover of Additional Assets (the "Supplemental Discovery Order"). | Undisputed. | |
| 6. In accordance with the Supplemental Discovery Order, the Garnishees produced to the Judgment Creditors lists identifying blocked assets held by the Garnishees, which include the Phase | Undisputed as to Citibank, except refers to the schedules and documents produced by Citibank for their contents. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| Two Blocked Assets (as defined below). | | |
| 7. On September 16, 2011, the Court entered its Amended Scheduling Order (I) Authorizing Additional Pleadings and (II) Governing and Scheduling Further Proceedings in Connection with Phase Two (the "Phase Two Scheduling Order") which authorized the Garnishees to file additional, amended and/or supplemental third-party complaints against (i) judgment creditors of Iran and other plaintiffs in actions against Iran who served process on the Garnishees, (ii) account holders of blocked accounts held by the Garnishees who the Garnishees reasonably believed may have an interest in or claim to the funds in such account, (iii) originators, beneficiaries, originator banks, beneficiary banks, and bank parties to any blocked wire transfer who the Garnishees reasonably believed may have an interest in or claim to the proceeds of any such wire transfer, and (iv) the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security ("MOIS"), and the Iranian Revolutionary Guard Corp. ("IRGC") (collectively, the "Service Parties"). | Undisputed. | |
| 8. With certain exceptions, the Judgment Creditors agreed to bear all costs and labor associated with translating, copying, and serving the Service Parties in accordance with the Phase Two Scheduling Order. | Undisputed. | |
| 9. In accordance with the Phase Two Scheduling Order, the Garnishees filed third-party complaints against the Service | Undisputed, except refers to the proofs of service for their contents. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| Parties, including the Commercial Third-Party Defendants (as defined below), the Additional Judgment Creditors of Iran (as defined below), Iran, MOIS, and IRGC. | | |
| 10. On May 25, 2012, the Court entered an Order authorizing Citibank to file an additional third-party complaint (the "Citibank Add'l Third-Party Complaint"). | Disputed. The Order was signed on May 25, 2012 but not entered until May 30, 2012 | *See Levin v. Bank of New York*, case no. 09-5900 (RPP) (MHD) (SDNY) ECF Dkt. No. 704. |
| 11. On June 8, 2012, the Court entered an Order authorizing JPMorgan, BNYM, and SoGen to file an additional third-party complaint against the Bennett Judgment Creditors and the Murphy Judgment Creditors. | Undisputed. | |
| 12. The Judgment Creditors filed answers to the Third-Party Complaints and asserted counterclaims for turnover against each of the Garnishees for turnover of certain Iranian assets, including, but not limited to, the Phase Two Blocked Assets, based on, inter alia, writs of execution the Judgment Creditors served on the Garnishees. | Undisputed, and refers to those pleadings for their contents. | |
| 13. In accordance with the Phase Two Scheduling Order, the Judgment Creditors served the Third-Party Complaints on the Commercial Third-Party Defendants (as defined below) and affidavits of service evidencing service on the Commercial Third-Party Defendants were filed with the Court. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact and refers the Court to the affidavits of service cited herein. | |
| 14. The Judgment Creditors' writs of execution collectively establish their priority interest in and claim to, inter alia, the Phase Two Blocked Assets. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 15. Plaintiff Jeremy Levin was the CNN bureau chief in Beirut, Lebanon during a period when Iran, through the IRGC, among other | Undisputed. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| entities, was particularly active in violent anti-American activities there, using a radical Islamic terrorist group, Hizbollah, directly and indirectly to commit terrorist acts against American civilians. In 1984, Mr. Levin was held hostage and tortured by Hizbollah in a house directly across from the Iranian Revolutionary Guard headquarters in the Bekka Valley of Lebanon. After his escape from the terrorists, Mr. Levin returned to the United States. | | |
| 16. On February 6, 2008, after a full trial, the United States District Court for the District of Columbia entered judgment in favor of the Levins and against Iran, MOIS and IRGC pursuant to 28 U.S.C. §1605(a)(7). The judgment is for $28,807,719.00 in compensatory damages, plus post-judgment interest at the legal rate. | Undisputed. | |
| 17. The Levins served their judgment on Iran, MOIS, and IRGC through diplomatic channels on October 14, 2008. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 18. The Levins registered their judgment in the United States District Court for the Southern District of New York on April 20, 2009. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 19. The Levins obtained court-issued writs on May 26, 2009, and delivered the writs to the U.S. Marshals Service for the Southern District of New York (the "U.S. Marshal") for service on the New York Banks on June 19, 2009. On June 26, 2009, the Levins initiated this action in the United States District Court for the Southern District of New York to collect on their judgment under 28 U.S.C. § 1610(0(1)(A) and TRIA § 201. | Undisputed as to Citibank, but Citibank notes that Citibank's address for service is 399 Park Avenue. (The writ is alleged to have been delivered to 120 Broadway.) Citibank also notes that, although the writ indicates that it was delivered to the United States Marshal on June 19, 2009, it was not served until May 25, 2010. | Smith Decl., Ex. 20. |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
| --- | --- | --- |
| 20. On August 16, 2011, the Levins obtained an Order pursuant to 28 U.S.C. § 1610(c) authorizing the clerk of the court to issue writs of execution for service on the New York Banks. | Undisputed. | |
| 21. On August 25, 2011, the Levins delivered a writ of execution to the U.S. Marshal. The U.S. Marshal then levied the writ of execution on Citibank, BNYM, and JPMorgan on September 2, 2011, and on SG on September 8, 2011. | Undisputed as to Citibank. | |
| 22. The Greenbaum Judgment Creditors hold an unsatisfied judgment entered pursuant to 28 U.S.C. § 1605(a)(7) in the amount of $19,879,023.00, plus post-judgment interest at the legal rate, against Iran and MOIS in the action captioned Steven M Greenbaum, et al. v. Islamic Republic of Iran, et al, Case No. 02-2148 (RCL) (D.D.C.) (the "Greenbaum Judgment"). The Greenbaum Judgment arises from the August 9, 2001, terrorist suicide bombing in Jerusalem, Israel, which was sponsored by Iran and MOIS and left fifteen people dead - including Judith Greenbaum, a pregnant American woman - and wounded more than 130 others. The Greenbaum Judgment Creditors duly served their Judgment upon Iran and MOIS and registered their Judgment in the Southern District of New York on December 10, 2008. A transcript of the same was docketed in the New York County Clerk's Office on December 17, 2008.<br>On December 14, 2009, the Greenbaum Judgment Creditors obtained an Order pursuant to 28 U.S.C. §1610(c) from the Honorable | Citibank lacks information sufficient to respond to this assertion of undisputed material fact, except that it is undisputed that the Greenbaum Judgment Creditors obtained a judgment in the amount of $19,879,023.00, plus post-judgment interest at the legal rate, against Iran and MOIS in the action captioned *Steven M Greenbaum, et al. v. Islamic Republic of Iran, et al*, Case No. 02-2148 (RCL) (D.D.C.) and that an amended writ of execution was served on Citibank on behalf of the Greenbaum Judgment Creditors on or about April 15, 2010, but Citibank notes that Citibank's address for service is 399 Park Avenue. (The writ is alleged to have been delivered to 120 Broadway.) | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| Barbara S. Jones of this Court, directing the Clerk of the Court to issue writs of execution with respect to certain property of Iran held in this district by Citibank. On December 21, 2009, the Greenbaum Judgment Creditors obtained a writ of execution from the Clerk of the Court pursuant to the December 14, 2009, Order and delivered the writ that day to the U.S. Marshal for service on Citibank. On April 5, 2010, the Greenbaum Judgment Creditors obtained an amended writ of execution from the Clerk of the Court, which was delivered to the U.S. Marshal on April 6, 2010, for service on Citibank, which service was completed on April 15, 2010. | | |
| 23. On February 8, 2011, the Greenbaum Judgment Creditors obtained an Order pursuant to 28 U.S.C. §1610(c) from the Honorable Barbara S. Jones of this Court, directing the Clerk of the Court to issue writs of execution with respect to certain property of Iran held in this district by JPMorgan, BNYM and SoGen. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 24. On February 9, 2011, the Greenbaum Judgment Creditors obtained a writ of execution from the Clerk of the Court pursuant to the February 8, 2011, Order and delivered the writs that day to the U.S. Marshal for service upon JPMorgan, BNYM and So. Gen, which service was completed on February 17, 2011. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 25. The Acosta Judgment Creditors hold an unsatisfied judgment entered pursuant to 28 U.S.C. § 1605A in the amount of $350,172,000.00, plus | Citibank lacks information sufficient to respond to this assertion of undisputed material fact, except that it is | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| post-judgment interest at the legal rate against Iran and MOIS in the action entitled Acosta, et al. v. Islamic Republic of Iran, et al. Case No. 06-745 (RCL) (D.D.C.) (the "Acosta Judgment"). The Acosta Judgment arises from the assassination of Rabbi Meier Kahane and the shooting of Irving Franklin and U.S. Postal Police Officer Carlos Acosta, which occurred in New York on November 5, 1990. Rabbi Meier Kahane was killed, and Irving Franklin and Carlos Acosta were seriously wounded by El Sayyid Nosair, a member of Al-Gam'aa Islamiyah, a terrorist organization headed by Sheik Omar Ahmad Ali Abdel Rahman and sponsored by Iran and MOIS. The Acosta Judgment Creditors duly served their judgment upon Iran and MOIS and registered their judgment in the Southern District of New York on December 1, 2008. A transcript of the same was docketed with the New York County Clerk's Office on December 24, 2008.<br>On December 14, 2009, the Acosta Judgment Creditors obtained an Order pursuant to 28 U.S.C. §1610(c) from the Honorable Barbara S. Jones of this Court, directing the Clerk of the Court to issue writs of execution with respect to certain property of Iran held in this district by Citibank and JPMorgan. On December 21, 2009, the Acosta Judgment Creditors obtained a writ of execution from the Clerk of the Court pursuant to the December 11, 2009 Order and delivered the writ that day to the U.S. Marshal for service on Citibank | undisputed that the Acosta Judgment Creditors obtained a judgment in the amount of $350,172,000.00, plus post-judgment interest at the legal rate against Iran and MOIS in the action entitled *Acosta, et al. v. Islamic Republic of Iran, et al.* Case No. 06-745 (RCL) (D.D.C.) and that an amended writ of execution was served on Citibank on behalf of the Acosta Judgment Creditors on or about April 15, 2010, but Citibank notes that Citibank's address for service is 399 Park Avenue. (The writ is alleged to have been delivered to 120 Broadway.) | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| and JPMorgan. On April 5, 2010, the Acosta Judgment Creditors obtained an amended writ of execution from the Clerk of the Court, which was delivered to the U.S. Marshal for service upon Citibank and JPMorgan on April 6, 2010, which service was completed on April 15, 2010. | | |
| 26. On January 3, 2011, the Acosta Judgment Creditors obtained an Order pursuant to 28 U.S.C. §1610(c) from the Honorable Barbara S. Jones of this Court, directing the Clerk of the Court to issue writs of execution with respect to certain property of Iran held in this district by BNYM and SoGen. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 27. On January 4, 2011, the Acosta Judgment Creditors obtained a writ of execution from the Clerk of the Court pursuant to the January 3, 2011 Order, which writ they delivered to the U.S. Marshal on or about January 5, 2011, for service upon BNYM and SoGen, which service was completed on January 21, 2011. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 28. The Heiser Judgment Creditors, all citizens of the United States residing in the United States, are family members and the personal representatives of the estates of seventeen of the nineteen U.S. Air Force officers and airmen killed in the June 25, 1996 terrorist bombing of the Khobar Towers in Khobar, Saudi Arabia in consolidated cases before the United States District Court for the District of Columbia captioned Heiser v. Iran (Case No. 00-CV-2329 RCI,) and Campbell v. Iran (Case No. 01-CV-2104 RCL). The Heiser Judgment Creditors hold a total unsatisfied judgment in the | Citibank lacks information sufficient to respond to this assertion of undisputed material fact, except that it is undisputed that the Heiser Judgment Creditors obtained two judgments which aggregate $591,089,966.00, plus post-judgment interest at the legal rate, against Iran, MOIS, and IRGC in the actions entitled *Heiser v. Iran* (Case No. 00-CV-2329 RCI,) and *Campbell v. Iran* (Case No. 01-CV-2104 RCL). | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| amount of $591,089,966.00, plus post-judgment interest at the legal rate, against Iran, MOIS, and IRGC under 28 U.S.C. §§ 1605(a)(7) and 1605A (the "Heiser Judgment"). The Heiser Judgment is comprised in two parts — a judgment dated December 22, 2006 in the original principal amount of $254,431,903.00 (the "December 2006 Judgment") and a judgment dated September 30, 2009 in the original principal amount of $336,658,063.00 (consisting of $36,658,063.00 in compensatory damages and $300,000,000.00 in punitive damages) (the "September 2009 Judgment"). The Heiser Judgment Creditors duly served their December 2006 Judgment upon Iran, MOIS, and IRGC and registered their December 2006 Judgment in the Southern District of New York on September 28, 2008. The Heiser Judgment Creditors duly served their September 30, 2009 Judgment upon Iran, MOIS, and IRGC and registered their September 2009 Judgment in the Southern District of New York on December 6, 2010.<br>On February 7, 2008, the United States District Court for the District of Columbia entered an order pursuant to 28 U.S.C. § 1610(c) (a) declaring that a reasonable period of time had elapsed following the entry of the December 2006 Judgment and the giving of notice thereof under 28 U.S.C. § 1608(e), and (b) authorizing the Heiser Judgment Creditors to pursue attachment in aid of execution and execution of the December 2006 Judgment. | | |
| 29. On May 10, 2010, the United States District Court for the District | Undisputed. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| of Columbia entered an order pursuant to 28 U.S.C. § 1610(c) finding that a reasonable period of time had elapsed following the entry of the September 2009 Judgment and the giving of notice of the September 2009 Judgment under 28 U.S.C. § 1608(e), and authorizing the Heiser Judgment Creditors to pursue attachment in aid of execution and execution of the September 2009 Judgment. | | |
| 30. In addition, on August 25, 2011, this Court entered an order pursuant to 28 U.S.C. § 1610(c) authorizing the issuance of additional writs of execution for service on, inter alia, the Garnishees. | Undisputed. | |
| 31. On December 10, 2010, the Heiser Judgment Creditors delivered writs of execution issued by this Court to the U.S. Marshal for service upon, inter alia, the New York Banks. The writs of execution were served on BNYM and Citibank on January 3, 2011, SoGen on January 4, 2011, and JPMorgan on January 28, 2011. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact, except that it is undisputed that a writ of execution was served on Citibank behalf of the Heiser Judgment Creditors on or about January 3, 2011, but Citibank notes that Citibank's address for service is 399 Park Avenue. (The writ is alleged to have been delivered to 460 Park Avenue.) | |
| 32. In addition, on September 6, 2011, the Heiser Judgment Creditors delivered writs of execution issued by this Court to the U.S. Marshal for service upon, inter alia, the New York Banks. These writs of execution were served on BNYM and Citibank on October 26, 2011, SoGen on October 27, 2011, and JPMorgan on October 28, 2011. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact, except that it is undisputed that a writ of execution was served on Citibank on behalf of the Heiser Judgment Creditors on or about October 26, 2011. | |
| 33. SG, JPMorgan, BNYM and Citibank admit that they are in | Undisputed as to Citibank, except notes that Citibank | |



DWT 20371703v1 0067486-000015

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| possession, custody, and/or control of the Phase Two Blocked Assets, which have been blocked in accordance with OFAC regulations due to a nexus with Iran and/or certain agencies and instrumentalities of Iran whose property is blocked under federal law. | makes no determination whether the Blocked Assets include a "nexus with Iran and/or certain agencies and instrumentalities of Iran whose property is blocked under federal law" and Citibank denies that it has control over the Phase Two Blocked Assets to the extent that it may not release or transfer those assets to any party without an Order from this Court and/or a license from OFAC. | |
| 34. The New York Banks do not claim any right to the Phase Two Blocked Assets, including the EFTs, for themselves; rather, they maintain that they are merely disinterested stakeholders. | Undisputed as to Citibank. | |
| 35. The New York Banks have filed third- party complaints against a number of individuals and entities, and are therefore third party plaintiffs in this action. The New York Banks admit that they have blocked EFTs and other property, including the Phase Two Blocked Assets, pursuant to U.S. Government regulations, and the New York Banks have deposited such assets, including the Phase Two Blocked Assets, into blocked accounts which bear commercially reasonable interest rates as required under 31 C.F.R. § 595.203. | Undisputed as to Citibank. | |
| 36. This Court granted the New York Banks permission to file third-party complaints against entities and individuals who the New York Banks believe might claim a property interest in the Phase Two Blocked Assets by reason of, inter alia, their transaction of EFTs in | Undisputed. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| which Iran or its agencies or instrumentalities have an interest, or interest in accounts of agencies and instrumentalities of Iran (these entities are collectively referred to as the "Commercial Third-Party Defendants"). | | |
| 37. Despite the procedures available to them to petition OFAC for a release of the Phase Two Blocked Assets, based on any legitimate claim to ownership or property interest, none of the Commercial Third-Party Defendants have alleged that they petitioned OFAC or took any action to claim the monies after they were blocked. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 38. The New York Banks also named as third-party defendants other Iranian Judgment Creditors who the New York Banks believed might assert a claim against the Phase Two Blocked Assets based on writs of execution or other documents allegedly served on the New York Banks. | Undisputed as to Citibank. | |
| 39. The New York Banks served the Peterson Judgment Creditors; the Rubin Judgment Creditors; the Weinstein Judgment Creditors; the Owens Judgment Creditors, the Valore Judgment Creditors; the Sylvia Judgment Creditors; the Bland and Brown Judgment Creditors; the Murphy Judgment Creditors; and the Bennett Judgment Creditors. | Undisputed, except refers to the proofs of service filed by the New Banks for the New York Banks for their contents. | |
| 40. On October 28, 2011, the Peterson Judgment Creditors submitted a letter to the Court advising that the Peterson Judgment Creditors waive any claim they may have with respect to the Blocked Assets and on December 12, 2012, | Undisputed. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| the Court entered a Stipulation, Order, and Judgment dismissing the Peterson Judgment Creditors from this action. | | |
| 41. The Rubin Judgment Creditors and Weinstein Judgment Creditors failed to answer or respond to the Third-Party Complaints and are in default. | Undisputed with respect to the Rubin Judgment Creditors; Citibank lacks information sufficient to respond to this assertion of undisputed material fact with respect to the Weinstein Judgment Creditors. | |
| 42. The Brown and Bland Judgment Creditors, the Owens Judgment Creditors, and the Murphy Judgment Creditors have answered the Third-Party Complaints but asserted no claims or rights to the Phase Two Blocked Assets. | Undisputed. | |
| 43. The Bennett Judgment Creditors filed an answer to the JPMorgan Third-Party Complaint and counterclaimed against JPMorgan but did not counterclaim for a turnover of the Phase Two Blocked Assets. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 44. The Valore Judgment Creditors filed answers and counterclaimed against JPMorgan, BNYM, and Citibank. The Valore Judgment Creditors' counterclaim are based upon, inter alia, writs of execution allegedly delivered to the U.S. Marshal on October 5, 2011. | Undisputed as to Citibank. | |
| 45. Of the approximately 205 Commercial Third-Party Defendants interpleaded in Phase Two of these proceedings, only six (6) have answered the Third-Party Complaints and claimed any interest in any of the Phase Two Blocked Assets. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 46. Specifically, three (3) Commercial Third-Party Defendants | Undisputed as to Citibank. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| named in the Citibank Third-Party Complaint have asserted claims to the proceeds of EFTs to which each was a party.; one (1) Commercial Third-Party Defendant named in the BNYM Third-Party Complaint asserted a claim to the wire to which it was a party; and two (2) Commercial Third-Party Defendants named in the JPMorgan Third-Party Complaint asserted a claim to the wire to which it was a party. | | |
| 47. **[REDACTED]** filed an answer claiming an interest in one blocked EFT held by BNYM. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 48. **[REDACTED]** Filed an answer claiming an interest in one blocked EFT held by Citibank. | Undisputed. | |
| 49. **[REDACTED]** filed an answer claiming an interest in one blocked EFT held by Citibank. | Undisputed, except that on or about October 15, 2012, a voluntary stipulation of dismissal was filed on behalf of this party. | |
| 50. **[REDACTED]** submitted a letter claiming an interest in one blocked EFT held by Citibank. | Undisputed. | |
| 51. **[REDACTED]** submitted an answer and asserted counterclaims with respect to one blocked EFT held by JPMorgan. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 52. **[REDACTED]** submitted a letter to counsel for JPMorgan dated January 22, 2012 in which it asserts a claim to one blocked EFT held by JP Morgan. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 53. The following Third-Party Defendants were dismissed from the BNYM Third-Party Complaint and/or submitted documents asserting no claim to the Blocked Assets: (a) **[REDACTED]**, (b) **[REDACTED]**, (c) **[REDACTED]**, and (d) **[REDACTED]** | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| 54. The following Third-Party Defendants were dismissed from the JPMorgan Third- Party Complaint and/or submitted documents asserting no claim to the Blocked Assets: (a) **[REDACTED]**, (b) **[REDACTED]**, (c) **[REDACTED],** (d) **[REDACTED]**, (e) **[REDACTED],** (f) **[REDACTED],** and (g) **[REDACTED].** | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 55. The following Third-Party Defendants were dismissed from the Citibank Third-Party Complaint and/or submitted documents asserting no claim to the Blocked Assets: (a) **[REDACTED]**, (b) **[REDACTED],** (c) **[REDACTED],** (d) **[REDACTED]**, (e) **[REDACTED]**, (f) **[REDACTED],** and (g) **[REDACTED]** | Undisputed, except that the following Third-Party Defendants also submitted documents asserting no claim to the Blocked Assets. | |
| 56. **[REDACTED]**was dismissed from the SoGen Third-Party Complaint and an entity named **[REDACTED]** submitted a response stating that it "makes no claim to and asserts no rights to or interest in any assets referenced in the Complaint." | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 57. **[REDACTED]** was named as a third-party defendant in the BNYM Third-Party Complaint and JPMorgan Third-Party Complaint and filed answers to both; however, **[REDACTED]** asserts no claim to the Blocked Assets in its answers. | Undisputed. | |
| 58. **[REDACTED]** filed an answer to the JPMorgan Third-Party Complaint in connection with one blocked EFT held by JPMorgan; however, **[REDACTED]** not asserted a claim. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 59. **[REDACTED]** submitted a response in connection with one blocked EFT held by JPMorgan, | Citibank lacks information sufficient to respond to this assertion of undisputed | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| however, the response is not in English. | material fact. | |
| 60. With limited exceptions, the remaining Commercial Third-Party Defendants have failed to appear and are therefore in default. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 61. Pursuant to 28 U.S.C. § 1608(c), service of process upon Iran, MOIS and IRGC was effected on May 9, 2012, when the United States Department of State transmitted a diplomatic pouch containing, *inter alia*, summonses, complaints and notices of suit to the Swiss Ministry of Foreign Affairs in Bern for further transmission to the American Interests Section of the Swiss Embassy in Tehran, Iran, for service upon Iran, MOTS and IRGC, By letter to the Clerk of Court, dated July 6, 2012, the United States Department of State confirmed such service of process and indicated that the Swiss Embassy in Tehran delivered the service documents to the Iranian Ministry of Foreign Affairs on May 16, 2012, under cover of diplomatic notes, dated May 15, 2012. Iran, MOIS, and IRGC have failed to respond to the Third-Party Complaints and are, therefore, in default. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 62. Since January 1984, Iran has been designated a "state sponsor of terrorism" pursuant to provisions of the Export Administration Act because of its sustained and unrepentant acts of terrorism against United States civilians, including murder and torture and is a "terrorist party" as defined under TRIA § 201(d)(4). | Undisputed. | |
| 63. This Court previously determined that Iran is a "state sponsor of terrorism" within the | Undisputed, and refers to the cited opinion and order for their contents. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| meaning of §§1605(a)(7) and 1605A of the Foreign Sovereign Immunity [sic] Act ("FSIA"), 28 U.S.C. §§1605(a)(7) and 1605A, and a "terrorist party" within the meaning of §201 TRIA, codified as a note to §1610. | | |
| 64. The Phase Two Blocked Assets have been blocked pursuant to the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-02, and OFAC sanctions regulations issued pursuant thereto and pursuant to the authority delegated to OFAC by the President thereunder. | Undisputed as to Citibank. | |
| 65. An agency or instrumentality of Iran has an ownership interest in each of the Blocked Assets thereby making such assets subject to attachment and execution in satisfaction of the Movants' judgments pursuant to 28 U.S.C. § 1610, et seq. and TRIA § 201(a). | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 66. The following entities are agencies and instrumentalities or alter egos of Iran: (a) **[REDACTED]**, (b) **[REDACTED]**, (c) **[REDACTED],** (d) **[REDACTED],** (e) **[REDACTED],** (f) **[REDACTED],** (g) **[REDACTED],** (h) **[REDACTED],** (i) **[REDACTED],** (j) **[REDACTED],** (k), **[REDACTED],** (l) **[REDACTED]**, (m) **[REDACTED],** (n) **[REDACTED],** (o) **[REDACTED]**, (p) **[REDACTED],** (q) **[REDACTED],** and (r) **[REDACTED]** (collectively, the “Iranian Entities”). | Citibank lacks information sufficient to respond to this assertion of undisputed material fact and refers the Court to the relevant paragraphs in the Clawson Affidavit. | |
| 67. These Iranian Entities are listed by OFAC as proliferators of weapons of mass destruction or global terrorists whose assets must | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |

| UNDISPUTED MATERIAL FACTS | CITIBANK RESPONSE | RECORD SUPPORT |
|---|---|---|
| be blocked pursuant to OFAC's sanctions regulations and Presidential Executive Orders, including E.O. 13599. | | |
| 68. This Court has determined that the nature of certain of the Blocked Assets as EFTs does not otherwise impede their susceptibility to attachment or execution. | Undisputed as to the Phase One Blocked Assets but disputed that the Court has ruled with respect to this issue as to the Phase Two Blocked Assets, and states that this is a legal issue to be determined by the Court. | |
| 69. The United States of America is not making any claims to the Blocked Assets and an order has been entered dismissing them. | Although an order has been entered dismissing the United States as a party to this dispute, dismissal is without prejudice and it remains to be seen whether the United States of America will make any claims to the Phase Two Blocked Assets or otherwise intervene. | |
| 70. The Levins, Greenbaum and Acosta Judgment Creditors and the Heiser Judgment Creditors have entered into a confidential settlement agreement resolving their dispute regarding priority, as between them, to the Blocked Assets at issue in this matter and providing for the distribution of proceeds therefrom. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
| 71. None of the Commercial Third Party Defendants have come forward to assert that the blocking of the Phase Two Blocked Assets was done in error or that no Iranian Entity has any claim to the Phase Two Blocked Assets. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |

| 72. None of the Commercial Third-Party Defendants have alleged that they obtained a license from OFAC. | Citibank lacks information sufficient to respond to this assertion of undisputed material fact. | |
|---|---|---|

Dated: New York, New York
October 22, 2012

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher Robinson
Sharon L. Schneier
Christopher J. Robinson
1633 Broadway
New York, New York 10019
(212) 489-8230

*Attorneys for Defendant/Third-Party Plaintiff Citibank, N.A.*