UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JEREMY LEVIN and DR. LUCILLE LEVIN,

        Plaintiffs,

    -against-

BANK OF NEW YORK, JP MORGAN
CHASE, SOCIETE GENERALE and
CITIBANK,

        Defendants.
_____

JPMORGAN CHASE BANK, N.A. and
JPMORGAN CHASE & CO.,

        Third-Party Plaintiffs,

    -against-

STEVEN M. GREENBAUM, et al.,

        Third-Party Defendants.
_____

09 Civ. 5900 (RPP) (MDH)

THE JPMORGAN PARTIES' MEMORANDUM
OF LAW IN RESPONSE TO JUDGMENT CREDITORS'
JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT ON
CLAIMS FOR TURNOVER OF ▮▮▮▮▮ BLOCKED ASSETS

      Defendants and third-party plaintiffs JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan") submit this memorandum of law in response to the joint motion by the Levin Plaintiffs and Judgment Creditors, the Greenbaum and Acosta Judgment Creditors, and the Heiser Judgment Creditors (collectively, "Movants") for partial summary judgment on their claims for the turnover of certain blocked asserts referred to in their motion, and here, as the ▮▮▮▮▮ Blocked Assets."

PRELIMINARY STATEMENT

By their motion, Movants seek the turnover of the ▓▓▓ Blocked Assets, which consist of two blocked deposit accounts, in the combined principal amount of ▓▓▓ that JPMorgan established and is still holding. JPMorgan originally set up the accounts at the request of ▓▓▓ to hold cash collateral pledged to ▓▓▓ by third-party defendant ▓▓▓, and to hold settlement funds that ▓▓▓ apparently owed to either ▓▓▓ another third-party defendant, ▓▓▓ or both. The accounts did not originate from electronic fund transfers ("EFTs"), but are instead cash deposit accounts that do not implicate the legal issues, regarding EFTs, that are now on appeal to the Second Circuit in the coordinated appeals in Calderon-Cardona v. JPMorgan Chase Bank, N.A., No. 11-cv-3283 (DLC), 2011 WL 6155987 (S.D.N.Y. Dec. 7, 2011), and Hausler v. JPMorgan Chase Bank, N.A., 845 F. Supp. 2d 553 (S.D.N.Y. 2012), and that this Court just addressed in its Opinion and Order dated September 9, 2013 granting Movants partial summary judgment as to certain Phase Two blocked assets.

Because the ▓▓▓ Blocked Assets are not affected by how the Second Circuit ultimately rules, because no interpleaded parties other than Movants and certain other judgment creditors of Iran have claimed an interest in those assets, and because Movants appear to have undisputed priority over those other judgment creditors, JPMorgan does not oppose the relief sought on Movants' motion so long as two conditions are met: (i) that any turnover judgment include a discharge of JPMorgan from any future liability, relating to the ▓▓▓ Blocked Assets, as against all persons or entities with a potential interest in those assets; and (ii) that JPMorgan be reimbursed for its attorneys' fees and costs incurred to date in the Phase Three turnover proceedings, particularly the commencement and pursuit of its Phase Three interpleader

2

action regarding various blocked assets, of which the ▮▮▮▮ Blocked Assets are by far the largest.

## THE FACTS

JPMorgan does not dispute the facts, including the procedural history of the three phases of this litigation, set forth in Movants' memorandum (at pp. 2-11). Certain of those facts, such as ▮▮▮▮ and ▮▮▮▮ status as instrumentalities of Iran, have already been found by this Court on prior motions in this litigation, and JPMorgan does not challenge those findings. As to the facts underlying Movants' contention (at pp. 19-20) that they have a right to the ▮▮▮▮ Blocked Assets that is superior to the rights of what they refer to as the "Additional Judgment Creditors of Iran," JPMorgan has no reason to dispute the accuracy of those facts and accepts them as true for purposes of this response.

Although we do not repeat here all of the facts and procedural history set forth in Movants' brief, we briefly reiterate the core facts relevant to JPMorgan. On October 10, 2012, JPMorgan filed its Phase Three amended answer and third-party complaint seeking a determination by the Court of the respective rights of the interpleaded defendants to the blocked assets whose identify had previously been disclosed to Movants in Phase Three discovery. The ▮▮▮▮ Blocked Assets were by far the largest of those blocked assets. The interpleaded defendants included what can be broken down into four groups: (i) Movants; (ii) the Additional Judgment Creditors of Iran; (iii) three parties referred to by Movants as the "Commercial Third-Party Defendants" – ▮▮▮▮ and (iv) the judgment debtors – the Islamic Republic of Iran, Iranian Revolutionary Guard Corps, and the Ministry of Information and Security.

3

All of the interpleader defendants have either disclaimed an interest in the ▮ Blocked Assets or have failed to appear and are in default. ▮ by Stipulation, Order and Judgment signed by the Court on February 20, 2013 (Docket No. 887), was dismissed from the action, having appeared and disclaimed any interest in the ▮ Blocked Assets. ▮ ▮ despite being served with the interpleader complaint in accordance with 28 U.S.C. § 1608(b), chose not to appear and are in default. The judgment debtors, which were served through the United States Department of State under 28 U.S.C. § 1608(b) (Docket Nos. 893-96, 899-908), likewise failed to appear and are in default. And of the Additional Judgment Creditors of Iran, five groups of them answered the interpleader complaint (the others having defaulted), and all claimed an interest in the ▮ Blocked Assets. But Movants contend that they have priority over those five groups as to the right to execute on the ▮ Blocked Assets, and JPMorgan, which takes no position on the priority issue, has no reason to question that contention absent an opposition by any of the Additional Judgment Creditors of Iran to Movant's motion.

ARGUMENT

I

TO THE EXTENT MOVANTS' MOTION IS GRANTED
AND THE ▮ BLOCKED ASSETS ARE DIRECTED
TO BE RELEASED, THE ENSUING TURNOVER JUDGMENT SHOULD
INCLUDE A PROVISION DISCHARGING JPMORGAN FROM ANY FUTURE
LIABILITY TO ANY PERSON OR ENTITY WITH RESPECT TO THOSE ASSETS

Because all parties with a possible interest in the ▮ Blocked Assets have been served and given the chance to assert their rights to those assets, and because JPMorgan has no reason to question what appears to be Movants' undisputed priority over all of those other parties, JPMorgan does not oppose the relief sought on Movants' motion. Its lack of opposition

is conditioned, however, upon its obtaining a discharge, binding on all Phase Three interpleaded defendants, as to any future claim relating to the ▮▮▮▮▮ Blocked Assets. JPMorgan's understanding is that Movants do not contest the bank's right to such a discharge.

JPMorgan's Phase Three interpleader action is based on various provisions of federal and state law, including Fed. R. Civ. P. 22 ("rule interpleader," authorizing the use of interpleader by a party exposed to a risk of "double or multiple liability"); 28 U.S.C. §§ 1335 and 2361 ("statutory interpleader," authorizing a court, where there is minimal diversity among the interpleaded parties, to "discharge [the] plaintiff [in the interpleader action] from further liability," issue a permanent injunction "against instituting or prosecuting any other proceeding affecting the property at issue," and "make all appropriate orders to enforce its judgment"); N.Y. Banking Law § 134(6) ("In all actions against any bank . . . to recover for moneys on deposit therewith," court may join all potential claimants to the funds in question as "parties defendant thereto . . . [and] determine the rights and interests of the several parties . . . in and to such funds"); and CPLR § 1006(f) (in an interpleader action, the "stakeholder may move for an order discharging him from liability in whole or in part to any party").[1]

In interpleader proceedings properly commenced under one or more of these statutes, courts routinely enter orders discharging the interpleading party from liability at the time the funds at issue are awarded to the proper claimants. E.g., Wells Fargo Bank, N.A. v. ESM Fund 1, LP, 785 F. Supp. 2d 188, 198 (S.D.N.Y. 2011) (holding that "[b]ecause the Court has concluded that this interpleader action is appropriate, Wells Fargo [the interpleading party] is entitled to discharge and protection from further liability arising out of any claims to the funds at issue in this action") (citing, e.g., Hausler v. JP Morgan Chase Bank, N.A., 740 F. Supp. 2d 525,

---

[1]  Under Rule 69, proceedings in aid of execution on a judgment "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

5

541-42 (S.D.N.Y. 2010)); Fidelity Brokerage Services, LLC v. Bank of China, 192 F. Supp. 2d 173, 183 (S.D.N.Y. 2002) (upon finding that interpleader action was appropriate, court held that interpleading party "is entitled to discharge and protection from further liability arising out of any claims to the assets at issue in this action").

In the current context, involving a turnover proceeding under § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") to enforce judgments against state sponsors of terrorism, interpleading banks in JPMorgan's position have likewise routinely been given discharges from future liability as to the assets that are the subject of the proceeding. In its opinion in Phase One of this litigation, for example, this Court held that the banks that had been directed to turn over blocked assets to the Greenbaum and Acosta judgment creditors "are hereby released from claims as to those assets asserted by other parties" in the case. Levin v. Bank of New York, 09 Civ. 5900 (RPP), 2011 WL 812032, at *21 (S.D.N.Y. Mar. 4, 2011). The Court's ensuing Rule 54(b) judgment dated June 21, 2011 (as modified in early July 2011) stated that "[u]pon turnover by [the defendant banks] to the U.S. Marshal of the . . . Phase One Assets . . . [the defendant banks] shall be discharged and released from all liability and obligation of any nature to . . . [all of the parties to the lawsuit] and any other person or entity with respect to the . . . Phase One Assets." The judgment went on to state that all such parties and persons were "hereby permanently restrained and enjoined . . . from instituting or pursuing any legal actions or proceedings" against the defendant banks with respect to those assets. (See Docket No. 412, ¶¶9-10).

Other judges within the Southern District of New York have similarly granted discharges to interpleading banks, including JPMorgan, in TRIA cases comparable to that here. E.g., Hausler v. JP Morgan Chase Bank, N.A., supra, 740 F. Supp. 2d at 541 (stating that interpleading

6

banks should be discharged "and amply protected from liability to third parties"); Weininger v. Castro, 462 F. Supp. 2d 457, 503 (S.D.N.Y. 2006) (in action under TRIA § 201(a) to enforce a judgment against Cuba, JPMorgan, having brought a Rule 22 interpleader action, held entitled to be "fully discharged . . . from any and all deposit obligations or other liabilities" to adverse claimants).[2]

That JPMorgan is entitled to a discharge as part of the turnover of the ▮ Blocked Assets is beyond dispute. A discharge, including an injunction against the assertion of future claims, should accordingly be part of any turnover judgment granting Movants the right to receive the ▮ Blocked Assets.

II

JPMORGAN IS ENTITLED TO RECOVER
ITS ATTORNEYS' FEES AND COSTS INCURRED IN
CONNECTION WITH ITS PHASE THREE INTERPLEADER ACTION

It is also well established that an interpleading plaintiff typically has the right to recover its attorneys' fees and costs incurred in connection with the interpleader action. E.g., MWH Int'l, Inc. v. Inversora Murten, S.A., No. 11 Civ. 2444, 2013 WL 3717492, at *2 (S.D.N.Y. July 16, 2013) ("[p]ursuant to Rule 22 of the Federal Rules of Civil Procedure, attorney's fees are 'commonly awarded to an innocent stakeholder who successfully initiates a suit as an interpleader'") (quoting Landmark Chemicals, SA v. Merrill Lynch & Co., 234 F.R.D. 62, 63 (S.D.N.Y. 2005) (internal citations omitted)); Fidelity Brokerage Services, supra, 192 F. Supp. 2d at 183 (awarding interpleading party's reasonable attorneys' fees and costs and stating that

---

[2] As this Court did in Phase One, the Weininger court entered an order that not only granted JPMorgan a discharge from liability, but also "restrained and enjoined [the interpleaded defendants] from instituting or prosecuting any claim or action against JPM Chase . . . in any jurisdiction arising from or relating to any claim to the blocked assets" turned over to the plaintiffs. Id. at 503. JPMorgan requests the same injunction against future claims in any turnover judgment as to the ▮ Blocked Assets.

"[a]ttorneys' fees and costs are generally awarded to an innocent and otherwise disinterested stakeholder who has expended time and money participating in a dispute 'not of his own making and the outcome of which has . . . no impact on him'") (citations omitted); Septembertide Publishing, B.V. v. Stein & Day Publishing, Inc., 884 F.2d 675, 683 (2d Cir. 1989) ("A disinterested stakeholder who asserts interpleader is entitled to be awarded costs and attorney's fees"); A/S Krediit Pank v. Chase Manhattan Bank, 303 F.2d 648, 649 (2d Cir. 1962) ("[A] defendant properly invoking interpleader is entitled to costs and attorneys' fees").

In accordance with those principles, this Court awarded attorneys' fees and costs to the interpleading banks in Phase One of this litigation. The Court's June 21, 2011 judgment provided (at ¶13) that the interpleading banks "shall collectively receive a total award of $325,000 for their attorneys' fees and expenses in connection with the [Phase One] Interpleader Proceedings," to be divided among the banks in accordance with their own agreement.

The courts in other TRIA cases have likewise awarded interpleading banks attorneys' fees and costs upon the conclusion of a turnover proceeding. Hausler, 740 F. Supp. 2d at 542 (interpleading banks in turnover proceeding to enforce judgment against Cuba, by executing on blocked funds held by the banks, "will be entitled to submit an application for reasonable attorneys' fees and costs"); Weininger, 462 F. Supp. 2d at 501 (directing JPMorgan to submit an application for costs and attorneys' fees and reaffirming that "[a]ttorneys' fees and costs are generally awarded to a disinterested stakeholder who has 'expended time and money participating in a dispute 'not of [its] own making'") (quoting Fidelity Brokerage Services, supra, 192 F. Supp. 2d at 183) (internal citation omitted)).

Based on its discussions to date with some of Movants' counsel, JPMorgan expects that Movants will agree in principle to its right to reimbursement of its attorneys' fees and costs

8

incurred in the Phase Three interpleader action. Assuming the Court allows for such reimbursement, JPMorgan and Movants will discuss the amount of the fees and costs to be reimbursed in an effort to agree on those figures without having to involve the Court. Only if an agreement is not reached is it expected that one or the other parties will seek the Court's intervention. The fees and costs to be reimbursed will presumably come out of the ▮▮▮▮ Blocked Assets.

## CONCLUSION

For the reasons set forth above, JPMorgan does not oppose Movants' motion, or the release of the ▮▮▮▮ Blocked Assets to Movants, on the condition that it receive a discharge as to any future liability regarding those assets and be reimbursed for its attorneys' fees and costs incurred in connection with its Phase Three interpleader action.

Dated:  New York, New York
        September 27, 2013

                                        LEVI LUBARSKY & FEIGENBAUM LLP

                                        By: _____
                                            Steven B. Feigenbaum
                                            J. Kelley Nevling, Jr.
                                        1185 Avenue of the Americas, 17th Floor
                                        New York, NY 10036
                                        (212) 308-6100
                                        sfeigenbaum@llf-law.com
                                        knevling@llf-law.com
                                        *Attorneys for Defendants, Third-Party Plaintiffs and Counterclaim Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. and The Bank of New York Mellon*