UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMY LEVIN and DR. LUCILLE LEVIN,<br><br>Plaintiffs,<br><br>-v-<br><br>THE BANK OF NEW YORK MELLON, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., SOCIÉTÉ GÉNÉRALE, and CITIBANK, N.A.<br><br>Defendants. | (FILED PARTIALLY UNDER SEAL DUE TO CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER)<br><br>09-CV-5900 (RPP) (MHD)<br><br>**THIRD-PARTY DEFENDANT** ▮▮<br>▮▮▮▮▮ **RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF** ▮▮▮▮▮**MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56.1** |
| THE BANK OF NEW YORK MELLON, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., SOCIÉTÉ GÉNÉRALE, and CITIBANK, N.A.<br><br>Third-Party Plaintiffs,<br><br>-v-<br><br>STEVEN M. GREENBAUM, *et al.*<br><br>Third-Party Defendants. | |

KOBRE & KIM LLP

800 Third Avenue
New York, New York 10022
Tel +1 212 488 1200

*Counsel for* ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮

Pursuant to Local Rule 56.1(b) of the Local Civil Rules of the United States District Court for the Southern District of New York, Third-party Defendant ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ by and through its undersigned counsel, Kobre & Kim LLP, respectfully submits this response to Judgment Creditors' Local Rule 56.1 Separate Statement of Undisputed Facts In Support of Judgment Creditors' Renewed Motion for Partial Summary Judgment on Single Phase Two Asset and in support of the ▓▓▓▓▓▓▓▓▓▓▓▓▓ motion for summary judgment. Pursuant to Local Rule 56.1(b), Section I responds to each numbered paragraph of Judgment Creditors' Statement, and Section II sets forth additional paragraphs containing undisputed material facts and the evidence supporting them in support of ▓▓▓▓▓▓▓▓▓▓▓ motion for summary judgment.

**I.        ▓▓▓▓ Response to Numbered Paragraphs of Plaintiff's Statement of Material Facts**

**1.**      The Judgment Creditors hold money judgments entered against the Islamic Republic of Iran ("Iran") variously under 28 U.S.C.§§ 1605(a)(7) and 1605A for death and grievous bodily injury suffered as a result of Iran-sponsored acts of international terrorism. *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD), 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011), at *1; *see also Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 925) Opinion & Order ("Phase Two Turnover Order") at 4.

**RESPONSE TO PARAGRAPH 1:** ▓▓▓▓▓ does not dispute paragraph 1 of the Judgment Creditors' Statement.

**2.**      The Heiser and Acosta Judgment Creditors hold judgments awarded pursuant to 28 U.S.C. § 1605A and the Levin and Greenbaum Judgment Creditors hold judgments awarded pursuant to 28 U.S.C. § 1605(a)(7). *See Levin*, 2011 WL 812032 at *3; *see also* Phase Two Turnover Order at 4.

**RESPONSE TO PARAGRAPH 2:** ▓▓▓▓ does not dispute paragraph 2 of the Judgment Creditors' Statement.

3.      The Levin Judgment Creditors initiated this action by filing a Complaint in this Court on June 26, 2009, against Citibank, The Bank of New York Mellon, Societe Generale, and JPMorgan Chase Bank, N.A. (collectively, the "New York Banks"). *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 70).

**RESPONSE TO PARAGRAPH 3:** ▓▓▓▓ does not dispute paragraph 3 of the Judgment Creditors' Statement.

4.      The Judgment Creditors entered into a sharing agreement after the Court's Order in Phase One and then jointly moved for partial summary judgment on their claims for turnover of the assets designated for inclusion in Phase Two of this action (the "Phase Two Blocked Assets") on August 29, 2012. *See* Declaration of Suzelle M. Smith in Support of Judgment Creditors' Renewed Joint Motion for Partial Summary Judgment on Single Phase Two Asset ("Smith Declaration") at ¶ 2.

**RESPONSE TO PARAGRAPH 4:.** ▓▓▓▓ does not have sufficient information to confirm or dispute Paragraph 4.

5.      The Court has held that the Judgment Creditors hold a collective priority right to turnover of all the Phase Two Blocked Assets. *See* Phase Two Turnover Order at 4.

**RESPONSE TO PARAGRAPH 5:** Disputed. The assertion that the Court ruled the Judgment Creditors hold a right to "all" of the Phase Two Blocked Assets denominated as such at the time of the Phase Two Order is not correct. The Court generally ruled that the Judgment Creditors held the right in the Phase Two Blocked Assets described by Paragraph 5, but explicitly held the ▓▓▓▓ EFT—which was at the time a Phase Two Blocked Asset—out of that Order. The Court

conditioned ▮▮▮▮▮ EFT's later inclusion in the pool of assets to which the Court had ruled the

Judgment Creditors held a right on OFAC's denial of (if it did choose to deny) the license sought

for ▮▮▮▮▮ EFT. The Court therefore never included ▮▮▮▮▮ EFT in the Phase Two Blocked

Assets referenced in paragraph 5 of the Judgment Creditors' Statement. *See* Phase Two Order at

29 ("The inclusion in this Order of funds pending before OFAC is conditioned upon the denial of

the OFAC license."). The OFAC license was granted and thus no right of any kind was ever

established. *See* Phase Two Order at 29; *see also Levin v. Bank of New York*, No. 09-5900 (RPP)

(MHD) (ECF Dkt. No. 958).

6.      In the Phase Two Turnover Order, the Court granted the Judgment Creditors' motion for

partial summary judgment as to the Phase Two Blocked Assets. In granting the motion, the Court

held, "[g]iven the evidence presented by [the] Judgment Creditors, the record demonstrates that

the entities that were party to EFT transfers or deposit accounts which comprise the Phase Two

Blocked Assets are agencies or instrumentalities of Iran as defined by 28 U.S.C. § 1603(b). The

Court finds that the Judgment Creditors' motion complies with C.P.L.R. § 5225(b), as required

by Federal Rule of Civil Procedure 69, and the Judgment Creditors are entitled to turnover of the

Phase Two Blocked Assets." *See* Phase Two Turnover Order at 27.

**RESPONSE TO PARAGRAPH 6:** ▮▮▮▮▮ does not dispute paragraph 6 of the Judgment

Creditors' Statement.

7.      Pursuant to the Phase Two Turnover Order, all Phase Two Blocked Assets have been

paid over to the Judgment Creditors by the New York Banks, with only two exceptions: the asset

here at issue and claimed by third-party defendant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

and another asset that was claimed by ▮▮▮▮▮▮▮▮▮ that is now the subject of an

appeal pending before the United States Court of Appeals for the Second Circuit. *See* Smith Declaration at ¶ 3.

**RESPONSE TO PARAGRAPH 7:** ▨▨▨ does not have sufficient information to confirm or dispute paragraph 7 of the Judgment Creditors' Statement.

8.    The single asset at issue on this motion ▨▨▨▨▨▨ constitutes the proceeds of an electronic funds transfer ("EFT") identified by Citibank as originating from ▨▨▨ and intended to benefit third-party defendant ▨▨▨▨▨▨▨▨▨▨ an instrumentality of the Government of Iran. *See* Smith Declaration at ¶ 4; *see also Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 438); *see also* Phase Two Turnover Order at 20.

**RESPONSE TO PARAGRAPH 8:** ▨▨▨ does not have sufficient information to confirm or dispute Paragraph 8, because it is unclear whether Paragraph 8 asserts that Citibank described the intended beneficiary as ▨▨▨ or whether the paragraph is stating that conclusion (incorrectly) as fact. As set forth in the declaration of ▨▨▨▨▨▨▨ and in the letter to the court from ▨▨▨ dated October 11, 2013, the sole intended beneficiary of the transfer was the ▨▨▨▨▨▨▨▨▨▨ The paperwork associated with ▨▨▨ EFT at issue in this proceeding incorrectly listed ▨▨▨▨ ▨▨▨▨ due to clerical error, when in fact, as stated in the October 11, 2013 letter to the Court, the intended beneficiary was ▨▨▨ *See also* ▨▨▨▨▨▨▨ ▨▨▨▨▨ ¶¶ 13-15; *Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No.939). "▨▨ etter, Oct. 11, 2013".

9.    In light of Iran's beneficial interest in ▨▨▨ Asset, Citibank blocked the transfer pursuant to regulations promulgated by the Treasury Department's Office of Foreign Assets

4

Control ("OFAC").   *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 438).

**RESPONSE TO PARAGRAPH 9:** Denied. The claim that Citibank made a determination regarding ▩▩▩ asset other than to defer to OFAC's decision to block the EFT is unsupported. Citibank explicitly stated that "[Citibank] makes no determination whether the Blocked Assets include a 'nexus with Iran and/or certain agencies and instrumentalities of Iran whose property is blocked under federal law.' *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 814) at ¶ 33. "Citibank 56.1"

10.   Despite having been properly interpleaded as a third-party defendant and having filed an answer to Citibank's third-party complaint, ▩▩▩ did not file a formal opposition to the Judgment Creditors' motion for partial summary judgment. *See* Smith Declaration at ¶ 5.

**RESPONSE TO PARAGRAPH 10:** Denied. By letter to the Court on October 19, 2012, ▩▩▩ ▩▩▩ joined in the applicable portions of the papers filed by the New York Banks in opposition to Judgment Creditors' motion for partial summary judgment.   *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 816).

11.   Indeed, there was no evidence offered in opposition to the Judgment Creditors' motion to the extent that it sought turnover of ▩▩▩ Asset. *See* Smith Declaration at ¶ 6.

**RESPONSE TO PARAGRAPH 11:** Denied. As already stated (*see supra* Response ¶ 10), ▩▩▩ ▩▩▩ joined in the applicable portions of the papers filed by the New York Banks, and opposed the Judgment Creditors' motion with the evidence and arguments contained therein. *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 816).

12.   Instead of appearing and opposing the Judgment Creditors' motion, as is required under Federal Rule of Civil Procedure 26, ▩▩▩ submitted a letter to the Court dated October 19,

2012 (ECF Dkt. No. 816), in which ▆▆▆▆ stated that it would not be filing opposition papers and instead intended to join in the applicable portions of arguments of the New York Banks in response to the Judgment Creditors' Phase Two turnover motion. *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 816).

**RESPONSE TO PARAGRAPH 12:** Denied. ▆▆▆▆ appeared on September 4, 2012 and as noted in responses to paragraphs 10 and 11, joined the applicable portions of the New York Banks' response. *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 771); *See also Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 816).

**13.** ▆▆▆▆ also noted in its letter that it had an "application" pending before OFAC, presumably for a license related to ▆▆▆▆ Asset, though it did not specify the purpose of such license. *See Levin v. Bank of New York*, No. 09-5900(RPP) (MHD) (ECF Dkt. No. 816).

**RESPONSE TO PARAGRAPH 13:** ▆▆▆▆ does not dispute paragraph 13 of the Judgment Creditors' Statement. ▆▆▆▆ notes that the October 19, 2012 letter to the Court also stated that "if summary judgment were to be granted against ▆▆▆▆ we may at a future date timely move for a stay of any turnover order or the execution thereof, to prevent funds released by or set to be released by OFAC from being erroneously turned over to the plaintiff judgment creditors." From the above statement it was beyond doubt that the purpose of the license was to secure release of the blocked funds. *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 816).

**14.** By subsequent letter to the Court dated April 15, 2013 (ECF Dkt. No. 898), nearly eight months after the Judgment Creditors moved for summary judgment on their claims to the Phase Two Blocked Assets, ▆▆▆▆ informed the Court that its request for a license from OFAC

"directed towards" ▮▮▮ Asset was denied. *See Levin v. Bank of New York*, No. 09-5900(RPP) (MHD) (ECF Dkt. No. 898).

**RESPONSE TO PARAGRAPH 14:** ▮▮▮ does not dispute paragraph 14 of the Judgment Creditors' Statement. ▮▮▮ does note that in the same April 15, 2013 letter to the Court ▮▮▮ stated that "OFAC has not completed its determination regarding this blocked transfer" and that the other application was "per OFAC, still under active supervisor-level review". *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 898).

15.    ▮▮▮ also stated in that letter that another party, the ▮▮▮ ▮▮▮ an agency or instrumentality of Iran under 28 U.S.C. 1603(b), had applied for a license to release the funds, which application remained pending. *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 898).

**RESPONSE TO PARAGRAPH 15:** Denied. ▮▮▮ ▮▮▮ is neither an agency nor instrumentality of the state of Iran. OFAC has looked closely at ▮▮▮ has certified that "OFAC has carefully reviewed the information presented and otherwise available to it in connection with this transfer," McCulloch Decl., Ex. A, and has declined to include it on the "Specially Designated Nationals" (or "SDN") list—which it must have done in furtherance of its binding obligation to block agencies and instrumentalities of Iran of which it is aware, if it had found ▮▮▮ o be one, under 31 CFR § 560.211(a).   Executive Order 13599 (which, in relevant part, is codified by 31 CFR § 560.211) notes that "[a]ll agencies of the United States Government are hereby directed to take all appropriate measures within their authority to carry out the provisions of this order." Note 1 of 31 CFR § 560.304 provides that "[t]he names of persons that OFAC has determined fall within this definition [of the Government of Iran] are published in the Federal Register and incorporated into the Office of Foreign Assets Control's [SDN] List with

the identifier "[Iran]." But OFAC did not include ▮▮▮▮▮ on the SDN list. McCulloch Decl. ¶ 2. OFAC's determination is entitled to deference greater than that contemplated under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See* Mem. of Law in Supp. of Third-party Def. ▮▮▮▮▮▮▮▮▮▮ Mot. for Summ. J. and Opp'n. to J. Creditors' Mot. for Partial Summ. J. (▮▮▮Mem.") at 19-21. Even if OFAC had not determined the matter, under the controlling Second Circuit test articulated in *Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004) ▮▮▮▮ does not meet a single one of the five factors that govern whether an entity may be deemed an "organ of a foreign state" that can be an agency or instrumentality not owned by a foreign state under section 1603(b)(2). *See* ▮▮▮▮ at 23-26. *See also* ▮▮▮▮▮ ¶¶18-34.

16.   Notably, ▮▮▮▮ itself did not appear or oppose the Judgment Creditors' Motion. *See* Smith Declaration at ¶ 7.

**RESPONSE TO PARAGRAPH 16:** ▮▮▮▮ does not dispute paragraph 16 of the Judgment Creditors' Statement.

17.   In its Phase Two Turnover Order, the Court found that the beneficiary of ▮▮▮▮ Asset wire transfer as identified by Citibank is ▮▮▮▮ *See* Phase Two Turnover Order at 20.

**RESPONSE TO PARAGRAPH 17:** ▮▮▮▮ does not have adequate information to dispute or confirm paragraph 17 of the Judgment Creditors' Statement. Paragraph 17 is unclear; as in Paragraph 8, if the statement's intended meaning is that the Court found that the entity that Citibank identified as the beneficiary of ▮▮▮▮ Asset wire transfer was ▮▮▮▮, does not dispute. If the statement's intended meaning is that the Court found that the beneficiary of ▮▮▮▮ Asset wire transfer was ▮▮▮▮▮ disputes this statement.

18.     The Judgment Creditors offered unopposed evidence, and the Court duly found that ████

████ is "owned by Iran, [is a] national bank of Iran, [is] controlled by Iran, [is an] agency or

instrumentality of Iran, [is an] alter ego of Iran." Phase Two Turnover Order at 20.

**RESPONSE TO PARAGRAPH 18:** ████████ does not dispute paragraph 18 of the Judgment

Creditors' Statement.

19.     Accordingly, the Court held that the Judgment Creditors were entitled to summary

judgment on their claims for turnover of ████████ Asset under § 201 of the Terrorism Risk

Insurance Act of 2002 ("TRIA") and § 1610(g) of the Foreign Sovereign Immunities Act of 1976

(the "FSIA") because the beneficiary of ████████ Asset is an agency or instrumentality of Iran.

*See* Phase Two Turnover Order at 21, 27.

**RESPONSE TO PARAGRAPH 19:** Denied. As described above, *see supra* Responses ¶¶ 5-6,

████████ EFT was never included in the Phase Two Assets against which turnover was permitted.

Further, the Court explicitly declined to address whether § 1610(g) of the FSIA could serve as

independent grounds for attaching any Phase Two Assets: "the Court need not address whether

FSIA § 1610(g) would independently provide a basis for preemption of state law and execution

of blocked EFTs." Phase Two Order at 17. *See also Levin v. Bank of New York*, No. 09-5900

(RPP) (MHD) (ECF Dkt. No. 939).

20.     However, notwithstanding these findings, the Court granted a subsequent letter request

by ████████ to stay immediate turnover of ████████ Asset pending OFAC's resolution of ████

████'s application for a license. The Court's Order included this statement: "The inclusion in

this Order of funds pending before OFAC is conditioned upon the denial of the OFAC license."

*See* Phase Two Turnover Order at 29-30.

**RESPONSE TO PARAGRAPH 20:** Denied. The Court's grant of ▓▓▓ letter request was not "notwithstanding" of the Court's findings, but rather restated them—in response to ▓▓▓▓▓▓▓ request, which was made in order to make sure that the Court's conditioning of its Phase Two Order pending OFAC's findings did not go unnoticed. The Court did not find that the TRIA or 1610(g) authorized attachment of an unblocked EFT, hence the Court's conditioning the order upon a denial of the OFAC license to unblock the EFT. *See* Phase Two Order at 29; *See generally* ▓▓▓▓▓

21. On October 11, 2013, counsel for ▓▓▓ sent a letter to the Court which stated that ▓▓▓ ▓▓▓▓ was the "intended beneficiary of the transfer." *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 939).

**RESPONSE TO PARAGRAPH 21:** ▓▓▓▓▓ does not dispute paragraph 21 of the Judgment Creditors' Statement.

22. The letter also stated that ▓▓▓▓▓▓ request for a license from OFAC was still pending. *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 939).

**RESPONSE TO PARAGRAPH 22:** ▓▓▓▓▓ does not dispute paragraph 22 of the Judgment Creditors' Statement.

23. The Judgment Creditors did not have the opportunity to participate in the OFAC license process, and OFAC refused to even communicate with the Judgment Creditors regarding ▓▓▓ ▓▓▓▓ Asset. *See* Smith Declaration at ¶ 8.

**RESPONSE TO PARAGRAPH 23:** ▓▓▓▓▓ does not have adequate information to confirm or dispute paragraph 23 of the Judgment Creditors' Statement.

24. Accordingly, ▓▓▓▓▓ Asset currently remains in the custody of Citibank. *See* Smith Declaration at ¶ 9.

**RESPONSE TO PARAGRAPH 24:** ▮▮▮▮ does not dispute paragraph 24 of the Judgment Creditors' Statement.

25.    On April 17, 2014, counsel for ▮▮▮ sent another letter application to the Court, this time seeking the release of ▮▮▮ Asset. *See* Smith Declaration, at ¶ 10; *see also* Smith Declaration, Ex. A.

**RESPONSE TO PARAGRAPH 25:** ▮▮▮▮ does not dispute paragraph 25 of the Judgment Creditors' Statement.

26.    ▮▮▮▮ counsel attached to that submission a letter purporting to be from OFAC (the "OFAC Letter") addressed to Citibank.  The letter states: "OFAC has carefully reviewed the information presented and otherwise available to it in connection with this transfer and has determined that Citibank, N.A. is authorized to return the funds to the originator or originating financial institution." *See* Smith Declaration, at ¶ 10; *see also* Smith Declaration, Ex. A.

**RESPONSE TO PARAGRAPH 26:** ▮▮▮▮ does not dispute paragraph 26 of the Judgment Creditors' Statement.

27.   In ▮▮▮ Letter to the Court, counsel for ▮▮▮ asks the Court to enter an Order in effect reversing the Court's prior Phase Two Turnover Order granting the Judgment Creditors' motion for partial summary judgment as to ▮▮▮ Asset so that the funds can be returned to ▮▮▮ *See* Smith Declaration, at ¶ 10; *see also* Smith Declaration, Ex. A, at 3.

**RESPONSE TO PARAGRAPH 27: Denied.** ▮▮▮ did not ask the Court to "in effect reverse" a previous order, but rather to apply the standard already set out in previous rulings. As already described above, in the Phase Two Order the Court found that turnover depended upon the denial of the OFAC license.  Further, the Court held that "the proper avenue for redress for commercial third-party Defendants is through OFAC's administrative procedures," Phase Two

11

Order at 27, because it held that OFAC's decision to block an EFT sufficed to determine an Iranian interest that could permit attachment under the TRIA. *See id.* at 7. When OFAC granted the license and unblocked the EFT, ▮▮▮▮ EFT was removed from potential inclusion in the "Phase Two Blocked Assets" at issue in the Phase Two Order. As is described in ▮▮▮▮ Mem. at 13, the only inference from which the existence of an Iranian interest in the funds could potentially have drawn was also removed. No reversal of the Phase Two Order was or is sought. *See* Phase Two Order at 29.

28.   ▮▮▮▮ asks the Court to do this based on the language in the September 2013 Order regarding OFAC licensing and disputes among "commerical parties." [sic] *See* Smith Declaration, at ¶ 10; *see also* Smith Declaration, Ex. A, at 1-2.

**RESPONSE TO PARAGRAPH 28:** Denied. The Judgment Creditors mischaracterize the argument presented by ▮▮▮▮. This Paragraph, like many others, speaks to a legal issue dealt with in the accompanying brief. *See generally* ▮▮▮▮

29.   The record is devoid of any evidence suggesting that OFAC has made any finding that ▮▮▮▮ does not have a beneficial ownership interest in ▮▮▮▮ Asset or that ▮▮▮▮ is not an agency or instrumentality of Iran. *See* Smith Declaration at ¶ 11.

**RESPONSE TO PARAGRAPH 29:** Denied. As noted above, *see supra* Response ¶ 15, OFAC has closely evaluated ▮▮▮▮ in the process of granting license for the return of ▮▮▮▮ EFT and actively decided not to include it on the SDN List. *See* McCulloch Decl. ¶ 2, Ex. A.

30.   The Judgment Creditors have presented evidence, and the Court has found, that ▮▮▮▮ Asset is subject to turnover to the Judgment Creditors under § 201 of TRIA and § 1610(g) of the

FSIA because the beneficiary of that asset, ▮▮▮▮ is an agency or instrumentality of Iran. *See* Phase Two Turnover Order at 20.

**RESPONSE TO PARAGRAPH 30:** Denied. The asset in question was never granted turnover to the Judgment Creditors; the Court never granted turnover of any asset under section 1610(g); and the beneficiary of ▮▮▮ EFT was ▮▮▮▮, not ▮▮▮. *See supra* Responses ¶¶ 5-6, 19.

**31.**     ▮▮▮▮ does not contest, and cannot contest, that ▮▮▮▮ is an agency or instrumentality of Iran, as was found by the Court in its Phase Two Turnover Order. *See* Phase Two Turnover Order at 20.

**RESPONSE TO PARAGRAPH 31:** ▮▮▮▮ does not have adequate information to confirm or dispute paragraph 31 of the Judgment Creditors' Statement.

**32.**     To the extent that ▮▮▮ now claims that ▮▮▮▮ is the "intended beneficiary" of the ▮▮▮ Asset, that proposition does not change the ultimate fact that an agency or instrumentality of Iran is the beneficiary of the asset. *See* Smith Declaration, Ex. A, at 1.

**RESPONSE TO PARAGRAPH 32:** Denied. As previously stated, ▮▮▮▮ is not an agency or instrumentality of Iran. *See supra* response ¶ 15; *see also* ▮▮▮ Mem. at 22-25.

**33.**     ▮▮▮▮ claims that the OFAC license obtained by ▮▮▮▮ requires the Court to order turnover of ▮▮▮ Asset to ▮▮▮ because OFAC is, in ▮▮▮ view, the "ultimate arbiter of ownership interests." *See* Smith Declaration, Ex. A at 2.

**RESPONSE TO PARAGRAPH 33:** Denied. The Judgment Creditors' mischaracterize the argument presented by ▮▮ ▮▮ *See* ▮▮▮ ▮▮. at 13. The importance of OFAC's determination, in light of the Judgment Creditors' reliance on the former blocking of ▮▮▮▮ EFT to support their request for turnover under the TRIA, is described above. *See supra* response

¶ 27.   Now that the only grounds upon which any Iranian interest justifying any form of attachment of ▓▓▓ EFT has been removed, no impediment to turnover to ▓▓▓ remains.

**34.**    However, nothing in the OFAC letter produced by ▓▓▓ indicates that OFAC made any finding about the ownership interests in ▓▓▓ Asset.  Indeed, the OFAC license attached as Exhibit A to ▓▓▓ letter does not say anything about ownership interests in ▓▓▓ Asset. It merely states, without explanation, that "Citibank, N.A. is authorized to return the funds to the originator or originating financial institution."  *See* Smith Declaration, Ex. A, at Exhibit A.

**RESPONSE TO PARAGRAPH 34:** ▓▓▓ does not dispute paragraph 34 of the Judgment Creditors' Statement.  ▓▓▓ does note however that while OFAC did not explicitly indicate that OFAC made any finding about the ownership interests in ▓▓▓ asset, OFAC's decision to grant the license for the return of ▓▓▓ Asset removed the only basis upon which any Iranian interest of any kind had been found in ▓▓▓ EFT.  *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 438).

**35.**    This Court has specifically requested that OFAC participate in this action and give its opinion on the issues before the Court, yet OFAC has refused to do so.  *See* Phase Two Turnover Order at 4.

**RESPONSE TO PARAGRAPH 35:**  Denied. OFAC has made its opinion on the issues before the Court clear:

> [Section 1610(g)] necessarily reaches only property or interests in property that the judgment debtor owns.  If Congress had intended the statute to more broadly reach all property in which the judgment debtor had any interest, it would have used broader language—like that in OFAC's regulations. Indeed, whereas TRIA includes a "notwithstanding" clause . . . neither section 1610(g) nor the FSIA as a whole has any such provision.

*See* Brief for the United States as Amicus Curiae at 24, *Calderon–Cardona v. Bank of New York Mellon et al.*, No. 12–75 (2d Cir. 2012) (internal citations omitted).

36.    The Judgment Creditors provide OFAC with copies of all filings in this action, per OFAC's instructions.  OFAC will also be served with a copy the Memorandum of Law and the accompanying moving papers.  *See* Smith Declaration at ¶ 12.

**RESPONSE TO PARAGRAPH 36:** ████████ does not dispute paragraph 36 of the Judgment Creditors' Statement.

37.    The Judgment Creditors have established that there is no material disputed fact that the beneficiary of ████████ Asset, ████████ is an agency or instrumentality of Iran. The Judgment Creditors already met this burden and the Court has already found that ████████ is "owned by Iran, [is a] national bank of Iran, [is] controlled by Iran, [is an] agency or instrumentality of Iran, [is an] alter ego of Iran." *See* Phase Two Turnover Order at 20.

**RESPONSE TO PARAGRAPH 37:** Denied ████████ was not the intended beneficiary of ████ ████ EFT.  The intended beneficiary was ████████  *See supra* Responses ¶¶ 5-6.  Nor is ████ ████ an agency or instrumentality of Iran.  *See supra* response ¶ 15; ████████  ¶¶12-34; *See also Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 939).

38.    James M. Dorsey and Dr. Patrick Clawson have provided declarations setting forth the facts underlying their expert opinions that the government of Iran has a substantial ownership interest in ████████ and controls ████████ and that ████████ is an agency and instrumentality of Iran.  *See* Declaration of James M. Dorsey ("Dorsey Decl.") at ¶¶ 12-31; *see also* Affidavit of Dr. Patrick Clawson ("Clawson Affidavit") at ¶¶ 17-23.

**RESPONSE TO PARAGRAPH 38:** Disputed. Neither Dr. Clawson nor Mr. Dorsey have shown that ████████ in fact meets any factor that could suffice under the legal definition of "organ of a foreign state" as defined by 28 U.S.C. § 1603(b), the applicable definition for U.S.C. § 1610(g). *See* ████ Mem. at 22-25. *See generally* ████████  Their assertion that the

government of Iran has some ownership interest in ▉▉▉▉ is based entirely on inadmissible hearsay, *see, e.g.,* Dorsey Decl. ¶ 12 (cited by Clawson ¶ 17); ▉▉▉▉ at 23 n.11; implausible given Dorsey's admission that ▉▉▉▉ is incorporated as a non-governmental organization ("NGO"), Dorsey Decl. ¶ 12; and disproved by ▉▉▉▉▉▉▉ investigation-based assessment that the government of Iran has no ownership interest whatsoever in ▉▉▉▉ *See* ▉▉▉▉. ¶ 34.

39.    This Court has previously accepted Dr. Clawson as an expert on Iran, its agencies and instrumentalities, and the use of the international banking system to finance terrorism. *See* Phase Two Turnover Order at 19; *see also* Clawson Affidavit at ¶ 12.

**RESPONSE TO PARAGRAPH 39:** Denied. The Court found that "Dr. Clawson has extensive experience researching and consulting with government officials about Iran, and has published several books on the subject," Phase Two Order at 19 (quoting Levin I, 2011 WL 812032 at *19) and accepted him as an expert, but did not explicitly find Dr. Clawson to be an expert on "its agencies and instrumentalities, and the use of the international banking system to finance terrorism." *See* Phase Two Order at 19.

40.    Dr. Clawson is the Director of Research at the Washington Institute for Near East Policy. *See* Clawson Affidavit at ¶ 2.

**RESPONSE TO PARAGRAPH 40:** ▉▉▉▉ does not dispute paragraph 40 of the Judgment Creditors' Statement.

41.    Dr. Clawson is an expert on, among other things, the Islamic Republic of Iran, its sponsorship of terrorism, its economy, its politics, its national and state owned banks, and its use of financial institutions and transactions to finance terrorism. *See* Clawson Affidavit at ¶¶ 2-14.

**RESPONSE TO PARAGRAPH 41:** ▮▮▮▮ does not have adequate information to confirm or dispute paragraph 41 of the Judgment Creditors' Statement.

42.     Mr. Dorsey is a Senior Fellow at the S.Rajaratnam School of International Studies of Nanyang Technological University in Singapore. *See* Dorsey Decl. at 2.

**RESPONSE TO PARAGRAPH 42:** ▮▮▮▮ does not dispute paragraph 42 of the Judgment Creditors' Statement.

43.     He is an expert on, among other things, Middle Eastern soccer and Iranian soccer issues. *See* Dorsey Decl. at ¶¶ 2-11.

**RESPONSE TO PARAGRAPH 43:** ▮▮▮▮ does not have adequate information to confirm or dispute paragraph 43 of the Judgment Creditors' Statement.

44.     As set forth in the Dorsey Decl. and the Clawson Affidavit, Dr. Clawson and Mr. Dorsey have analyzed ▮▮▮▮ and have concluded that it is an agency or instrumentality of Iran as the term is defined in 28 U.S.C. § 1603 and that Iran and its agencies and instrumentalities have an interest in ▮▮▮▮ Asset. *See* Dorsey Decl. at ¶¶ 12-31; *see also* Clawson Affidavit at ¶¶ 17-23; *see also* Smith Declaration at ¶ 13; *see also* Smith Declaration, Ex. B.

**RESPONSE TO PARAGRAPH 44:** Denied. Dr. Clawson and Mr. Dorsey could not have concluded that ▮▮▮▮ is an agency or instrumentality pursuant—a legal conclusion under 28 U.S.C. § 1603—based on the information presented in their statements. *See supra* Response ¶ 38.

45.     In Phase One, the Court held that the Judgment Creditors were entitled to turnover of the Phase One Assets under TRIA. *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 342) Opinion and Amended Order ("Phase One Turnover Order") at 33.

**RESPONSE TO PARAGRAPH 45:** ▓▓▓▓▓ does not dispute paragraph 45 of the Judgment Creditors' Statement.

46.    In Phase Two, the Court held that the Phase Two Assets were subject to turnover pursuant to both TRIA and FSIA 1610(g):

> Given the fact that blocked EFTs held by intermediary banks are subject to execution under TRIA, the Court need not address whether FSIA § 1610(g) would independently provide a basis for preemption of state law and execution of blocked EFTs. It should be noted, however, that FSIA § 1610(g) does not mandate a different result than the one reached here. In fact, the two statutes should be read together, and "reading TRIA § 201 and FSIA § 1610(g) in conjunction with the entire FSIA and the 2008 NDAA amendments shows that Congress intended to create a harmonious whole." Heiser, 885 F.Supp.2d at 445. See also Levin I, 2011 WL 812032 at *10 (considering both the pre and post-2008 versions of the FSIA and noting that TRIA is codified as a note to FSIA §1610, and must be read in the context of the overarching statutory scheme of the FSIA). Reading the two statutes together and in the context of the larger statutory scheme, the Court affirms its Phase One Opinion holding that blocked EFTs held by intermediary banks are subject to execution.

Phase Two Turnover Order at 17-18, 27.

**RESPONSE TO PARAGRAPH 46:** Denied. The Court did not find that the blocked EFTs at issue in Phase Two were subject to turnover pursuant to FSIA § 1610(g), but rather that §1610(g) did not prevent the turnover of the blocked EFTs under TRIA. *See supra* response ¶ 19; *see also* Phase Two Order at 17.

47.    In Phase Three, the Court held that the Phase Three Assets "constitute blocked assets belonging to Iran or an agency and/or instrumentality of Iran and are properly subject to execution pursuant to §1610 of the FSIA and TRIA, codified as a note thereto." *See Levin v. Bank of New York*, No. 09-5900 (RPP) (MHD) (ECF Dkt. No. 944) Judgment and Order Directing Turnover of Funds and Discharge, at 4.

**RESPONSE TO PARAGRAPH 47:** ▓▓▓▓▓ does not dispute paragraph 47 of the Judgment Creditors' Statement.

48.    The Court held in the Phase Two Turnover Order that the Judgment Creditors are entitled to interest on the subject assets. *See* Phase Two Turnover Order at 33-35.

**RESPONSE TO PARAGRAPH 48:** ▓▓▓▓ does not dispute paragraph 48 of the Judgment Creditors' Statement.

II.    ▓▓▓▓ **Statement of Undisputed Material Facts**

1.  The intended beneficiary of ▓▓▓ EFT was ▓▓▓▓. ▓▓▓▓▓▓. ¶ 12.

2.  ▓▓▓▓▓▓ the financial institution serving ▓▓▓▓ was described as the intended beneficiary by mistake. *See* ▓▓▓▓▓ ¶ 13.

3.  ▓▓▓▓ had no right to the funds constituting ▓▓▓▓ EFT beyond its role as a financial institution serving its client, ▓▓▓▓. ▓▓▓▓ EFT was intended for ▓▓▓ 's benefit alone. *See* ▓▓▓▓. ¶ 14.

4.  After OFAC "carefully reviewed the information presented and otherwise available to it in connection with [▓▓▓▓ EFT]," OFAC authorized the return of ▓▓▓▓ EFT to the ▓▓▓. *See* McCulloch Decl. Ex. A.

5.  OFAC did so by license dated March 13, 2014, authoring the return of ▓▓▓▓ EFT back to ▓▓▓. *See* McCulloch Decl. Ex A.

6.  The purpose of ▓▓▓▓ EFT was to provide assistance to ▓▓▓▓ by defraying the substantial cost of participating in international "away" matches. *See* ▓▓▓▓.¶¶ 8-11.

7.  Citibank blocked ▓▓▓▓ EFT on February 2, 2010 after it was initiated on January 28, 2010. As a result, the EFT never reached ▓▓▓▓ or its bank▓▓▓▓. *See* ▓▓▓ ▓▓▓ ¶ 15.



8.  The error was not noticed until after the EFT was blocked by Citibank, N.A. *See* ▉▉▉▉ ▉▉▉ ¶ 13

9.  Both ▉▉▉▉ and the EFT's intended beneficiary, ▉▉▉▉ submitted timely unblocking applications to OFAC. *See* ▉▉▉▉. ¶16

10. The Court in the Phase Two Order explicitly declined to address whether or not FSIA § 1610(g) could "independently provide a basis for preemption of state law and execution of blocked EFTs." *See* Phase Two Order at 17.

11. ▉▉▉▉ is not an organization listed on the Specially Designated Nationals ("SDN") List. *See* McCulloch Decl. ¶ 2.

12. ▉▉▉▉ is well known to OFAC, through the instant applications and previous applications and reviews related to ▉▉▉▉, including those relating to U.S. citizens who have gone to work or ▉▉▉▉. *See* McCulloch Decl. Exs. 3-5.

13. ▉▉▉▉ has performed extensive review, including on-site observation of the last election of ▉▉▉▉, and confirmed that ▉▉▉▉ is in compliance with ▉▉▉▉ ▉▉▉▉ *See* ▉▉▉▉ ¶ 35.

14. ▉▉▉▉ provide that a ▉▉▉▉ may be suspended if state authorities interfere in its affairs in such a significant way that: ▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
*See* ▉▉▉▉ ¶ 18, Ex. A at. 16.

15. ▓▓▓▓▓ review of the last election for ▓▓▓▓▓ ▓▓▓▓▓ was conducted in close collaboration with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* ▓▓▓▓▓ ¶ 25.

16. Article ▓▓▓▓▓ of the current ▓▓▓▓▓▓▓▓▓▓ requires ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ *See* McCulloch Decl. Ex. E at 13.

17. ▓▓▓▓▓, previously ▓▓▓▓▓▓▓▓ for a period from November 23, 2006 to December 19, 2006, is currently a ▓▓▓▓▓▓▓▓▓▓▓. *See* ▓▓▓▓▓ ▓▓▓ ¶¶ 21-35.

18. ▓▓▓▓▓, previously ▓▓▓▓▓▓▓ for a period from November 23, 2006 to December 19, 2006, is currently a ▓▓▓▓▓▓▓▓▓▓ *See* McCulloch Decl. Ex. D.

19. ▓▓▓▓▓ has confirmed through its reviews that ▓▓▓▓▓ enjoys no exclusive rights in Iran. *See* ▓▓▓▓▓. ¶ 33

20. As part of its review for ▓▓▓▓▓▓▓▓▓▓ has determined that ▓▓▓▓▓ does not issue shares or any other form of ownership interest, and that the Government of Iran does not own any part of ▓▓▓▓ or otherwise hold any form of ownership interest. *See* ▓▓▓▓▓. ¶ 34.

21. As part of its review for ▓▓▓▓▓ compliance, ▓▓▓▓▓ has determined that ▓▓▓▓▓ does not employ members of the government. *See* ▓▓▓▓▓. ¶ 32.

22. There is no evidence, competent or not, submitted in support of Judgment Creditors' Renewed Joint Motion for Partial Summary Judgment on Single Phase Two Asset showing that the government of Iran established ▓▓▓▓▓

Dated: New York, New York
      June 24, 2014

KOBRE & KIM LLP

Eric J. Snyder
eric.snyder@kobrekim.com

1919 M Street, NW
Washington, DC 20036
Tel: (202) 664-1900

Scott K. McCulloch
scott.mcculloch@kobrekim.com

800 Third Avenue
New York, New York 10022
Tel: (212) 488-1200

*Attorneys for* ██████████
██████████████