UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMY LEVIN and DR. LUCILLE LEVIN,<br><br>Plaintiffs,<br><br>-v-<br><br>THE BANK OF NEW YORK MELLON, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., SOCIÉTÉ GÉNÉRALE, and CITIBANK, N.A.<br><br>Defendants.<br><br>THE BANK OF NEW YORK MELLON, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., SOCIÉTÉ GÉNÉRALE, and CITIBANK, N.A.<br><br>Third-Party Plaintiffs,<br><br>-v-<br><br>STEVEN M. GREENBAUM, *et al.*<br><br>Third-Party Defendants. | (FILED PARTIALLY UNDER SEAL DUE TO CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER)<br><br>Civ. No. 09 CV 5900 (RPP) (MHD)<br><br>**AFFIDAVIT OF DR. PATRICK CLAWSON IN SUPPORT OF JUDGMENT CREDITORS' REPLY IN SUPPORT OF RENEWED JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT ON SINGLE PHASE TWO ASSET AND OPPOSITION TO DEFENDANT** ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ **MOTION FOR SUMMARY JUDGMENT** |

## AFFIDAVIT OF DR. PATRICK CLAWSON

I, Dr. Patrick Clawson, being duly sworn, depose and say:

1. I am an adult citizen of the District of Columbia.

2. My qualifications are listed in my Affidavit dated May 30, 2014 in Support of the Judgment Creditors' Renewed Joint Motion for Partial Summary Judgment on Single Phase Two Asset ("May 30 Declaration"), at ¶¶ 2-14.

3. The U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") is responsible for maintaining a list of "Specially Designated Nationals" ("SDN") that identifies some agencies and instrumentalities of sanctioned governments. Note 1 to 31 CFR 560.304 states, "[t]he names of persons that OFAC has determined fall within this definition [as part of the Government of Iran] are published in the Federal Register and incorporated into [OFAC's SDN] List with the identifier [Iran].

4. The SDN List for Iran is available on the OFAC website at www.treasury.gov/ofac/downloads/ctrylist.txt. The SDN List includes only a small portion of the agencies and instrumentalities of the Government of Iran; it does not include all of them. The list is fluid and entities are added to the list over time. The absence of an entity, agency or instrumentality of Iran from the SDN list does not mean that OFAC has determined that any such entity is not an agency or instrumentality of Iran and there is no statement from OFAC published or unpublished that this is true. The SDN List does not include most of the firms which the Iranian government states it owns. For example, the most recent (July 2013) issue of the English-language bulletin, available at http://www.idro.org/enidro/IDRO%20English%20Bulletin/Forms/AllItems.aspx, of the Industrial Development and Renovation Organization ("IDRO"), an SDN List agency of the

1

Iranian government which manages many state-owned firms, highlights two of its subsidiaries, the Hafttappeh Agro-Industry Company and the Yasouj Sugar Company. Despite this readily available information in which an Iranian agency openly acknowledges its subsidiaries, neither of these subsidiaries are on the SDN List. The SDN List most certainly does not include most of the more than two million people who work for the Iranian government; indeed, it does not include most of the ministers of the Iranian government. Such entities meet the definition of "Government of Iran" pursuant to 31 C.F.R. § 560-304, which states that their property and interests in property are blocked "regardless of whether the names of such persons are published in the Federal Register or incorporated into the SDN List."

5. Officials of the U.S. Treasury Department have at various times sought my advice, and the advice of others in my presence, about which agencies and instrumentalities of Iran the Treasury Department should concentrate its scarce resources and efforts to identify them for listing on the SDN List. They have described to me, and to those with whom I work, the lengthy process of assembling sufficient information to make additions to the SDN List. They have expressed frustration that the SDN List does not include most known leaders of most terrorist groups; for instance, it does not include most known leaders of Al Qaeda, Hezbollah, or Hamas.

6. Typically, when additions are made to the SDN List, the Department of Treasury Press Center sends out an announcement describing the reasons for the designation. I subscribe to an electronic service maintained by the Treasury Department for receiving such announcements. The great majority of announcements describe the reason for designation as activities which the listed entity has been doing for years prior to designation. In other words, the entity would have been an appropriate addition to the SDN List years before the name was

actually added. Often, an entity newly listed will have been an agency or instrumentality of Iran and known to be so by the U.S. government long before it is added to the SDN list.

7.  In some cases, the U.S. government simply makes mistakes. I was an expert witness for the U.S. government in its 2013 case against the Alavi Foundation of New York -- *In Re 650 Fifth Ave.*, S.D.N.Y., 08 Civ. 10934 (KBF) -- in the Southern District of New York, which ended with the Honorable Katherine B. Forrest issuing a summary judgment seizing the Foundation's assets including a Manhattan office building with an estimated value in excess of $600 million. I and others had for decades urged the U.S. government to investigate the Alavi Foundation – with some of those others carrying out vigorous publicity campaigns about the matter. I had been an expert witness in an earlier unsuccessful effort by private individuals to seize its assets on the grounds that it was manifestly under the control of the Iranian government. Despite the many years in which the nature of this Foundation was the subject of numerous news stories, the government was very slow to act. When it did act, summary judgment was obtained. And while the assets of the Alavi Foundation of New York have been seized, still to this day the Alavi Foundation of Iran is not on the SDN list, either under its original name nor under the name by which it is now known (the Mostazafan Foundation, or *Bonyad-e Mostazafan*), even though this Court has held that the Alavi Foundation is an agency or instrumentality of Iran. *See In re 650 Fifth Ave.*, 08 Civ. 10934 KBF, 2013 WL 5178677 (S.D.N.Y. Sept. 16, 2013).

8.  I was also an expert for the Judgment Creditors in the *Estate of Heiser v. Islamic Republic of Iran*, 807 F.Supp.2d 9 (S.D.N.Y. 2011) action. There, the Heiser Judgment Creditors sought turnover of a payment due to the Telecommunication Infrastructure Company of Iran ("TIC"). The Court adopted my expert opinion that TIC was an agency or instrumentality of Iran:

3

> To show that TIC is an instrumentality of Iran, plaintiffs submit an affidavit from Dr. Patrick Clawson, who reviewed several documents concerning TIC's status. Affidavit of Patrick L. Clawson, Ex. 1 to Reply in Support of Motion for Judgment, Mar. 28, 2011 [178-1] ("Clawson Aff."). Dr. Clawson reviews TIC's Articles of Association, explaining that its shares are 100% government-owned and that there is "no ambiguity that TIC is under the direct control of the [Iranian] Ministry of Information and Communications Technology." *Id.* at ¶¶ 12–13. He also explains that TIC was created "in accordance with Iran's constitution and with Islamic Law," and that "the decision to create TIC was taken by the government." *Id.* at ¶ 14; *see also id.* at ¶ 15 (quoting Articles of Association explaining that Iranian Cabinet approved creation of TIC). Finally, Dr. Clawson states that "Mohammad Ali Forghani, the Deputy Minister of Information and Communications Technology, was appointed the chairman of the TIC Board of Directors, which under the Articles of Association is responsible for controlling TIC." *Id.* at ¶ 17.
>
> Based on this evidence, the Court has no trouble finding that TIC is an instrumentality of Iran. First, the evidence shows that TIC is distinct from, though wholly owned by, Iran. Second, Dr. Clawson's review of TIC's Articles of Association establishes that it is an "organ" of an Iranian cabinet-level Ministry, and that Iran possesses an "ownership interest" in TIC. Finally, the testimony demonstrates that TIC is established under the laws of Iran, and not those of the United States or a third country. This is sufficient to establish that TIC is an instrumentality of Iran. *See Auster v. Ghana Airways, Ltd.,* 514 F.3d 44, 46 (D.C.Cir.2008) (finding that Ghana Airways is instrumentality of Ghana based on evidence that it "was incorporated under the laws of Ghana and wholly owned by Ghana"); *Peterson v. Islamic Republic of Iran,* 563 F.Supp.2d 268, 273 (D.D.C.2008) (observing "no doubt" that Japan Bank for International Cooperation is instrumentality of Japan because it "was established by Japanese statute," its capital "is wholly owned by the Japanese government" and it "is under the direct control of the Japanese Minister of Finance and the Japanese Minister of Foreign Affairs").

*Estate of Heiser*, 807 F. Supp. 2d at 19-20.

Yet despite the court's holding in 2011, TIC is still not listed on the SDN List today.

9. And in some cases, the U.S. government makes exceptions for a particular transaction among commercial parties. OFAC may issue a license for one particular transaction even though OFAC is well aware that ample evidence exists to add the licensee to the SDN List. The position of the Treasury Department is that a license for a transaction is exactly that, namely,

4

only a license for that one transaction among those parties, rather than any judgment about the organization getting the license or the Iranians with whom that organization is dealing. Nor is OFAC making any determination about the rights of any judgment creditors with judgments against Iran when licensing a transaction; OFAC makes no claim to doing so.

10. I have reviewed the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ Decl.").

11. ▮▮▮▮ makes no claim to be an expert on the ▮▮▮▮ and does not claim to be an expert in the functioning of the Iranian government's structure or the mechanisms by which it exercises de facto ownership and control over much of the Iranian economy. Indeed, his statement presents no evidence he is aware of how the Iranian government functions.

12. Under the Iranian constitution, ultimate authority rests in the hand of the Supreme Leader, the religious guide authorized to overturn all laws and court judgments as well as to dismiss any official including the President. Many of the most important economic institutions in Iran report directly to the Supreme Leader without any control by others. The Foundation for the Oppressed (*Bonyad-e Mostazafan*) and the Imam Reza Shrine (*Astan Quds Razavi*) are widely considered to be the two largest economic institutions, each worth many billions of dollars, though some would add to that list the Supreme Leader's investment arm, the Headquarters for Executing the Order of the Imam (*Setad Ejraiy-e Farman-e Hazrat-e Imam*) which Reuters recently estimated is worth more than $95 billion (http://www.reuters.com/investigates/iran/#article/part1). The management of these institutions

5

is appointed by the Supreme Leader and reports only to him, with no other control whatsoever by other government agencies and with little transparency about their operations.

13. The Supreme Leader also directly controls the Iranian Revolutionary Guards Corps ("IRGC"), which do not report to the President or Parliament. The IRGC openly acknowledges that it owns the largest construction company in Iran *(Khatam Al-Anbia)*, and it controls many other large firms, such as the Telecommunications Company of Iran. In a February 2010 statement about the addition of Khatam al-Anbia to the SDN List, Under Secretary for Terrorism and Financial Intelligence Stuart Levey said, "As the IRGC consolidates control over broad swaths of the Iranian economy, displacing ordinary Iranian businessmen in favor of a select group of insiders, it is hiding behind companies like Khatam al-Anbiya and its affiliates to maintain vital ties to the outside world" (http://www.state.gov/r/pa/prs/ps/2010/02/136595.htm). The Treasury Department lacks the resources to uncover all these hidden connections, and so it concentrates on exposing the largest and easiest to document. Khatam Al-Anbia had been operating for more than twenty years before it was added to the SDN List.

14. ███████████████████████████████████████████
███████████████████████████████████████████

███ does not say this is his experience or explain what his basis for such a statement is. His conclusion is not supported by facts, is unreliable, and is wrong. In fact, the mechanisms by which the IRGC and the Supreme Leader exercise control over many institutions in Iran are through those who previously openly served in the military. The hidden role of the IRGC to which Undersecretary Levey referred is often exercised through such individuals. Connections forged during service together during the Iran-Iraq war have been central to the political

networks of many leading Iranian figures. Furthermore, personal connections rather than formal titles are more important in the Iranian government system. Numerous cases have emerged, often in conjunction with scandals, in which an individual who had no formal tie to the government was able through his personal connections to gain privileged access to valuable resources, such as low-cost bank loans or foreign exchange at a favorable rate or easy access to government permits. Disentangling such complicated personal relationships is central to understanding who controls which institution in Iran.

15. ▮▮▮▮ displays no knowledge of this pattern of hidden or indirect government control of many institutions in Iran. He does not claim to have investigated how the IRGC and the Supreme Leader own and exercise control over institutions. Any claim that ▮▮▮▮ are controlled by the IRGC should be evaluated by those well-versed in how the IRGC and the Supreme Leader exercise control over much of the Iranian economy.

16. In the absence of understanding these basic features of how the Iranian government works, his statement does not form a proper basis for the opinions (which do not claim to be expert opinions) of an expert in the area of Iranian government control and would not be relied upon by experts in this field because of its inconsistencies.

_____
Dr. Patrick Clawson

Sworn and subscribed to before me
this 18 day of July 2014.

_____
Notary Public

REBECCA ERDMAN
NOTARY PUBLIC
District of Columbia
My Commission Expires June 30, 2018

7