UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JEREMY LEVIN, *et al.*,                           :
                                                  :     09 Civ. 5900 (RPP)
        Plaintiffs,                     :
                                                  :
  v.                                              :
                                                  :
BANK OF NEW YORK, *et al.*,                       :
                                                  :
        Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## STATEMENT OF INTEREST OF UNITED STATES OF AMERICA

                                              PREET BHARARA
                                              United States Attorney for the
                                              Southern District of New York
                                              Attorney for United States of America
                                              86 Chambers Street, 3rd Floor
                                              New York, New York 10007
                                              Tel.: (212) 637-2739

DAVID S. JONES
Assistant United States Attorney
—Of Counsel—

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................2

      A.   Statutory and Regulatory Background..............................................................................2

           1.      Statutes Authorizing Imposition of Economic Sanctions ................................2

           2.      Foreign Sovereign Immunities Act ...................................................................3

      B.   Factual and Procedural Background .............................................................................5

ARGUMENT....................................................................................................................................7

FSIA SECTION 1610(g) PERMITS ATTACHMENT ONLY OF ASSETS IN
WHICH THE JUDGMENT DEBTOR HAS AN OWNERSHIP INTEREST................................7

      A.   Scope of Attachment Authorized by the FSIA ................................................................7

      B.   The Applicability of OFAC Sanctions Regulations Is Not Dispositive
          of Whether the Required Ownership Interest Exists......................................................10

CONCLUSION...............................................................................................................................12

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Auer v. Robbins*,
    519 U.S. 452 (1997) ..................................................................................................11

*Bank of New York v. Rubin*,
    484 F.3d 149 (2d Cir. 2007)......................................................................................10

*Board of Trustees of the Leland Stanford Jr. University v.*
*Roche Molecular System, Inc.*,
    131 S. Ct. 2188 (2011)................................................................................................7

*Bennett v. Islamic Republic of Iran*,
    618 F.3d 19 (D.C. Cir. 2010).......................................................................................4

*De Cuellar v. Brady*,
    881 F.2d 1561 (11th Cir. 1989) ..................................................................................3

*Empresa Cubana Exportadora de Alimentos y Productos Varios v.*
*U.S. Department of the Treasury*,
    638 F.3d 794 (D.C. Cir. 2011) ....................................................................................3

*Estate of Heiser v. Islamic Republic of Iran*,
    885 F. Supp. 2d 429 (D.D.C. 2012), *aff'd*, 735 F.3d 934 (D.C. Cir. 2013) ...............9

*Heiser v. Islamic Republic of Iran*,
    735 F.3d 934 (D.C. Cir. 2013) ................................................................................8, 9

*Levin v. Bank of New York*,
    2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) ................................................................5

*Levin v. Bank of New York,*
    2013 WL 5312502 (S.D.N.Y. Sept. 23, 2013)........................................................6, 11

*Rubin v. Islamic Republic of Iran*,
    709 F.3d 49 (1st Cir. 2013).........................................................................................9

*United States v. Holy Land Foundation for Relief & Development*,
    722 F.3d 677 (5th Cir. 2013) ......................................................................................9

*Weinstein v. Islamic Republic of Iran*,
    299 F. Supp. 2d 63 (E.D.N.Y. 2004) ..........................................................................9

**PENDING CASES**

*Calderon-Cardona v. J.P. Morgan Chase, N.A.*,
   No. 12-75 ..................................................................................................................2

*Hausler v. Republic of Cuba*,
   Nos. 12-1264..............................................................................................................2

**STATUTES AND REGULATIONS**

28 U.S.C. § 517......................................................................................................................1

28 U.S.C. § 1604....................................................................................................................3

28 U.S.C. § 1605A.........................................................................................................3, 5, 7

28 U.S.C. § 1609....................................................................................................................3

28 U.S.C. § 1610(g) ....................................................................................................... passim

28 U.S.C. § 1610(g)(1) ..................................................................................................4, 7, 8

28 U.S.C. § 1610(g)(3) ..........................................................................................................4

31 C.F.R. § 515.201(a)..........................................................................................................8

31 C.F.R. § 515.512 (c).....................................................................................................5, 10

31 C.F.R. § 535.201 ..............................................................................................................8

31 C.F.R. § 544.201 ........................................................................................................4, 10

31 C.F.R. § 544.202 (e).........................................................................................................4

31 C.F.R. § 544.305 ............................................................................................................10

31 C.F.R. § 544.308 ............................................................................................................10

31 C.F.R. § 544.507(c).........................................................................................................5

31 C.F.R. § 560.211 .............................................................................................................5

31 C.F.R. § 560.212(e).........................................................................................................5

31 C.F.R. § 560.525(c)..................................................................................................................5

31 C.F.R. § 560.323 ...................................................................................................................10

31 C.F.R. § 560.325 ...................................................................................................................10

50 U.S.C. App. § 1.......................................................................................................................2

50 U.S.C. §§ 1701-1706 ..............................................................................................................3

Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, § 201, 116 Stat. 2322 (2002)................................................................................................................................ *passim*

Trading With the Enemy Act ("TWEA"), 50 U.S.C. App. § 1, et seq.  ..........................................2

**MISCELLANEOUS**

H.R. Rep. No. 110-477, at 1001 (2007).......................................................................................8

**PRELIMINARY STATEMENT**

The United States of America, by and through its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, to address issues raised in the pending "Judgment Creditors' Renewed Joint Motion for Partial Summary Judgment on Single Phase Two Asset" (Dkt. No. 969) (the "Motion"), which is scheduled to be heard on August 21, 2014.  The Court recently endorsed the request by the United States to have until August 18, 2014, to decide whether to file a Statement of Interest in the case.  *See* Dkt. No. 1008.  Issues discussed in the Statement of Interest may also pertain to other aspects of this action.

The United States is not a party in this action, and recognizes the severe terrorism-caused hardships for which the judgment creditors seek compensation here.  Further, the United States is fully supportive of the right of judgment creditors such as those here to secure relief under the statutory measures that have been enacted to facilitate redress for victims of terrorism.  Such applications, however, can have a significant effect on the functioning of economic sanctions regimes that serve vital national security and foreign relations purposes, and the United States has an interest in ensuring that courts apply these statutory schemes in a way that is consistent with their terms, and that is informed by an accurate understanding of the regulatory backdrop against which applications like those at issue here operate.

The United States therefore submits this Statement of Interest to address two issues relevant to resolution of the Motion.  First, for assets to be attachable under 28 U.S.C. § 1610(g), plaintiffs must demonstrate that the terrorist party against whom they hold a judgment has an ownership interest in the assets they seek to attach.  Second, because economic sanctions

1

regulations by design apply extraordinarily broadly, often applying to assets in which a covered party has or had any interest – even partial or contingent – of any kind, the fact that an asset is (or was) blocked pursuant to Office of Foreign Assets Control ("OFAC") sanctions regulations does not establish that a terrorist party or other sanctioned person has, or had, an actual ownership in the asset.

The United States filed *amicus curiae* briefs and presented oral argument in February 2013 on similar issues in two cases that are *sub judice* before the Second Circuit, *Calderon-Cardona v. J.P. Morgan Chase, N.A.*, No. 12-75, and *Hausler v. Republic of Cuba*, Nos. 12-1264, 1272. The Second Circuit's decisions in those appeals will likely be pertinent to some or all of the matters discussed in this Statement of Interest.

## BACKGROUND

### A. Statutory and Regulatory Background

#### 1. Statutes Authorizing Imposition of Economic Sanctions

The United States has implemented a number of economic sanctions programs in furtherance of national security and foreign policy interests. The primary statutory authority for most of these programs, including those implicated by the present case, is the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, which grants the President broad authority to issue regulations that restrict or prohibit international trade where he declares a "national emergency" with respect to an "unusual and extraordinary" foreign policy, national security or economic threat to the United States. *See generally* 50 U.S.C. § 1701. 50 U.S.C. § 1702 grants the President broad sanctions powers, and section 1704 authorizes the promulgation of regulations to implement the statute.[1]

---

[1] The Trading with the Enemy Act ("TWEA"), 50 U.S.C. App. § 1, et seq., first enacted in 1917,

### 2. Foreign Sovereign Immunities Act

Under the Foreign Sovereign Immunities Act ("FSIA"), a foreign state is immune from the jurisdiction of federal and state courts except as provided by certain international agreements and statutory exceptions. *See* 28 U.S.C. § 1604. These include the so-called "terrorism exception," which abrogates a foreign state's sovereign immunity in cases involving terrorist acts. *See* 28 U.S.C. § 1605A.

A foreign state's assets are likewise generally immune from attachment under the FSIA, subject to certain exceptions. *See* 28 U.S.C. § 1609. FSIA's Section 1610(g) allows the "property of" a foreign state to be attached in certain terrorism cases, regardless of whether the property is blocked or not:

> [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—
>
> (A)  the level of economic control over the property by the government of the foreign state;
> (B)  whether the profits of the property go to that government;
> (C)  the degree to which officials of that government manage that property or otherwise control its daily affairs;
> (D)  whether that government is the sole beneficiary in interest of the property; or
> (E)  whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g)(1). This provision, however, is subject to the following caveat:

> Nothing in this subsection shall be construed to supersede the authority of a court to

---

also authorized the President in certain conditions to impose embargoes on foreign nations. *See generally Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of the Treasury*, 638 F.3d 794, 795-96 (D.C. Cir. 2011). In 1963, for example, President Kennedy issued a proclamation imposing an embargo on all trade with Cuba pursuant to TWEA, and, pursuant to the President's direction, the Secretary of the Treasury promulgated the Cuban Assets Control Regulations ("CACR") on July 8, 1963, codified at 31 C.F.R. Part 515. *See id.*; *see also De Cuellar v. Brady*, 881 F.2d 1561, 1563 (11th Cir. 1989).

>prevent appropriately the impairment of an interest held by a person who is not liable in the action giving rise to a judgment in property subject to attachment in aid or execution, or execution, upon such judgment.

28 U.S.C. § 1610(g)(3).

Although plaintiffs appear not to rely on it, one other statute that in some circumstances creates an exception to the FSIA's restrictions on execution against foreign sovereign property is the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, § 201, 116 Stat. 2322 (2002) (reprinted in relevant part at 28 U.S.C. § 1610 note).  TRIA was enacted in 2002, and permits attachment of the "blocked assets of [a] terrorist party" (*i.e.*, assets blocked under IEEPA and TWEA, at least generally pursuant to OFAC regulations) to satisfy compensatory damages awards obtained by victims of terrorism.  *Id.*  As originally enacted, TRIA states:

>Notwithstanding any other provision of law . . . , in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under [28 U.S.C. § 1605(a)(7) (2000)], the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a). TRIA defines "blocked asset" as "any asset seized or frozen by the United States" under specified provisions of IEEPA or section 5(b) of TWEA. TRIA § 201(d)(2)(A).[2] Through section 201(a), TRIA permits certain attachments of property that might otherwise have been precluded by the sovereign immunity provisions of the FSIA.  *See Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 21 (D.C. Cir. 2010).  When applicable, TRIA also allows terrorism victims attaching assets to bypass otherwise-applicable prohibitions on transactions involving blocked assets absent an OFAC license.  *See, e.g.*, 31 C.F.R. §§ 544.201, 544.202(e),

---

[2] TRIA also excludes from the definition of "blocked asset" certain property "subject to a license" issued by the United States for specified purposes. *See* TRIA § 201(d)(2)(B)(i). Certain categories of diplomatic or consular property are also excluded. *See id.* § 201(d)(2)(B)(ii).

4

544.507(c) (Weapons of Mass Destruction Proliferators Sanctions Regulations ("WMDPSR") (generally prohibiting attachment of blocked property without a license); *id.* at §§ 560.211; 560.212(e); 560.525(c) (Iranian Transactions and Sanctions Regulations) (same).  As noted, however, plaintiffs appear not to rely on TRIA here.

B.      **Factual and Procedural Background**

Unless otherwise noted, the factual and procedural background described herein derives from the docketed record of this action.

The movant judgment creditors are individuals with terrorism-related judgments against Iran, secured pursuant to 28 U.S.C. § 1605(a)(7) and/or § 1605A.  Specifically, plaintiffs Jeremy and Lucille Levin (the "Levins") filed this action in 2009 seeking the turnover of certain blocked assets in satisfaction of a terrorism-related judgment against Iran.  The Levins entered into an agreement to share assets with several other groups of judgment creditors (collectively, "Judgment Creditors").

This action was filed against four New York banks seeking the turnover of certain blocked assets to satisfy terrorism-related judgments held by the Judgment Creditors.  The Court reached a partial disposition of the Judgment Creditors' claims in 2011.  *Levin v. Bank of New York*, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011).  In that opinion, the Court held that TRIA "subject[s] *any* asset to execution that is seized or frozen pursuant to the applicable sanctions schemes."  *Id.* at * 16.  The United States did not file a Statement of Interest in connection with the litigation that led to that decision.

On September 19, 2013, the Court entered an order directing turnover of all but two assets subject to the Judgment Creditors' motion for summary judgment.  In doing so, the Court stated its view that, although attachment under TRIA and § 1610(g) is available only as to assets

5

in which the terrorist party (or its agents or instrumentalities) has an ownership interest, "the nature of that ownership interest is defined by the OFAC regulations rather than by reference to state law." *Levin v. Bank of New York*, Sept. 19, 2013 Slip Op. at 13 n.9, 2013 WL 5312502, *6 n.9 (Sept. 23, 2013). The Court noted that the Government had filed statements of interest in other cases, but not in this one, expressing the view that TRIA and the FSIA required an ownership interest by the terrorist party and that such an interest could not be defined by reference to OFAC sanctions regulations. *See id.* at 11, 13 n.9, 2013 WL 5312502 at *5, *6 n.9. The Court accorded those statements of interest no weight, noting that "[t]his Court has no statement of government interest before it, although the Executive Branch was invited to participate in this action." *Id.* at 13 n.9, 2013 WL 5312502 at *6 n.9.

The Court's September 2013 decision, however, did not reach a final determination as to turnover of the proceeds of an electronic funds transfer ("EFT") originating from the Asian Football Confederation ("AFC") and intended, according to the AFC, for the Islamic Republic of Iran Football Federation ("IRIFF"). The EFT was blocked pursuant to OFAC's WMDPSR, 31 C.F.R. Part 544, after Citibank identified the intended beneficiary of the transfer as First East Export Bank Labuan ("First East"), a bank with ties to the Iranian government that has been designated by OFAC pursuant to the WMDPSR.[3] The Court withheld judgment as to this asset on the ground that the AFC and the IRIFF had applications pending before OFAC for a license authorizing the return of the funds to the AFC. *Id.* at 29. 2013 WL 5312502 at *14.

On March 13, 2014, OFAC licensed Citibank to return the funds to the AFC. The

---

[3] For purposes of the renewed motion for summary judgment, the Judgment Creditors and the AFC disagree about the intended beneficiary of the EFT. It is not clear what effect, if any, this factual dispute may have on the ability of the Court to dispose of the matter on summary judgment, and the Government expresses no view on that question, nor on the factual details of the transaction.

6

Judgment Creditors have nevertheless renewed their motion for summary judgment as to the turnover of the EFT pursuant to section 1610(g) of the FSIA, which is not limited to blocked assets.[4]  They contend that the EFT is attachable because First East and the IRIFF are agencies or instrumentalities of Iran, and that Iran therefore has a "beneficial interest" in the asset.  *See* Supp. Mem. in Support of Judgment Creditors' Jt. Mot. for Partial Summ. Judg. (Dkt. No. 970) at 3.

## ARGUMENT

### FSIA SECTION 1610(g) PERMITS ATTACHMENT ONLY OF ASSETS IN WHICH THE JUDGMENT DEBTOR HAS AN OWNERSHIP INTEREST

A. **Scope of Attachment Authorized by the FSIA**

The FSIA authorizes in appropriate circumstances the attachment of "the property *of* a foreign state . . . and the property *of* an agency or instrumentality of such a state."  28 U.S.C. § 1610(g)(1) (emphases added).  As this Court's prior decisions in this case appear to recognize, the statute's textual requirement that the property to be attached must be "of" the foreign state in question unmistakably requires proof of ownership.

There is little room for doubt on this question.  Supreme Court decisions indicate that, in this context, "the use of the word 'of' denotes ownership."  *Bd. of Trs. of the Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 131 S. Ct. 2188, 2196 (2011) (internal quotation marks omitted).  This statutory language is also notably narrower than the language used in OFAC's

---

[4] Section 1610(g) is available only for parties with judgments under § 1605A; it is not available for those with judgments obtained solely pursuant to the now-repealed § 1607(a)(7).  To the Government's knowledge, only the Accostas and Heisers have obtained judgments pursuant to § 1605A.  It appears that the Judgment Creditors no longer seek to attach the now-unblocked asset under TRIA, but their papers are somewhat ambiguous on this point.  For reasons explained below, the unblocking of the EFT in question renders it no longer subject to possible attachment under TRIA.  *See infra* at 9-10.

blocking regulations themselves, which, though codified separately as to separate nations or other subjects of sanctions, generally apply sweepingly to property in which the foreign state at issue has an "interest of any nature whatsoever." *See, e.g.*, 31 C.F.R. §§ 515.201(a), 535.201. If Congress had intended for TRIA and the FSIA to extend to all blocked assets, it would most likely have adopted this broader language from the blocking regulations. Congress instead chose narrower language requiring an ownership interest. This reading is also consistent with FSIA's legislative history—the Conference Committee Report explained that Section 1610(g)(1) authorizes the attachment of "any property in which the foreign state has a beneficial *ownership*." H.R. Rep. No. 110-477, at 1001 (2007) (Conf. Report) (emphasis added); *see also id.* (explaining that the provision "is written to subject any property interest in which the foreign state enjoys a beneficial *ownership* to attachment and execution" (emphasis added)). Thus, FSIA's (and TRIA's) attachment provisions are best understood as applying only to those blocked assets actually owned by the terrorist party.[5]

      A number of policy reasons support this conclusion. First, an interpretation of those statutes that permits attachment of blocked assets that the terrorist party does not own would have the perverse, presumably unintended result of effectively subsidizing terrorist states by permitting judgments against them to be satisfied by collections of assets that the terrorist party does not own, and that instead are owned by innocent third parties. *See Heiser*, 735 F.3d at 939-40 (concluding that Congress could not have intended that potentially innocent parties pay some part of a terrorist state's judgment debt). This reading would not further the aim of punishing terrorist entities or deterring future terrorism.

---

[5] As further explained below, the mere fact that an asset is blocked does not establish that the FSIA's ownership requirement is met, because OFAC's blocking regulations apply to all blocked assets in which the terrorist party has an interest of any nature. *See infra* Point B; *see also, e.g.*,

8

Second, there is a strong public interest in preserving the President's ability to use blocked assets as a tool of foreign policy. A rule that allowed plaintiffs to attach blocked assets that are not owned by the sanctions target would selectively drain the pool of blocked assets, thereby reducing the leverage that these assets provide in the President's conduct of foreign policy. *See Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 441 (D.D.C. 2012) ("Plaintiffs' sweeping interpretation would effectively—through future attachments and executions—eliminate the President's ability to use blocked assets as bargaining chips in solving foreign policy disputes."), *aff'd*, 735 F.3d 934 (D.C. Cir. 2013); id. at 435; *Rubin v. Islamic Republic of Iran*, 709 F.3d 49, 57 (1st Cir. 2013) ("The fact that blocked assets play an important role in the conduct of United States foreign policy may provide a further reason for deference to the views of the executive branch in this case.").

All of these considerations reinforce the conclusion that a straightforward and literal reading of the statutory text alone compels: the FSIA authorizes attachment only of property in which the judgment debtor state has an ownership interest.

Finally, although the Government understands the Judgment Creditors to be seeking relief solely under the FSIA, their papers also contain some reference to TRIA. TRIA, however, cannot apply here for the simple reason that the asset in question is not "blocked," because OFAC has licensed its return to the AFC. Attachment is available under TRIA only of the "blocked assets" of the terrorist party against whom the judgment creditor is seeking redress. *See* TRIA section 201(a); *see also, e.g., United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 685 (5th Cir. 2013) ("By its terms, [TRIA] does not provide for execution against assets that are not blocked."); *Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63

---

*Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 938-40 (D.C. Cir. 2013).

(E.D.N.Y. 2004); *Bank of New York v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007) (Second Circuit adopts the "persuasive analysis" in *Weinstein* as to definition of "blocked assets" under TRIA). Moreover, even if this dispositive fact were not the case, TRIA also applies only to assets "of" the terrorist party in question, a limitation that, like the FSIA and for the reasons described above, requires that the judgment debtor have an ownership interest in the asset to be attached. In addition, as explained below, the mere applicability of OFAC sanctions regulations is insufficient to establish such an ownership interest.

### B. The Applicability of OFAC Sanctions Regulations Is Not Dispositive of Whether the Required Ownership Interest Exists

While the United States takes no position as to the factual question of who owns the asset that the Judgment Creditors seek to attach, the Court should not base any determination regarding ownership on whether an asset in question is or was ever blocked pursuant to OFAC's regulations, because those regulations do not purport to define whether particular assets are "of" or "owned by" a terrorist party for purposes of TRIA or the FSIA. While OFAC's regulations contain definitions for terms like "property" and "interest," *see, e.g.*, 31 C.F.R. §§ 544.305, 544.308; *id.* §§ 560.323, 560.325, the purpose of those definitions is to explain the kinds of assets that come within OFAC's various blocking orders. And OFAC's blocking orders use much more sweeping language than do TRIA or the FSIA, because they are intended to extend well beyond assets owned by the relevant sanctions target. *See, e.g.*, 31 C.F.R. § 544.201(a) (blocking all property and interests in property of persons sanctioned pursuant to the WMDPSR), 544.305 (explaining that an "interest of any nature whatsoever, direct or indirect" of a sanctioned person subjects property to blocking pursuant to § 544.201). Because these regulatory provisions serve purposes unrelated to the FSIA's attachment authorization and encompass a

broader category of assets, they are not a logical source to draw upon in determining how § 1610(g) is to operate.[6]

We acknowledge that the Court previously held, incorrectly in the Government's view, that because certain assets were blocked under OFAC regulations, they necessarily were owned by the terrorist party and thus subject to attachment. *See* Sept. 19, 2013 slip op. at 13 n.9, 2013 WL 5312502 at *6 n.9. But for the reasons set forth above the United States believes this analysis is incorrect. Moreover, because the asset at issue in the Motion is not presently blocked, the Court's prior analysis could lead it to the converse conclusion, that the nonexistence of a block under OFAC's regulations means that an asset here is *not* owned by a terrorist party. In the Government's view, any such analytical approach would likewise rest on a misunderstanding of how, or whether, OFAC's regulations inform the proper application of FSIA § 1610(g) and TRIA.

The United States expressly notes the limited nature of the position set forth on this issue. We express no view on whether Iran or any of its agencies or instrumentalities maintain an ownership interest in the EFT at issue (and thus on whether the asset is, in fact, subject to attachment). We simply urge that the Court not mistakenly deem OFAC's blocking regulations

---

[6] The Court, in an earlier opinion, discounted the significance of the views of the Executive Branch on this issue as expressed in other cases – at least with respect to TRIA – on the ground that "Congress' passage of TRIA was over the objection of the Executive Branch and for the purpose of rendering blocked assets attachable." Sept. 19, 2013, Slip Op. at 13 n.9, 2013 WL 5312502 at *6 n.9. We do not believe this is an appropriate basis on which to discount deference that may be due to the Executive Branch's expressed views in particular cases regarding whether any proposed statutory interpretation would negatively impact foreign policy or the implementation of sanctions regimes in the national interest. In any event, the application here is made under the FSIA, not TRIA, and the Court's observation should have no bearing on the deference due to OFAC's views on the scope of, and purpose for, its sanctions regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (where agency's regulations create a governing test, agency's "interpretation of it is . . . controlling unless plainly erroneous or inconsistent with the regulation") (internal quotations and citations omitted).

11

to be a dispositive indicator of whether the terrorist judgment debtor has a sufficient ownership interest in the asset in question to render that asset properly subject to attachment, whether under the FSIA as here, or under TRIA.

## CONCLUSION

For the reasons stated above, the Court should recognize that FSIA § 1610(g) requires judgment debtors to have an ownership interest in property targeted for attachment or execution, and that the existence of such an ownership interest cannot be inferred or properly found to exist based on the mere fact of an asset's being or having been blocked pursuant to OFAC sanctions regulations.

Dated: New York, New York
       August 18, 2014

        Respectfully submitted,

        PREET BHARARA
        United States Attorney for the
        Southern District of New York
        Attorney for the United States of America

By:   /s/ David S. Jones
        DAVID S. JONES
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Telephone: (212) 637-2739