UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MR. JEREMY LEVIN and DR. LUCILLE LEVIN,<br><br>    Plaintiffs,<br><br>-v-<br><br>BANK OF NEW YORK, JP MORGAN CHASE, SOCIETE GENERALE and CITIBANK,<br><br>    Defendants. | (FILED PARTIALLY UNDER SEAL DUE TO CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER)<br><br>Civ. No. 09 CV 5900 (RPP) (MHD)<br><br>**SUPPLEMENTAL COMPLAINT PURSUANT TO N.Y. C.P.L.R. § 5225** |

Plaintiffs/Judgment Creditors, by their attorneys, complaining of the Defendants/Garnishees, allege for their Complaint as follows:

## NATURE OF PROCEEDING AND RELIEF REQUESTED

1.  Plaintiffs / Judgment Creditors, Dr. Lucille Levin and Mr. Jeremy Levin, ("Plaintiffs") hold an unsatisfied final judgment in the total amount of $28,807,719 against Judgment Debtor Islamic Republic of Iran ("Iran") that was entered by the U. S. District Court for the District of Columbia on February 6, 2008, and thereafter registered in this Court pursuant to 28 U.S.C. § 1963 (2009) as Docket Number M18-302. See Ex. A (Judgment dated February 6, 2008). The judgment arose from the 1984 kidnapping of Jeremy Levin in Beirut, Lebanon, by Hizbollah terrorists who received training, support, aid, funding, and direction from the Republic of Iran.

2.   Plaintiffs filed their complaint on December 30, 2005 under 28 U.S.C. § 1605(a)(7)(2007), the Foreign Sovereign Immunities Act ("FSIA"), which was repealed and replaced by 28 USC § 1605A (2009) in 2008. In 2008, Congress enacted amendments to FSIA in §1083 of the National Defense Authorization Act for Fiscal Year 2008, P.L. 110-181, 122 Stat. 3 (2008), ("NDAA"), to make enforcement of judgment easier for plaintiffs by "expand[ing] the ability of claimants to seek recourse against the property of that foreign state, … by permitting any property in which the foreign state has a beneficial ownership to be subject to execution of that judgment." National Defense Authorization Act for Fiscal Year 2008, H.R. Rep. No. 110-477, at 1001 (2008)(Conference Report to Accompany H.R. 1585).

3.   Defendants/Garnishees Bank of New York, JPMorgan Chase Bank, N.A., Societe Generale, and Citibank, N.A. ("Defendant Banks") have reported to the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department, pursuant to their obligations under various Executive Orders issued to carry out economic sanctions against terrorists, terrorists groups, or state sponsors of terrorism, including Judgment debtor Iran, that they are in possession of assets blocked by the U.S. government due to the fact that Iran has an interest in them either directly or indirectly ("Iranian Blocked Assets"). See Ex. B at p. 2 (Letter from Sean Thornton, General Counsel, U.S. Department of Treasury dated October 6, 2008).

4.   On December 16, 2013, Plaintiffs served Interrogatories on Defendant Banks. Defendant Banks served Responses to Plaintiff's Interrogatories on February 3,

2014 and April 17, 2014, which disclosed the existence of additional Iranian Blocked Assets which had not previously been disclosed to Plaintiffs.

5. Information regarding Iranian Blocked Assets held by Defendant Banks and incorporated herein was obtained by Plaintiffs from OFAC and through discovery on the Defendant Banks is subject to a protective order entered on September 30, 2008, by the District Court of the District of Columbia, in *Levin v. Islamic Republic of Iran*, No. 05-CV-02494 (GK)(D.D.C) (the "Levin Litigation"). See Ex. C. ("Protective Order"). Under Paragraph 9 of the Protective Order, all "Confidential Information that is filed with any court, and any pleadings, motions, exhibits, or other papers filed with the court, referencing or containing Confidential Information, shall be filed under seal and kept under seal until further order of the Court." Ex. C ¶ 9. However, the Confidential Information may be used for the purpose of attempting to collect upon the judgment entered in the Levin Litigation". Ex. C ¶ 3. Exempt from the Protective Order are the "courts and their support personnel … in any proceedings incident to efforts to collect on the judgment" and "persons and entities and their counsel served with writs of attachment or other legal process incident to efforts to collect on the judgment entered in the Levin Litigation or those holding assets identified in the Confidential Information." See Ex. C ¶¶ 5.b., 5.c. Further, Defendant Banks are "restricted to using Confidential Information only for purposes related to the satisfaction of judgment issued in the Levin Litigation and not for any other litigation or proceeding or for any business, commercial, competitive, personal or other purpose." Ex. C ¶ 6.

6. Pursuant to Fed. R. Civ. P. 69(a), Plaintiffs hereby request that this Court enforce Plaintiffs' February 6, 2008, judgment against the Judgment debtor Iran by ordering Defendants/Garnishees Bank of New York, JP Morgan Chase, Societe Generale, and Citibank to pay to Plaintiffs the monies which have been identified by OFAC or through discovery as assets in which the Islamic Republic of Iran has an interest in possession of Defendant Banks. See Ex. D (List of Iranian Blocked Assets identified by the Defendant Banks as blocked by OFAC due to a nexus with a designated entity of Iran, on service copies to defendants, only the information relating to their institutions is provided).

7. Section 5225 (b) of New York Civil Practice Law and Rules ("C.P.L.R.") states:

> Property not in the possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property *in which the judgment debtor has an interest*, ... where it is shown that the judgment debtor is entitled to the possession of such property or that *the judgment creditor's rights to the property are superior to those of the transferee*, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor... N.Y. C.P.L.R. § 5225(b)(1997)(emphasis added).

8. Plaintiffs are entitled to the Iranian Blocked Assets held by Defendant Banks and have superior rights to the Defendant Banks to the assets under § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), which provides in pertinent part:

> ... in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, ... the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution ... in order to satisfy such judgment ....

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (2002).

9. Further, section 1610 of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1610 (2009) defines the types of property "subject to execution or attachment in aid of execution..." of judgments by United States citizens who are victims of state sponsors of terrorism, such as Judgment debtor Iran. Section 1610 provides in pertinent part:

> (f)(1)(A) Notwithstanding any other provision of law, ... *any property with respect to which financial transactions are prohibited or regulated* pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A.
> And,
> (g)(1) ... [T]he property of a foreign state against which a judgment is entered under section 1605A [and its predecessor 1605 (a)(7)], and the property of an agency or instrumentality of such a state, *including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity*, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, *regardless of--*
>   (A) the level of economic control over the property by the government of the foreign state;
>   (B) whether the profits of the property go to that government;
>   (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
>   (D) whether that government is the sole beneficiary in interest of the property; or

5

      (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.
(emphasis added) 28 U.S.C. §1610 (2009).

10. Judgment Debtor Iran has an interest in the Iranian Blocked Assets held by Defendant Banks, which is subject to execution of judgment by Judgment Creditor/Plaintiffs pursuant to 28 U.S.C. §1610 (2009). See Exhibit B at p. 2 (Letter from Sean Thornton, General Counsel, U.S. Department of Treasury dated October 6, 2008.)

11. C.P.L.R. § 5225(b) "provides for a two-step analysis in *determining whether property belonging* to a judgment debtor—but in the possession of a third party—should be *turned over to a judgment creditor.*" *Velocity Inv., LLC v. Kawski,* 864 N.Y.S.2d 734, 740 (N.Y. City Ct. 2008)( quoting *Beauvais v. Allegiance Sec., Inc.,* 942 F.2d 838, 840 (2nd Cir. 1991)). "First, it must be shown that the judgment debtor has an interest in the property the creditor seeks to reach." *Id. (*quoting *Beauvais,* 942 F.2d at 840). Second, the trial court must "make one of two findings: it must find either that the judgment debtor is entitled to the possession of such property, or it must find that the judgment creditor's rights to the property are superior to those of the party in whose possession it is." *Id. (*quoting *Beauvais,* 942 F.2d at 840).

12. Because (1) Iran has an interest in the Iranian Blocked Assets held by Defendant Banks, and (2)Plaintiffs' interests are superior to the Defendant Banks' interests in the funds, this Court should enter judgment in favor of Plaintiffs and order Defendant Banks to convey, assign, and pay to Plaintiffs in satisfaction of their judgment

6

against Judgment debtor Iran all right, title, interest, and money in the identified assets set forth in Ex. D (List of Iranian Blocked Assets identified by the Defendant Banks as blocked by OFAC due to a nexus with a designated entity of Iran , on service copies to defendants, only the information relating to their institutions is provided). N.Y. C.P.L.R. § 5225; Fed. R. Civ. P. 69(a)(1); Protective Order ¶ 6.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction in this action pursuant to 28 U.S.C. § 1331(2009), and § 201 of the Terrorism Risk Insurance Act ("TRIA"). Also, Section 1605(a)(7) and its successor 1605A of the FSIA create exclusive federal subject-matter jurisdiction and abrogates the sovereign immunity of designated foreign state sponsors of terrorism (such as Iran) in civil actions for money damages "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources…for such an act…" 28 U.S.C. §§ 1605(a)(7)(2007), 1605A (2009).

This Court also has jurisdiction over this matter pursuant to its inherent ancillary enforcement jurisdiction, since this is an action to enforce a federal judgment registered in this Court pursuant to 28 U.S.C. §§ 1331, 1963 (2009).

14. This Court has jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k).

15. The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) and (d)(2009).

## THE PARTIES

16.   Plaintiffs are United States citizens residing in the United States. Plaintiff Jeremy Levin ("Mr. Levin") was a journalist who was kidnapped and held hostage in Lebanon for 343 days. Plaintiff Dr. Lucille Levin ("Dr. Levin"), wife of Mr. Levin, attempted to free Mr. Levin from his captors by raising awareness of the hostage situation and by engaging foreign administrations while undergoing severe emotional trauma and financial stress. *See Levin v. Islamic Republic of Iran,* 529 F. Supp.2d 1 (D.D.C. 2007).

17.   Plaintiffs are Judgment Creditors holding an unsatisfied judgment against Iran in the amount of $28,807,719 plus post-judgment interest. *Id.* See Ex. A (Judgment dated February 6, 2008).

18.   Defendant Bank of New York ("BONY") is incorporated under the laws of New York, domiciled and headquartered in New York, with offices at One Wall Street, New York, New York. Defendant BONY has reported to OFAC that it is in possession of Iranian Blocked Assets in which Iran has an interest in the approximate amount set forth on Exhibit D. Defendant BONY is named as a garnishee in this action pursuant to C.P.L.R. § 5225(b), which allows a Judgment Creditor to commence a special proceeding against "a person in possession or custody of money or other personal property *in which the judgment debtor has an interest,* ... where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee." N.Y. C.P.L.R. § 5225(b)(1997) (emphasis added).

19. Defendant JP Morgan Chase Bank, N.A. ("JPMorgan") is incorporated under the laws of Delaware, domiciled and headquartered in New York, with offices at One Chase Manhattan Plaza, New York, New York. Defendant JPMorgan has reported to OFAC that it is in possession of Iranian Blocked Assets in which Iran has an interest in the approximate amount set forth in Exhibit D. Defendant JPMorgan is named as a garnishee in this action pursuant to C.P.L.R. § 5225(b). N.Y. C.P.L.R. § 5225(b)(1997).

20. Defendant Citibank, N.A. ("Citibank") is incorporated under the laws of New York, domiciled and headquartered in New York, with offices at 399 Park Avenue, New York, New York. Defendant Citibank has reported to OFAC that it is in possession of Iranian Blocked Assets in which Iran has an interest in the approximate amount set forth in Exhibit D. Defendant Citibank is named as a garnishee in this action pursuant to C.P.L.R. § 5225(b). N.Y. C.P.L.R. § 5225(b)(1997).

21. Defendant Societe Generale ("SG") is incorporated under the laws of New York, domiciled and headquartered in New York, with offices at 1221 Avenue of the Americas, New York, New York. Defendant SG has reported to OFAC that it is in possession of Iranian Blocked Assets in which Iran has an interest in the approximate amount set forth in Exhibit D. Defendant SG is named as a garnishee in this action pursuant to C.P.L.R. § 5225(b). N.Y. C.P.L.R. § 5225(b)(1997).

22. Under controlling New York law, Plaintiffs are not required to name the individual remitters of each account to this action; rather, it is the duty of the garnishee (i.e. Defendant Banks) to implead potential adverse claimants and/or the duty of an adverse claimant to seek to intervene. *See e.g., Matter of Ruvolo v. Long Island R.R. Co.*,

256 N.Y.S.2d 279, 288-290 (N.Y. Sup. Ct. 1965); *RCA Corp. v. Tucker*, 696 F.Supp. 845, 850-851 (E.D.N.Y. 1988); *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 21 (2d Cir. 1999); *Neshewat v. Salem*, 365 F.Supp.2d 508, 524-525 (S.D.N.Y. 2005).

## STATEMENT OF FACTS

### Plaintiffs' Judgment

23. Plaintiffs are American citizens whose injuries arose from the kidnapping of Mr. Jeremy Levin carried out by the terrorist group Hizbollah in Beirut, Lebanon, in 1984. Plaintiffs brought suit under the Foreign Sovereign Immunities Act ("FSIA") in the United States District Court for the District of Columbia against Iran and various Iranian government entities for their provision of training and other material support and assistance to the Hizbollah terrorists who carried out the kidnapping. *Levin v. Islamic Republic of Iran*, 529 F.Supp.2d 1 (D.D.C. 2007).

24. Judgment debtor Iran is a foreign state designated as a state sponsor of terrorism under the Export Administration Act of 1979, and Plaintiff's judgment against Iran was therefore entered against a "terrorist party" as defined in Section 201 (d)(4) of TRIA.

25. The U.S. District Court for the District of Columbia court found it "well established within the intelligence, academic, and legal communities that Iran, the MOIS, and the IRGC were providing material support and resources to Hizbollah in the early 1980's" and thus that "Iran, the MOIS, and the IRGC, as sponsors of Hizbollah, are responsible for the personal injuries inflicted upon by Hizbollah on hostages and their

10

families, such as Mr. and Dr. Levin." *Levin,* 529 F. Supp. 2d at 15. The Court thus held Iran and the other defendants liable for the torts of false imprisonment, battery, assault, intentional infliction of emotional distress, negligence, and loss of consortium. *Id.* at 17-19.

26. On February 6, 2008, the trial court entered a judgment in favor of the Plaintiffs against Iran and the other defendants, jointly and severally, in the total amount of $28,807,719 in damages. Iran has refused to honor the judgments. *Id.* at 21.

27. Plaintiffs' judgments have been registered in this Court pursuant to 28 U.S.C. § 1963 under case number 09-0732 and therefore have "the same effect as a judgment of" this Court "and may be enforced in like manner." 28 U.S.C. § 1963 (2009).

### Plaintiffs' Writs of Execution

On June 19, 2009 pursuant to C.P.L.R. § 5230 (made applicable here by Fed. R. Civ. P. 69), Plaintiffs served a Writ of Execution issued by this Court on the United States Marshal for the Southern District of New York. Plaintiffs obtained Court-ordered writs of execution on March 13, 2014 and delivered the writs to the United States Marshals Service for the Southern District of New York for service and levy upon the New York Banks on March 17, 2014. The U.S. Marshal so served and levied the writs of execution on March 31, 2014 as to JPMorgan, Societe Generale, and the Bank of New York, and April 1, 2014 as to Citibank. On April 17, 2014, JPMorgan disclosed additional Iranian Blocked Assets. Plaintiff obtained Court-Ordered writs of execution on June 18, 2014 and delivered the writs of execution to the United States Marshals

Service for the Southern District of New York for service and levy upon the New York Banks on June 20, 2014.

28. By serving the Writs of Execution on the U.S. Marshal, Plaintiffs obtained a priority lien on all personal property in New York County subject to execution and attachment in satisfaction of their judgment. *See* David D. Siegel, Practice Commentaries, C.P.L.R. § 5230:1 ("[W]ith the simple act of delivering an execution to the sheriff, the creditor secures a lien on the debtor's personal property in the county even though neither the creditor nor the sheriff know of any.").

## IRAN HAS AN INTEREST IN BLOCKED ASSETS HELD BY DEFENDANT BANKS

29. Section 201 of TRIA makes blocked assets of a terrorist state available to satisfy certain judgments:

> Notwithstanding any other provision of law...in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

30. Iran is a foreign state designated as a state sponsor of terrorism under the Export Administration Act of 1979.

31. TRIA defines "blocked assets" as

> any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202