UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY LEVIN and LUCILLE LEVIN,

               Plaintiffs,

-v-

THE BANK OF NEW YORK MELLON, et al.,

               Defendants.

THE BANK OF NEW YORK MELLON, et al.

               Third-Party Plaintiffs,

-v-

STEVEN M. GREENBAUM, et al.,
               Third-Party Defendants.

09-CV-5900 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiffs Jeremy Levin and Dr. Lucille Levin ("Plaintiffs") are judgment creditors of the Islamic Republic of Iran ("Iran"). In 2009, they filed this suit seeking turnover of Iranian assets within the United States in an effort to enforce an unsatisfied judgment against Iran. Plaintiffs now move for leave to file a supplemental complaint pursuant to Federal Rule of Civil Proecudre Rule 15(d). For the reasons that follow, the motion is granted in part.

I.     Background

      The Court presumes familiarity with the factual and procedural history of this case, as discussed in its two prior Opinions and Orders issued on March 4, 2011, and September 23, 2013. *See Levin v. Bank of N.Y.* (*Levin I*), No. 09 Civ 5900, 2011 WL 812032, at *1–4 (S.D.N.Y.

Mar. 4, 2011) (Patterson, J.); *Levin v. Bank of N.Y. Mellon* (*Levin II*), No. 09 Civ 5900, 2013 WL 5312502, at *1–2 (S.D.N.Y. Sept. 23, 2013) (Patterson, J.).

Plaintiffs hold an unsatisfied final judgment of $28,807,719 against Judgment-Debtor Iran, arising out of the 1984 kidnapping of Jeremy Levin in Beirut, Lebanaon. (Dkt. No. 1099-1 ("Supp. Compl.") ¶ 1.) Levin's abductors were terrorists who were trained, supported, aided, funded, and directed by Iran.[1] *Id.*

Plaintiffs filed the original Complaint in this action in 2009 (the "2009 Complaint"), seeking turnover of all assets within the jurisdiction of the United States in which Iran has a direct or indirect interest. (Dkt. No. 1099 at 2; Dkt. No. 70.) The 2009 Complaint alleged that Defendant-Garnishee J.P. Morgan Chase Bank, N.A. ("JPMCB"), along with other New York banks, possessed "assets blocked by the U.S. government due to the fact that Iran has an interest in them either directly or indirectly ('Iranian Blocked Assets')." (Dkt. No. 70 ¶ 3).[2]

Although Plaintiffs, along with other judgment creditors, have obtained turnover of certain Iranian assets from Defendant-Garnishee JPMCB (*see, e.g.*, Dkt. No. 1089), Plaintiffs' judgment has not been fully satisfied. (Dkt. No. 1100 ¶ 4). On November 29, 2016, Plaintiffs served interrogatories on JPMCB. (Supp. Compl. ¶ 4.) JPMCB's responses, which were served

---

[1] The facts set forth in this section are taken from Plaintiffs' proposed Supplemental Complaint. (*See* Supp. Compl.) Because Defendant J.P. Morgan Chase Bank, N.A. partially opposes leave to supplement on futility grounds, "the allegations of the [proposed supplemental] pleading . . . must be presumed true, and the Court must draw all reasonable inferences in the pleading party's favor" in deciding whether to grant leave to supplement. *Unique Sports Generation, Inc. v. LGH-III, LLC*, No. 03 Civ. 8324, 2005 WL 2414452, at *5 (S.D.N.Y. Sept. 30, 2005).

[2] More specifically, these assets were blocked by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"). *See Levin I*, 2011 WL 812032, at *1. "OFAC administers various sanctions against terrorists . . . and state sponsors of terrorism . . . by enforcing prohibitions on transactions and trades and/or blocking property or assets of . . . terrorism-supporting countries . . . ." (Supp. Compl. ¶ 34.)

on January 12, 2017, revealed the existence of two additional, previously undisclosed Iranian Blocked Assets: (1) "a deposit account" under the name of Lebanese businessman Kassim Tajideen ("Tajideen Account"); and (2) an account "hold[ing] the proceeds of a wire transfer, also known as an electronic funds transfer ('EFT'), that was blocked by JPMCB under . . . 31 C.F.R. Parts 560, 561 and 594 ['Iranian Sanctions']" ("Saderat Account"). (*Id.*; Dkt. No. 1101 at 1).

Plaintiffs move for leave to file a supplemental complaint seeking turnover of the Tajideen Account and the Saderat Account for collection and partial satisfaction of their judgment against Iran pursuant to § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA")[3] and §§ 1610(f)(1)(a) and (g)(1) of the Foreign Soverign Immunities Act ("FSIA").[4] (Dkt. No. 1099 at 4; Supp. Compl. ¶¶ 8–9.)

---

[3] Section 201(a) of TRIA provides:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA, Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002) (codified at 28 U.S.C. § 1610 note).

[4] Section 1610 of FSIA provides, in relevant part:

> (f)(1)(A) Notwithstanding any other provision of law, including but not limited to section 208(f) of the Foreign Missions Act (22 U.S.C. 4308(f)), and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such

## II. Discussion

Under Federal Rule of Civil Procedure 15(d), a party may "move to serve a supplemental pleading and the district court may grant such a motion, in the exercise of its discretion, upon reasonable notice and upon such terms as may be just." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995). "Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

With respect to the Tajideen Account, the Court concludes that Plaintiffs should be permitted to supplement their original complaint. Upon discovering the existence of the Tajideen Account on June 12, 2017, Plaintiffs acted promptly by delivering writs of execution for immediate service and levy on Defendant JPMCB on June 13, 2017. (Dkt. No. 1100 ¶ 7.)

---

> state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A.
>
> . . .
>
> [(g)(1)] Subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—
>
>> (A) the level of economic control over the property by the government of the foreign state;
>>
>> (B) whether the profits of the property go to that government;
>>
>> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
>>
>> (D) whether that government is the sole beneficiary in interest of the property; or
>>
>> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.
>
> 28 U.S.C. § 1610.

4

There is no evidence of "undue delay, bad faith, [or] dilatory tactics." *Quaratino*, 71 F.3d at 66. Nor is there any evidence of undue prejudice or futility. *See id.* Most important, JPMCB does not oppose Plaintiffs' motion as it relates to the Tajideen Account. (Dkt. No. 1101 at 2.)

With respect to the Saderat Account, however, the Court concludes that supplementation would be futile. In order to "execute a judgment on the blocked assets of a terrorist party, or its agency or instrumentality, to satisfy a judgment against the terrorist party," a plaintiff must establish that

> (1) the plaintiff obtained a judgment against the terrorist party; (2) the judgment is for a claim based on an act of terrorism; (3) the assets are "blocked assets" within the meaning of TRIA; and (4) execution is sought only to the extent of the plaintiff's outstanding judgment for compensatory damages.

*Doe v. Ejercito De Liberacion Nacional*, No. 15 Civ. 8652, 2017 WL 591193, at *2 (S.D.N.Y. Feb. 14, 2017). Here, JPMCB argues that supplementation would be futile because the Saderat Account does not qualify as a "blocked asset" under TRIA, as it is not the property of a terrorist party. The Court agrees.

In *Hausler v. JP Morgan Chase Bank, N.A.*, the Second Circuit identified certain conditions precedent to treating an EFT at a bank located in New York[5] as the property of a terrorist state under TRIA § 201(a):

> [U]nder New York law EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank. As such, the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests. Thus, in order for an EFT to be a blocked asset of [a terrorist state] under TRIA § 201(a), either [the terrorist

---

[5] Here, as in *Hausler*, "the bank[] at which the EFTs are blocked are in New York, so we look to New York property law" to "define the 'rights the judgment debtor has in the property the [creditor] seeks to reach.'" *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014) (second alteration in original) (quoting *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1001 (2d Cir. 2014)).

5

> state] itself or an agency or instrumentality thereof (such as a state-owned financial institution) [must have] transmitted the EFT *directly* to the bank where the EFT is held pursuant to the block.

770 F.3d 207, 212 (2d Cir. 2014) (last alteration in original) (emphasis added) (citations omitted) (quoting *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1001–02 (2d Cir. 2014)) (internal quotation marks omitted). In other words, unless a terrorist state transferred the EFT in question directly to the blocking bank, the EFT is not attachable "[b]ecause no terrorist party or agency or instrumentality thereof has a property interest" in it. *Id.*; *see also Ejercito*, 2017 WL 591193, at *3 ("[O]nly property of a target party can be attached under TRIA[,] and . . . a mid-stream EFT is the sole property of the entity that transmitted the EFT to the blocking bank.").

Here, as in *Hausler* and *Ejercito*, it is "undisputed that no [terrorist state] transmitted any of the blocked EFTs in this case directly to the blocking bank." *Ejercito*, 2017 WL 591193, at *2 (quoting *Hausler*, 770 F.3d at 212) (internal quotation mark omitted). The blocked EFT in question was transmitted to JPMCB directly by Lloyd's Bank. (Dkt. No. 1101 at 11; Dkt. No. 1104 at 6). Under established Second Circuit law, the EFT is thus considered property of Lloyd's Bank, which is not an agent or instrumentality of Iran; consequently, the EFT cannot be attached under TRIA.

Plaintiffs attempt to sidestep *Hausler*'s rule based on the fact that Bank Saderat used Lloyd's bank as a "correspondent bank"[6] rather than an "intermediatry bank." (Dkt. No. 1104 at 6.) The Court concludes that this is a distinction without a difference, at least as it relates to the

---

[6] According to Plaintiffs, a "correspondent bank" is a "bank 'that acts as an agent for another bank, or engages in an exchange of services with that bank, in a geographical area to which the other bank does not have direct access.'" (Dkt. No. 1104 at 8 (quoting *Bank*, *Black's Law Dictionary* (10th ed. 2014)).) *See also Sidwell & Co. v. Kamchatimpex*, 632 N.Y.S.2d 455, 457 (N.Y. Sup. Ct. 1995) ("[A] foreign financial institution . . . that is unable to operate a branch or subsidiary office in the United States maintains a dollar account at a [correspondent bank], to effect US dollar transactions for itself and its customers.").

Second Circuit's rule in *Hausler*. As the *Ejercito* court explained, even where an EFT is transferred to a blocking bank by a "correspondent bank," the transferred asset is considered the "sole property" of the correspondent bank, rather than the "principal" bank (i.e., Bank Saderat). *See Ejercito*, 2017 WL 591193, at *1–3. Therefore, the EFT is not attachable unless the correspondent bank is itself a terrorist state or an agent or instrumentality thereof. Because Lloyd's Bank is not a terrorist state, the Saderat Account is not attachable, and supplementation would be futile as to that asset.

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to file a supplemental complaint is GRANTED in part and DENIED in part.

The Clerk of Court is directed to close the motion at Docket Number 1098.

SO ORDERED.

Dated: October 27, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge