UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

JEREMY LEVIN and LUCILLE LEVIN,

                      Plaintiffs,

                    -v-

THE BANK OF NEW YORK MELLON, et al.,

                      Defendants.

--------------------------------------------------------

JPMORGAN CHASE BANK, N.A.,

                      Third-Party Plaintiff,

                    -v-

KASSIM TAJIDEEN, et al.,

                      Third-Party Defendants.

09-CV-5900 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiffs Jeremy Levin and Dr. Lucille Levin ("Plaintiffs") are judgment creditors of the Islamic Republic of Iran ("Iran"). In 2009, they filed this suit seeking turnover of Iranian assets within the United States in an effort to enforce their unsatisfied judgment against Iran. (Dkt. No. 70.) On November 15, 2017, Plaintiffs filed a supplemental complaint seeking turnover of a particular blocked asset, the Tajideen Account, for collection and partial satisfaction of their judgment against Iran. (Dkt. Nos. 1110 & 1110-4.) Plaintiffs now move for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking an order granting turnover of the Tajideen Account. (Dkt. Nos. 1180 & 1181.) Third-Party Defendant American Life Insurance Company – Lebanon Branch ("Alico") has also moved for summary judgment, asserting that it

1

has a property interest in the Tajideen Account and asking the Court to dismiss all judgment creditor claims to the account. (Dkt. Nos. 1197 & 1199.) For the reasons that follow, the motions for summary judgment are denied.

I.  Background

The Court presumes familiarity with the factual and procedural history of this case, as discussed in its three prior Opinions and Orders issued on March 4, 2011, September 23, 2013, and October 27, 2017. *See Levin v. Bank of N.Y.* (*Levin I*), No. 09 Civ. 5900, 2011 WL 812032, at *1–4 (S.D.N.Y. Mar. 4, 2011) (Patterson, J.); *Levin v. Bank of N.Y. Mellon* (*Levin II*), No. 09 Civ. 5900, 2013 WL 5312502, at *1–2 (S.D.N.Y. Sept. 23, 2013) (Patterson, J.); *Levin v. Bank of N.Y. Mellon*, No. 09 Civ. 5900, 2017 WL 4863094, at *1–2 (S.D.N.Y. Oct. 27, 2017) (*Levin III*), *aff'd sub nom. Levin v. JPMorgan Chase Bank, N.A.*, No. 17-3854, 2018 WL 4901585 (2d Cir. Oct. 9, 2018) (summary order).

A.  Procedural History

Plaintiffs hold a final judgment of $28,807,719, plus interest, against Judgment-Debtor Iran, arising out of the 1984 kidnapping of Jeremy Levin in Beirut, Lebanon. (Dkt. No. 1196 ¶¶ 1–3.) Levin's abductors were terrorists who were trained, supported, aided, funded, and directed by Iran. (Dkt. No. 1196 ¶ 3.)

Plaintiffs filed the original Complaint in this action in 2009, seeking turnover of certain assets within the jurisdiction of the United States in which Iran has a direct or indirect interest. (Dkt. No. 70.) Specifically, the original Complaint alleged that Defendant J.P. Morgan Chase Bank, N.A. ("J.P. Morgan") and other New York banks possessed "assets blocked by the U.S. government due to the fact that Iran has an interest in them either directly or indirectly ('Iranian Blocked Assets')." (Dkt. No. 1196 ¶ 5.)

2

Although Plaintiffs have obtained turnover of certain Iranian assets, Plaintiffs' judgment has not been fully satisfied. (Dkt. No. 1196 ¶ 4.) On January 12, 2017, J.P. Morgan's responses to interrogatories revealed the existence of additional, previously undisclosed Iranian Blocked Assets, including the Tajideen Account. (Dkt. No. 1196 ¶ 20.) In the Court's Opinion and Order of October 27, 2017, it permitted Plaintiffs to file a supplemental complaint with respect to the Tajideen Account. *Levin III*, 2017 WL 4863094, at *3. Plaintiffs filed their Supplemental Complaint on November 15, 2017, seeking turnover of the Tajideen Account for collection and partial satisfaction of their judgment against Iran pursuant to § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322; §§ 1610(f)(1)(a) and (g)(1) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611; and New York Civil Practice Law and Rules § 5225. (Dkt. No. 1110 ¶¶ 8–9, 55.)

In response to the Supplemental Complaint, J.P. Morgan filed a Third-Party Complaint in interpleader, bringing before the Court all persons and entities with alleged interests in or claims to the Tajideen Account. (Dkt. No. 1136 ¶ 65.) These Third-Party Defendants include Kassim Tajideen, Alico, and judgment creditors of Iran, Hezbollah, and the Revolutionary Armed Forces of Colombia (FARC). (Dkt. No. 1136 ¶¶ 65, 70–89.) Alico filed an answer to the Third-Party Complaint, claiming an interest in the Tajideen account. (Dkt. No. 1172.)[1]

On June 13, 2018, before engaging in any discovery, Plaintiffs moved for summary judgment with respect to turnover of the Tajideen Account. (Dkt. No. 1180.)[2] Alico

---

[1] Three judgment creditor groups also filed answers claiming an interest in the Tajideen Account. (Dkt. Nos. 1162, 1167, 1168.) But those groups have since disclaimed any interest in the account. (Dkt. Nos. 1179, 1202, 1206.) Tajideen has also filed a stipulation with J.P. Morgan disclaiming any interest he had in the Tajideen Account. (Dkt. No. 1201 ¶ 30.)

[2] In support of its motion for summary judgment, Plaintiffs ask the Court under Federal Rule of Evidence 201 to take judicial notice of forty-three "Orders and other pleadings taken from this Court's docket in this matter." (Dkt. No. 1185 at 9.) This motion is unopposed.

subsequently filed a cross-motion for summary judgment, asking the Court to hold that the funds in the account are not subject to turnover and to dismiss all judgment creditor claims against the account. (Dkt. No. 1197; *see also* Dkt. No. 1199 at 13–14.)

### B. Factual Background

The following facts are drawn from the Supplemental Complaint and the parties' Local Rule 56.1 statements and are not subject to genuine dispute unless otherwise noted.

Kassim Tajideen is a Lebanese citizen and businessman. (Dkt. No. 1196 ¶ 34; Dkt. No. 1205 ¶ 52.) On May 27, 2009, Tajideen was labelled a Specially Designated Global Terrorist ("SDGT") by the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC"). (Dkt. No. 1205 ¶ 58.)[3] According to OFAC's press release regarding the designation,

> Kassim Tajideen is an important financial contributor to Hizballah who operates a network of businesses in Lebanon and Africa. He has contributed tens of millions of dollars to Hizballah and has sent funds to Hizballah through his brother, a Hizballah commander in Lebanon. In addition, Kassim Tajideen and his brothers run cover companies for Hizballah in Africa.

(Dkt. No. 1198-2.) However, "Tajideen denies that he has any association, affiliation or relationship with Iran, the FARC or any terrorist organization, and asserts that OFAC's designation of him as an SDGT was improper, without basis, and unlawful." (Dkt. No. 1174 ¶ f.) On the basis of an expert's testimony, Plaintiffs allege that Tajideen provided material

---

Under Rule 201, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). It is well established that a court may "take judicial notice of its own orders," and "its own records." *Rosado-Acha v. Red Bull GmbH*, No. 15 Civ. 7620, 2016 WL 3636672, at *7 (S.D.N.Y. June 29, 2016) (citations omitted). The Court thus grants the motion and takes judicial notice of these documents.

[3] When a person receives an SDGT designation, the person's property is blocked and "may not be transferred, paid, exported, withdrawn or otherwise dealt in." 31 C.F.R. § 594.201(a). As a result, U.S. persons are prohibited from engaging in any transaction with persons whose property has been blocked. *Id.* § 594.204.

support to Hezbollah and Iran. (Dkt. No. 1196 ¶¶ 42–43.)[4] And it is undisputed by the parties: (1) that Hezbollah is an agency and instrumentality of Iran, to which Iran provides substantial support and over which Iran exercises significant control; and (2) that Iran is a state sponsor of terrorism. (Dkt. No. 1196 ¶¶ 39–41; Dkt. No. 1201 ¶¶ 39–41.)

In 2001, Alico, an insurance company, sold a life insurance policy to Tajideen. (Dkt. No. 1205 ¶¶ 51, 53.) After Tajideen's designation as an SDGT by OFAC, Alico established a deposit account with J.P. Morgan under Tajideen's name—the Tajideen Account—in 2012. (Dkt. No. 1205 ¶ 60; Dkt. No. 1196 ¶ 34; Dkt. No. 1201 ¶ 34; *see* Dkt. No. 1110-4.) Into the account, Alico deposited the "cash surrender value" of Tajideen's life insurance policy.[5] (Dkt. No. 1205 ¶ 61.) As of November 2016, the value of the funds in the account totaled $355,892.25. (Dkt. No. 1205 ¶ 62.)

The ownership of the funds in the Tajideen Account is disputed by the parties. Alico alleges that Tajideen has not surrendered the life insurance policy, and as such the funds do not belong to Tajideen. (Dkt. No. 1205 ¶ 57; Dkt. No. 1201 ¶ 38.) Plaintiffs contend that the funds are owned by Tajideen. (Dkt. No. 1196 ¶¶ 37–38; Dkt. No. 1201 ¶¶ 37–38.) When it disclosed the existence of the blocked asset in November 2016 in response to Plaintiffs' interrogatories, J.P. Morgan identified the account as "contain[ing] . . . blocked property" of Alico's parent

---

[4] In response to Plaintiffs' initial Rule 56.1 statement, J.P. Morgan has taken the position that "[t]he evidence currently in the record [wa]s insufficient to allow a determination on whether Tajideen provided support, material or otherwise, to Hezbollah or Iran." (Dkt. No. 1196 ¶ 42.) Similarly, Alico contends in its opening brief that whether Tajideen is "an agent or instrumentality of Iran" is a "factually disputed issue." (Dkt. No. 1199 at 11–12.) Plaintiffs' expert has filed a supplemental declaration reaffirming his opinion that Tajideen "has provided extensive systematic funding to Hezbollah and acts as an agent of Hezbollah," and attaching supporting sources. (Dkt. No. 1204 ¶ 4.) But in its reply, Alico notes that the issue "appears to still be disputed." (Dkt. No. 1208 at 7.)

[5] According to Alico, Tajideen has not paid the premiums on the policy since 2011. (Dkt. No. 1205 ¶ 69.)

5

company, "which JPMC is holding on their behalf." (Dkt. No. 1110-4; Dkt. No. 1195 at 2 n.1.) In response to Plaintiffs' Local Rule 56.1 statement, however, J.P. Morgan now clarifies that it "does not know whether that asset is the property of Tajideen or of Alico-Lebanon." (Dkt. No. 1196 ¶ 37.)

## II. Legal Standard

Summary judgment under Rule 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (second quoting *Lund's, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)) (internal quotation marks omitted).

**III.     Discussion**

Section 201(a) of TRIA, which governs the execution of assets blocked under the OFAC regulations, provides:

> Notwithstanding any other provision of law, and except [under circumstances not relevant here], in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002) (codified as amended at 28 U.S.C. § 1610 note). In order to be entitled to an execution against a particular asset under TRIA, plaintiffs must demonstrate first that (1) they have obtained a judgment, (2) against a terrorist party, (3) on a claim based upon an act of terrorism. *See Calderon-Cardona v. Bank of N.Y. Mellon*, 770 F.3d 993, 999 (2d Cir. 2014). Then plaintiffs must establish that they are seeking to subject to execution in aid of that judgment (4) a blocked asset, (5) in which the terrorist party or an agency or instrumentality of the terrorist party holds a property interest. *See Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014) (per curiam) (addressing the property interest prong); *Weininger v. Castro*, 462 F. Supp. 2d 457, 479–80 (S.D.N.Y. 2006) (addressing the requirement that the assets in question be "'blocked assets' within the meaning of TRIA"). Finally, plaintiffs must establish that (6) "no adverse claimant ranks above [them] in priority of interest" to the asset at issue. *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 47 (S.D.N.Y. 2015).

Here, the parties do not dispute that Plaintiffs have obtained a judgment against a terrorist party—Iran—based upon an act of terrorism. *See Levin v. Islamic Republic of Iran*, 529 F. Supp. 2d 1 (D.D.C. 2007). Nor do they contest whether the Tajideen Account qualifies as a "blocked asset." (Dkt. No. 1110-4; Dkt. No. 1195 at 3.) The Court agrees that Plaintiffs have

7

satisfied those requirements. However, the parties dispute whether the Tajideen Account is the property of an agency or instrumentality of Iran, and whether Plaintiffs possess priority of claim. The Court will address each requirement in turn.

### A. Whether the Blocked Asset is the Property of an Agency or Instrumentality of the Terrorist Party

Within the requirement that a blocked asset be the property of the terrorist party or an agency or instrumentality of the terrorist party for that asset to qualify for turnover under TRIA, the parties raise two disputed questions: (1) whether Tajideen is properly considered an agent of Iran; and (2) whether the Tajideen Account is the property of Tajideen himself, or the property of Alico. Because Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law on the first question, and because genuine disputes of material fact exist with respect to the second question, Plaintiffs' and Alico's motions for summary judgment must be denied.

#### 1. Whether Tajideen is an Agent of Iran

To demonstrate that a party constitutes an agency or instrumentality of a terrorist party under TRIA, plaintiffs must show that the party "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, *or* (3) was owned, controlled, or directed by the terrorist party." *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 135 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).

In support of their motion for summary judgment, Plaintiffs argue that Kassim Tajideen "provided material support for Hezbollah," and therefore—because "Hezbollah is an agency and instrumentality of Iran"— is himself "an agency or instrumentality of Iran." (Dkt. No. 1181 at 12.) J.P. Morgan contends that the evidence offered by Plaintiffs to demonstrate Tajideen's provision of financial support to Hezbollah is insufficient to warrant a grant of summary

judgment. (Dkt. No. 1195 at 9.) Alico agrees that this issue is "factually disputed," precluding summary judgment. (Dkt. No. 1199 at 12.)

In support of their allegation that Tajideen provided material support to Hezbollah, Plaintiffs offer (1) an indictment of Tajideen from a criminal case in the U.S. District Court for the District of Columbia (Dkt. No. 1204-1),[6] and (2) the declaration and supplemental declaration of Dr. Patrick Clawson, an expert on Iran (Dkt. Nos. 1184 & 1204). In his declarations, Dr. Clawson opines that Hezbollah could not have carried out the kidnapping of Jeremy Levin had it not been "trained, supported, aided, abetted and funded by the Iranian government," and that "Kassim Tajideen is an important financial contributor to Hezbollah and through Hezbollah acts [as] a financier and an agent of Iran; he has contributed tens of millions of dollars to Hezbollah and he, as agent of Hezbollah and Iran, runs cover companies for Hezbollah based out of Africa." (Dkt. No. 1184 ¶ 3(c), (f); *see also* Dkt. No. 1204 ¶ 4.) In support of his opinion regarding Tajideen, Dr. Clawson relies on the Federal Register notice designating Tajideen an SDGT,[7] two press releases from the U.S. Department of the Treasury, one press release from the U.S. Department of Justice, the federal indictment of Tajideen, and two articles. (Dkt. No. 1184 ¶¶ 41–45; Dkt. No. 1204 ¶ 10; Dkt. Nos. 1204-1, 1204-3 through 1204-8.)

---

[6] J.P. Morgan opposes relying on the indictment to support the proposition that Tajideen is an agent of Hezbollah, because a superseding indictment in the same case omitted any reference to Hezbollah. (Dkt. No. 1195 at 9; s*ee* Dkt. No. 1204-2.) Even absent the indictment, however, the Court concludes that Dr. Clawson's opinion and supporting sources are sufficient to satisfy Plaintiffs' burden.

[7] Alico has also submitted the entry from OFAC's Specially Designated Nationals and Blocked Persons list that identifies Tajideen as an SDGT and subject to OFAC sanctions. (Dkt. No. 1198-3.)

In its previous Opinions and Orders, this Court has twice accepted Dr. Clawson as an expert on Iran. *Levin I*, 2011 WL 812032, at \*19; *Levin II*, 2013 WL 5312502, at \*9. The Court does so again here. Furthermore, in *Levin II*, this Court deemed evidence "sufficient" to establish that entities were "agencies and instrumentalities of Iran" for purposes of summary judgment where Plaintiffs presented an "affidavit of their expert, Dr. Clawson, and independently-verifiable online resources" comprising OFAC's Specially Designated Nationals and Blocked Persons list "as well as a press release from the Treasury Department available online." *Levin II*, 2013 WL 5312502, at \*10. Similarly here, the Court determines that Plaintiffs have provided sufficient evidence of Tajideen's financial support to Hezbollah to satisfy the "requisite initial showing" that they are entitled to summary judgment. *Clopay Plastic Prods. Co.*, 2014 WL 4652548, at \*3.

The burden thus shifts to J.P. Morgan and Alico to "identify specific facts demonstrating a genuine issue for trial." *Id*. J.P. Morgan does not attempt to do so. (*See* Dkt. No. 1195 at 7–9 (taking the position only that Plaintiffs have not adduced sufficient evidence to warrant summary judgment).) And Alico makes only a passing effort at raising a genuine dispute, pointing exclusively to the express denial of any involvement with Hezbollah contained in Tajideen's disclaimer of interest in the blocked account. (Dkt. No. 1199 at 11–12; Dkt. No. 1174 ¶ f.) However, Tajideen's denial was made in a stipulation with J.P. Morgan, and such "unsworn statements are generally not considered as evidence in opposition to summary judgment." *Waddlington v. City of New York*, 971 F. Supp. 2d 286, 292 (E.D.N.Y. 2013); *see also Brittany Dying & Printing Corp. v. Griseto*, No. 96 Civ. 9218, 2000 WL 1717554, at \*3 (S.D.N.Y. Nov. 16, 2000) ("Summary judgment cannot be defeated by relying on conclusory statements . . . . Unsworn statements cannot be considered as evidence in opposition to summary judgment.").

The Court concludes that Tajideen's unsworn, conclusory denial does not raise a genuine dispute of material fact here.

That Plaintiffs have established that Tajideen is an agent or instrumentality of *Hezbollah*, however, does not necessarily mean that Tajideen is an agent or instrumentality of *Iran*. Dr. Clawson's declaration assumes that demonstrating the former relationship also proves the latter. (*See* Dkt. No. 1184 ¶¶ 3(f), 57.) But none of the evidence establishing Tajideen's relationship with Hezbollah actually links him to Iran. And the Treasury Department's press release regarding Tajideen's SDGT designation, in providing background on Hezbollah, states that "Hizballah is closely allied with Iran and often acts at its behest, but it also can and does act independently." (Dkt. No. 1204-3 at 3.)

The Court has found one case in which the agency relationship between Hezbollah and a terrorist party was imputed to a supporter of Hezbollah for purposes of turning over a blocked asset under TRIA. *See Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, No. 09 Civ. 2308, 2015 WL 13325432, at *4 (M.D. Fla. Feb. 17, 2015) (concluding that Tajideen was an agency or instrumentality of FARC). But the Court is unaware of any precedent in this Circuit for imputing such a relationship, and the parties have not provided their positions on this question. At this stage, the Court cannot conclude that Plaintiffs are entitled to judgment as a matter of law on the question of whether Tajideen was an agency or instrumentality of Iran. The parties will have the opportunity to address this question—including whether any objection on this basis should be deemed forfeited by the parties—in the next phase of the case.

### 2. Whether the Blocked Account is the Property of Tajideen

The main dispute between the parties in their motions for summary judgment involves whether the funds in the Tajideen Account are the property of Tajideen and thus subject to

11

turnover under TRIA—as Plaintiffs contend—or the property of Alico and thus not subject to turnover—as Alico contends.

In order to be turned over under TRIA § 201(a), an asset must be the "property of terrorist parties [or] that of their agencies or instrumentalities." *Hausler*, 770 F.3d at 211. Whether an asset is the property of a particular party for purposes of attachment is a question of law. *See Calderon-Cardona*, 770 F.3d at 1000. Courts in this Circuit "look to state law to define the 'rights the judgment debtor has in the property the [creditor] seeks to reach.'" *Hausler*, 770 F.3d at 212 (alteration in original) (quoting *Calderon-Cardona*, 770 F.3d at 1001).

Alico claims the funds in the Tajideen Account as its own property. Specifically, Alico alleges that it opened the account in Tajideen's name with J.P. Morgan and deposited the cash surrender value of Tajideen's life insurance policy into the account in order to comply with OFAC regulations. (Dkt. No. 1200 ¶¶ 60–61; Dkt. No. 1201 ¶¶ 34–36.) However, Alico contends that Tajideen has not yet surrendered the insurance policy, and therefore has no property right in those funds. (Dkt. No. 1199 at 7–9.)[8]

Plaintiffs respond that Tajideen owns the funds in the account because his name is on the account, his right to surrender the policy and obtain those funds is a sufficient property interest for attachment purposes, and the act of blocking the account resulted in a de facto surrender of the policy. (Dkt. No. 1181 at 8–10; Dkt. No. 1203 at 3–4.)[9]

---

[8] Alico also argues that even if the funds in the account could be considered Tajideen's property, he would not own the full amount under the terms of the insurance policy. (Dkt. No. 1199 at 10.) Because unresolved issues of material fact prevent summary judgment, the Court need not resolve this issue at this time.

[9] J.P. Morgan does not take a position on this question, other than to point out that the motions for summary judgment were made before the parties engaged in any discovery, and to note the lack of evidence in the record. (Dkt. No. 1195 at 5–7.) In a previous action, Tajideen alleged that he alone owned the funds in the account. (Dkt. No. 1195 at 5; Dkt. No. 1136 ¶ 95.) But he has since disclaimed any interest in the funds "due exclusively to the expense and

In attempting to ascertain ownership over the funds in the Tajideen Account, a crucial question involves *why* Alico created the account and deposited funds equivalent to the cash surrender value of Tajideen's life insurance policy. According to Alico, it was acting pursuant to OFAC regulations. (Dkt. No. 1201 ¶ 35 (citing 31 C.F.R. §§ 594.101–594.901).) But neither the regulations, nor published guidance from the office, seem to require this result.

If a policyholder becomes subject to sanctions, guidance from OFAC instructs the insurer to "'block' the policy, report such blocking to OFAC . . . , place any future premiums into a blocked, interest-bearing account at a U.S. financial institution, and seek an OFAC license before making any payments under the policy." U.S. Dep't of the Treasury, *OFAC FAQs: Sanctions Compliance*, FAQ #66, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_compliance.aspx#insurance (last accessed Jan. 24, 2019). Any newly paid premiums must go into a blocked account, *id.* at FAQ #66 & #69, and the policy itself becomes "a blocked contract," *id*. at FAQ #63, but nowhere does the guidance require the insurer to create a corresponding blocked account for the surrender value of the policy.

The relevant OFAC regulations may shed more light on Alico's creation of the account. The regulations require blocked "funds, such as currency, bank deposits, or liquidated financial obligations" to be placed "in a blocked interest-bearing account." 31 C.F.R. § 594.203(a). Significantly, they do not "create an affirmative obligation for the holder of blocked tangible property . . . or of other blocked property, such as debt or equity securities, to sell or liquidate such property at the time the property becomes" blocked. *Id*. § 594.203(e). However, with a

---

inconvenience of litigation and other factors having nothing to do with the merits of any party's claim." (Dkt. No. 1174 ¶ g.)

license from OFAC, blocked property may "be sold or liquidated and the net proceeds placed in a blocked interest-bearing account in the name of the owner of the property." *Id*. § 594.206(b).

Per these provisions, it is possible that in creating the Tajideen account, Alico was engaging in a discretionary liquidation of the life insurance policy pursuant to a license from OFAC. If so, Tajideen was essentially caused to surrender the life insurance policy by operation of law, and the funds in the account would constitute his property. But it is also possible that Alico was directed by OFAC to create a blocked account containing the equivalent surrender value, in addition to holding the blocked policy. In that event, the question of how Tajideen's property interest in his right to surrender the policy relates to the funds in the account is more complicated. However, without more evidence regarding the insurance policy and creation of the account —in the form of communications between Alico and OFAC, testimony from Alico personnel, communications between Alico and Tajideen, documents from J.P. Morgan, or documents/licenses from OFAC—the Court cannot confidently discern the import of Alico's actions in light of the relevant regulations and guidance.

Given the dearth of evidence in the record, the Court concludes that genuine issues of material fact exist as to the ownership of the funds in the Tajideen Account, and neither moving party has established ownership of the funds as a matter of law. Accordingly, Plaintiffs' motion for summary judgment and Alico's motion for summary judgment are both denied on this ground.

### B. Whether Plaintiffs' Claim Has Priority

The final disputed issue among the parties is whether Plaintiffs have established the priority of their claim to the blocked account. In response to J.P. Morgan's Third-Party Complaint, five parties or groups of parties initially claimed interests in the Tajideen Account: Plaintiffs, Alico Judgment Creditor Mati Gill, the Greenbaum and Acosta Judgment Creditors,

and the Heiser Judgment Creditors. (Dkt. Nos. 1145, 1162, 1167, 1168, 1172.) All remaining third-party defendants either did not respond or have filed an affirmative disclaimer of interest in the account. (Dkt. No. 1183-1.) And the three other judgment creditors or judgment creditor groups that initially claimed an interest in the account—Mati Gill, the Greenbaum and Acosta Judgment Creditors, and the Heiser Judgment Creditors—have all subsequently disclaimed any interest. (Dkt. Nos. 1179, 1202, 1206.)

Plaintiffs and J.P. Morgan contend that that Plaintiffs have priority over all other judgment creditors. (Dkt. No. 1181 at 15–18; Dkt. No. 1195 at 10.) Noting that no other group of judgment creditors is actively seeking turnover of the Tajideen Account in this proceeding, the Court agrees that Plaintiffs have priority over all other groups of judgment creditors.

Regarding Alico's interest in the funds, Alico concedes that it "does not have a priority interest as a judgment-creditor," but asserts that the issue of priority is not dispositive because it is the owner of funds in the account. (Dkt. No. 1199 at 7–11; *see also id*. at 12 (disputing priority as to other judgment creditors only); Dkt. No. 1208 at 6.) Plaintiffs agree that Alico does not have a judgment against Tajideen, and argue that to the extent Alico has a contract-based claim to the funds in the account, the claim of a TRIA judgment creditor takes priority. (Dkt. No. 1203 at 5–6.) J.P. Morgan takes the position that the issue is "intertwined" with the property question: if Alico owns the funds in the account then the issue of priority is moot, whereas if Tajideen owns the funds then Alico would have no interest sufficient to compete with Plaintiff's interest for priority. (Dkt. No. 1195 at 10.)

Here, Plaintiffs are the only TRIA judgment creditors asserting an interest in the Tajideen account. To the extent Alico could claim a contract-based interest in the funds, Plaintiffs' claim would have priority. *See Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 569

15

(S.D.N.Y. 2012) ("[A]ny evaluation under the TRIA of the priority of interests in the Blocked Funds must begin with the understanding that 'terrorist victims' holding judgments, as a group, must be first in line."), *rev'd on other grounds*, 770 F.3d 207 (2d Cir. 2014). Therefore, if Plaintiffs ultimately establish that the funds in the account are the property of Tajideen, Plaintiffs will have priority over all other claims to the account and turnover will be appropriate.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED, and Alico's motion for summary judgment is DENIED. By February 26, 2019, the parties are directed to submit a joint letter regarding their proposed schedule for further proceedings.

The Clerk of Court is directed to close the motions at Docket Numbers 1180, 1185, and 1197.

SO ORDERED.

Dated: February 12, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge