**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DR. LUCILLE LEVIN and SUZELLE M.
SMITH, TRUSTEE OF THE JEREMY
ISADORE LEVIN 2012 REVOCABLE
TRUST, AS AMENDED,

         Plaintiffs,

   -v-

THE BANK OF NEW YORK MELLON,
JPMORGAN CHASE & CO., JPMORGAN
CHASE BANK, N.A., SOCIÉTÉ
GÉNÉRALE, and CITIBANK, N.A.

         Defendants.

Civ. No. 09 CV 5900 (JPO) (RWL)

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION UNDER
FED. R. CIV. P. 12(b)(1) AND 12(b)(6)
TO DISMISS THE SUPPLEMENTAL
COMPLAINT AS A MATTER OF
LAW**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................................. iii

I.   INTRODUCTION AND BACKGROUND ..................................................... 1

II.  LEGAL STANDARD FOR MOTION TO DISMISS UNDER FEDERAL RULES OF

     CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) .................................................. 4

III. ARGUMENT ........................................................................................... 5

     A.   Under Second Circuit And New York State Law, This Court Has the Authority

          to Recall the Melli Blocked Account from JPMorgan-London ............................ 5

     B.   Principles of International Comity and the Potential for Double Liability Do Not

          Prevent Collection of a Judgment Under TRIA and FSIA from the Assets of a

          State Sponsor of Terrorism Blocked in a Foreign Branch of a New York Bank.. 16

IV.  CONCLUSION ....................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*AP MA Funding, LLC v. Wells Fargo Clearing Servs.*,

    2020 N.Y. Slip Op. 31242 (N.Y. Sup. Ct. 2020) ...................................................................... 10

*Aurelius Capital Partners, LP v. Republic of Argentina*,

    584 F.3d 120 (2d Cir. 2009) ............................................................................................ 13, 14

*Aurelius Capital Partners, LP v. Republic of Argentina*,

    2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) ...................................................................... 15, 16

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,

    499 F.3d 737 (7th Cir. 2007) ................................................................................................ 15

*Bank of Tokyo-Mitsubishi, UFJ, Ltd. v. Peterson*,

    2012 WL 1963382 (S.D.N.Y. May 29, 2012) ...................................................................... 15

*Belgrade v. Sidex Int'l Furniture Corp.*,

    2 F. Supp. 2d 407 (S.D.N.Y. 1998) ...................................................................................... 19

*Beneficial Nat. Bank v. Anderson*,

    539 U.S. 1 (2003) ............................................................................................................ 14, 15

*Clearstream Banking S.A. v. Peterson*,

    140 S. Ct. 813 (2020) ............................................................................................................. 7

*Connecticut Bank of Commerce v. Republic of Congo*,

    309 F.3d 240 (5th Cir. 2002) ................................................................................................ 15

*Eitzen Bulk A/S v. Bank of India*,

    827 F. Supp. 2d 234 (S.D.N.Y. 2011) .................................................................................. 10

*EM Ltd. v. Republic of Argentina*,

    473 F.3d 463 (2d Cir. 2007) ......................................................................... 7

*EM Ltd. v. Republic of Argentina*,

    695 F.3d 201 (2d Cir. 2012) .................................................................. 13, 14

*Fair v. Verizon Commc'ns, Inc.*,

    2014 WL 2624760 (S.D.N.Y. Mar. 14, 2014) ............................................. 4

*Fid. Partners, Inc. v. First Trust Co. of N.Y.*,

    58 F. Supp. 2d 52 (S.D.N.Y. 1997) ........................................................... 15

*Gates v. Syrian Arab Republic*,

    755 F.3d 568 (7th Cir. 2014) ..................................................................... 15

*Hegna v. Islamic Republic of Iran*,

    380 F.3d 1000 (7th Cir. 2004) ................................................................... 15

*Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*,

    919 F. Supp. 2d 411 (S.D.N.Y. 2013) ....................................................... 15

*In re 650 Fifth Ave. & Related Properties*,

    881 F. Supp. 2d 533 (S.D.N.Y. 2012) ......................................................... 2

*In re Feit & Drexler, Inc.*,

    760 F.2d 406 (2d Cir. 1985) ...................................................................... 11

*In re Sealed Case*,

    932 F.3d 915 (D.C. Cir. 2019) ................................................................... 20

*JW Oilfield Equip., LLC v. Commerzbank, AG*,

    764 F. Supp. 2d 587 (S.D.N.Y. 2011) ....................................................... 10

*Koehler v. Bank of Bermuda Ltd.*,

    12 N.Y.3d 533 (2009) ................................................................................. 9, 14, 15

*Koehler v. Bank of Bermuda Ltd.*,

    544 F.3d 78 (2d Cir. 2008) .............................................................................. *passim*

*Koehler v. Bank of Bermuda Ltd.*,

    577 F.3d 497 (2d Cir. 2009) ............................................................................ *passim*

*Lynch v. City of New York*,

    952 F.3d 67 (2d Cir. 2020) .................................................................................. 4

*Maalouf v. Islamic Republic of Iran*,

    923 F.3d 1095 (D.C. Cir. 2019) ......................................................................... 18

*Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*,

    984 F. Supp. 2d 1070 (S.D. Cal. 2013) ............................................................. 13

*Mississippi v. AU Optronics Corp.*,

    134 S.Ct. 736 (2014) ........................................................................................ 12

*Morrison v. Nat'l Austl. Bank Ltd.*,

    561 U.S. 247 (2010) ......................................................................................... 12

*O'Bryan v. Holy See*,

    471 F. Supp. 2d 784 (W.D. Ky. 2007) .............................................................. 18

*Pablo Star Ltd. v. Welsh Gov't*,

    378 F. Supp. 3d 300 (S.D.N.Y. 2019) .............................................................. 20

*Persinger v. Islamic Republic of Iran*,

    729 F.2d 835 (D.C. Cir. 1984) .......................................................................... 21

*Peterson v. Islamic Republic of Iran*,

    627 F.3d 1117 (9th Cir. 2010) ........................................................................ 15, 16

*Peterson v. Islamic Republic of Iran*,

    876 F.3d 63 (2d Cir. 2017) ................................................................................... 6

*Peterson v. Islamic Republic of Iran*,

    963 F.3d 192 (2d Cir. 2020) ............................................................................. 6, 7

*Republic of Argentina v. NML Capital, Ltd.*,

    573 U.S. 134 (2014).................................................................................. 10, 11, 18

*Rodriguez v. Pan Am. Health Org.*,

    2020 WL 6561448 (D.D.C. Nov. 9, 2020) ............................................................ 20

*Rubin v. Islamic Republic of Iran*,

    2007 WL 1169701 (N.D. Ill. Apr. 17, 2007) ........................................................ 15

*Rubin v. Islamic Republic of Iran*,

    830 F.3d 470 (7th Cir. 2016) ............................................................................... 15

*Rubin v. Islamic Republic of Iran*,

    2007 WL 1169701 (N.D. Ill. Apr. 17, 2007) ........................................................ 15

*Shaheen Sports, Inc. v. Asia Ins. Co.*,

    2012 WL 919664 (S.D.N.Y. Mar. 14, 2012) ........................................................ 22

*Smith v. Fed. Rsrv. Bank of New York*,

    280 F. Supp. 2d 314 (S.D.N.Y.) .......................................................................... 12

*United States v. First Nat'l City Bank*,

    379 U.S. 378 (1965).............................................................................................. 11

*United States v. Gonzales*,

    520 U.S. 1 (1997) .................................................................................. 12

*Walters v. Indus. & Commercial Bank of China, Ltd.*,

    651 F.3d 280 (2d Cir. 2011) ........................................................... 13, 14

*Walters v. People's Republic of China*,

    672 F. Supp. 2d 573 (S.D.N.Y. 2009) ............................................ 15, 16

*Weininger v. Castro*,

    462 F. Supp. 2d 457 (S.D.N.Y. 2006) ................................................. 13

## Statutes

28 U.S.C. § 1610(g) ...................................................................................... 12

Fed. R. Civ. P. 69(a)(1) .............................................................................. 7, 15

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002), § 201(a)

    codified at 28 U.S.C. § 1610 ............................................................ 12, 15, 16

## Other Authorities

Iran Sanctions, U.S. Dep't Treas.,

    https://home.treasury.gov/policy-issues/financial-sanctions/sanctions-programs-and-country-

    information/iran-sanctions (last visited Mar. 23, 2021) ......................................... 17

## I.      INTRODUCTION AND BACKGROUND

Plaintiffs and Judgment Creditors Dr. Lucille Levin and Suzelle M. Smith, Trustee of the

Jeremy Isadore Levin 2012 Revocable Trust, as amended, successor in interest to Jeremy Levin,

(the "Levins" or "Plaintiffs")[1] submit this memorandum of law in opposition to Defendants

JPMorgan Chase Bank, N.A. ("JPMorgan-NY") and JPMorgan Chase Bank, N.A./London's

(JPMorgan-London) (together "JPMorgan" or "Defendants") March 4, 2021 motion to dismiss

("Motion") the Levins' supplemental complaint filed January 6, 2021.

As set forth in the Declaration of Steven Feigenbaum in support of JPMorgan's Motion,

"The Melli/Visa Account is a deposit account blocked in 2010 under the Weapons of Mass

Destruction Proliferators Sanctions Regulations, 31 C.F.R. Part 544, which is administered by

the Treasury Department's Office of Foreign Assets Control ('OFAC'), and which applies to

Iran and other states engaged in the trafficking of weapons of mass destruction or their delivery

systems."[2]  Mr. Feigenbaum states, "Bank Melli is an Iranian bank wholly owned by the Iranian

government and, according to its website, is the largest bank in Iran and one of the largest in the

Middle East. Bank Melli has been held to be an instrumentality of Iran . . . and OFAC designated

it as a Specially Designated National on October 25, 2007 under Executive Order 13382."[3]

JPMorgan does not contest that the OFAC blocked funds are property of Iran.[4]  JPMorgan-

---

[1] JPMorgan states "both Mr. Levin and Dr. Levin recently passed away . . . ."  Dkt. 1369 at 10.  Without any citation to any law or facts, JPMorgan also claims, on this basis, that "any turnover to Plaintiffs of blocked assets under TRIA or the FSIA no longer provides redress to the victims of terrorism themselves."  *Id.*  Plaintiffs have substituted Mr. Levin with a proper successor in interest and are in the process of settling Dr. Levins' estate. Whatever JPMorgan thinks about the Levins' successors and estates collecting their unsatisfied judgments (as opposed to it getting the benefit of holding the blocked funds or paying it over to Bank Melli, an instrumentality of a state sponsor of terrorism), the law provides that if a judgment creditor dies before the judgment can be collected, the judgment may be collected by his and her successors.  *See* Fed. R. Civ. P. 25.  There is no penalty to the Levins because they died before their judgment could be collected due to Iran's success in money laundering and evading judgment collection.  *See id.*
[2] Dkt. 1370 ¶ 3.
[3] Dkt. 1370 ¶ 3.
[4] Dkt. 1369 at 8 ("[T]he funds in the Melli/Visa Account appear to be Bank Melli's property . . . .").

London is the London branch of JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States.[5] JPMorgan-London blocked the Bank Melli funds, under United States OFAC sanctions regulations, 31 C.F.R. Part 544.[6]

On December 10, 2020, this Court granted the Levins' motion, opposed by JPMorgan, to supplement their pleading to seek turnover of a blocked asset owned by Bank Melli, referred to by JPMorgan as the Melli/Visa Account (hereinafter the "Melli Blocked Account," as this is property of Bank Melli, not Visa).[7] The Court's Order noted that "Defendant JPMorgan does not dispute that the account in question contains funds that appear to belong to 'an instrumentality of Iran.' . . . Nor does it object to the Court's personal jurisdiction over JPMorgan London. . . . JPMorgan nevertheless opposes Plaintiffs' motion [to file a supplemental complaint] on the grounds that the London account is immune from execution."[8] The Court granted the Levins' motion, stating that "Plaintiffs argue, plausibly, that under applicable New York law, 'a court could order a bank over which it had personal jurisdiction to turn over assets located outside of the United States in order to satisfy a judgment.' . . . Given that Plaintiffs have demonstrated colorable grounds for relief, the Court grants them leave to file a supplemental complaint . . . ."[9] The Levins filed their supplemental complaint on January 4, 2021 for turnover of the Melli Blocked Account under the Terrorism Risk Insurance Act ("TRIA").[10]

JPMorgan now moves to dismiss the Levins' supplemental complaint "under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure . . . for lack of subject matter

---

[5] *See* Dkt. 1259 ¶ 31.
[6] Dkt. 1370 ¶ 3.
[7] Dkt. 1345. "Bank Melli has conceded that it is an instrumentality of Iran." *In re 650 Fifth Ave. & Related Properties*, 881 F. Supp. 2d 533, 538 (S.D.N.Y. 2012) (citing *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 48 (2d Cir.2010). The blocked account is conceded to be property of Bank Melli. *See* Dkt. 1369 at 8.
[8] Dkt. 1345 at 2.
[9] Dkt. 1345 at 3.
[10] *See* Dkt. 1352.

jurisdiction, for failure to state a claim, or for both . . . ."[11]  As to subject matter jurisdiction,

JPMorgan does not contest that the complaint is brought under TRIA § 201(a), a federal statute,

raising a federal question.[12]  JPMorgan admits that "Bank Melli is an instrumentality of Iran,"

for purposes of TRIA.[13]  It is not contested that the funds are "blocked assets," as defined by

TRIA.[14]  Further, the Court has personal jurisdiction over JPMorgan's London branch.[15]

However, JPMorgan argues that there is no subject matter jurisdiction or a claim is not

stated because: "the [blocked] Melli/Visa Account is . . . immune from execution under TRIA §

201(a) or FSIA §1610(g) because it is located in London, and neither statute permits a U.S. court

to direct the attachment of a foreign state's or its instrumentalities' assets located outside the

U.S."[16]  JPMorgan cites no case in support of its position that this Court does not have subject

matter jurisdiction to decide the claim made under TRIA, merely because the OFAC blocked

assets are abroad, when the bank holding the funds abroad has consented to personal jurisdiction.

The law is to the contrary.  *See Koehler v. Bank of Bermuda Ltd.*, 577 F.3d 497, 499 (2d Cir.

2009).

JPMorgan also argues that, even though it admits the Melli Blocked Account is property

of Bank Melli, the Court should dismiss the Levins' complaint for turnover because "execution

on the Melli/Visa Account would expose JPMorgan London to . . . risk of double liability" and

"contravenes principles of international comity."[17]  Again, this Court has subject matter

jurisdiction, and the complaint states a claim under TRIA for the blocked assets held in a bank

---

[11] Dkt. 1369 at 7.
[12] *See generally* Dkt. 1369.
[13] Dkt. 1369 at 8.
[14] Dkt. 1369 at 7.
[15] Dkt. 1369 at 8.
[16] Dkt. 1369 at 8.
[17] Dkt. 1369 10-11.

over which this Court has personal jurisdiction.[18]  The policy issues JPMorgan raises do not

change the controlling law, even if they favored JPMorgan, which they do not.  JPMorgan's

motion to dismiss should be denied.

## II.  LEGAL STANDARD FOR MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

"In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a

court must assume as true factual allegations in the complaint. . . . A Rule 12(b)(1) motion may

be appropriate when a plaintiff's federal claim is not even minimally plausible." *Fair v. Verizon*

*Commc'ns, Inc.*, No. 12 CIV. 6130 LAK RLE, 2014 WL 2624760, at *2 (S.D.N.Y. Mar. 14,

2014), *report and recommendation adopted*, No. 12 CIV. 6130 LAK, 2014 WL 2624758

(S.D.N.Y. June 5, 2014), *aff'd*, 621 F. App'x 52 (2d Cir. 2015).  "The court, in deciding a Rule

12(b)(6) motion to dismiss a complaint, is required to accept all 'well-pleaded factual

allegations' in the complaint as true. . . . The court must also 'construe all reasonable inferences

that can be drawn from the complaint in the light most favorable to the plaintiff.'" *Lynch v. City*

*of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).

In this case, the Court has already had a preview of the Levins' Supplemental Complaint,

because JPMorgan opposed the filing.[19]  In granting the Levins' Motion, the Court set out the

standard for allowing supplementation, which is the same as the standard applied to motions to

dismiss under Rule 12.  This Court stated:

> JPMorgan nevertheless opposes Plaintiffs' motion on the grounds that the
> London account is immune from execution, and therefore that
> supplementing the complaint would be "futile." (Dkt. No. 1327 at 7-8.) An
> amendment or supplementation is considered futile "when the proposed
> new claim would not withstand a motion to dismiss under Rule 12(b)(6) of
> the Federal Rules of Civil Procedure." *Ruotolo v. City of New York*, No.

---

[18] *Koehler*, 577 F.3d at 499.
[19] *See* Dkt. 1327.

03-CV-5045, 2005 WL 1253936, at *5 (S.D.N.Y. May 25, 2005) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). If the proposed complaint would be subject to "immediate dismissal" for failure to state a claim, a court should deny leave to supplement. *Id.* (quoting *Jones v. New York State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 55 (2d Cir. 1999)). "If, however, the party seeking to supplement has at least colorable grounds for relief, justice … require[s] that its motion be granted." *Id.* (internal quotation marks and citation omitted).[20]

The Court further stated:

> Plaintiffs clear that bar here. Whether the London account is immune from execution depends on whether U.S. courts have the authority to "direct the attachment of a foreign state's or its instrumentality's assets located outside the U.S." (Dkt. No. 1327 at 7.) JPMorgan argues that neither of the relevant statutes — the Terrorism Risk Insurance Act of 2002 and the Foreign Sovereign Immunities Act — confers that authority. (Dkt. No. 1327 at 7-8.) But the Supreme Court has not yet issued a definitive ruling on that question. And Plaintiffs argue, plausibly, that under applicable New York law, "a court could order a bank over which it had personal jurisdiction to turn over assets located outside of the United States in order to satisfy a judgment." (Dkt. No. 1339 at 8.)[21]

The Court did state that Defendants could raise this issue again "in a later motion to dismiss or other appropriate filing."[22]  However, the Levin's complaint as to the Melli Blocked Account meets the legal requirements of a proper pleading, and JPMorgan's Motion should be denied.

## III.   ARGUMENT

### A.   Under Second Circuit And New York State Law, This Court Has the Authority to Recall the Melli Blocked Account from JPMorgan-London

JPMorgan argues that "no federal appellate or district court has, with one ephemeral exception, permitted the attachment under TRIA § 201(a) or FSIA § 1610(g) of a foreign state's or its instrumentalities' assets located abroad."[23]

---

[20] Dkt. 1345 at 2.
[21] Dkt. 1345 at 2-3.
[22] Dkt. 1345 at 3, n.1.
[23] Dkt. 1369 at 9 (emphasis removed).

The exception that JPMorgan refers to is the Second Circuit's ruling in *Peterson v. Islamic Republic of Iran*, 876 F.3d 63 (2d Cir. 2017), *cert. granted, judgment vacated sub nom. Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020) (referred to hereafter as "*Peterson II*").[24] JPMorgan claims that there is negative significance to the fact that on remand from the Supreme Court in *Peterson II*, the Second Circuit did not reinstate its entire prior opinion holding that a federal court had the power in a TRIA case under New York state law to order assets in a foreign jurisdiction into New York, where it was unclear whether the Court had personal jurisdiction over the foreign financial institution.[25] JPMorgan claims this "nullified the precedent."[26] In fact, the Second Circuit in *Peterson II* stated: "We do not, *at this time*, reinstate our analysis as to whether the common law and *Koehler* provide the district court with jurisdiction over the extraterritorial asset." *Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 196 (2d Cir. 2020) (emphasis added). In *Peterson II*, the issue was rendered moot by an Act of Congress specifically making the extraterritorial funds at issue in *Peterson* available for collection in the United States. *See Peterson*, 963 F.3d at 195. JPMorgan has cited no case holding or implying that there is a negative inference to be drawn from a decision not to readopt the prior holding when the issue is no longer material to the outcome. All that has happened is that the Second Circuit has left the issue in *Peterson II* open for further review in a case where the issues are not resolved by an Act of Congress, namely, the National Defense Authorization Act. *See id.*; *see also* REINSTATE, Black's Law Dictionary (11th ed. 2019) ("To place again in a former state or position; to restore . . . ."). The Supreme Court in *Peterson II* did not address the merits of the Second Circuit decision but gave as its full opinion: "On petition for writ of

---

[24] Dkt. 1369 at 9.
[25] Dkt. 1369 at 9; *Peterson,* 876 F.3d at 94-95.
[26] Dkt. 1369 at 9.

certiorari to the United States Court of Appeals for the Second Circuit. Petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of the National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116– —— (S. 1790)." *Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020).  "[T]he National Defense Authorization Act for Fiscal Year 2020 . . . [is] a statute specifically directed . . . to this [*Peterson II*] matter.'" *Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 195 (2d Cir. 2020).  Congress has not passed a special statute governing the Melli Blocked Account, and there has been no change in the law since the *Peterson II* opinion which would in any way undermine the reasoning and holding concerning jurisdiction based on *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009) and *Republic of Argentina v. NML Capital, Ltd.*, 134 S.Ct. 2250, 2257 (2014).

The issue of whether or not a U.S. court may direct the attachment of a foreign state's, or its agent and/or instrumentality's, blocked assets located outside the U.S. is one of mixed federal and state law, here, New York state law.  *See* Fed. R. Civ. P. 69(a)(1) ("The procedure on execution–and in proceedings supplementary to and in aid of judgment or execution–must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 474 n.10 (2d Cir. 2007) ("Under the FSIA and the Federal Rules of Civil Procedure, New York law governs the circumstances and manner of attachment and execution proceedings.").

JPMorgan claims the question of whether the Court has the power to order a foreign branch of the United States bank to transfer OFAC blocked assets to New York has not been answered, other than in *Peterson II*.[27]  But, the Second Circuit has already answered in the

---

[27] Dkt. 1369 at 9.

affirmative the question of whether a federal district court has the power to order assets (not even OFAC blocked) held in a foreign bank, over which the Court has personal jurisdiction, to be transferred to New York, by means of certifying the question to the New York Court of Appeals.  In *Koehler v. Bank of Bermuda*, Case No. 05-2378 (2d Cir. 2009), the Second Circuit stated:

> [W]e certified the following question to the New York Court of Appeals:
>
>> May a court sitting in New York order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to N.Y. C.P.L.R. Article 52, when those stock certificates are located outside New York?
>
> Id. at 88.
>
> On June 4, 2009, the New York Court of Appeals answered the question in the affirmative.  Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 536 (2009).  The Court of Appeals explained that "CPLR article 52 contains no express territorial limitation barring the entry of a turnover order that requires a garnishee to transfer money or property into New York from another state or country."  Id. at 539.  It further explained that "the key to the reach of the turnover order is personal jurisdiction over a particular defendant," id. at 540, and that in rem jurisdiction over the property is not required if there is personal jurisdiction over the defendant. Id.  The Court of Appeals held "that a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee."  *Id.* at 541.

*Koehler v. Bank of Bermuda Ltd.*, 577 F.3d 497, 499 (2d Cir. 2009); *see also Koehler v. Bank of Bermuda Ltd.*, 544 F.3d 78, 81-82 (2d Cir. 2008), *certified question accepted*, 11 N.Y.3d 801 (2008), *and certified question answered*, 12 N.Y.3d 533 (2009).

In *Koehler*, the federal district court "held that the Bermuda stock certificates sought by [plaintiff] were not leviable in New York . . . ." *Id.* at 85 n.4 (emphasis removed).  On review, the Second Circuit held that New York state law applied to the issue: "Under Federal Rule of Civil Procedure 69(a), a district court has the authority to enforce a judgment by attaching

property in accordance with the law of the state in which the district court sits. . . . [N.Y. C.P.L.R.] Section 5225 authorizes a court to order the delivery of property that belongs to a judgment debtor but is not in his possession. N.Y. C.P.L.R. 5225(b)." *Id.* at 85. It then vacated the district court order and certified the question to the New York State Court of Appeals. *Id.* at 88. The Second Circuit stated: "It seems clear that a court sitting in New York, that has personal jurisdiction over a judgment debtor, may order the judgment debtor himself to deliver property into New York . . . we see no principled reason why a court in New York should not be able to order a garnishee that has submitted to its personal jurisdiction to deliver property within its control." *Id.* at 86-87.

The New York Court of Appeals accepted certification and answered the question in the affirmative: "In short, the principle that a New York court may issue a judgment ordering the turnover of out-of-state assets is not limited to judgment debtors, but applies equally to garnishees. Consequently, we conclude that a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to CPLR 5225(b)." *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009). The Second Circuit then applied the New York Court of Appeals' finding to hold that because the Bermuda bank had consented to personal jurisdiction in the Southern District of New York, the district court had authority to issue a turnover order as to stock certificates held by the bank outside of the United States. *Koehler*, 577 F.3d at 499. The 2009 Second Circuit opinion in *Koehler* is on point and binding authority over the case here. Nothing in TRIA undermines this power of the district court under New York law; in fact, TRIA supports this power, as its language covers all "blocked assets," not merely those in the U.S.[28]

---

[28] Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002), § 201(a) codified at 28 U.S.C. § 1610.

Subsequent courts have also applied the finding of the New York Court of Appeals in *Koehler*. *See, e.g.*, *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234, 238-39 (S.D.N.Y. 2011) ("In *Koehler*, the New York Court of Appeals concluded that "a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to [ *239 N.Y. C.P.L.R. § 5224(b) ]." . . . As long as a court sitting in New York maintains personal jurisdiction over a garnishee, the court may order the garnishee to bring into New York the judgment debtor's property located elsewhere."); *AP MA Funding, LLC v. Wells Fargo Clearing Servs.*, 2020 N.Y. Slip Op. 31242, 4 (N.Y. Sup. Ct. 2020) ("Along those lines, AP MA cites *Koehler v Bank of Bermuda Ltd.*, 12 NY3d 533, 541 (2009), wherein the Court of Appeals expressly held that 'a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to CPLR 5225 (b).'").  In *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587 (S.D.N.Y. 2011), the district court cited *Koehler* as the basis for its authority to order a bank over which it had personal jurisdiction to turn over assets located in Germany: "This Court has general personal jurisdiction over Commerzbank, and thus under *Koehler*, this Court may issue a turnover order under N.Y. CPLR § 5225(b) directing Commerzbank to turn over funds up to the amount of the judgment, regardless of whether those accounts are held in Germany or New York."  *Id.* at 593, 598 (holding also that "international comity does not require this court to decline to enforce the judgment of the District Court for the Western District of Oklahoma through turnover proceedings in this district.").

In 2014, the United States Supreme Court decided *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014), which held that the FSIA did not convey sovereign immunity

for post-judgment discovery demands regarding assets held overseas.  It held that the district court had the power to enforce such extraterritorial asset demands as to the Republic of Argentina, a foreign sovereign which had waived jurisdictional immunity.  *Id.* at 142; *see also United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965) ("Once personal jurisdiction of a party is obtained, the district court has authority to order it to 'freeze' property under its control, whether the property be within or without the United States."); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 410, 416 (2d Cir. 1985) (requiring defendant to bring funds in Swiss bank accounts into the U.S. to prevent her from dissipating those assets).

The Second Circuit has held that in a collection and turnover action, the federal court is to apply state law.  Koehler, 544 F.3d at 85.  Additionally, the Second Circuit has held that the Court has the power to order a foreign financial institution to transfer blocked assets to New York to satisfy a judgment. *See Koehler*, 577 F.3d at 499.

> JPMorgan argues that: "FSIA §§ 1610(a)(7) and 1610(b)(3) explicitly apply only to a foreign state's or instrumentality's property 'in the United States.'"[29]  However, this case involves TRIA § 201(a) and FSIA § 1610(g).  As the district court stated in *Smith v. Federal Reserve Bank of New York*: Although the "notwithstanding" language Congress used in the TRIA was broad, it necessarily has a scope and that scope depends on the substance of the provision to which it is attached. The substance of Section 201(a) is that "the blocked assets of that terrorist party ... shall be subject to execution or attachment" to pay the terrorist party's liability for compensatory damages. The phrase "notwithstanding any other provision of law" simply means that Section 201(a) controls if there is another provision of law that conflicts with it. As Judge Jackson found, to the extent that a foreign country's sovereign immunity potentially conflicts with Section 201(a), the "notwithstanding" phrase removes the potential conflict.

---

[29] Dkt. 1369 at 16.

*Smith v. Fed. Rsrv. Bank of New York*, 280 F. Supp. 2d 314, 319 (S.D.N.Y.), *aff'd*, 75 F. App'x

860 (2d Cir. 2003), *and aff'd sub nom. Smith ex rel. Est. of Smith v. Fed. Rsrv. Bank of New*

*York*, 346 F.3d 264 (2d Cir. 2003).

TRIA and FSIA § 1610(g) do not limit collection of assets to those in the United States.

*See generally* TRIA § 201; 28 U.S.C. § 1610(g).  When a statute uses language in one part and

omits it in another, the presumption is that this was intentional, not an oversight.[30]

JPMorgan cites *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) for the

proposition that "'It is a longstanding principle of American law that legislation of Congress . . .

is meant to apply only within the territorial jurisdiction of the United States.' . . . Courts

therefore do not apply statutes extraterritorially 'unless there is the affirmative intention of the

Congress clearly expressed' to do so, and '[w]hen a statute gives no clear indication of an

extraterritorial application, it has none.'"[31]  However, the Supreme Court in *Morrison* also said:

"we do not say . . . that the presumption against extraterritoriality is a 'clear statement rule,' . . .

if by that is meant a requirement that a statute say 'this law applies abroad.' Assuredly context

can be consulted as well."  *Morrison*, 561 U.S. at 265.

Here, the Second Circuit has already held that New York state law applies in

enforcement of judgment cases, even without the "notwithstanding" language and legislative

history of TRIA.  *See Koehler*, 577 F.3d at 499.  The Second Circuit has held that in such a case,

if the federal court has personal jurisdiction over the bank, then the Court may order assets to be

delivered by that bank to New York to satisfy a judgment.  *Id.*  JPMorgan offers no legal

---

[30] *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("'Where Congress includes particular language in one
section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts
intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *Russello v. United States*, 464 U.S.
16, 23 (1983)); also see, *Mississippi v. AU Optronics Corp.*, 134 S.Ct. 736, 742 (2014) ("[W]e presume that
'Congress is aware of existing law when it passes legislation.'") (quoting *Hall v. United States*, 132 S.Ct. 1882,
1889 (2012)).
[31] Dkt. 1369 at 16.

authority to support its contention that *Koehler* does not apply to collection of a judgment against a terrorist state from the blocked assets of its agent and instrumentality, and there is none.  Furthermore, in the context of terrorism judgments against foreign sovereigns and their agents and instrumentalities, the intent of Congress was to make collection of judgments easier and broaden the scope of available assets.  *See Weininger v. Castro*, 462 F. Supp. 2d 457, 483 (S.D.N.Y. 2006) ("The purpose of Section 201 is to deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction . . . ."); *Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 984 F. Supp. 2d 1070, 1093 (S.D. Cal. 2013) ("The Court concludes that Congress' clear and consistent intent in amending FSIA in recent years, and in particular enacting § 1605A as well as TRIA, has been to assist victims collect compensation from foreign states that sponsored acts of terrorism. *E.g., Heiser*, 807 F. Supp. 2d at 12-16, 18-19, 25-26 (surveying 'the latest in series of attempts by Congress to aid these victims' of state-sponsored terrorism to enforce judgments).").

The cases that JPMorgan cites in support of its contention that the Levins attempt to enforce their judgment against assets located abroad is futile do not support that proposition or are not on point.  JPMorgan cites *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014), *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011), and *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009) for the proposition that "The Second Circuit has repeatedly reiterated that the FSIA lacks extraterritorial reach for execution purposes."[32]  *EM Ltd.* did not involve attachment of property located outside

---

[32] Dkt. 1369 at 17.

of the United States, where the Court has personal jurisdiction over the foreign bank but, rather, discovery of extraterritorial assets. The Second Circuit in *EM Ltd.* held that such discovery did not infringe on Argentina's sovereign immunity, and it allowed enforcement of the discovery order. 695 F.3d at 210. The quote that JPMorgan cites from the *EM Ltd.* case, that "a district court sitting in Manhattan does not have the power to attach Argentinian property in foreign countries," is out of context and dicta at best. *Id.* at 208.[33] EM Ltd. did not involve assets which were blocked by a foreign branch of a United States bank, over which the Court has personal jurisdiction. *See generally id.* It was also not a case enforcing a judgment against a state sponsor of terrorism under TRIA, where blocked assets, full stop, may be used for collection. *See generally id.* This is non-controlling dicta and, in the context of the facts at issue there compared to a terrorism case, the two cases are not in conflict because they deal with different situations entirely.[34] *Walters* and *Aurelius* involve the application of FSIA § 1610(a), which specific subsection, as discussed above, requires that the property be within the United States, unlike section 1610(g) or TRIA § 201. *See Walters*, 651 F.3d at 297; *Aurelius*, 584 F.3d at 130.[35] Neither *Walters* nor *Aurelius* deal with TRIA or collection of the assets of a state sponsor of terrorism, whose sovereign immunity has been stripped by the FSIA. TRIA was enacted specifically in order to allow victims of state sponsored terrorism to reach assets not only of a

---

[33] The *EM Ltd.* court subsequently states: "Whether a particular sovereign asset is immune from attachment must be determined separately under the FSIA, but this determination does not affect discovery." *Id.* at 209. But it never reached the question of whether Argentina's assets were immune from attachment in that matter.

[34] *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 17 (2003) ("Dicta of course have no precedential value . . . ."); *Koehler*, 544 F.3d at 85; *Koehler*, 12 N.Y.3d at 541.

[35] JPMorgan cites *Walters* for the proposition that "foreign sovereign property located outside the U.S. is 'categorically immune from execution under the FSIA.'" Dkt. 1369 at 17 (emphasis removed). That is not what the *Walters* opinion says. *Walters* states: "Insofar as petitioners complain that the Banks successfully moved to quash subpoenas *duces tecum* in prior proceedings in the Southern District of New York, petitioners there sought information pertaining to China's assets outside of the United States, which were held to be categorically immune from execution under the FSIA." *Walters*, 651 F.3d at 297. This is not a statement of law but a recounting of a prior ruling in that particular case.

sovereign which is designated a state sponsor of terrorism, but also its agents and

instrumentalities.  *See* TRIA § 201.  It makes no sense to argue that Congress in enacting TRIA

intended that foreign assets of such a state sponsor of terrorism are immune, even if that were the

question here, which it is not.  The question here is whether this Court has the power to order the

blocked assets of an instrumentality of a state sponsor of terrorism located in London to be

transferred to New York, by a bank branch over which it has personal jurisdiction.  None of the

cases cited by JPMorgan come close to answering that question in the negative, and any such

finding would be contrary to controlling law in *Koehler*.[36]

JPMorgan also extensively cites out of state foreign authority, not New York or Second

Circuit law.[37]  Relevant Second Circuit law does not support JPMorgan's position, and foreign

authority is particularly irrelevant in post-judgment execution proceedings, which are governed

by state law.[38]  Further, nearly all of JPMorgan's cited decisions pre-date *NML*, and none of

them consider the omission of the "in the United States" language from TRIA, *Koehler*, or

*NML*'s logic and holding that a subpoena could be enforced against a foreign sovereign.[39]

---

[36] *Koehler*, 577 F.3d at 499.

[37] *E.g.*, *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737 (7th Cir. 2007); *Rubin v. Islamic Republic of Iran*, 830 F.3d 470, 475 (7th Cir. 2016); *Gates v. Syrian Arab Republic*, 755 F.3d 568, 573 (7th Cir. 2014); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1123 n.2, 1131-32 (9th Cir. 2010); *Hegna v. Islamic Republic of Iran*, 380 F.3d 1000, 1002 (7th Cir. 2004); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002); *Rubin v. Islamic Republic of Iran*, No. 03 Civ. 9370, 2007 WL 1169701, at *2 (N.D. Ill. Apr. 17, 2007).

[38] Fed. R. Civ. P. 69(a)(1); *Koehler*, 544 F.3d at 85; *Koehler*, 12 N.Y.3d at 541.

[39] *See, e.g.*, *Bank of Tokyo-Mitsubishi, UFJ, Ltd. v. Peterson*, No. 12 Civ. 4038, 2012 WL 1963382, at *2 (S.D.N.Y. May 29, 2012); *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 CIV. 11327 (TPG), 2010 WL 768874, at *4 (S.D.N.Y. Mar. 5, 2010); *Walters v. People's Republic of China*, 672 F. Supp. 2d 573, 575 (S.D.N.Y. 2009); *Fid. Partners, Inc. v. First Trust Co. of N.Y.*, 58 F. Supp. 2d 52, 53 n.2 (S.D.N.Y. 1997).  In particular, several TRIA cases that Defendants cite solely concerned assets located in the U.S.  *See Hegna v. Islamic Republic of Iran*, 380 F.3d 1000, 1002 (7th Cir. 2004) (Chicago condominiums); *Rubin v. Islamic Republic of Iran*, 2007 WL 1169701, at *2 (N.D. Ill. Apr. 17, 2007) (artifacts in Chicago museum); *Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 417 (S.D.N.Y. 2013) (assets held in New York bank account).  Moreover, none addresses *NML* or *Koehler* nor discusses whether TRIA provides a basis for jurisdiction over enforcement proceedings related to the assets of state sponsors of terrorism held abroad in the hands of "United States persons." Those courts therefore had no occasion to decide the issue presented here.  *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 17 (2003) ("Dicta of course have no precedential value . . . .").

Several of JPMorgan's authorities also involve efforts to invoke sub-sections of 28 U.S.C. §1610

that – unlike TRIA – explicitly require that the targeted property be located "in the United

States."[40]

        None of JPMorgan's cases are therefore applicable to the present situation, and none hold

that a court with personal jurisdiction over a garnishee may not exercise its authority over assets

held by that garnishee outside of the United States under TRIA § 201 or FSIA § 1610(g).  The

Second Circuit in *Koehler* has answered the question of this Court's power in the affirmative.

TRIA § 201 allows execution over all "blocked assets" of a terrorist state and its

instrumentalities.  *See* TRIA § 201.  Therefore, JPMorgan's motion to dismiss should be denied

and the Levins should be permitted to proceed with their turnover action.[41]

**B.     Principles of International Comity and the Potential for Double Liability Do
        Not Prevent Collection of a Judgment Under TRIA and FSIA from the
        Assets of a State Sponsor of Terrorism Blocked in a Foreign Branch of a
        New York Bank**

        JPMorgan states that "principles of international comity, which underlie the FSIA,

underscore the execution immunity that the FSIA and TRIA afford to a foreign state's and its

instrumentalities' assets located outside the U.S."[42]  It argues that "[a]n order of a U.S. court

---

[40] *See, e.g., Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 CIV. 11327 (TPG), 2010 WL 768874, at *4 (S.D.N.Y. Mar. 5, 2010) (applying § 1610(a) and (d)); *Walters v. People's Republic of China*, 672 F. Supp. 2d 573, 575 (S.D.N.Y. 2009) (applying § 1610(a)); *Peterson v. Islamic Republic Of Iran*, 627 F.3d 1117, 1131 (9th Cir. 2010) (applying § 1610(a)).

[41] JPMorgan also claims that "under the doctrine of federal preemption, New York state law, as embodied in *Koehler*, 'is naturally preempted to the extent of any conflict with a federal statute' – here, the FSIA and TRIA." Dkt. 1369 at 23.  It cites *Peterson*, 627 F.3d at 1130, a Ninth Circuit case, for the proposition that: "California law governed proceeding under FSIA § 1610 to enforce judgment against Iran only 'insofar as it does not conflict with the FSIA.'"  *Id.* at 24.  However, New York law under *Koehler* does not conflict with the FSIA or TRIA.  TRIA § 201 and FSIA § 1610(g) specifically cover assets without any territorial limitations, consistent with *Koehler*.  *See Koehler*, 577 F.3d at 499.

[42] Dkt. 1369 at 24.

directing the attachment of a foreign state's asset held outside the U.S. directly implicates principles of international comity and U.S. foreign policy interests."[43]  It states: "Principles of international comity are of particular concern when, as here, there may be a 'conflict between domestic and foreign law' that subjects a party in the position of JPMorgan London to the risk of conflicting legal obligations," citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798-99 (1993), *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 139 (2d Cir. 2014), and *Global Tech., Inc. v. Royal Bank of Can.*, 34 Misc.3d 1209[A], 2012 WL 89823, at *3 (Sup. Ct. N.Y. Co. Jan. 11, 2012) (internal quotation marks and citation omitted).[44]  JPMorgan says that it is at risk of double liability here, citing the declaration of an English barrister, because an English Court might not give effect to an order of the SDNY.[45]  Finally, JPMorgan claims that there is a "further comity concern . . . that of reciprocity."[46]  JPMorgan states that "authorizing a U.S. district court to direct the attachment or turnover of a foreign state's or instrumentality's assets located outside the U.S. creates an inventive for foreign states to take a reciprocal approach vis-à-vis the U.S.," citing a statement of interest by the United States in *Chabad*,[47] a case involving "property held by a foreign sovereign within the sovereign's own territory."[48]  The matter here involves Iran, and the extensive U.S. sanctions program against Iran demonstrates U.S. policy.[49] JPMorgan does not cite any case dealing with a state sponsor of terrorism whose assets are

---

[43] Dkt. 1369 at 25.
[44] Dkt. 1369 at 25.
[45] Dkt. 1369 at 25-27.  JPMorgan purports to be concerned about the possibility that Bank Melli will seek its assets from JPMorgan in the UK after such assets are turned over to the Levins.  *Id.* at 10-11.  It is standard in these turnover proceedings for the garnishee to file an interpleader complaint, which would include Bank Melli here.  *See* Dkt. 1133.  Furthermore, as set forth in the Declaration of Jacqueline A. Perry, QC ("Perry Decl."), filed concurrently herewith, a London court would take into account that the court will issue a judgment protecting JPMorgan London and also will consider any failure of Bank Melli to enforce its rights.  Perry Decl. ¶ 14.
[46] Dkt. 1369 at 27.
[47] Dkt. 1369 at 27.
[48] Dkt. 1370-3 at 3.
[49] *See* Iran Sanctions, U.S. Dep't Treas., https://home.treasury.gov/policy-issues/financial-sanctions/sanctions-programs-and-country-information/iran-sanctions (last visited Mar. 23, 2021).

blocked by a foreign branch of a United States bank, where a court held that international comity

or double jeopardy, even were it a realistic probability, rendered the assets immune.

Congress has already balanced concerns of international comity in enacting FSIA (and

TRIA, which is codified in the FSIA), and therefore international comity concerns cannot

preempt either TRIA or the FSIA.  *See Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134,

140 (2014) (explaining the history of the FSIA and sovereign immunity, concluding "any sort of

immunity defense made by a foreign sovereign in an American court must stand on the Act's

text. Or it must fall."); *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1112-13 (D.C. Cir.

2019) ("The Supreme Court has held clearly and repeatedly that with the FSIA, Congress

established 'a comprehensive set of legal standards governing claims of immunity in every civil

action against a foreign state or its political subdivisions, agencies or instrumentalities.' . . .  And

that 'comprehensive framework,' . . . including the terrorism exception at § 1605A, strikes a

'careful balance between respecting the immunity historically afforded to foreign sovereigns and

holding them accountable, in certain circumstances, for their actions,' . . . . [T]here is no room

for courts to engage in discretionary, comity-based interest-balancing to decide 'whether and

when to exercise judicial power over foreign states,'  . . . This is a concern for the political

branches, not the judiciary. . . . [T]he Supreme Court has been clear in its FSIA jurisprudence

that it is not for the courts 'to consider the worrisome international-relations consequences' of

adjudicating actions under the FSIA."); *O'Bryan v. Holy See*, 471 F. Supp. 2d 784, 794 (W.D.

Ky. 2007), *aff'd*, 549 F.3d 431 (6th Cir. 2008) ("The FSIA represents the position of the United

States government on the doctrine of international comity. The FSIA is an exercise of Congress'

'undisputed power to decide, as a matter of federal law, whether and under what circumstances

foreign nations should be amenable to suit in the United States.' . . . The doctrine of international

comity is indeed an important one, but the FSIA is the proper framework for American courts to apply in cases where the doctrine is asserted.").

As the Southern District of New York stated in *Belgrade v. Sidex Int'l Furniture Corp.*:

> [T]he jurisdiction imparted by the FSIA is premised upon specific considerations of international comity and non-interference with the executive branch's foreign policy authority.
>
> > "[E]nactment of the FSIA was in response to unique policy considerations touching on the international relations of the United States.... Indeed, the Supreme Court has acknowledged Congress' deliberate intent to circumvent much of the potential for interference with the federal government's foreign relations caused by lack of uniformity and local bias in civil caselaw [sic] involving foreign states as defendants by channeling private actions against foreign sovereigns away from the state forums and into federal courts to be adjudicated in nonjury trials."

*Belgrade v. Sidex Int'l Furniture Corp.*, 2 F. Supp. 2d 407, 412 (S.D.N.Y. 1998). Accordingly, the Court should follow the framework of FSIA, which, as discussed above, applying state law, permits extraterritorial attachment of a foreign state's, or its agency or instrumentality's, blocked assets provided that the Court has jurisdiction over the garnishee, which is the case here.

Even if international comity was a relevant consideration here, which it is not, JPMorgan must meet the burden of proving that there is another "sufficiently similar" litigation in the UK such that the doctrine of *res judicata* can be asserted against this one:

> The Second Circuit has described the doctrine of comity as " 'amorphous' and 'fuzzy,' " and it has counseled that "even where the doctrine clearly applies[,] it 'is not an imperative obligation of courts but rather is a discretionary rule of practice, convenience, and expediency.' " *Royal and Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (quoting *JP Morgan Chase Bank v. Altos Hornos De Mexico, S.A. DE C.V.*, 412 F.3d 418, 423 (2d Cir. 2005)). Among other things, the rule of "comity requires that the parties and issues in both litigations [be] the same or sufficiently similar, such that the doctrine of *res judicata* can be asserted." *Herbstein v. Bruetman*, 743 F. Supp. 184, 189 (S.D.N.Y. 1990). "[S]ince comity is an affirmative defense, [the party invoking

19

comity] carrie[s] the burden of proving that comity [is] appropriate."
*Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993).

*Pablo Star Ltd. v. Welsh Gov't*, 378 F. Supp. 3d 300, 313 (S.D.N.Y. 2019), *aff'd*, 961 F.3d 555

(2d Cir. 2020) (denying the Welsh Government's motion to dismiss); *see also Rodriguez v. Pan*

*Am. Health Org.*, No. CV 20-928 (JEB), 2020 WL 6561448, at *18 (D.D.C. Nov. 9, 2020)

("PAHO has no leg to stand on when it comes to Cuba, as '[a] defendant invoking the doctrine

of comity must . . . point to a valid legal proceeding to which [this] [C]ourt must defer.' *One*

*Gulfstream G-V*, 941 F. Supp. 2d at 9 ('[T]he doctrine ... will not impede a judicial proceeding

when no foreign judgment exists.') . . . Here, PAHO has identified no legal proceeding or

'decision[ ] of [a] foreign tribunal[ ]' in Cuba that 'should be given effect in domestic courts.'");

*see also* Perry Decl.

Even if JPMorgan could prove that turnover of the Bank Melli funds to the Levins would

violate an order of a UK court or another UK law, which it cannot,[50] it would still be within the

Court's power to require JPMorgan-London to comply with its lawful order.   *See In re Sealed*

*Case*, 932 F.3d 915, 939 (D.C. Cir. 2019) (affirming contempt orders against banks

headquartered in China for failing to produce records in response to subpoenas and a subsequent

U.S. court order even though turning over those records would put the banks in violation of

Chinese law, and noting "In particular, Congress found that correspondent accounts held by

foreign banks were "one of the banking mechanisms susceptible in some circumstances to

manipulation by foreign banks to permit the laundering of funds.").  Because JPMorgan has

failed to meet its burden in showing that there is a judgment in the UK that would operate as *res*

*judicata* against the current proceeding, or that there is a law in the UK that prohibits what the

---

[50] *See generally* Perry Decl.

Levins are asking this Court to order JPMorgan to do, international comity considerations do not apply.[51]

The cases cited by JPMorgan do not compel a different result. *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir. 1984), the only terrorism case cited by JPMorgan, involved sovereign immunity and a specific finding by the D.C. court that the FSIA did not apply to impose liability on Iran. It is inapplicable here, where the Levins have a judgment against Iran under the FSIA, and Iran cannot claim sovereign immunity as a shield against attachment of its assets or the assets of its agents and instrumentalities by the Levins.[52] JPMorgan also cites *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 138 (2d Cir. 2014), a Lanham Act case in which the Second Circuit noted that a comity analysis would be "appropriate" before ordering the Chinese bank to freeze assets, not pursuant to OFAC regulations but pursuant to Court order, in direct violation of Chinese banking law.[53] And, it cites *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798 (1993), in which the Supreme Court held that there was no true conflict between U.S. and British law for purposes of international comity analysis because even though the London reinsurers' acts were lawful under British law, they "d[id] not argue that British law requires them to act in some fashion prohibited by the law of the United States . . . or claim that their compliance with the laws of both countries [was] otherwise impossible . . . ." *Gucci* and *Hartford* are inapplicable here, where JPMorgan has not identified a single UK law that would prohibit JPMorgan's London branch from turning over the Melli Account to the

---

[51] JPMorgan claims "potential conflict exists here," but neither its brief nor the declaration of the barrister offered by JPMorgan points to a single UK authority that would prohibit JPMorgan London from turning over the Melli Account pursuant to an order of this Court, under TRIA. *See* Dkt. 1369 at 25-27; *see generally* Dkt. 1371. As set forth in the Perry Decl., international comity and double liability are not real issues here under UK law.
[52] *See* 28 U.S.C. § 1605A(a)(1) (formerly 28 U.S.C. § 1605(a)(7)).
[53] Notably, JPMorgan's London branch complied with U.S. OFAC regulations when it froze the Melli Account funds and is not claiming that those regulations promulgated by the U.S. Department of Treasury violate any principles of international comity.

Levins under TRIA.  *Gucci* and *Hartford* also did not involve FSIA, the comprehensive framework enacted by Congress that negates any need for the courts to engage in comity analysis.  Finally, JPMorgan's cited cases *Glob. Tech., Inc. v. Royal Bank of Canada*, 34 Misc. 3d 1209(A), 2012 WL 89823 (N.Y. Sup. Ct. 2012) and *Glob. Tech., Inc. v. Royal Bank of Canada*, 34 Misc. 3d 1209(A), 2012 WL 919664 (N.Y. Sup. Ct. 2012) involved issues arising from the separate entity doctrine, which treats separate bank branches as separate entities for certain purposes including post-judgment execution.  This does not apply here, where the Court has personal jurisdiction over the JPMorgan bank branch holding the Melli Blocked Account, JPMorgan-London.[54]  The separate entity doctrine cases support the Levins because they contradict JPMorgan's claim that permitting the Levins to execute on the Melli Account would "expose JPMorgan and multiple other U.S. banks engaged in correspondent banking to a potential flood of new proceedings by judgment creditors . . . seeking the turnover . . . of blocked assets held outside the U.S."[55]  *Koehler* is clear.  It is only where the Court has jurisdiction over the foreign bank branch that it has the power to order it to transfer the extraterritorial assets to New York.[56]

## IV.     CONCLUSION

For the foregoing reasons, JPMorgan's motion to dismiss should be denied.


Dated:  March 29, 2021                              HOWARTH & SMITH
                                                    SUZELLE M. SMITH
                                                    DON HOWARTH

---

[54] *Shaheen Sports, Inc. v. Asia Ins. Co.*, No. 11-CV-920 LAP, 2012 WL 919664, at *3 (S.D.N.Y. Mar. 14, 2012) ("It has also long been considered settled law in New York, however, that where that garnishee is a bank, the court must obtain jurisdiction over the specific bank branch holding the asset before it may order any turnover, notwithstanding its general jurisdiction over the banking entity by virtue of its New York branch.  This has become known as the 'separate entity' rule.").
[55] Dkt. 1369 at 10.
[56] *Koehler*, 577 F.3d at 499.

By:    */s/ Suzelle M. Smith*
        Suzelle M. Smith (5376900)
        ssmith@howarth-smith.com
        523 West Sixth Street, Suite 728
        Los Angeles, California 90014
        (213) 955-9400

*Attorneys for Plaintiffs*
*Dr. Lucille Levin and Suzelle M. Smith,*
*Trustee of the Jeremy Isadore Levin 2012*
*Revocable Trust*

23