UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEREMY LEVIN, *et al.*,

                Plaintiffs,

-v-

BANK OF NEW YORK, *et al.*,

                Defendants.

09-CV-5900 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiffs Dr. Lucille Levin and Suzelle M. Smith[1] are judgment creditors of the Islamic Republic of Iran ("Iran"). In 2009, they filed this suit seeking turnover of Iranian assets in an effort to enforce their unsatisfied judgment against Iran. (Dkt. No. 70.) On January 6, 2021, Plaintiffs filed a supplemental complaint seeking turnover of a particular blocked asset, the Melli Blocked Account, for collection and partial satisfaction of their judgment against Iran. (Dkt. No. 1356.) Defendants, garnishees in this action pursuant to New York Civil Practice Law and Rules § 5225(b), now move to dismiss the supplemental complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. Nos. 1368 & 1369.) For the reasons that follow, Defendants' motion to dismiss is granted.

**I.**    **Background**

The Court presumes familiarity with the factual and procedural history of this case, as discussed in its four prior Opinions and Orders issued on March 4, 2011, September 23, 2013, October 27, 2017, and February 12, 2019. *See Levin v. Bank of N.Y.*, No. 09 Civ. 5900, 2011

---

[1] Plaintiff Jeremy Levin died on February 6, 2020. On April 17, 2020, this Court ordered Smith, Trustee of Jeremy Isadore Levin 2021 Revocable Trust, substituted as plaintiff for Jeremy Levin. (Dkt. No. 1300.)

1

WL 812032, at *1–4 (S.D.N.Y. Mar. 4, 2011) (Patterson, J.); *Levin v. Bank of N.Y. Mellon*, No. 09 Civ. 5900, 2013 WL 5312502, at *1–2 (S.D.N.Y. Sept. 23, 2013) (Patterson, J.); *Levin v. Bank of N.Y. Mellon*, No. 09 Civ. 5900, 2017 WL 4863094, at *1–2 (S.D.N.Y. Oct. 27, 2017), *aff'd sub nom. Levin v. JPMorgan Chase Bank, N.A.*, 751 F. App'x 143 (2d Cir. 2018); *Levin v. Bank of N.Y. Mellon*, No. 09 Civ. 5900, 2019 WL 564341, at *1–3 (S.D.N.Y. Feb. 12, 2019). A brief summary of the facts underlying Plaintiffs' January 6, 2021 supplemental complaint follows.

Plaintiffs hold an unsatisfied final judgment in the total amount of $28,807,719 against Iran. This judgment arises from the 1984 kidnapping of Jeremy Levin in Beirut, Lebanon, by Hezbollah terrorists who received training, support, aid, funding, and direction from Iran. (Dkt. No. 1356 ¶ 1.) Defendants and Garnishees JPMorgan Chase Bank, N.A. ("JPMorgan") and JPMorgan Chase Bank, N.A./London have reported to the Office of Foreign Assets Control of the United States Treasury Department that they are in possession of assets blocked by the United States government because Iran has an interest in the assets directly or indirectly. (Dkt. No. 1356 ¶ 3.) The government has blocked these assets to carry out economic sanctions against terrorists, terrorist groups, and state sponsors of terrorism, including Iran. *Id*.

On January 29, 2018, Plaintiffs served interrogatories on JPMorgan. JPMorgan's response to these interrogatories disclosed the existence of an additional Iranian blocked asset, the Melli Blocked Account, located at its London branch. (Dkt. No. 1356 ¶¶ 1, 4.) Plaintiffs and Defendants both acknowledge: (1) that the funds in the Melli Blocked Account belong to Bank Melli; (2) that Bank Melli is an Iranian bank wholly owned by the Iranian government; and (3) that Bank Melli has been held to be an instrumentality of Iran. (*See* Dkt. No. 1369 at 2, 5–6; Dkt. No. 1374 at 1–2.)

On December 10, 2020, this Court granted Plaintiffs' motion to supplement their pleading to seek turnover of the Melli Blocked Account. (Dkt. No. 1345.) Plaintiffs, in their supplemental complaint, assert that they are entitled to the funds in the Melli Blocked Account. (Dkt. No. 1356.) On March 4, 2021, Defendants moved to dismiss the supplemental complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] (Dkt. Nos. 1368 & 1369.) Defendants argue that the Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted because the Melli Blocked Account is outside of the United States, making it immune to execution. (*See* Dkt. No. 1369 at 2.)

## II.     Legal Standard

Rule 12(b)(1) requires that a claim be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff must allege facts establishing that subject matter jurisdiction exists. *Lunney v. United States,* 319 F.3d 550, 554 (2d Cir. 2003). "In a motion to dismiss [for lack of subject matter jurisdiction] pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 (2d Cir. 2001).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The Court must accept as true all well-

---

[2] For the purposes of this motion, Defendants concede that the Court has personal jurisdiction over Defendants. (*See* Dkt. No. 1369 at 2.)

3

pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III. Discussion

Before the Court is a single question: whether the Melli Blocked Account is immune from execution under the Foreign Sovereign Immunities Act ("FSIA") because it is located outside of the United States. Plaintiffs specifically seek to execute against the Melli Blocked Account under FSIA § 1610(g), which reads, in relevant part, that "the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state . . . is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section." 28 U.S.C. § 1610(g)(1) (emphasis added). (*See also* Dkt. No. 1356-1 (Plaintiffs' certification of judgment under 28 U.S.C. § 1605A).)

Yet FSIA § 1610(g), on its own, does not provide a freestanding basis to attach and execute against the property of a foreign state. Instead, "[s]ection 1610(g) serves to identify property that will be available for attachment and execution in satisfaction of a § 1605A judgment, but it does not in itself divest property of immunity." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 819 (2018). The provision's language "as provided in this section," 28 U.S.C. § 1610(g), means a foreign sovereign's property can be executed against only if its immunity is stripped elsewhere in FSIA § 1610(g), *see Rubin*, 138 S. Ct. at 819.

4

Plaintiffs assert that Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), which has been codified as a note to FSIA § 1610, does just that. TRIA § 201(a) provides that:

> "[I]n every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment."

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297 § 201(a) (codified as 28 U.S.C. § 1610 (note)). Unlike most of FSIA § 1610's provisions, which explicitly strip immunity from kinds of property "in the United States," *see* 28 U.S.C. § 1610, TRIA § 201(a) strips immunity from blocked assets without reference to whether the assets must be in the United States. Based on this silence, and the Supreme Court's declaration in *Republic of Argentina v. NML Capital, Ltd.* — "[A]ny sort of immunity defense made by a foreign sovereign in an American court must stand on the [FSIA's] text. Or it must fall." 573 U.S. 134, 141–42 (2014) — Plaintiffs argue that they can attach and execute against the Melli Blocked Account.

But Plaintiffs' argument elides a longstanding principle of statutory interpretation: the presumption against extraterritorial application. "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010). TRIA § 201(a)'s silence on whether blocked assets have to be in the United States, with nothing more, falls short of the "clear indication" needed to apply it to an extraterritorial asset. Indeed, courts in this circuit and elsewhere have uniformly held or confirmed that a foreign state's property located abroad is immune under the FSIA and TRIA. *See, e.g., Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011) (affirming that foreign sovereign property located outside the U.S. is "categorically immune from execution under the FSIA");

5

*Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007) ("The FSIA did not purport to authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world. We would need some hint from Congress before we felt justified in adopting such a breathtaking assertion of extraterritorial jurisdiction."); *Hegna v. Islamic Republic of Iran*, 380 F.3d 1000, 1002 (7th Cir. 2004) ("TRIA subjects a class of Iran's property in the United States to execution and attachment in aid of execution."); *Conn. Bank of Com. v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002) (stating that "even when a foreign state completely waives its immunity from execution, courts in the U.S. may execute only against property that meets [the] two statutory criteria" of being within the United States and used for commercial activity). The only appellate case cited by Plaintiffs that breaks this trend and allowed execution against an extraterritorial asset, *Peterson v. Islamic Republic of Iran*, 876 F.3d 63 (2d Cir. 2017) ("*Peterson II*"), *cert. granted, judgment vacated sub nom. Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020), is no longer controlling law. Following the Supreme Court's vacatur of *Peterson II*, the Second Circuit chose not to reinstate its prior analysis that allowed for attachment and execution against an extraterritorial asset under the FSIA and TRIA. *See Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 196 (2d Cir. 2020).

Further, Plaintiffs' citation to *NML Capital* is inapposite. The dispute in *NML Capital* was over whether extraterritorial assets were immune from execution discovery, not from actual attachment or execution. The *NML Capital* Court even recognized that "[o]ur courts generally lack authority in the first place to execute against property in other countries." *NML Cap.*, 573 U.S. at 144.

6

Plaintiffs' reliance on *Koehler v. Bank of Bermuda Ltd.*, 577 F.3d 497 (2d Cir. 2009), does not save the day for their supplemental complaint. In *Koehler*, the Second Circuit had previously certified the following question to the New York Court of Appeals: whether Article 52 of the New York Civil Practice Law and Rules allowed a court sitting in New York to order a bank over which it had personal jurisdiction to deliver stock certificates owned by a judgment debtor to a judgment creditor when those stock certificates were located in Bermuda. *See id.* at 499. The New York Court of Appeals answered the question in the affirmative, explaining that Article 52 of the CPLR did not contain a territorial limitation. *See id.* But *Koehler* did not involve interpreting any sections of the FSIA or TRIA, much less holding that these statutes rebutted the presumption against extraterritoriality. Moreover, the case did not concern the property of a foreign sovereign or a foreign sovereign's instrumentality. Rather, the property at issue belonged to a private individual outside of the United States. *See id.* at 498.

In any event, even if Article 52 of the CPLR would allow execution against the Melli Blocked Account, TRIA and the FSIA would preempt this state law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (noting that "state law is naturally preempted to the extent of any conflict with a federal statute"); *see also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010) (stating that "California law on the enforcement of judgments applies to this suit insofar as it does not conflict with the FSIA"). The FSIA, including TRIA § 201(a), does not permit executing against extraterritorial assets. Plaintiffs cannot rely upon state law to circumvent the FSIA's authority. *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532 (5th Cir. 1992) ("The FSIA sets forth the sole and exclusive

7

standards to be used to resolve all sovereign immunity issues raised in federal and state courts." (internal quotation marks omitted)).  The Court therefore grants Defendants' motion to dismiss.[3]

IV.     **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss the supplemental complaint is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 1368.

SO ORDERED.

Dated: February 22, 2022
       New York, New York

_____
                    J. PAUL OETKEN
                    United States District Judge

---

[3] The parties dispute in their briefing whether principles of international comity prevent execution against the Melli Blocked Account. (*See* Dkt No. 1369 at 18–22; Dkt. No. 1374 at 16–22.)  Because the Court concludes that the FSIA and TRIA do not allow execution against the Melli Blocked Account, it does not consider these arguments.